IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION

_____

U.S. PASTOR COUNCIL, et al.,

    Plaintiffs,

v.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, et al.,

    Defendants.

Case No. 4:18-cv-00824-O

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................ 2

STANDARD OF REVIEW ............................................................................................ 8

ARGUMENT ................................................................................................................. 9

I.   There is No Article III Standing to Support this Action. ........................................ 10

    A. Plaintiffs Have Identified No Injury to Support Standing for Claims Against the Attorney General. ........................................................................................ 11

    B. Injury and Traceability Are Lacking for the Claims Against the EEOC. .................. 13

        1. Plaintiffs Have Not Established Standing Based on a Past or Present Injury. ........................................................................................................ 13

        2. Plaintiffs Have Not Established an Injury Based on Threatened Enforcement Action. ....................................................................................... 14

        3. Any Injury Is Not Traceable to the EEOC Brochure. ........................................... 18

II.  Plaintiffs' Claims are Unripe. ............................................................................ 20

CONCLUSION ............................................................................................................. 24

# TABLE OF AUTHORITIES

**CASES**

*Abbott Laboratories v. Gardner*,
387 U.S. 136 (1967) .................................................................................... 20, 21

*Angle v. Veneman*,
EEOC Doc. 01A32644, 2004 WL 764265 (Apr. 5, 2004) ........................................ 4

*Baldwin v. Foxx*,
EEOC Doc. 0120133080, 2015 WL 4397641 (July 15, 2015) .............................. 4, 5

*Barrera–Montenegro v. United States*,
74 F.3d 657 (5th Cir. 1996) ...................................................................... 9

*Bauer v. Texas*,
341 F.3d 352 (5th Cir. 2003) .................................................................... 11

*Bertulli v. Independent Ass'n of Continental Pilots*,
242 F.3d 290 (5th Cir. 2001) .................................................................... 16

*Bibby v. Phila. Coca Cola Bottling Co.*,
260 F.3d 257 (3d Cir. 2001) ...................................................................... 3

*Blum v. Gulf Oil Corp.*,
597 F.2d 936 (5th Cir. 1979) ...................................................................... 3

*Burwell v. Hobby Lobby*,
134 S. Ct. 2751 (2014) .......................................................................... 23

*Calzone v. Hawley*,
866 F.3d 866 (8th Cir. 2017) .................................................................... 13

*Campbell v. Dep't of Agriculture*,
EEOC Appeal No. 01931730, 1994 WL 652840 (July 21, 1994) ........................... 4

*Carcieri v. Salazar*,
555 U.S. 379 (2009) .............................................................................. 19

*Casoni v. United States Postal Service*,
EEOC DOC 01840104, 1984 WL 485399 (Sept. 28, 1984) ................................... 4

*Chandler v. Roudebush*,
425 U.S. 840 (1976) .............................................................................. 15

*Christensen v. Harris County*,
    529 U.S. 576 (2000) ............................................................................................ 19

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................................................ 14

*Coastal Habitat Alliance v. Patterson*,
    601 F. Supp. 2d 868 (W.D. Tex. 2008) ................................................................ 13

*Collin Cty., Texas v. Homeowners Ass'n for Values Essential to Neighborhoods* ("*HAVEN*"),
    915 F.2d 167 (5th Cir. 1990) .......................................................................... 21, 22

*Cruz v. Abbott*,
    849 F.3d 594 (5th Cir. 2017) .............................................................................. 16

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ...................................................................................... 11, 13

*Dermer v. Miami-Dade County*,
    599 F.3d 1217 (11th Cir. 2010) .......................................................................... 16

*DeSantis v. Pacific Tel. & Tel. Co.*,
    608 F.2d 327 (9th Cir. 1979),
    *abrogated in part on other grounds, Nichols v. Azteca Restaurant Enterp.*, 256 F.3d 864 (9th
    Cir. 2001) ............................................................................................................ 3

*Dobre v. National R.R. Passenger Corp.*,
    850 F. Supp. 284 (E.D. Penn. 1993) .................................................................... 4

*Doe v. C.A.R.S. Prot. Plus, Inc.*,
    527 F.3d 358 (3d Cir. 2008) .............................................................................. 19

*EEOC v. Arabian Am. Oil Co.*,
    499 U.S. 244 (1991) ...................................................................................... 15, 19

*EEOC v. R.G. & G.R. Harris Funeral Homes*,
    884 F.3d 560 (6th Cir. 2018) ...................................................................... 4, 5, 16

*Elend v. Basham*,
    471 F.3d 1199 (11th Cir. 2006) .......................................................................... 16

*English v. Trump*,
    279 F. Supp. 3d 307 (D.D.C. 2018) .................................................................... 19

*Etsitty v. Utah Transit Auth.*,
    502 F.3d 1215 (10th Cir. 2007) ............................................................................ 4

*Evans v. Ga. Reg'l Hosp.*,
  850 F.3d 1248 (11th Cir. 2017) ............................................................. 4

*Gallagher v. Crown Kosher Super Market of Mass., Inc.*,
  366 U.S. 617 (1961) ............................................................................. 23

*Gen. Elec. v. Gilbert*,
  429 U.S. 125 (1976) ............................................................................. 19

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
  546 U.S. 418 (2006) ............................................................................. 23

*Griggs v. Duke Power Co.*,
  401 U.S. 424 (1971) ............................................................................. 19

*Hamm v. Weyauwega Milk Prods., Inc.*,
  332 F.3d 1058 (7th Cir. 2003),
  *overruled by Hively v. Ivy Tech Comm. College*, 853 F.3d 339 (7th Cir. 2017) .................. 3, 5

*Haywood v. Drown*,
  556 U.S. 729 (2009) ............................................................................. 10

*Hein v. Freedom from Religion Found.*,
  551 U.S. 587 (2007) ............................................................................... 9

*Higgins v. New Balance Athletic Shoe, Inc.*,
  194 F.3d 252 (1st Cir. 1999) .................................................................. 3

*Holloway v. Arthur Andersen & Co.*,
  566 F.2d 659 (9th Cir. 1977) .............................................................. 4, 6

*Home Builders Ass'n of Miss. v. City of Madison*,
  143 F.3d 1006 (5th Cir. 1998) ............................................................ 8, 9

*Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*,
  565 U.S. 171 (2012) ..................................................................... 1, 2, 23

*Hoyt v. City of El Paso, Tex.*,
  878 F. Supp. 2d 721 (W.D. Tex. 2012) ................................................ 17

*James v. City of Dallas*,
  254 F.3d 551 (5th Cir. 2001) ............................................................... 13

*Jones v. Am. Postal Workers Union*,
  192 F.3d 417 (4th Cir. 1999) ............................................................... 19

iv

*Klayman v. Pres. of the U.S.*,
   689 Fed. Appx. 921 (11th Cir. 2017)................................................................. 18

*Kowalczyk v. Dep't of Veterans Affairs*,
   EEOC Appeal No. 01942053, 1996 WL 124832 (Mar. 14, 1996) ........................... 4

*Kowalski v. Tesmer*,
   543 U.S. 125 (2004)................................................................................................ 9

*Lewis v. Casey*,
   518 U.S. 343 (1996).............................................................................................. 11

