UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **U.S. Pastor Council**, on behalf of itself and others similarly situated; **Braidwood Management Inc.**, on behalf of itself and others similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>**Equal Employment Opportunity Commission**; **Victoria A. Lipnic, and Charlotte A. Burrows**, in their official capacities as chair and commissioners of the Equal Employment Opportunity Commission; **William P. Barr**, in his official capacity as Attorney General of the United States; **United States of America**,<br><br>  Defendants. | Case No. 4:18-cv-00824-O |

## PLAINTIFFS' FIRST AMENDED CLASS-ACTION COMPLAINT

The Equal Employment Opportunity Commission claims that Title VII outlaws employment discrimination on account of sexual orientation or gender identity. *See Baldwin v. Foxx*, EEOC Doc. No. 0120133080, 2015 WL 4397641 (EEOC July 16, 2015); *Macy v. Holder*, EEOC Doc. No. 0120120821, 2012 WL 1435995 (EEOC Apr. 20, 2012). But neither the text of Title VII nor the EEOC's regulatory guidance makes any exemptions or accommodations for churches or corporations that oppose homosexual or transgender behavior on religious grounds. The failure to provide a religious exemption to this supposed anti-discrimination requirement violates the Religious Freedom Restoration Act and the First Amendment. The plaintiffs seek a declaratory judgment to that effect, and they seek to enjoin the federal government from

enforcing anti-discrimination policies of this sort against any employer that objects to homosexual or transgender behavior on religious grounds.

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

3. Plaintiff U.S. Pastor Council is a nonprofit incorporated under the laws of Texas. The U.S. Pastor Council comprises approximately 1,000 member churches, including six in Fort Worth.

4. Plaintiff Braidwood Management Inc. is a for-profit, closely held corporation incorporated under the laws of Texas.

5. Defendant Equal Employment Opportunity Commission (EEOC) is an agency of the federal government. Its offices are located at 131 M Street NE, Washington, D.C. 20002. The EEOC is charged with enforcing Title VII of the Civil Rights Act of 1964.

6. Defendants Victoria A. Lipnic and Charlotte A. Burrows are chair and commissioners of the Equal Employment Opportunity Commission. They are sued in their official capacities.

7. Defendant William P. Barr is Attorney General of the United States. His office is located at 950 Pennsylvania Avenue NW, Washington, D.C. 20530. The Attorney General, like the EEOC, is charged with enforcing Title VII, and he is empowered to bring civil actions to enforce the statute when a case is referred to him by

the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1). His department also oversees and influences the litigation of federal agencies, especially on appeal and at the Supreme Court. Attorney General Barr is sued in his official capacity.

8.   Defendant United States of America is the federal government of the United States of America.

## STATEMENT OF FACTS

9.   Title VII of the Civil Rights Act of 1964 forbids employers to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

10.   Title VII also forbids an employer to "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(2).

11.   The EEOC interprets these statutory prohibitions on "sex" discrimination to include discrimination on account of sexual orientation or gender identity. *See Baldwin v. Foxx*, EEOC Doc. No. 0120133080, 2015 WL 4397641 (EEOC July 16, 2015) (sexual orientation); *Macy v. Holder*, EEOC Doc. No. 0120120821, 2012 WL 1435995 (EEOC Apr. 20, 2012) (gender identity).

12.   The EEOC also demands that employers recognize same-sex marriage on the same terms as opposite-sex marriage. *See* Preventing Employment Discrimination Against Lesbian, Gay, Bisexual or Transgender Workers, available at https://bit.ly/2MnDzG5 (last visited on March 29, 2019) ("Examples of sex discrimination involving sexual orientation include . . . denying spousal health insurance benefits to a female employee because her legal spouse is a woman, while providing spousal health

insurance to a male employee whose legal spouse is a woman.") (attached as Exhibit 1).

13.   The EEOC also demands that employers allow employees into restrooms that correspond to the "gender identity" that they assert—regardless of the individual's biological sex, regardless of whether the individual has had a sex-change operation, and regardless of any objections or privacy concerns that might be raised by other employees. *See Lusardi v. Dep't of the Army*, EEOC Appeal No. 0120133395, 2015 WL 1607756 (April 1, 2015); Preventing Employment Discrimination Against Lesbian, Gay, Bisexual or Transgender Workers, available at https://bit.ly/2MnDzG5 (last visited on March 29, 2019) ("Title VII is violated where an employer denies an employee equal access to a common restroom corresponding to the employee's gender identity").