*Lopez v. City of Houston*,
   617 F.3d 336 (5th Cir. 2010) ................................................................................ 20

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).......................................................................................... 9, 11

*Luminant Generation Co., LLC v. EPA*,
   757 F.3d 439 (5th Cir. 2014) ................................................................................ 18

*Lusardi v. Dep't of the Army*,
   EEOC DOC 0120133395, 2015 WL 1607756 (Apr. 1, 2015)................................. 5

*Macy v. Holder*,
   EEOC DOC 0120120821, 2012 WL 1435995 (Apr. 20, 2012)............................... 5

*Marucci v. Caldera*,
   EEOC Doc. 01982644, 2000 WL 1637387 (Oct. 27, 2000)................................... 4

*Medina v. Income Support Div.*,
   413 F.3d 1131 (10th Cir. 2005) .......................................................................... 3, 4

*Meritor Sav. Bank, FSB v. Vinson*,
   477 U.S. 57 (1986).................................................................................................. 3

*Middle South Energy, Inc. v. City of New Orleans*,
   800 F.2d 488 (5th Cir. 1986) ................................................................................ 21

*Miss. Poultry v. Madigan*,
   992 F.2d 1359 (5th Cir. 1993)............................................................................... 19

*NAACP v. City of Kyle*,
   626 F.3d 233 (5th Cir. 2010) ........................................................................... 10, 20

*Nat'l Conf. of Catholic Bishops v. Smith* ("*Bishops Conference*"),
    653 F.2d 535 (D.C. Cir. 1981) ........................................................................... 15, 17, 23

*Nat'l Rifle Ass'n v. BATFE*,
    700 F.3d 185 (5th Cir. 2012) ........................................................................... 11

*Orix Credit All., Inc. v. Wolfe*,
    212 F.3d 891 (5th Cir. 2000) ........................................................................... 20

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989) ........................................................................................ 4, 6

*Princeton Univ. v. Schmid*,
    455 U.S. 100 (1982) ........................................................................................ 20, 22

*Raines v. Byrd*,
    521 U.S. 811 (1997) ........................................................................................ 9

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ........................................................................... 9

*Regions Ins., Inc. v. Ace Prop. & Cas. Ins. Co.*,
    80 F. Supp. 3d 730 (M.D. La. 2015) ................................................................ 20, 21

*Renne v. Geary*,
    501 U.S. 312 (1991) ........................................................................................ 9

*Roman Catholic Diocese of Dallas v. Sebelius*,
    927 F. Supp. 2d 406 (N.D. Tex. 2013) ............................................................. 23

*Shields v. Norton*,
    289 F.3d 832 (5th Cir. 2002) ........................................................................... 9

*Simon v. Eastern Ky. Welfare Rights Organization*,
    426 U.S. 26 (1976) .......................................................................................... 9

*Simonton v. Runyon*,
    232 F.3d 33 (2d Cir. 2000),
    *overruled by Zarda v. Altitude Express*, 883 F.3d 100 (2d Cir. 2018) ...................... 3

*Smith v. City of Jackson, Miss.*,
    351 F.3d 183 (5th Cir. 2003) ........................................................................... 19

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ........................................................................................ 14, 15

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)..................................................................................... 10, 15

*Texas Dep't of Community Affairs v. Burdine*,
  450 U.S. 248 (1981)........................................................................................ 6

*Texas v. EEOC*,
  827 F.3d 372 (5th Cir. 2016),
  *withdrawn on other grounds*, 838 F.3d 511 (5th Cir. 2016) .................................. 23

*Texas v. United States*,
  497 F.3d 491 (5th Cir. 2007) ........................................................................... 10

*Ulane v. Eastern Airlines, Inc.*,
  742 F.2d 1081 (7th Cir. 1984) ........................................................................ 3, 4

*Vickers v. Fairfield Med. Ctr.*,
  453 F.3d 757 (6th Cir. 2006) ....................................................................... 3, 4, 5

*Virginia v. Am. Booksellers Ass'n*,
  484 U.S. 383 (1988).......................................................................................... 15

*Warth v. Seldin*,
  422 U.S. 490 (1975).......................................................................................... 23

*Williamson v. A.G. Edwards & Sons*,
  876 F.2d 69 (8th Cir. 1989) .............................................................................. 3

*Wrightson v. Pizza Hut*,
  99 F.3d 138 (4th Cir. 1996) .............................................................................. 3

## STATUTES

42 U.S.C. § 2000e-2............................................................................... 2, 3, 12

42 U.S.C. § 2000e-5............................................................................ 12, 19, 22

Pub. L. 95-555, 92 Stat. 2076 (1978)............................................................ 3

Pub. L. 102-166, 105 Stat. 1074-76 (1991) ................................................... 3

## RULES

Fed. R. Civ. P. 5 ................................................................................................................. 25

Fed. R. Civ. P. 12 ........................................................................................................... 8, 9

## REGULATIONS

*Federal Law Protections for Religious Liberty*, Attorney General's Memorandum,
    82 Fed. Reg. 49668-01, 2017 WL 4805663 (Oct. 6, 2017) ................................... 7, 12

## UNITED STATES CONSTITUTION

U.S. Const. art. III, § 1 ...................................................................................................... 9

## OTHER AUTHORITIES

Brief for the Federal Respondent in Opposition to Petition for a Writ of Certiorari,
    *Harris Funeral Homes v. EEOC* (No. 18-107) (Oct. 24, 2018) ............................... 12

Br. for the United States as Amicus Curiae,
    *Griggs v. Duke Power Co.*, 1970 WL 122637 (Sept. 4, 1970) ................................. 19

Employment Non–Discrimination Act of 1994, H.R. 4636, 103d Cong. (1994) .......................... 3

Employment Nondiscrimination Act of 1996, S.2056, 104th Cong. (1996) ................................. 3

Exec. Order 13,798,
    82 Fed. Reg 21,675 (May 4, 2017) ............................................................... 6, 7, 8, 21

Memorandum, *Revised Treatment of Transgender Employment Discrimination Claims Under
    Title VII of the Civil Rights Act* (Oct. 4, 2017), *available at*:
    https://www.justice.gov/ag/page/file/1006981/download ("DOJ Memorandum") .............. 6, 12

Memorandum on Limiting Use of Agency Guidance Documents in Affirmative Civil
    Enforcement Cases, Associate Att'y General (Jan. 25, 2018), available at:
    https://www.justice.gov/file/1028756/download (last visited Dec. 1, 2018) ..................... 12, 13

William B. Rubenstein,
    Newberg on Class Actions § 2:1 (5th ed.) ............................................................... 16

## INTRODUCTION

A mere disagreement between private parties and a government agency regarding the meaning of a law does not automatically give rise to an Article III "Case" or "Controversy." Article III of the Constitution—as interpreted by the Supreme Court and the Fifth Circuit through the doctrines of standing and ripeness—provides federal courts with "the judicial Power" only in circumstances where there is a concrete and specific legal problem arising between adverse parties.  This standard is not met here.