14.   The text of Title VII makes no exemptions or accommodations for employers that hold sincere religious objections to homosexuality or transgender behavior. The only religious accommodations in Title VII appear at 42 U.S.C. § 2000e-1(a) and 42 U.S.C. § 2000e-2(e)(2), which allow religious organizations and religious schools to limit employment to members of a particular religion. Nothing in Title VII exempts any religious employer from the statute's prohibition on sex discrimination.

15.   Because Title VII's statutory exemptions are constitutionally insufficient to protect the autonomy and religious freedom of churches and religious institutions, the Supreme Court has recognized a "ministerial exception" in the First Amendment, which categorically exempts a religious group's selection of its ministers from the reach of anti-discrimination law. *See Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 565 U.S. 171 (2012). This "ministerial exemption" protects the Catholic church from being forced to hire women as priests—notwithstanding the text of Title VII—and it protects other churches from being forced to hire practicing homosexuals as clergy. But this "ministerial exception" is no help to Christian-owned

businesses that oppose homosexuality and transgender behavior on religious grounds. And the "ministerial exemption" does nothing to shield churches that require non-ministerial employees such as secretaries to refrain from homosexual behavior.

16.   The EEOC refuses to acknowledge that RFRA and the First Amendment limit its ability to enforce Title VII against employers who object to homosexual and transgender behavior on religious grounds. And the EEOC readily brings lawsuits against Christian businesses that oppose these behaviors without regard to their rights under the RFRA and the First Amendment. *See, e.g., EEOC v. R.G. & G.R. Harris Funeral Homes Inc.*, 884 F.3d 560 (6th Cir. 2018) (EEOC lawsuit against a Christian funeral home for refusing to allow a biologically female employee to dress like a man).

17.   Other policies, regulations, and executive orders adopted by the federal government attempt to prohibit discrimination on account of sexual orientation and gender identity without any exceptions or allowances for religious institutions. *See, e.g.,* Executive Order 13672 (prohibiting government contractors from discriminating on account of sexual orientation and gender identity, without any accommodations for religious institutions); 45 C.F.R. § 75.300(d) (requiring recipients of HHS grants to "treat as valid the marriages of same-sex couples," without any accommodations for religious institutions).

18.   Federal law requires employers covered by Title VII to post notices describing the provisions of Title VII that govern their workplace. *See* 42 U.S.C. § 2000e-10(a). These notices must be "prepared and approved" by the EEOC, and they must be posted in prominent and accessible places where notices to employees, applicants, and members are customarily maintained. *See id.* Those who violate this statute are subject to a fine of $545.00. *See The 2018 Adjustment of the Penalty for Violation of Notice Posting Requirements*, 83 Fed. Reg. 2536 (Jan. 18, 2018).

19.   The sign that the EEOC requires employers to post is attached to this complaint as Exhibit 2.

20.   The current version of this sign states, in relevant part:

> Title VII of the Civil Rights Act of 1964, as amended, protects appli-
> cants and employees from discrimination in hiring, promotion, dis-
> charge, pay, fringe benefits, job training, classification, referral, and
> other aspects of employment, on the basis of race, color, religion, sex
> (including pregnancy), or national origin.

See Exhibit 2. The current version of this sign does not state whether the prohibition
on discrimination on the basis of "sex" includes discrimination on account of sexual
orientation or gender identity, the but EEOC is considering whether to amend the
sign to include this. *See* https://www.dol.gov/ofccp/lgbt/lgbt_faqs.html#Q23.

## STATEMENT OF FACTS—U.S. PASTOR COUNCIL

21.   The U.S. Pastor Council is a nonprofit corporation that comprises over
1,000 member churches.

22.   The member churches of the U.S. Pastor Council believe that the Bible is
the Word of God.

23.   The Bible repeatedly and explicitly condemns homosexual behavior. *See,
e.g.*, Romans 1:26–28; 1 Timothy 1:8–11; 1 Corinthians 6:9–11; Leviticus 18:22;
Leviticus 20:13; Genesis 19:1–29.