Plaintiffs, the U.S. Pastor Council ("Pastor Council") and Hotze Health & Wellness Center ("Hotze Health") have brought claims against the Equal Employment Opportunity Commission ("EEOC"), and the Attorney General.  Plaintiffs seek declaratory and injunctive relief premised on a determination that the EEOC's nonbinding guidance describing the EEOC's interpretation of Title VII is unlawful because it does not include an exemption for non-ministerial employees of churches or an exemption for closely-owned businesses that wish to operate according to their religious views.  The Declaratory Judgment Act permits a plaintiff to obtain an early resolution of a claim that a defendant intends to file against it.  But the Department of Justice ("DOJ") does not have the power to bring claims against Defendants under Title VII.  In addition, since the Supreme Court recognized the ministerial exception to Title VII in *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171 (2012), the EEOC has never brought a claim seeking to enforce its interpretation of Title VII regarding non-ministerial employees of churches.  Thus, no Plaintiff has a need to secure relief regarding the validity of a claim by DOJ, and the Pastor Council has no need to secure relief regarding the validity of a claim by the EEOC.  Although the EEOC does have the power to sue Hotze Health regarding Title VII, Hotze Health states no facts that suggest the EEOC has a basis

1

to do so, and the EEOC has given no indication that it intends to do so anytime soon. Furthermore, DOJ cannot sue churches or closely-held, religiously operated businesses, and DOJ does not share the EEOC's interpretation of Title VII, further illustrating that Plaintiffs do not need to seek relief against DOJ.  For these reasons, the doctrines of standing and ripeness preclude Plaintiffs' claims, and there is no legal foundation for this Court to exercise jurisdiction.

The absence of jurisdiction to hear Plaintiffs' claims does not mean that Plaintiffs have not raised important issues: religious liberty is a fundamental right that every Branch is commanded to protect by the Constitution, statutes, and other sources of law, and the Supreme Court has specifically recognized the paramount "interest of religious groups in choosing who will . . . carry out their mission." *Hosanna-Tabor*, 565 U.S. at 196.  Accordingly, the Attorney General issued, at the President's direction, guidance to every agency regarding religious liberty protections in federal law.  Nevertheless, the extent to which "RFRA and the First Amendment limit [the EEOC's] ability to enforce Title VII against employers who object" to the EEOC's views on religious grounds, Plaintiffs' Class Action Complaint, ECF No. 1, at ¶ 16 ("Compl."), must be litigated in the context of an actual case or controversy.  Plaintiffs have not shown that such an actual case or controversy has yet arisen.

## BACKGROUND

Title VII of the Civil Rights Act of 1964 forbids employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).  Title VII also forbids an employer from "limit[ing], segregat[ing], or classify[ing] . . . employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of

such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(2).  Congress did not define the term "sex" when it enacted these antidiscrimination provisions.  Indeed, "sex" was added as a protected trait in a floor amendment "at the last minute" before the House passed the bill in 1964.  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63-64 (1986).  In 1978 and 1991, Congress significantly amended Title VII, including by addressing the scope of "sex" discrimination, but without adding a definition to the term "sex."  *See* Pub. L. 95-555, 92 Stat. 2076 (1978); Pub. L. 102-166, 105 Stat. 1074-76 (1991).  Congress has also repeatedly declined to enact proposed legislation that would prohibit discrimination in employment based on sexual orientation.  *See, e.g.*, Employment Nondiscrimination Act of 1996, S.2056, 104th Cong. (1996); Employment Non–Discrimination Act of 1994, H.R. 4636, 103d Cong. (1994); *see also Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081, 1085–86 (7th Cir. 1984) (discussing rejected amendments to Title VII).

Until recently, the Courts of Appeals consistently interpreted Title VII to conclude that when Congress prohibited sex discrimination, it did not also prohibit sexual orientation discrimination.  *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 259 (1st Cir. 1999); *Simonton v. Runyon*, 232 F.3d 33, 36 (2d Cir. 2000), *overruled by Zarda v. Altitude Express*, 883 F.3d 100 (2d Cir. 2018); *Bibby v. Phila. Coca Cola Bottling Co.*, 260 F.3d 257, 261 (3d Cir. 2001); *Wrightson v. Pizza Hut*, 99 F.3d 138, 143 (4th Cir. 1996); *Blum v. Gulf Oil Corp.*, 597 F.2d 936, 938 (5th Cir. 1979); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 763 (6th Cir. 2006); *Hamm v. Weyauwega Milk Prods., Inc.*, 332 F.3d 1058, 1062 (7th Cir. 2003), *overruled by Hively v. Ivy Tech Comm. College*, 853 F.3d 339 (7th Cir. 2017) (*en banc*); *Williamson v. A.G. Edwards & Sons*, 876 F.2d 69, 70 (8th Cir. 1989); *DeSantis v. Pacific Tel. & Tel. Co.*, 608 F.2d 327, 329-30 (9th Cir. 1979), *abrogated in part on other grounds, Nichols v. Azteca Restaurant Enterp.*, 256 F.3d 864, 874-75 (9th Cir. 2001); *Medina v. Income Support Div.*, 413

F.3d 1131, 1135 (10th Cir. 2005); *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1255 (11th Cir.

2017).  Likewise, until 2015, the EEOC had "consistently held that discrimination based on

sexual orientation is not actionable under Title VII." *Angle v. Veneman*, EEOC Doc. 01A32644,

2004 WL 764265 at *2 (Apr. 5, 2004); *accord Marucci v. Caldera*, EEOC Doc. 01982644, 2000

WL 1637387 at *2-*3 (Oct. 27, 2000); *but see Baldwin v. Foxx*, EEOC Doc. 0120133080, 2015

WL 4397641 (July 15, 2015) (reversing course).

 Similarly, no federal statute, including Title VII, explicitly protects against employment

discrimination based on gender identity.  Courts long have held that Title VII's prohibition of

discrimination "because of . . . sex" does not ban such discrimination, because the common and

ordinary meaning of "sex" when Title VII was enacted referred to a person's sex as determined

according to physiology and reproductive role, either male or female, and not the concept of a

person's "gender identity." *See, e.g.*, *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1221 (10th

Cir. 2007); *Vickers*, 453 F.3d at 763-64; *Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081, 1084

(7th Cir. 1984); *Holloway v. Arthur Andersen & Co.*, 566 F.2d 659, 662-63 (9th Cir. 1977); *In

Dobre v. National R.R. Passenger Corp.*, 850 F. Supp. 284, 286 (E.D. Penn. 1993).  The EEOC

long took the same position.  *See, e.g., Casoni v. United States Postal Service*, EEOC DOC

01840104 (Sept. 28, 1984) 1984 WL 485399; *Campbell v. Dep't of Agriculture*, EEOC Appeal

No. 01931730 (July 21, 1994) 1994 WL 652840; *Kowalczyk v. Dep't of Veterans Affairs*, EEOC

Appeal No. 01942053 (March 14, 1996) 1996 WL 124832.