24.   The member churches of the U.S. Pastor Council require their employees
to live according to Biblical teaching on matters of sexuality. Because of this, the
churches will not consider practicing homosexuals for any type of church employ-
ment—including employment for non-ministerial positions.

25.   The member churches of the U.S. Pastor Council do not recognize same-
sex marriage and will not provide spousal benefits to same-sex partners of church em-
ployee. Indeed, any church employee who enters into a same-sex marriage would face
immediate dismissal from employment.

26.   The Bible also instructs Christians to obey the civil authorities. 1 Peter 2:13–25; Romans 13:1–2 (NIV) ("¹Let everyone be subject to the governing authorities, for there is no authority except that which God has established. The authorities that exist have been established by God. ²Consequently, whoever rebels against the authority is rebelling against what God has instituted, and those who do so will bring judgment on themselves.").

## STATEMENT OF FACTS—BRAIDWOOD MANAGEMENT INC.

27.   Dr. Steven F. Hotze is the founder, owner, and CEO of the Hotze Health & Wellness Center. The Hotze Health & Wellness Center is the DBA ("doing business as") name of Hotze Medical Association P.A., a Texas professional association.

28.   The people who work at the Hotze Health & Wellness Center are employed by a separate management company called Braidwood Management Inc. Braidwood Management Inc. is a Texas corporation, and it is owned by a trust of which Dr. Hotze is the sole trustee and beneficiary. Dr. Hotze is also the President, Secretary, Treasurer, and sole member of the Board of Braidwood Management Inc.

29.   Braidwood Management Inc. employs approximately 70 individuals, and its employees work at one of the following three business entities, each of which is owned or controlled by Dr. Hotze: the Hotze Health & Wellness Center, Hotze Vitamins, or Physicians Preference Pharmacy International LLC.

30.   The Bible repeatedly and explicitly condemns homosexual behavior. *See, e.g.,* Romans 1:26–28; 1 Timothy 1:8–11; 1 Corinthians 6:9–11; Leviticus 18:22; Leviticus 20:13; Genesis 19:1–29.

31.   The Bible also warns Christians not to lend their approval to those who practice homosexual behavior. *See, e.g.,* Romans 1:32.

32.   Because of these clear and explicit Biblical passages, Dr. Hotze believes that homosexual behavior is a gross sin, and as a Christian he must not lend approval to or become complicit in this behavior.

33.   The Bible also instructs Christians to obey the civil authorities. 1 Peter 2:13–25; Romans 13:1–2 (NIV) ("¹Let everyone be subject to the governing authorities, for there is no authority except that which God has established. The authorities that exist have been established by God. ²Consequently, whoever rebels against the authority is rebelling against what God has instituted, and those who do so will bring judgment on themselves.").

34.   Dr. Hotze is unwilling to permit Braidwood Management Inc. to recognize same-sex marriage or extend spousal benefits to an employee's same-sex partner, because that would lend approval to homosexual behavior and make him complicit in gross sin, in violation of his sincere religious beliefs.

35.   Dr. Hotze also believes that transgender behavior is contrary to the Bible and Christian teaching, and as a Christian he must not lend approval to or become complicit in this behavior in any way.

36.   Because of these sincere religious beliefs, Dr. Hotze will not permit an employee of Braidwood to use a restroom reserved for members of the opposite biological sex—regardless of the gender identity that the employee asserts.

37.   Braidwood Management Inc. is self-insured and provides health insurance to its employees. Because Braidwood has more than 50 employees, it is compelled to offer ACA-compliant health insurance to its employees or face heavy financial penalties. *See* 26 U.S.C. § 4980H(c)(2).

38.   Braidwood's self-insured health plan is administered by a company called Entrust.

39.   On December 20, 2018, Entrust issued a new Employee Benefit Plan Document (also known as the Summary Plan Description) for Braidwood's self-insured

health plan, which describes changes to the plan that took effect December 1, 2018. *See* Exhibit 3.

40.   In this document, Entrust redefined the term "spouse" to include individuals in same-sex marriages. Entrust made this change on its own initiative, without iDr. Hotze's knowledge or approval.

41.   Because of this change, Braidwood's health plan now recognizes same-sex marriage effective December 1, 2018, even though this is contrary to Dr. Hotze's religious beliefs.