 More recently, the EEOC and some federal courts have begun interpreting the Supreme

Court's decision that Title VII prohibits "sex-stereotyping" in *Price Waterhouse v. Hopkins*, 490

U.S. 228, 249 (1989), as leading to the opposite conclusion: that "discrimination on the basis of

transgender status necessarily entails discrimination on the basis of sex." *EEOC v. R.G. & G.R.*

4

*Harris Funeral Homes*, 884 F.3d 560, 574-82 (6th Cir. 2018) (distinguishing *Vickers*); *see also*

*Macy v. Holder,* 2012 WL 1435995 at n.16 (EEOC Apr. 20, 2012) ("overturn[ing] . . . any

contrary earlier decisions from the Commission").[1]  Since February 2016, the EEOC has posted

on its website the "Brochure"—titled "Preventing Employment Discrimination Against Lesbian,

Gay, Bisexual, or Transgender Workers" —attached to Plaintiffs' Complaint.  *See* ECF No. 1-1;

https://www.eeoc.gov/eeoc/publications (last visited Nov. 20, 2018) ("EEOC Brochure").  That

brochure states that "the EEOC . . . [has] said that sex discrimination includes discrimination

based on an applicant or employee's gender identity or sexual orientation."  ECF No. 1-1 at 1.

Citing two EEOC administrative opinions, the document also states that actions because an

individual "is transgender . . . violate[] Title VII" and that "[d]iscrimination based on sexual

orientation . . . states a claim . . . under Title VII."  *Id.* at 1-2.  The Brochure does not discuss the

history behind the EEOC's position, survey or cite judicial authority (apart from EEOC

decisions), or make a statement about the legal effect of the Brochure.[2]

      The longstanding position of the Department of Justice, however, is that Title VII does

not reach discrimination based on sexual orientation or gender identity.  This well-established

position correctly reflects the plain meaning of the statute, the overwhelming weight and

reasoning of the case law, and the clear congressional ratification of that interpretation.  This is

because, "in common, ordinary usage in 1964—and now, for that matter—the word 'sex' means

biologically *male* or *female*."  *Hively*, 853 F.3d at 362 (Sykes, J., dissenting) (without dispute

---

[1] Several pending petitions for certiorari seek to have the Supreme Court interpret the scope of
Title VII's protections regarding "sex."  *See, e.g.*, Petition for Writ of Certiorari, *Harris Funeral
Homes v. EEOC* (No. 18-107) (July 20, 2018); Petition for Writ of Certiorari, *Altitude Express v.
Zarda* (No. 17-1623) (May 29, 2018).

[2] The EEOC Brochure is the only agency policy document cited by Plaintiffs in the Complaint,
although they also note three prior decisions by the EEOC in individual cases.  *See* Compl. ¶ 11
(citing *Baldwin* 2015 WL 4396741; *Macy*, 2012 WL 1435995); Compl. ¶ 13 (citing *Lusardi v.
Dep't of the Army*, 2015 WL 1607756 (Apr. 1, 2015)).

from the majority); *Holloway*, 566 F.2d at 662 (rejecting position that "'sex' as used above is [sy]nonymous with 'gender,'" observing that "[t]he manifest purpose of Title VII's prohibition against sex discrimination in employment is to ensure that men and women are treated equally"). And "discrimination" requires a showing that an employer has treated "similarly situated employees" of different sexes unequally. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 258-59 (1981); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) (plurality op.) (to succeed in a claim of "sex stereotyping" under Title VII, a "plaintiff must show that the employer actually relied on her [or his] general in making its decision"). Title VII does not proscribe employment practices that take account of the sex of employees but do not impose differential burdens on similarly situated members of each sex.

With respect to gender identity in particular, a Department of Justice Memorandum promulgated by the Attorney General on October 4, 2017, confirms that this position reflects the meaning of Title VII "as written by Congress" and is "a conclusion of law, not policy." *See* Memorandum, *Revised Treatment of Transgender Employment Discrimination Claims Under Title VII of the Civil Rights Act* (Oct. 4, 2017), *available at*: https://www.justice.gov/ag/page/file/ 1006981/download ("DOJ Memorandum"). The DOJ Memorandum makes clear that "Title VII does not prohibit discrimination based on gender identity *per se* . . . by its terms." *Id.* The Memorandum directs that "the Department of Justice will take that position in all pending and future matters," while simultaneously requiring the Department to continue "to affirm the dignity of all people, including transgender individuals." *Id.*

Separately, on May 4, 2017, the President issued Executive Order 13798, which recognized "the fundamental right to religious liberty as Americans' first freedom." *Promoting Free Speech and Religious Liberty*, Exec. Order 13798 at § 1, 82 FR 21675 (May 4, 2017).

Noting that "[f]ederal law protects the freedom of Americans and their organizations to exercise religion and participate fully in civic life without undue interference by the Federal Government," Executive Order 13798 requires "the executive branch to vigorously enforce Federal law's robust protections for religious freedom," and encouraged the Attorney General, "as appropriate, [to] issue guidance interpreting religious liberty protections in Federal law." *Id.* at §§ 1, 4.

On October 6, 2017, pursuant to Section 4 of Exec. Order 13798, the Attorney General issued guidance interpreting religious liberty protections in the form of a "memorandum and appendix to guide all administrative agencies and executive departments in the execution of federal law." *Federal Law Protections for Religious Liberty*, Attorney General's Memorandum, 82 FR 49668-01, 2017 WL 4805663 (Oct. 6, 2017) ("Religious Liberty Guidance"). The Religious Liberty Guidance explained, with citations to relevant constitutional and statutory authority and judicial precedent, several fundamental principles of the protection of religious freedom. As relevant to Plaintiffs' claims here, the Religious Liberty Guidance specifically stated the following:

- "The Free Exercise Clause protects not just persons, but persons collectively exercising their religion through churches or other religious denominations, religious organizations, schools, private associations, and even businesses." *Id.* at ¶ 3;

- "[O]rganizations do not give up their religious-liberty protections by . . . seeking to earn or earning a living; by employing others to do the same." ¶ 4;

- The Religious Freedom Restoration Act of 1993 ("RFRA") "prohibits the federal government from substantially burdening [the] exercise of religion, unless the federal

government demonstrates that application of such burden to the religious adherent is the least restrictive means of achieving a compelling governmental interest." *Id.* at ¶ 10;

- "RFRA applies to all actions by federal administrative agencies, including rulemaking, adjudication or other enforcement actions, and grant or contract distribution and administration," and "extends not just to individuals, but also to organizations, associations, and at least some for-profit corporations." *Id* at ¶ 11;

- Under RFRA, "a government action that bans an aspect of an adherent's religious observance or practice, compels an act inconsistent with that observance or practice, or substantially pressures the adherent to modify such observance or practice, will qualify as a substantial burden on the exercise of religion." *Id.* at ¶ 13;

- Under Title VII, "religious organizations may choose to employ only persons whose beliefs and conduct are consistent with the organizations' religious precepts," and a "similar right" may be conferred on religious employers "under RFRA or the Religion Clauses of the Constitution." *Id.* at ¶ 19.

Pursuant to these and other principles drawn from governing law, the Religious Liberty Guidance emphasized that "all aspects of religious observance and practice . . . should be reasonably accommodated in all government activity." *Id.* at ¶ 17a.  To date, the EEOC has not adopted any policy guidance addressing the application of Executive Order 13798 or the Religious Liberty Guidance to its activities.