42.   On January 27, 2019, Dr. Hotze discovered that this change had been made to Braidwood's health plan. On February 14, 2019, Dr. Hotze wrote a letter to Entrust that stated:

> I am unwilling to allow Braidwood's plan to recognize same-sex marriage. Braidwood is a Christian business and I operate all of my businesses according to Christian beliefs and teaching. I cannot allow Braidwood's plan to define marriage in a manner that contradicts my religious beliefs or Christian teaching on marriage and sexuality.
>
> I therefore respectfully ask you to amend the definition of "spouse" to include only marriages between one man and one woman.
>
> If you believe that the law prohibits Entrust from amending Braidwood's plan in this manner, please write back to me and let me know. I do not want Entrust to violate the law, and if you believe that the law prevents you from accommodating this request then I will seek declaratory relief in court against the relevant government officials.

*See* Exhibit 4.

43.   On February 22, 2019, Entrust wrote back to Dr. Hotze and wrote:

> [W]e firmly believe that our current definition of "spouse" in the [Summary Plan Description] is in line with the clear law of the United States. However, we completely understand that you feel differently due to religious convictions and personal beliefs, which we obviously respect. As the Plan Sponsor of the Braidwood Employee Benefit Plan Trust, you control the terms of your plan. If you feel that you need to take legal action on this issue, that is completely up to you as the Trustee.

> We respect your decision to do so, but we cannot influence your deci-
> sion one way or another on pursuing same.

*See* Exhibit 5.

## COUNT 1: VIOLATION OF RELIGIOUS FREEDOM RESTORATION ACT

44.   The EEOC is violating the Religious Freedom Restoration Act by refusing to explicitly exempt church employers and religious employers, including religious closely held corporations, from its interpretation of Title VII.

45.   The EEOC is substantially burdening the plaintiffs' religious freedom by requiring them to recognize same-sex marriage in their health plans, provide spousal benefits to same-sex spouses of homosexual employees, and allow employees to use restrooms reserved for the opposite biological sex. The EEOC is substantially burdening the religious freedom of church employers by forbidding them to exclude practicing homosexuals from consideration for ministerial or non-ministerial positions.

46.   There is no compelling governmental interest in forcing objecting religious employers to comply with the EEOC's interpretation of Title VII, which is evident from the fact that Congress has refused to enact legislation to compel these objecting religious employers to comply with the EEOC's interpretation of Title VII.

47.   The U.S. Pastor Council brings its RFRA claim as representative of a class of all churches in the United States who oppose homosexual behavior for sincere religious reasons.

48.   Braidwood Management Inc. brings its RFRA claim as representative of a class of all closely held corporations in the United States that object to homosexual or behavior for sincere religious reasons.

## COUNT 2: VIOLATION OF FREE EXERCISE CLAUSE

49.   The EEOC is also violating the Free Exercise Clause by refusing to explicitly exempt church employers and religious employers, including religious closely held corporations, from its interpretation of Title VII.

50.   Title VII is not a law of "general applicability" because it exempts religious employers from its prohibition on religious discrimination. *See* 42 U.S.C. § 2000e-1(a) ("This subchapter shall not apply to . . . a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities."). Title VII also exempts employers with fewer than 15 employees. *Oregon v. Smith*, 494 U.S. 872 (1990), is therefore inapplicable, and the plaintiffs' Free Exercise claims should be analyzed under the strict scrutiny of *Sherbert v. Verner*, 374 U.S. 398 (1963).

51.   If *Oregon v. Smith* forecloses the plaintiffs' free-exercise claims, then *Oregon v. Smith* should be overruled.

52.   The U.S. Pastor Council brings its free-exercise claim as representative of a class of all churches in the United States who oppose homosexual behavior for sincere religious reasons.

53.   Braidwood Management Inc. brings its free-exercise claim as representative of a class of all closely held corporations in the United States that object to homosexual or behavior for sincere religious reasons.

## COUNT 3: DECLARATORY JUDGMENT

54.   Braidwood Management Inc.'s third-party administrator has amended Braidwood's health plan to recognize same-sex marriage, and the plan now defines "spouse" to include individuals in same-sex marriages.

55.   Dr. Hotze is considering whether to instruct Entrust to change the definition of "spouse" back to a definition that includes only marriages between one man and one woman. But he does not want to do anything that would violate the law, and he does not want to instruct his third-party administrator to violate the law.