## STANDARD OF REVIEW

Defendants move for dismissal of this action under Rule 12(b)(1).  A court dismisses a case under Rule 12(b)(1) for lack of subject matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss. v. City of Madison*,

8

143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted).[3] "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers," *Renne v. Geary*, 501 U.S. 312, 316 (1991), and so the burden of proof on a Rule 12(b)(1) motion to dismiss rests with the party asserting jurisdiction.  In ruling on a 12(b)(1) motion, a court may rely upon: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts in the record, or (3) the complaint supplemented by undisputed facts in addition to the court's resolution of disputed facts." *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).  The Court should "consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## ARGUMENT

"'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction.'" *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (*quoting Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37 (1976)).  "Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies,'" *Hein v. Freedom from Religion Found.*, 551 U.S. 587, 597 (2007), however, "it does not attempt to define those terms." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992) (citing U.S. Const. art. III, § 1, cl. 1).  In order to effectuate the Constitution's mandate, the Supreme Court has developed the doctrines of standing and the similar "constitutional prerequisite to the exercise of jurisdiction," ripeness. *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002); *see Kowalski v. Tesmer*, 543 U.S. 125, 128–29 (2004).  These

---

[3] Although Plaintiffs include a brief reference to the Administrative Procedure Act ("APA") as providing a "cause of action," *see* Compl. ¶ 39, the Complaint is devoid of any claims under the APA or relief requested pursuant to that Act.  This brief therefore does not address APA issues.

doctrines "often overlap in practice," *Texas v. United States*, 497 F.3d 491, 496 (5th Cir. 2007), because they "originate from the same Article III limitation." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014).

Plaintiffs' complaint alleges no concrete injury to the Pastor Council or any of its members, let alone an injury that is ripe for judicial review and fairly traceable to an action by either the Attorney General or the EEOC. Nor does the complaint allege an injury to Hotze Health, or to the members of the classes of religious institutions and religiously-operated businesses that Plaintiffs seek to represent. Plaintiffs have also identified no harm caused to them by the EEOC Brochure: no action by the EEOC with regard to a member of the Pastor Council or Hotze Health; no circumstance in which any plaintiff, association member, or putative class member has considered or rejected the EEOC's interpretation in the context of an employment decision; and no allegation by a person that any plaintiff has taken an action inconsistent with the EEOC Brochure. Plaintiffs' single sentence asserting a "threat of enforcement," Compl. ¶ 25, also fails to establish standing for pre-enforcement review. Such review is not available for the abstract and free-standing legal question of whether a religious exemption applies broadly to Title VII, or more specifically to non-binding policy guidance that appears in an EEOC brochure and imposes no legal obligations or consequences on Plaintiffs or anyone else.

## I.   There is No Article III Standing to Support this Action.

"Article III standing is a jurisdictional requirement," *NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010), and "[w]ithout jurisdiction the court cannot proceed *at all* in any cause." *Id.* (quoting *Haywood v. Drown*, 556 U.S. 729, 755 (2009)) (emphasis in original). The requirement that Plaintiffs have standing encompasses three elements, all of which must be

satisfied for each Plaintiff and each claim in every lawsuit. *Nat'l Rifle Ass'n v. BATFE*, 700 F.3d

185, 190 (5th Cir. 2012) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)); *see*

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("a plaintiff must demonstrate

standing for each claim ... [and] separately for each form of relief sought"); *Lewis v. Casey*, 518

U.S. 343, 358 n.6 (1996) ("Standing is not dispensed in gross"). The first required element of

standing is "an injury in fact, which is a concrete and particularized invasion of a legally

protected interest." *Nat'l Rifle Ass'n*, 700 F.3d at 190-91 (citations omitted). "The second is that

there must be a causal connection between the injury and the conduct complained of[;] the injury

has to be fairly trace[able] to the challenged action of the defendant." *Id*. at 191 (citation and

alteration omitted). "Third, it must be likely, as opposed to merely speculative, that the injury

will be redressed by a favorable decision." *Id*. (citation and internal quotation marks omitted). In

order "to meet the Article III standing requirement when a plaintiff is seeking injunctive or

declaratory relief, a plaintiff must allege facts from which it appears there is a substantial

likelihood that he will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir.

2003).

### A. Plaintiffs Have Identified No Injury to Support Standing for Claims Against the Attorney General.

The complaint in this case is bereft of any allegation that implicates the Attorney General

or the Department of Justice in the legal issues that Plaintiffs seek to put before this Court.

Plaintiffs have identified no Department of Justice policy that they seek to challenge and no

action of the Attorney General with which they disagree. *See* generally Compl. Moreover, there

is no apparent controversy between Plaintiffs and the Department of Justice regarding the

interpretation or application of Title VII to sexual orientation, gender identity, or religious

employers. Plaintiffs cast a skeptical eye on whether "Title VII outlaws employment

11

discrimination on account of sexual orientation or gender identity," Compl. at 1, and the Department of Justice shares their view. *See* DOJ Memorandum. The Department has stated— here and elsewhere—that Title VII does not reach discrimination based on sexual orientation and does not prohibit discrimination based on gender identity, as has been settled for decades. *See, e.g.*, Brief for the Federal Respondent in Opposition to Petition for a Writ of Certiorari, *Harris Funeral Homes v. EEOC* (No. 18-107) (Oct. 24, 2018). Nor is there a disagreement regarding the rights to religious freedom of religious institutions and closely-held, religiously-operated businesses. To the contrary, the Department of Justice has promulgated the Religious Liberty Guidance, which documents the extensive protections for religious freedom—including for "churches . . ., religious organizations, schools, private associations, and even businesses"— under Title VII, RFRA, and the Constitution. *See* Religious Liberty Guidance at 2.

There can also be no conceivable injury to Plaintiffs from the Attorney General caused by the "threat of enforcement." Compl. ¶¶ 25, 36. The reason is straightforward: the Department of Justice enforces Title VII only against state and local government employers, not against private employers such as Hotze Health or the members of the Pastor Council. *See* 42 U.S.C. § 2000e-2; 42 U.S.C. § 2000e-5. There is thus no possibility the Attorney General will seek to enforce Title VII, regardless of how it is interpreted, against Plaintiffs, because that authority has been assigned to the EEOC. Further, current Department policy would bar the Department from seeking to "enforce" the Guidance even if it had authority to do so, because the Department "may not use its enforcement authority to effectively convert agency guidance documents into binding rules." *See* Memorandum on Limiting Use of Agency Guidance Documents in Affirmative Civil Enforcement Cases, Associate Att'y General (Jan. 25, 2018), available at:

https://www.justice.gov/file/1028756/download (last visited Dec. 1, 2018). Thus, there is no

threat of enforcement by the Department of Justice that could inflict an injury on the Plaintiffs.

Because Plaintiffs must establish "standing to bring each of its claims against each

defendant," and have not identified any injury to support standing for claims against the Attorney

General, the claims against him should be dismissed forthwith. *Coastal Habitat Alliance v.

Patterson*, 601 F. Supp. 2d 868, 877 (W.D. Tex. 2008) (citing *James v. City of Dallas*, 254 F.3d

551, 563 (5th Cir. 2001); *see DaimlerChrysler*, 547 U.S. at 352; *Calzone v. Hawley*, 866 F.3d

866, 869 (8th Cir. 2017).