56.   Braidwood therefore requests a declaratory judgment from this Court that it has a legally protected right, under both RFRA and the Constitution, to withhold recognition of same-sex marriage, and to offer spousal benefits only to opposite-sex spouses of its employees, regardless of anything in Title VII.

57.   Braidwood Management Inc. brings this declaratory-judgment claim as representative of a class of all closely held corporations in the United States that object to homosexual or behavior for sincere religious reasons.

## COUNT 4: COMPELLED SPEECH (EEOC POSTER)

58.   The EEOC is violating Braidwood's rights under the Speech Clause, by forcing Braidwood to post a sign that informs employees that Title VII protects them from discrimination "on the basis of . . . sex," but that refuses to acknowledge Braidwood's right as a religious employer to operate its business in accordance with its religious beliefs regardless of how Title VII is interpreted.

59.   Dr. Hotze is unwilling to have Braidwood post this sign until EEOC amends the sign to acknowledge the rights of religious employers under the Religious Freedom Restoration Act, which override the EEOC's interpretation of Title VII.

60.   Dr. Hotze has no objection to having Braidwood post a sign that accurately describes Braidwood's obligations under federal law. He objects, however, to posting a sign that is misleading, incomplete, and ambiguous—especially when the EEOC and numerous federal courts have announced that Title VII's prohibition on "sex" discrimination prevents employers from discriminating against homosexual or transgender behavior. Employees who read this sign and see that Braidwood is categorically forbidden to engage in "sex" discrimination will assume (incorrectly) that Braidwood is legally required to recognize same-sex marriage, extend spousal employments benefits to same-sex couples, and allow its employees into restrooms reserved

for the opposite biological sex. Dr. Hotze is not willing to have Braidwood propagate this message without sufficient clarification.

61. Dr. Hotze is also unwilling to post a sign that informs readers of the EEOC's contact information when the EEOC is using its enforcement powers to persecute Christian businesses that oppose homosexual or transgender behavior on account of their sincere religious beliefs. *See EEOC v. R.G. & G.R. Harris Funeral Homes Inc.*, 884 F.3d 560 (6th Cir. 2018). Until the EEOC is enjoined on a classwide basis from enforcing its interpretation of Title VII against objecting religious employers, Dr. Hotze is unwilling to post any material from the EEOC or engage in any speech activity that could facilitate EEOC's bullying of religious employers.

62. Braidwood Management Inc. brings this compelled-speech claim as representative of a class of all closely held corporations in the United States that object to homosexual or behavior for sincere religious reasons.

## COUNT 5: SPEECH CLAUSE VIOLATION (COMPELLED RECOGNITION OF SAME-SEX MARRIAGE)

63. The EEOC is also violating Braidwood's rights under the Speech Clause by forcing private employers to recognize same-sex marriage.

64. Dr. Hotze believes that the Supreme Court grossly misinterpreted the Fourteenth Amendment in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), and that there is no textual basis whatsoever for a constitutional right to same-sex marriage. Dr. Hotze believes that the five justices in the *Obergefell* majority usurped their powers and imposed a court-created right on the nation based on their personal ideological beliefs rather than constitutional text. He regards *Obergefell* as illegitimate, and he will not accept *Obergefell*'s interpretation of the Constitution.

65. Dr. Hotze's objections to *Obergefell* as a matter of constitutional law are distinct from his religious objections to homosexual behavior. His objections to *Obergefell* are rooted in the fact that the text of the Constitution offers no support for the

Court's ruling, and that under the Constitution the legality of same-sex marriage is to be determined by legislature rather than judicial edicts.

66.   Neither Dr. Hotze nor Braidwood is a state actor, and they have no obligation to accept the Supreme Court's interpretations of the Fourteenth Amendment.

67.   Texas has not repealed or amended its laws prohibiting same-sex marriage in response to *Obergefell*. Those statutes were not "struck down" and they remain on the books. *See Pidgeon v. Turner*, 538 S.W.3d 73, 88 n.21 (Tex. 2017) ("We note that neither the Supreme Court in *Obergefell* nor the Fifth Circuit in *De Leon* 'struck down' any Texas law. When a court declares a law unconstitutional, the law remains in place unless and until the body that enacted it repeals it, even though the government may no longer constitutionally enforce it. Thus, the Texas and Houston DOMAs remain in place as they were before *Obergefell* and *De Leon*."). Dr. Hotze continues to respect those statutes as the law of Texas.