**B.  Injury and Traceability Are Lacking for the Claims Against the EEOC.**

1.  <u>Plaintiffs Have Not Established Standing Based on a Past or Present Injury.</u>

In contrast to the Department of Justice, the EEOC does have authority to enforce Title

VII against private employers such as Plaintiffs, but the Complaint does not establish an injury

traceable to the actions of the EEOC. The sole EEOC "policy" identified in the Complaint is the

EEOC Brochure, *see supra* n.1, and Plaintiffs have not, and do not, attempt to establish that they

have already suffered any harm from that document. *See* Compl. ¶¶ 11-13.

As to sexual orientation, neither of the Plaintiffs alleges that it has been subject to any

enforcement action pursuant to the EEOC Brochure. Indeed, neither of the Plaintiffs alleges that

it has taken any actions that could subject it to such an enforcement action. The Pastor Council,

for example, has not identified any person who has applied for a position with any of its member

churches and been denied that position because the member church "will not consider practicing

homosexuals for any type of church employment." *Id.* ¶ 21. Nor has the Pastor Council

identified any employee of any member church who has "enter[ed] into a same-sex marriage"

and been "dismiss[ed] from employment" on that basis. *Id.* ¶ 22. The Pastor Council also has

not identified any church employee who is seeking "spousal benefits" for a "same-sex partner[]." *Id.*  Similarly, Hotze Health has not identified any employee who seeks to have the business "recognize same-sex marriage or extend spousal benefits."  Compl. ¶ 33.

The same is true with respect to gender identity.  Neither of the Plaintiffs alleges that it has been subject to any enforcement action pursuant to the EEOC Brochure, nor taken any actions that would subject it to such enforcement action.  The Pastor Council has not identified any policy or employment practice of any member church that it contends relates to gender identity, let alone a relationship with a past, current, or prospective employee that might be affected by the EEOC Brochure's characterization of Title VII and gender identity.  *See id.* ¶¶ 18-26.  Although Hotze Health does identify such a policy—the complaint states that employees may not "use a restroom reserved for members of the opposite biological sex"—there is no suggestion that any employee of Hotze Health is affected by this policy.  *See id.* ¶¶ 34-35.

In short, there is no allegation that the EEOC Brochure has led Plaintiffs to a circumstance where their religious beliefs and religious freedom rights are being affected.

### 2.   Plaintiffs Have Not Established an Injury Based on Threatened Enforcement Action.

The Complaint equally fails to make out a cognizable claim of threatened injury related to "the EEOC's interpretation and enforcement of Title VII."  Compl. ¶¶ 25, 37.  The Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact and that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphases in original; internal citation omitted). These requirements assure "that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted). "Where that need does not exist, allowing courts to oversee legislative

14

or executive action would significantly alter the allocation of power away from a democratic form of government." *Id.* (internal alterations and citation omitted).

The EEOC Brochure is not binding on Plaintiffs, or on anyone else.  Congress has explicitly provided that the EEOC has authority to promulgate procedural regulations to implement Title VII and not similar authority to issue substantive rules and regulations.  *See Arab Am. Oil Co.*, 499 U.S. at 257.  The EEOC Brochure is, at most, guidance that sets forth the EEOC's current views on how Title VII applies to sexual orientation or gender identity.  It does not require Plaintiffs or other employers to take any action or change their practices, nor does it impose liability on employers, which could only be imposed by a court following *de novo* review. *See Chandler v. Roudebush*, 425 U.S. 840, 845 (1976). As the guidance has no legal effect and is not binding, the public is free to interpret Title VII in a different lawful way than EEOC.

Nor have Plaintiffs alleged a sufficiently "actual and well-founded fear that the law will be enforced against them" to constitute Article III injury.  *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988).  Such a "pre-enforcement challenge" satisfies Article III only where a party intends "to engage in a course of conduct . . . proscribed by a statute," *and* where there is a "credible threat of prosecution." *Driehaus*, 573 U.S. 159.  "[T]he mere existence of a statute or regulation that a plaintiff reasonably believes should apply to and be enforced against him does not ordinarily create a justiciable case or controversy."  *Nat'l Conf. of Catholic Bishops v. Smith* ("*Bishops Conference*"), 653 F.2d 535, 539 (D.C. Cir. 1981).  Plaintiffs have not alleged any direct threat of enforcement by the EEOC against the Pastor Council's members or Hotze Health. *See generally* Compl. ¶¶ 18-38.  In addition, Plaintiffs have "failed to provide the court with anything more than generalizations" about their sincere religious beliefs and their status as religious employers, including any specifics about "when, where, or how" they "intend[] to

exercise" their rights to religious freedom that would "illuminate[] the specifics of [the] claimed injury." *Dermer v. Miami-Dade County*, 599 F.3d 1217, 1220-21 (11th Cir. 2010) (allegation of "chilling effect" to free speech from threat of future enforcement "is insufficient to demonstrate an injury in fact"). Absent such specifics, Plaintiffs cannot set forth a "credible threat" of enforcement by the EEOC, *Cruz v. Abbott*, 849 F.3d 594, 602 (5th Cir. 2017) (no credible threat of prosecution where plaintiffs have not "taken steps" towards violating statute), and "the injury alleged in this case remains wholly inchoate." *Elend v. Basham*, 471 F.3d 1199, 1208-09 (11th Cir. 2006) (no standing for previously-arrested protesters to challenge policy based on uncertain plans to engage in future protest).

The existence of a single suit brought by the EEOC against a closely-held, religiously-operated funeral home in Michigan does not change this analysis. *See* Compl. at ¶¶ 25, 37 (citing *Harris Funeral Homes*, 884 F.3d 560). To begin, Plaintiffs have not identified any instance in which the EEOC has sued a religious institution comparable to the members of the Pastor Council. Further, in contrast to the defendant in *Harris Funeral Homes*, no employee of Hotze Health has been identified as a complainant to the EEOC regarding Hotze Health's policy forbidding employees from entering "a restroom reserved for members of the opposite biological sex" or alleging that he has been discharged as a result of his gender identity. *Compare Harris Funeral Homes*, 884 F.3d 566 *with* Compl. ¶¶ 33-38. And even if Harris Funeral Homes would be a member of the class that Hotze Health seeks to represent, it is black-letter law that Hotze Health, as the putative class representative, must have standing to sue in its own right. *See* William B. Rubenstein, Newberg on Class Actions § 2:1 (5th ed.) ("In class action cases, the standing inquiry focuses on the class representatives. The class representatives must have individual standing in order to sue"); *Bertulli v. Independent Ass'n of Continental Pilots*, 242

16

F.3d 290, 294 n.9 (5th Cir. 2001).  Because Plaintiffs have not identified instances of

enforcement that are "sufficiently similar to [the] conduct in this case such that Plaintiffs have

asserted a well-pleaded fear of" enforcement, they fail to meet that threshold requirement.  *Hoyt*

*v. City of El Paso, Tex.*, 878 F. Supp. 2d 721, 738 (W.D. Tex. 2012) (no standing for challenge to

recall petition laws by plaintiffs alleging threats of prosecution).