68.   Because Dr. Hotze does not accept *Obergefell*'s interpretation of the Fourteenth Amendment, he regards same-sex marriage as illegal in the State of Texas. EEOC's efforts to force Braidwood to recognize same-sex marriage and accept *Obergefell*'s interpretation of the Fourteenth Amendment violate the company's rights under the Speech Clause.

69.   Braidwood Management Inc. brings this First Amendment claim as representative of a class of all private employers in the United States that object to the constitutional reasoning in *Obergefell*, excluding employers in states where same-sex marriage was legalized through legislation.

## COUNT 6: APA CLAIM

70.   The EEOC's regulatory guidance qualifies as "rule" and as reviewable agency action under the APA.

71.   The EEOC's regulatory guidance violates the APA because it is "contrary to law"—specifically, because it violates the statutory and constitutional rights of religious employers. The Court should therefore "hold unlawful and set aside" the EEOC's regulatory guidance under section 706 of the APA.

72.   The U.S. Pastor Council brings its APA claim as representative of a class of all churches in the United States who oppose homosexual behavior for sincere religious reasons.

73.   Braidwood Management Inc. brings its APA claim as representative of a class of all closely held corporations in the United States that object to homosexual or behavior for sincere religious reasons.

74.   Braidwood Management Inc. also brings its APA claim as representative of a class of all private employers in the United States that object to the constitutional reasoning in *Obergefell*, excluding employers in states where same-sex marriage was legalized through legislation.

### FACTS RELATED TO STANDING—U.S. PASTOR COUNCIL

75.   The U.S. Pastor Council has associational standing to challenge the EEOC's interpretation of Title VII.

76.   To establish associational standing, the U.S. Pastor Council must show that: (a) its member churches would have standing to sue in their own right; (b) the rights of religious freedom and church autonomy that it seeks to vindicate in this lawsuit are germane to the organization's purpose; and (c) neither the claims asserted nor the relief demanded requires the individual member churches to participate in the lawsuit. *See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

77.   The individual member churches of the U.S. Pastor Council include churches that are subject to Title VII because they have 15 or more employees. These member churches intend to engage in a course of conduct prohibited by the EEOC's

interpretation of Title VII. Specifically, they intend to discriminate on account of sex, sexual orientation, and gender identity in church employment decisions, by categorically refusing to consider practicing homosexuals or transgendered individuals for church employment, and by requiring all church employees to refrain from homosexual behavior.

78.   These member churches are suffering "injury in fact" because the EEOC's announced interpretation of Title VII threatens them with penalties for following the teachings of their religion.

79.   These member churches are suffering an additional "injury in fact" because the EEOC's announced interpretation of Title VII compels them to violate the teachings of their religion regardless of whether they choose to comply with the EEOC's interpretation of the statute. If the member churches choose to comply with city law, then they will violate the Bible's teachings on homosexuality and the role of women in the church. *See, e.g.*, Romans 1:26–28; 1 Timothy 1:8–11; 1 Corinthians 6:9–11; Leviticus 18:22; Leviticus 20:13; 1 Timothy 2:12. If the member churches choose to defy city law, then they will violate the Bible's instruction to obey the civil authorities. *See* Romans 13. The EEOC's announced interpretation of Title VII makes it impossible for the member churches to operate without violating one or more of their sincere religious convictions. This inflicts "injury in fact" and substantially burdens the members churches' exercise of their religion.

80.   Each of these "injuries in fact" is caused by the defendants' conduct, and each will be redressed by a declaratory judgment that the EEOC's interpretation of Title VII violates the Religious Freedom Restoration Act and the First Amendment, as well as an injunction that blocks the defendants from interpreting or enforcing Title VII in a manner that requires churches to hire practicing homosexuals for ministerial or non-ministerial employment, recognize same-sex marriage, or extend spousal benefits to the same-sex partners of church employees.

81.  The U.S. Pastor Council is a membership organization. To become a member of the U.S. Pastor Council, a pastor and its church must submit a membership application and pay a $250 annual membership fee. Pastors who apply for membership must review the Pastors' Declaration on Godly Citizenship and affirm they agree with its principles and commit to its implementation. All of this is explained on the U.S. Pastor Council's website: http://www.uspastorcouncil.org/get-involved/join-uspc.html (last visited on March 29, 2019).