The decision of the D.C. Circuit in *Bishops Conference* is instructive.  There, two

religious organizations sought declaratory and injunctive relief with respect to "EEOC

Guidelines . . . which interpret[ed] the Pregnancy Discrimination Act" and sought to represent a

class of employers with, *inter alia*, religious objections to the practice of abortion.  653 F.2d 537-

38 & n.1.  Although Plaintiffs described the effects of those guidelines on their members'

activities in some detail, both the District Court and the Court of Appeals held jurisdiction to be

lacking.  As the D.C. Circuit explained:

> In this case we face a question that is not presented in concrete adversarial terms.
> The government has not initiated and, according to the record before us, does not
> plan to institute any kind of proceedings against the plaintiffs. . . [who]
> themselves have only described their programs and their employees in general
> terms, *e.g.*, they employ '310 lay persons, a substantial number of whom are non-
> Catholic law women.' . . . We lack sufficient facts to analyze how the PDA
> actually impacts on the plaintiffs although they allege that it does . . . .
> [E]mployees of these two religious organizations are as likely to be aware of
> plaintiffs' opposition to abortions as they are unlikely, as a consequence of their
> awareness, to request such benefits . . . .
>
> The absence of a problem of sufficient immediacy underscores the lack of an
> actual 'case or controversy,' even more than the absence of an adequate factual
> record.  The mere existence of a statute does not create a 'case or controversy,'
> particularly when, as here, the position of the government itself is far from
> definite [and there are] inconsistencies between the EEOC guidelines and the
> government's interpretation of the PDA in its memoranda.

653 F.2d at 540-44 (internal citations omitted).  As in *Bishops Conference*, resolution of the legal

questions here must await imminent enforcement action or other circumstances that present a

true case or controversy within the meaning of Article III.

      3.   Any Injury Is Not Traceable to the EEOC Brochure.

      Even if Plaintiffs had established a concrete and particularized injury-in-fact, that injury

would not be traceable to the EEOC Brochure, the only agency policy document identified in the

Complaint.  Because the EEOC lacks authority to issue substantive rules and regulations, the

Brochure is not binding and merely sets forth the EEOC's description of what "the EEOC and

courts have said."  EEOC Brochure, ECF No. 1-1, at 1.  This means that any legal consequences

that flow from an employer's action taken based on sexual orientation or gender identity would

flow from Title VII itself and court decisions applying the statute—that is, if the statute has the

meaning ascribed to it by EEOC and not DOJ—not from the Brochure or any other EEOC

guidance.  *See Luminant Generation Co., LLC v. EPA*, 757 F.3d 439, 442 (5th Cir. 2014) (Clean

Air Act and state implementation plan, *not* challenged EPA notices, "set forth . . . rights and

obligations"); *accord Klayman v. Pres. of the U.S.*, 689 Fed. Appx. 921, 924 (11th Cir. 2017) (no

standing where Plaintiff "failed to allege any risk of future harm traceable to the [agency]

Guidance itself, as opposed to the preexisting federal laws it describes.").  In the absence of the

Brochure, the application of Title VII to sexual orientation or gender identity would remain

exactly the same, and thus, no challenged EEOC policy document forces Plaintiffs to do

anything, including to choose between sincerely-held religious beliefs and the law.  *See*

*Luminant*, 757 F,3d at 442 (observing that the plaintiff had "no new legal obligation imposed on

[them]," and had "lost no right . . . otherwise enjoyed").

      In an effort to avoid this conclusion, the complaint alleges that the Brochure and other

EEOC guidance documents are "entitled to deference and receive deference from the judiciary." Compl. at ¶¶ 25, 37 (citing cases). But the cases identified by Plaintiffs as providing such deference are inapposite: significantly, none arises in a circumstance where, as here, the Attorney General speaks for the United States and presents a contradictory position about the scope of Title VII.[4] *Cf. English v. Trump*, 279 F. Supp. 3d 307 (D.D.C. 2018) (no deference given to agency official's interpretation of agency's organic statute relative to contradictory Department of Justice position). This context is critical, because the United States, through the Attorney General, enforces Title VII against state and local government employers, 42 U.S.C. 2000e-5(f)(1), one of the nation's largest employment sectors. Under these circumstances, it is not correct that the EEOC guidance is "entitled to deference," Compl. at ¶¶ 25, 37, particularly where the agency position purports to be only interpretive in nature. *See Christensen v. Harris County*, 529 U.S. 576, 586-87 (2000); *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 189 n.5 (5th Cir. 2003). And that is even more true here, where the Attorney General's position explains that the plain meaning of Title VII does not support the EEOC's interpretation. *See Carcieri v. Salazar*, 555 U.S. 379, 387-391 (2009) (where "the statutory text is plain and unambiguous,"

---

[4] In *Griggs v. Duke Power Co.*, 401 U.S. 424, 433-34 (1971), the EEOC's guidelines represented the position of the United States and the Department of Justice. *See* Br. for the United States as Amicus Curiae, *Griggs v. Duke Power Co.*, 1970 WL 122637 (Sept. 4, 1970). And nothing in *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008) or *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 427 (4th Cir. 1999) indicates that the EEOC's guidelines were contradicted by DOJ guidance. The deference accorded by the Supreme Court to the EEOC interpretation in *Griggs* is rendered further irrelevant because that decision predated the Court's subsequent explanation in *Arabian Am. Oil Co.* and *Gen. Elec. v. Gilbert*, 429 U.S. 125, 141-42 (1976) that "Congress, in enacting Title VII, did not confer upon the EEOC authority to promulgate rules or regulations." In those cases, the Court emphasized the importance of whether the agency's interpretation was "contemporaneous with [the statute's] enactment." Measured by this standard, the deference accorded the EEOC guidelines in *Griggs*—"issued August 24, 1966," 401 U.S. at 433, n.9, just two years after the 1964 enactment of Title VII—has no bearing on whether to accord deference to an EEOC interpretation made only very recently and in contravention of its previous long-held interpretation.

courts "must apply the statute according to its terms," without deference to agency

constructions); *Miss. Poultry v. Madigan*, 992 F.2d 1359, 1368 (5th Cir. 1993) ("no deference"

in context of "unambiguous" statutory term).  Finally, even if the EEOC Brochure were entitled

to deference—which it is not—Plaintiffs cite to no authority demonstrating that the independent

decisions by Article III courts to give "deference" to an agency interpretation give rise to a

traceable injury from that interpretation.

In sum, Plaintiffs have suffered no injury cognizable under Article III and traceable to the

past, present, or future actions of the Attorney General or the EEOC.  Accordingly, this case

should be dismissed for lack of standing.  *City of Kyle*, 626 F.3d at 237.

## II.    Plaintiffs' Claims are Unripe.

Even if Plaintiffs could demonstrate standing to maintain this suit—which they cannot—

their request for a decision opining on the existence of a religious exemption to Title VII and

associated declaratory and injunctive relief is not ripe.  The ripeness doctrine "separates those

matters that are premature because the injury is speculative and may never occur from those that

are appropriate for judicial review."  *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir.

2000).  "[I]ts basic rationale is to prevent the courts, through premature adjudication, from

entangling themselves in abstract disagreements."  *Abbott Laboratories v. Gardner*, 387 U.S.