82.  Defending the right of religious freedom and the right of churches to require their employees to follow the Bible's standards for conduct is germane to the U.S. Pastor Council's purpose. The U.S. Pastor Council's Declaration of Godly Citizenship, which appears on the Council's website, declares, among other things:

> <u>We believe</u> that the **Holy Bible is inerrant, infallible and inspired by God**; it is the only revealed source of all truth relevant to the governing of the person and of nations.

> <u>We believe</u> that **all authorities are subordinate to God**, including family, church and government authorities, therefore the actions and decisions of each will be accountable to Him.

> <u>We believe</u> that the church has a unique and sacred role in **proclaiming Gods principles** to leaders of a city, state and nation . . . .

> <u>We believe</u> that **marriage is a God-created relationship as the lifetime union of one natural man and one natural woman** for the blessing of both, the good of the people and the foundation of the family for legitimate procreation.

> <u>We believe</u> that the **traditional, nuclear family of a married father and mother raising their biological and/or adopted children** in a nurturing and protective environment is the essential building block of a stable community and a nation; it therefore must be promoted and protected by both church and state. . . .

http://www.uspastorcouncil.org/who-we-are/uspc-pastors-declaration-of-godly-citizenship.html (last visited on March 29, 2019).

83.   The EEOC's announced interpretation of Title VII directly regulates and restricts the churches' freedom to hire and regulate the conduct of their employees. The EEOC's interpretations of Title VII are also entitled to deference and receive deference from the judiciary. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34 (1971) (holding that the EEOC's interpretations of Title VII are "entitled to great deference."); *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008) (extending "a high degree of deference" to EEOC guidelines interpreting the Pregnancy Discrimination Act's amendments to Title VII); *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 427 (4th Cir. 1999) (extending "full *Chevron* deference" to the EEOC's interpretation of Title VII). And the EEOC is already suing religious employers for violating its interpretation of Title VII—and it will continue to do so unless it is enjoined by this Court. *See EEOC v. R.G. & G.R. Harris Funeral Homes Inc.*, 884 F.3d 560 (6th Cir. 2018). The threat of enforcement inflicts "injury in fact"; it is caused by the defendants' behavior; and it will be redressed by an injunction that blocks the EEOC from enforcing its interpretation of Title VII against churches that object to homosexual or transgender behavior.

## FACTS RELATED TO STANDING—BRAIDWOOD MANAGEMENT INC.

84.   Braidwood Management Inc. has suffered or will suffer numerous injuries in fact:

(1) It cannot operate its business in accordance with its religious beliefs without exposing itself to a risk of EEOC enforcement action;

(2) It is being forced to choose between two outcomes that will violate its religious convictions, as it must either defy the EEOC (which violates its religious duty to obey the civil authorities) or comply with the EEOC (which violates its religious convictions regarding homosexual and transgender behavior);

(3) Its third-party administrator unilaterally changed the terms of its self-insured health plan to recognize same-sex marriage, out of a belief that this change was compelled by law;

(4) Braidwood must choose between acquiescing to the third-party administrator's changes, or instructing its third-party administrator to do something that the administrator regards as illegal, either of which imposes injury on Braidwood by either violating its religious convictions or harming its relationship with its third-party administrator;

(5) Braidwood is required to post an EEOC-sponsored sign that it regards as misleading, incomplete, and ambiguous, on threat of fine;

(6) Braidwood is required to post a sign that assists the enforcement powers of a federal agency that it believes is acting in an unlawful and unconstitutional manner;

(7) Braidwood is facing a risk that the EEOC will amend the sign to include explicit prohibitions on conduct that discriminates against homosexual or transgender behavior.

85.   These injuries are "fairly traceable" to the actions or inactions of the named defendants. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct."). The first two injuries in fact are directly caused by the EEOC's enforcement guidance. The third and fourth injuries are fairly traceable to the EEOC's refusal to publicly acknowledge that the rights of religious employers under federal RFRA trump any obligation to recognize same-sex marriage. The fifth, sixth, and seventh injuries are caused by the EEOC's enforcement of 42 U.S.C. § 2000e-10(a), and its consideration of whether to update its sign to include explicit prohibitions on conduct that discriminated against homosexual or transgender behavior.