136, 148 (1967).  The ripeness test comprises two elements: (1) the fitness of the matter for

adjudication, and (2) the hardship to the plaintiff of withholding review.  *Lopez v. City of*

*Houston*, 617 F.3d 336, 341 (5th Cir. 2010).  Plaintiffs' claims are not fit for review because

there is no sufficiently concrete dispute and no truly adverse party.  Further, there would be no

hardship to Plaintiffs if the Court did not decide this abstract and hypothetical dispute.

A claim is not fit for review unless it involves a concrete dispute and adverse parties. *See Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982). With regard to declaratory judgment claims, courts assess adversity by determining whether there is an "actual controversy" between the parties. *Orix Credit All., Inc., v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000); *see Regions Ins. Inc. v. Ace Prop. & Cas. Ins. Co.*, 80 F. Supp. 3d 730, 735 (M.D. La. 2015). An actual controversy exists when "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986). Establishing ripeness is particularly relevant where the Declaratory Judgment Act has been invoked, because to avoid litigation of an "abstract disagreement," *Abbott Labs*, 387 U.S. at 148, Plaintiffs' request for a declaratory judgment "must relate to an actual claim arising under federal law that another asserts against [them]." *Collin Cty., Texas v. Homeowners Ass'n for Values Essential to Neighborhoods* ("*HAVEN*"), 915 F.2d 167, 170-71 (5th Cir. 1990). In other words, "it is the underlying cause of action of the defendant against the plaintiff that is actually litigated." *Id.* at 171; *see id.* at 172 ("The Act is designed to allow potential defendants in cases of actual and <u>immediate</u> controversy within the subject matter jurisdiction of the federal courts to petition the court for an early resolution of the parties['] rights and liabilities" (emphasis added)).

Here, there is no "actual and immediate controversy" between the EEOC and Plaintiffs regarding the rights to religious freedom of religious institutions and closely-held, religiously-operated businesses. *HAVEN* at 172. Plaintiffs do not allege any instance in which the EEOC has threatened Title VII litigation concerning the religious beliefs or employment-related policies or actions of any member of the Pastor Council or Hotze Health. *See* Compl. ¶¶ 19-38. The EEOC has not announced any guidance regarding the application of its Title VII interpretations

to religious organizations or closely-held, religiously-operated businesses. Nor does the EEOC Brochure describe its contents as "enforcement guidelines" that would apply to Plaintiffs, *see generally* ECF No. 1-1, and the EEOC's decision to pursue an enforcement action in *Harris Funeral Homes* (which was initiated prior to the requirement in Executive Order 13798 for vigorous[] enforce[ment] of Federal law's robust protections for religious freedom," 82 FR 21675) does not establish the Brochure is such a document. Plaintiffs have therefore failed to demonstrate that there is an actual and immediate likelihood of a cause of action asserted against them under federal law that can be litigated in advance as a declaratory judgment action. *See HAVEN*, 915 F.2d 171. Because courts "do not sit to . . . give advisory opinions about issues as to which there are not adverse parties" before them, *Schmid*, 455 U.S. at 102, Plaintiffs' claims should be dismissed for lack of ripeness.[5]

Plaintiffs' claims are also unripe for the reasons that there would be no hardship to Plaintiffs if the Court declines to review their claims. The EEOC first posted the Brochure on its website in February 2016. Plaintiffs do not allege that in the intervening years, they have been unable to hire, fire, or regulate their employees as they choose, or that they have undertaken any other change in practice in response to the EEOC's brochure. Nor have Plaintiffs alleged that they have suffered any hardship in their day-to-day operations or their religious practices from not having a federal court opine on the Brochure or the application of Title VII interpretations regarding sexual orientation or gender identity to religious objectors. Thus, Plaintiffs would not be harmed if the Court declined to hear this hypothetical Title VII dispute; rather, they would

---

[5] The lack of ripeness is particularly acute with respect to Plaintiffs' claims against the Attorney General because it is the EEOC, not the Department of Justice, that would bring any Title VII claim against Plaintiffs. *See* 42 U.S.C. 2000e-5. Thus, as to the Department, there is no "underlying cause of action of the defendant against the plaintiff[s] that [could be] actually litigated." *HAVEN*, 915 F.2d at 171 ("A party bringing a declaratory judgment must have been a proper party" to the underlying suit").

remain in the same position they have been in for years—they can continue to act consistent with their religious beliefs as they presumably have been doing.  Indeed, if Plaintiffs are certain that their "view of Title VII is correct, [they] face[] no hardship in waiting for [a] day," entirely hypothetical for the time being, when they can express that view in defense of an enforcement action.  *Texas v. EEOC*, 827 F.3d 372, 393 (5th Cir. 2016) (Higginbotham, J., dissenting), withdrawn on other grounds, 838 F.3d 511; *see Roman Catholic Diocese of Dallas v. Sebelius*, 927 F. Supp. 2d 406, 426 (N.D. Tex. 2013).  The hardship prong thereby reinforces that dismissal for lack of ripeness is proper.

***

Plaintiffs' Complaint sets forth legal issues of great interest and importance concerning the scope of Title VII and the need to protect the foundational principles of religious freedom enshrined in the First Amendment, RFRA, and other sources of law.  The Judicial Branch has routinely provided a forum for religious persons, institutions, and closely-held religiously-operated businesses to seek a shield in the text of the First Amendment, RFRA, and other principles to protect religious institutions and closely-held, religiously-operated businesses alike from the mandates of bureaucracy and democracy alike.  *See, e.g.*, *Burwell v. Hobby Lobby*, 134 S. Ct. 2751, 2775 (2014); *Hosanna-Tabor*, 565 U.S. 171; *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006); *Gallagher v. Crown Kosher Super Market of Mass., Inc.*, 366 U.S. 617 (1961).  As befits the "the proper—and properly limited—role of the courts in a democratic society," *Warth v. Seldin*, 422 U.S. 490, 498 (1975), these cases have decided questions of religious freedom by examining the applicable facts "with care and in detail," and not with excessive "breadth and sweep."  *Burwell*, 134 S. Ct. 2785 (Kennedy, J., concurring).  As the D.C. Circuit explained in *Bishops Conference*, the important issues

23

identified by Plaintiffs here "may be raised in any future suit by the EEOC [in which] Plaintiffs will have ample opportunity to present their constitutional defenses . . . should [such] even take place," or when other actions by Plaintiffs or others have given rise to a proper case or controversy.  653 F.2d at 543-44.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims should be dismissed.


Dated:  December 17, 2018                    Respectfully submitted,

                                             JOSEPH H. HUNT
                                             Assistant Attorney General

                                             ERIN NEALY COX
                                             United States Attorney

                                               /s/ *Eric J. Soskin*
                                             JOSHUA GARDNER
                                             Special Counsel
                                             ERIC J. SOSKIN (PA Bar #200663)
                                             Senior Trial Counsel
                                             U.S. Department of Justice
                                             Civil Division, Rm. 12002
                                             1100 L Street, NW
                                             Washington, D.C. 20530
                                             Telephone: (202) 353-0533
                                             Fax: (202) 616-8470
                                             Email: Eric.Soskin@usdoj.gov
                                             *Attorneys for Defendants*

### CERTIFICATE OF SERVICE

On December 17, 2018, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.

 /s/ Eric J. Soskin
Eric J. Soskin