86.   Because the EEOC enforces Title VII through litigation, the Attorney General and the Department of Justice necessarily have a role in the enforcement of Title VII, especially when an EEOC lawsuit is appealed or reaches the Supreme Court.

87. These injuries will be redressed by the requested relief. A remedy that "sets aside" the EEOC's regulatory guidance, declares it unlawful, and enjoins it enforcement against objecting religious employers will redress most if not all of the asserted injuries. The injuries will be further redressed by an injunction that prevents the EEOC from enforcing 42 U.S.C. § 2000e-10(a) until it explicitly acknowledges the rights of religious employers under RFRA and the First Amendment.

## DEMAND FOR RELIEF

88. The plaintiffs respectfully request that the court:

    a.    certify a class of all churches in the United States that oppose homosexual or transgender behavior for sincere religious reasons;

    b.    certify a separate class of all closely held corporations in the United States that oppose homosexual or transgender behavior for sincere religious reasons;

    c.    certify a separate class of all private employers in the United States that object to the constitutional reasoning in *Obergefell*, excluding employers in states where same-sex marriage was legalized through legislation;

    d.    declare that the EEOC's interpretation of Title VII violates the Religious Freedom Restoration Act, the Free Exercise Clause, and the Speech Clause, because it fails to exempt employers that hold sincere religious objections to homosexual or transgender behavior, and permanently enjoin the EEOC from enforcing Title VII in a manner that prohibits the plaintiffs or their fellow class members from operating their churches and businesses in accordance with their sincere religious beliefs that homosexual behavior is immoral;

e.    hold unlawful and set aside the EEOC's regulatory guidance under section 706 of the APA;

f.    permanently enjoin the defendants from issuing any type of regulatory guidance regarding Title VII's application to homosexuals or transgendered people that does not explicitly recognize exemptions for employers that object to homosexual or transgender behavior on religious grounds;

g.    declare that Braidwood and objecting religious employers have a right protected by the Religious Freedom Restoration Act and the First Amendment to withhold recognition from same-sex marriage;

h.    declare that Braidwood and private employers that object to the constitutional reasoning in *Obergefell* have a right under the First Amendment to withhold recognition from same-sex marriage in states that have not legalized same-sex marriage through legislation;

i.    enjoin the EEOC from enforcing 42 U.S.C. § 2000e-10(a) against Braidwood and its fellow class members unless it furnishes them with an amended poster that explicitly recognizes the rights of religious employers who oppose homosexual or transgender behavior for sincere religious reasons;

j.    enjoin the EEOC from enforcing 42 U.S.C. § 2000e-10(a) against Braidwood until the EEOC stops enforcing Title VII against employers who discriminate against homosexual or transgender behavior for sincere religious reasons;

k.    enjoin the EEOC from amending the sign described in 42 U.S.C. § 2000e-10(a) to state that Title VII prohibits discrimination on account of sexual orientation or gender identity;

l.    award costs and attorneys' fees under 42 U.S.C. § 1988;

m.    award all other relief that the Court may deem just, proper, or equitable.

Respectfully submitted.

_/s/ Jonathan F. Mitchell_

CHARLES W. FILLMORE                    JONATHAN F. MITCHELL
H. DUSTIN FILLMORE                     Texas Bar No. 24075463
The Fillmore Law Firm, L.L.P.          Mitchell Law PLLC
1200 Summit Avenue, Suite 860          106 East Sixth Street, Suite 900
Fort Worth, Texas 76102                Austin, Texas 78701
(817) 332-2351 (phone)                 (512) 686-3940 (phone)
(817) 870-1859 (fax)                   (512) 686-3941 (fax)
chad@fillmorefirm.com                  jonathan@mitchell.law
dusty@fillmorefirm.com

                                       *Counsel for Plaintiffs and*
Dated: March 29, 2019                  *the Proposed Classes*

## CERTIFICATE OF SERVICE

I certify that on March 29, 2019, I served this document through CM/ECF upon:

Eric J. Soskin
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Room 12002
1100 L Street, NW
Washington, D.C. 20530
(202) 353-0533
eric.soskin@usdoj.gov

*Counsel for Defendants*

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiffs and
the Proposed Classes*