IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION

_____

U.S. PASTOR COUNCIL, et al.,

    Plaintiffs,

v.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, et al.,

    Defendants.

Case No. 4:18-cv-00824-O

**<u>BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 2

STANDARD OF REVIEW ......................................................................................... 8

ARGUMENT .............................................................................................................. 8

I.   There is No Article III Standing to Support this Action. ........................................ 10

    A.  There is No Injury To Support Standing For Claims Against the Attorney
       General. ................................................................................................... 11

    B.  Injury and Traceability Are Lacking for the Claims Against the EEOC. ................... 12

        1.  Plaintiffs Have Not Established a Past or Present Injury from the EEOC
           Brochure. ........................................................................................... 12

        2.  Plaintiffs Have Identified No Credible Threat of Enforcement, Absent
           Which There is No Imminent Future Injury. ........................................... 15

        3.  Any Injury Is Not Traceable to the EEOC Brochure. ........................................... 18

           a.   The EEOC Brochure Does Not Create a Traceable Injury. ............................. 18

           b.   Because the Brochure Does Not Address the Scope of Religious
              Exemptions to Title VII, There is No Traceable Injury to Support
              Plaintiffs' APA Claim. ..................................................................... 20

           c.   The Actions of Braidwood's Third-Party Benefits Administrator Do
              Not Give Rise to an Injury Traceable to EEOC. ......................................... 21

II.  Plaintiffs' Claims are Unripe. ............................................................................. 22

CONCLUSION ........................................................................................................ 26

i

# TABLE OF AUTHORITIES

**CASES**

*Abbott Laboratories v. Gardner*,
    387 U.S. 136 (1967)...........................................................................................................22

*Angle v. Veneman*,
    EEOC Doc. 01A32644, 2004 WL 764265 (Apr. 5, 2004) ..........................................4

*Baldwin v. Foxx*,
    EEOC Doc. 0120133080, 2015 WL 4397641 (July 15, 2015)..............................4, 5

*Barrera–Montenegro v. United States*,
    74 F.3d 657 (5th Cir. 1996) ......................................................................................8

*Bauer v. Texas*,
    341 F.3d 352 (5th Cir. 2003) .................................................................................10

*Bennett v. Spear*,
    520 U.S. 154 (1997).................................................................................................21

*Bertulli v. Independent Ass'n of Continental Pilots*,
    242 F.3d 290 (5th Cir. 2001) .................................................................................16

*Bibby v. Phila. Coca Cola Bottling Co.*,
    260 F.3d 257 (3d Cir. 2001).....................................................................................3

*Bostock v. Clayton County Bd. of Comm'rs*,
    No. 17-13801, 723 Fed. Appx. 964 (Mem.) (11th Cir. May 10, 2018), *cert granted* No. 17-
    1618, 2019 WL 1756677 .........................................................................................4

*Burwell v. Hobby Lobby*,
    134 S. Ct. 2751 (2014)............................................................................................25

*Calzone v. Hawley*,
    866 F.3d 866 (8th Cir. 2017) .................................................................................12

*Campbell v. Dep't of Agriculture*,
    EEOC Appeal No. 01931730, 1994 WL 652840 (July 21, 1994) ...........................4

*Carcieri v. Salazar*,
    555 U.S. 379 (2009) ...............................................................................................19

*Casoni v. United States Postal Service*,
    EEOC DOC 01840104, 1984 WL 485399 (Sept. 28, 1984).....................................4

*Chandler v. Roudebush,*
   425 U.S. 840 (1976) ............................................................................................. 13

*Christensen v. Harris County,*
   529 U.S. 576 (2000) ............................................................................................. 19

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ............................................................................................. 15

*Coastal Habitat Alliance v. Patterson,*
   601 F. Supp. 2d 868 (W.D. Tex. 2008) ................................................................ 12

*Collin Cty., Texas v. Homeowners Ass'n for Values Essential to Neighborhoods* ("*HAVEN*"),
   915 F.2d 167 (5th Cir. 1990) ............................................................... 22, 23, 24

*Crane v. Johnson,*
   783 F.3d 244 (5th Cir. 2015) ............................................................................... 12

*Cruz v. Abbott,*
   849 F.3d 594 (5th Cir. 2017) ............................................................................... 16

*DaimlerChrysler Corp. v. Cuno,*
   547 U.S. 332 (2006) ....................................................................................... 10, 12

*Dermer v. Miami-Dade County,*
   599 F.3d 1217 (11th Cir. 2010) .......................................................................... 15

*DeSantis v. Pacific Tel. & Tel. Co.,*
   608 F.2d 327 (9th Cir. 1979),
   *abrogated in part on other grounds, Nichols v. Azteca Restaurant Enterpr.*, 256 F.3d 864 (9th
   Cir. 2001) ............................................................................................................... 3

*Doe v. C.A.R.S. Prot. Plus, Inc.,*
   527 F.3d 358 (3d Cir. 2008) ................................................................................ 19

*Dynalantic Corp. v. Department of Defense,*
   115 F.3d 1012 (D.C. Cir. 1997) .......................................................................... 21

*EEOC v. Arabian Am. Oil Co.,*
   499 U.S. 244 (1991) ....................................................................................... 13, 19

*EEOC v. R.G. & G.R. Harris Funeral Homes,*
   884 F.3d 560 (6th Cir. 2018), *cert granted*, No. 18-107, 2019 WL 1756679 ............ 4, 5, 16, 23

*Elend v. Basham,*
  471 F.3d 1199 (11th Cir. 2006) ........................................................... 16

*English v. Trump,*
  279 F. Supp. 3d 307 (D.D.C. 2018) ...................................................... 19

*Etsitty v. Utah Transit Auth.,*
  502 F.3d 1215 (10th Cir. 2007) ............................................................. 4

*Evans v. Ga. Reg'l Hosp.,*
  850 F.3d 1248 (11th Cir. 2017) ............................................................. 3

*Gallagher v. Crown Kosher Super Market of Mass., Inc.,*
  366 U.S. 617 (1961) ............................................................................ 25

*Gen. Elec. v. Gilbert,*
  429 U.S. 125 (1976) ............................................................................ 19

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
  546 U.S. 418 (2006) ............................................................................ 25

*Griggs v. Duke Power Co.,*
  401 U.S. 424 (1971) ............................................................................ 19

*Hamm v. Weyauwega Milk Prods., Inc.,*
  332 F.3d 1058 (7th Cir. 2003),
  *overruled by Hively v. Ivy Tech Comm. College,* 853 F.3d 339 (7th Cir. 2017) ............... 3, 4, 5

*Haywood v. Drown,*
  556 U.S. 729 (2009) ............................................................................ 10

*Hein v. Freedom from Religion Found.,*
  551 U.S. 587 (2007) .............................................................................. 9

*Higgins v. New Balance Athletic Shoe, Inc.,*
  194 F.3d 252 (1st Cir. 1999) ................................................................. 3

*Holloway v. Arthur Andersen & Co.,*
  566 F.2d 659 (9th Cir. 1977) ............................................................ 4, 5

*Home Builders Ass'n of Miss. v. City of Madison,*
  143 F.3d 1006 (5th Cir. 1998) ............................................................... 8

*Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC,*
  565 U.S. 171 (2012) .................................................................... 1, 2, 25

*Hoyt v. City of El Paso, Tex.*,
  878 F. Supp. 2d 721 (W.D. Tex. 2012).................................................................. 17

*James v. City of Dallas*,
  254 F.3d 551 (5th Cir. 2001) ................................................................................ 12

*Jones v. Am. Postal Workers Union*,
  192 F.3d 417 (4th Cir. 1999) ................................................................................ 19

*Klayman v. Pres. of the U.S.*,
  689 Fed. Appx. 921 (11th Cir. 2017)..................................................................... 18

*Kowalczyk v. Dep't of Veterans Affairs*,
  EEOC Appeal No. 01942053, 1996 WL 124832 (Mar. 14, 1996) ........................... 4

*Kowalski v. Tesmer*,
  543 U.S. 125 (2004)................................................................................................ 9

*Lewis v. Casey*,
  518 U.S. 343 (1996).............................................................................................. 10

*Lopez v. City of Houston*,
  617 F.3d 336 (5th Cir. 2010) ................................................................................ 22

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)................................................................................................ 9

*Luminant Generation Co., LLC v. EPA*,
  757 F.3d 439 (5th Cir. 2014) .......................................................................... 18, 21

*Lusardi v. Dep't of the Army*,
  EEOC DOC 0120133395, 2015 WL 1607756 (Apr. 1, 2015)................................... 5

*Macy v. Holder*,
  EEOC DOC 0120120821, 2012 WL 1435995 (Apr. 20, 2012)................................. 5

*Marucci v. Caldera*,
  EEOC Doc. 01982644, 2000 WL 1637387 (Oct. 27, 2000)...................................... 4

*Medina v. Income Support Div.*,
  413 F.3d 1131 (10th Cir. 2005) .............................................................................. 3

*Meritor Sav. Bank, FSB v. Vinson*,
  477 U.S. 57 (1986).................................................................................................. 3

*Middle South Energy, Inc. v. City of New Orleans,*
    800 F.2d 488 (5th Cir. 1986) ................................................................................. 22

*Miss. Poultry v. Madigan,*
    992 F.2d 1359 (5th Cir. 1993) ............................................................................... 19

*Moore v. Bryant,*
    853 F.2d 245 (5th Cir. 2017) ................................................................................. 10

*NAACP v. City of Kyle,*
    626 F.3d 233 (5th Cir. 2010) ................................................................................. 10

*Nat'l Conf. of Catholic Bishops v. Smith* ("*Bishops Conference*"),
    653 F.2d 535 (D.C. Cir. 1981) ................................................................. 15, 17, 25

*Obergefell v. Hodges,*
    135 S. Ct. 2584 (2015) ........................................................................................ 9, 21

*Orix Credit All., Inc. v. Wolfe,*
    212 F.3d 891 (5th Cir. 2000) ................................................................................. 22

*Price Waterhouse v. Hopkins,*
    490 U.S. 228 (1989) ............................................................................................... 4, 6

*Princeton Univ. v. Schmid,*
    455 U.S. 100 (1982) ............................................................................................. 20, 22

*Raines v. Byrd,*
    521 U.S. 811 (1997) ................................................................................................... 8

*Ramming v. United States,*
    281 F.3d 158 (5th Cir. 2001) ................................................................................... 8

*Regions Ins., Inc. v. Ace Prop. & Cas. Ins. Co.,*
    80 F. Supp. 3d 730 (M.D. La. 2015) ...................................................................... 22

*Renne v. Geary,*
    501 U.S. 312 (1991) ................................................................................................... 8

*Roman Catholic Diocese of Dallas v. Sebelius,*
    927 F. Supp. 2d 406 (N.D. Tex. 2013) ................................................................... 25

*Shields v. Norton,*
    289 F.3d 832 (5th Cir. 2002) ..................................................................................... 9

*Simon v. Eastern Ky. Welfare Rights Organization,*
  426 U.S. 26 (1976) .................................................................................................... 9

*Simonton v. Runyon,*
  232 F.3d 33 (2d Cir. 2000),
  *overruled by Zarda v. Altitude Express*, 883 F.3d 100 (2d Cir. 2018), *cert granted* No. 17-
  1623, 2019 WL 1756678 .................................................................................... 3, 4

*Smith v. City of Jackson, Miss.,*
  351 F.3d 183 (5th Cir. 2003) .................................................................................. 19

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009) .................................................................................................. 15

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ............................................................................................. 9, 15

*Texas Dep't of Community Affairs v. Burdine,*
  450 U.S. 248 (1981) .................................................................................................... 6

*Texas v. EEOC,*
  827 F.3d 372 (5th Cir. 2016),
  *withdrawn on other grounds*, 838 F.3d 511 (5th Cir. 2016) ............................................ 23, 25

*Texas v. United States,*
  497 F.3d 491 (5th Cir. 2007) ...................................................................................... 9

*Texas v. United States ("Tex.-HHS"),*
  300 F. Supp. 3d 810 (N.D. Tex. 2018) .................................................................... 20

*Texas v. United States ("Tex.-EEOC"),*
  200 F. Supp. 3d 810 (N.D. Tex. 2016) .................................................................... 20

*Ulane v. Eastern Airlines, Inc.,*
  742 F.2d 1081 (7th Cir. 1984) .................................................................................... 3

*United States Army Corps of Eng'rs v. Hawkes,*
  136 S. Ct. 1807 (2016) .............................................................................................. 20

*United Transp. Union v. Foster,*
  205 F.3d 851 (5th Cir. 2000) .............................................................................. 22, 24

*Vickers v. Fairfield Med. Ctr.,*
  453 F.3d 757 (6th Cir. 2006) .............................................................................. 3, 4, 5

*Virginia v. Am. Booksellers Ass'n,*
   484 U.S. 383 (1988) .................................................................................... 15

*Warth v. Seldin,*
   422 U.S. 490 (1975) .................................................................................... 25

*Williamson v. A.G. Edwards & Sons,*
   876 F.2d 69 (8th Cir. 1989) ........................................................................ 3

*Wittmer v. Phillips 66 Co.,*
   915 F.3d 328 (5th Cir. 2019) ............................................................... 3, 4, 5

*Wrightson v. Pizza Hut,*
   99 F.3d 138 (4th Cir. 1996) ........................................................................ 3

**STATUTES**

42 U.S.C. § 2000e-2 ............................................................................... 2, 14

42 U.S.C. § 2000e-5 ......................................................................... 11, 19, 23

Pub. L. 95-555, 92 Stat. 2076 (1978) .......................................................... 3

Pub. L. 102-166, 105 Stat. 1074-76 (1991) ................................................. 3

**REGULATIONS**

*Federal Law Protections for Religious Liberty*, Attorney General's Memorandum,
   82 Fed. Reg. 49668-01, 2017 WL 4805663 (Oct. 6, 2017) .................... 7, 8

**UNITED STATES CONSTITUTION**

U.S. Const. art. III, § 1 ................................................................................ 9

**OTHER AUTHORITIES**

Brief for the Federal Respondent in Opposition to Petition for a Writ of Certiorari,
   *Harris Funeral Homes v. EEOC* (No. 18-107) (Oct. 24, 2018) .............. 11

Br. for the United States as Amicus Curiae,
   *Griggs v. Duke Power Co.*, 1970 WL 122637 (Sept. 4, 1970) ................. 19

Employment Non–Discrimination Act of 1994, H.R. 4636, 103d Cong. (1994) .......................... 3

Employment Nondiscrimination Act of 1996, S.2056, 104th Cong. (1996) ................................... 3

Exec. Order 13,798,
    82 Fed. Reg 21,675 (May 4, 2017)........................................................................ 6, 7, 8, 20, 23

Memorandum, *Revised Treatment of Transgender Employment Discrimination Claims Under
    Title VII of the Civil Rights Act* (Oct. 4, 2017), *available at*:
    https://www.justice.gov/ag/page/file/1006981/download ("DOJ Memorandum") .............. 6, 14

Memorandum on Limiting Use of Agency Guidance Documents in Affirmative Civil
    Enforcement Cases, Associate Att'y General (Jan. 25, 2018), available at:
    https://www.justice.gov/file/1028756/download (last visited Dec. 1, 2018)........................... 12

William B. Rubenstein,
    Newberg on Class Actions § 2:1 (5th ed.).............................................................................. 16

## INTRODUCTION

The "Case" or "Controversy" requirement in Article III of the Constitution limits "the judicial Power" exercised by federal courts to circumstances in which a court must resolve a concrete and specific legal problem arising between adverse parties.  The doctrines of standing and ripeness, as set forth by the Supreme Court and the Fifth Circuit, dictate that Plaintiffs may not avail themselves of this Court's jurisdiction to address the abstract disagreements among themselves, one of the defendant agencies, and a private party regarding the meaning of a law.

In their Amended Class Action Complaint, ECF No. 19 ("Am. Compl."), the U.S. Pastor Council ("Pastor Council") and Braidwood Management, Inc. ("Braidwood") bring claims against the Equal Employment Opportunity Commission ("EEOC"), and the Attorney General, the head of the Department of Justice ("DOJ").  Plaintiffs seek declaratory and injunctive relief determining that the EEOC's nonbinding guidance interpreting Title VII is unlawful because it does not include an exemption for non-ministerial employees of churches or an exemption for closely-owned businesses that wish to operate according to their religious views.

The Declaratory Judgment Act permits a plaintiff to obtain an early resolution of a claim that a defendant intends to file against it.  But the Attorney General does not have the power to bring claims against Defendants under Title VII.  DOJ cannot sue churches or closely-held, religiously operated businesses.  Nor does DOJ share the EEOC's interpretation of Title VII.  As to the EEOC, since the Supreme Court recognized the ministerial exception to Title VII in *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171 (2012), that agency has never brought a claim seeking to enforce its interpretation of Title VII regarding non-ministerial employees of churches.  Thus, no Plaintiff has a need to secure relief regarding DOJ's interpretation, and the Pastor Council has no need to secure relief regarding EEOC's

1

interpretation.  And while the EEOC does have the power to sue Braidwood regarding Title VII, Braidwood alleges no facts that suggest an imminent threat that the EEOC will do so.  Nor has Braidwood articulated a concrete harm traceable to EEOC based on any of its asserted injuries: a conflict among religious tenets, the actions of a third-party health administrator, or the requirement that employers display a Title VII poster.  For these reasons, the doctrines of standing and ripeness preclude Plaintiffs' claims.

There can be no doubt of the paramount "interest of religious groups in choosing who will . . . carry out their mission," *Hosanna-Tabor*, 565 U.S. at 196, or that the Constitution, statutes, and other sources of law command every Branch to protect religious liberty as a fundamental right.  Indeed, at the President's direction, DOJ has provided guidance to every agency regarding religious liberty protections.  Nevertheless, the extent to which "RFRA and the First Amendment limit [the EEOC's] ability to enforce Title VII against employers who object" to the EEOC's views on religious grounds, Am. Compl. at ¶ 16, must be litigated in the context of an actual case or controversy.  As between these parties, no such controversy yet exists.

## BACKGROUND

Title VII of the Civil Rights Act of 1964 forbids employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  Title VII also forbids an employer from "limit[ing], segregat[ing], or classify[ing] . . . employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(2).  Congress did not define the term "sex" when it enacted these antidiscrimination provisions.  Indeed, "sex" was added as a protected trait

2

in a floor amendment "at the last minute" before the House passed the bill in 1964. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63-64 (1986). In 1978 and 1991, Congress significantly amended Title VII, including by addressing the scope of "sex" discrimination, but without adding a definition to the term "sex." *See* Pub. L. 95-555, 92 Stat. 2076 (1978); Pub. L. 102-166, 105 Stat. 1074-76 (1991). Congress has also repeatedly declined to enact proposed legislation that would prohibit discrimination in employment based on sexual orientation. *See, e.g.*, Employment Nondiscrimination Act of 1996, S.2056, 104th Cong. (1996); Employment Non–Discrimination Act of 1994, H.R. 4636, 103d Cong. (1994); *see also Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081, 1085–86 (7th Cir. 1984) (discussing rejected amendments to Title VII).

"For four decades, it has been the uniform law of the land, affirmed in eleven circuits, that Title VII of the 1964 Civil Rights Act prohibits sex discrimination—not sexual orientation or transgender discrimination." *Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 333 (5th Cir. 2019) (Ho, J., concurring); *see Higgins v. New Balance Athletic Shoe*, 194 F.3d 252, 259 (1st Cir. 1999); *Simonton v. Runyon*, 232 F.3d 33, 36 (2d Cir. 2000), *overruled by Zarda v. Altitude Exp.*, 883 F.3d 100 (2d Cir. 2018); *Bibby v. Phila. Coca Cola Bottling*, 260 F.3d 257, 261 (3d Cir. 2001); *Wrightson v. Pizza Hut*, 99 F.3d 138, 143 (4th Cir. 1996); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 763 (6th Cir. 2006); *Hamm v. Weyauwega Milk Prods., Inc.*, 332 F.3d 1058, 1062 (7th Cir. 2003), *overruled by Hively v. Ivy Tech Comm. College*, 853 F.3d 339 (7th Cir. 2017) (*en banc*); *Williamson v. A.G. Edwards & Sons*, 876 F.2d 69, 70 (8th Cir. 1989); *DeSantis v. Pacific Tel. & Tel.*, 608 F.2d 327, 329-30 (9th Cir. 1979), *abrogated on other grounds, Nichols v. Azteca Rest. Enterpr.*, 256 F.3d 864, 874-75 (9th Cir. 2001); *Medina v. Income Support Div.*, 413 F.3d 1131, 1135 (10th Cir. 2005); *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1255 (11th Cir. 2017). Likewise, until 2015, the EEOC had "consistently held that discrimination based on

sexual orientation is not actionable under Title VII." *Angle v. Veneman*, EEOC Doc. 01A32644, 2004 WL 764265 at *2 (Apr. 5, 2004); *accord Marucci v. Caldera*, EEOC Doc. 01982644, 2000 WL 1637387 (Oct. 27, 2000). The EEOC recently reversed course, and a few courts have followed suit. *See Baldwin v. Foxx*, EEOC Doc. 0120133080, 2015 WL 4397641 (July 15, 2015); *Zarda*, 883 F.3d 100; *Hively,* 853 F.3d 339.

Similarly, no federal statute, including Title VII, explicitly protects against employment discrimination based on gender identity. Courts long have held that Title VII's prohibition of discrimination "because of . . . sex" does not ban such discrimination, because "there is a judicial consensus that the public meaning of Title VII in 1964 did not include . . . transgender discrimination . . . [and this] understanding . . . is further bolstered by other established principles of statutory interpretation." *Wittmer*, 915 F.3d at 334-35 (Ho, J., concurring); *accord, e.g.*, *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1221 (10th Cir. 2007); *Vickers*, 453 F.3d at 763-64; *Holloway v. Arthur Andersen & Co.*, 566 F.2d 659, 662-63 (9th Cir. 1977). The EEOC long took the same position. *See, e.g., Casoni v. United States Postal Service*, EEOC DOC 01840104 (Sept. 28, 1984) 1984 WL 485399; *Campbell v. Dep't of Agriculture*, EEOC Appeal No. 01931730 (July 21, 1994) 1994 WL 652840; *Kowalczyk v. Dep't of Veterans Affairs*, EEOC Appeal No. 01942053 (March 14, 1996) 1996 WL 124832. [1]

More recently, the EEOC and some federal courts have begun interpreting the Supreme Court's decision that Title VII prohibits "sex-stereotyping" in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 249 (1989), as leading to the opposite conclusion: that "discrimination on the basis of transgender status necessarily entails discrimination on the basis of sex." *EEOC v. R.G. & G.R.*

---

[1] The Supreme Court has granted certiorari regarding the interpretation of Title VII's protections regarding "sex" in three cases. *See Harris Funeral Homes v. EEOC*, No. 18-107, 2019 WL 1756679 (Apr. 22, 2019); *Altitude Express v. Zarda*, No. 17-1623, 2019 WL 1756678 (Apr. 22, 2019); *Bostock v. Clayton County, Ga.*, No. 17-1618, 2019 WL 1756677 (Apr. 22, 2019).

*Harris Funeral Homes*, 884 F.3d 560, 574-82 (6th Cir. 2018) (distinguishing *Vickers*); *see also*

*Macy v. Holder,* 2012 WL 1435995 at n.16 (EEOC Apr. 20, 2012) ("overturn[ing] . . . any

contrary earlier decisions from the Commission").   Since February 2016, the EEOC has posted

on its website the "Brochure"—titled "Preventing Employment Discrimination Against Lesbian,

Gay, Bisexual, or Transgender Workers" —cited by Plaintiffs.   *See* ECF No. 19-1; https://www.

eeoc.gov/eeoc/publications (last visited Apr. 11, 2019) ("EEOC Brochure").   That brochure

states that "the EEOC . . . [has] said that sex discrimination includes discrimination based on an

applicant or employee's gender identity or sexual orientation."   ECF No. 19-1 at 1. Citing two

EEOC administrative opinions, the document also states that actions because an individual "is

transgender . . . violate[] Title VII" and that "[d]iscrimination based on sexual orientation . . .

states a claim . . . under Title VII."   *Id.* at 1-2.   The Brochure does not discuss the history behind

the EEOC's position, survey or cite judicial authority (apart from EEOC decisions), or make a

statement about the legal effect of the Brochure.[2]

     The longstanding position of the Department of Justice, however, is that Title VII does

not reach discrimination based on sexual orientation or gender identity.   This well-established

position correctly reflects the plain meaning of the statute, the overwhelming weight and

reasoning of the case law, and the clear congressional ratification of that interpretation.   This is

because, "in common, ordinary usage in 1964—and now, for that matter—the word 'sex' means

biologically male or female."   *Wittmer*, 915 F.3d 333-34 (Ho, J., concurring) (quoting *Hively*,

853 F.3d at 362 (Sykes, J., dissenting) (without dispute from the majority)); *Holloway*, 566 F.2d

at 662 (rejecting position that "'sex' as used above is [sy]nonymous with 'gender,'" observing

---

[2] The EEOC Brochure is the only agency policy document cited by Plaintiffs in the Complaint,
although they also note three prior decisions by the EEOC in individual cases.   *See* Am. Compl.
¶ 11 (citing *Baldwin* 2015 WL 4396741; *Macy*, 2012 WL 1435995); Am. Compl. ¶ 13 (citing
*Lusardi v. Dep't of the Army*, 2015 WL 1607756 (Apr. 1, 2015)).

that "[t]he manifest purpose of Title VII's prohibition against sex discrimination in employment is to ensure that men and women are treated equally"). And "discrimination" requires a showing that an employer has treated "similarly situated employees" of different sexes unequally. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 258-59 (1981); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) (plurality op.) (to succeed in a claim of "sex stereotyping" under Title VII, a "plaintiff must show that the employer actually relied on her [or his] gender in making its decision"). Title VII does not proscribe employment practices that take account of the sex of employees but do not impose differential burdens on similarly situated members of each sex, such as sex-specific restrooms.

With respect to gender identity in particular, a Department of Justice Memorandum promulgated by the AG on October 4, 2017, confirms that this position reflects the meaning of Title VII "as written by Congress" and is "a conclusion of law, not policy." *See* Memorandum, *Revised Treatment of Transgender Employment Discrimination Claims Under Title VII of the Civil Rights Act* (Oct. 4, 2017), *available at*: https://www.justice.gov/ag/page/file/1006981/download ("Title VII Memorandum"). The Title VII Memorandum makes clear that "Title VII does not prohibit discrimination based on gender identity *per se* . . . by its terms." *Id.* The Memorandum directs that "the Department of Justice will take that position in all pending and future matters," while simultaneously requiring the Department to continue "to affirm the dignity of all people, including transgender individuals." *Id.*

Separately, on May 4, 2017, the President recognized "the fundamental right to religious liberty as Americans' first freedom" through Executive Order ("EO") 13798. *Promoting Free Speech and Religious Liberty*, Exec. Order 13798 at § 1, 82 FR 21675 (May 4, 2017). Noting that "[f]ederal law protects the freedom of Americans and their organizations to exercise religion

6

and participate fully in civic life without undue interference by the Federal Government," EO 13798 requires the entire "executive branch to vigorously enforce Federal law's robust protections for religious freedom," and directs the Attorney General to "issue guidance interpreting religious liberty protections in Federal law." *Id.* at §§ 1, 4.

On October 6, 2017, pursuant to EO 13798, the Attorney General issued guidance interpreting religious liberty protections in the form of a "memorandum and appendix to guide all administrative agencies and executive departments in the execution of federal law." *Federal Law Protections for Religious Liberty*, AG's Memorandum, 82 FR 49668-01, 2017 WL 4805663 (Oct. 6, 2017) ("Religious Liberty Memorandum"). The Religious Liberty Memorandum explained, citing relevant constitutional and statutory authority and judicial precedent, several fundamental principles of the protection of religious freedom. As relevant to the claims here, the Religious Liberty Memorandum specifically stated the following:

- "The Free Exercise Clause protects not just persons, but persons collectively exercising their religion through churches or other religious denominations, religious organizations, schools, private associations, and even businesses." *Id.* at ¶ 3;

- "[O]rganizations do not give up their religious-liberty protections by . . . seeking to earn or earning a living; by employing others to do the same." ¶ 4;

- The Religious Freedom Restoration Act of 1993 ("RFRA") "prohibits the federal government from substantially burdening [the] exercise of religion, unless the federal government demonstrates that application of such burden to the religious adherent is the least restrictive means of achieving a compelling governmental interest." *Id.* at ¶ 10;

- "RFRA applies to all actions by federal administrative agencies, including rulemaking, adjudication or other enforcement actions, and grant or contract distribution and administration," and "extends not just to individuals, but also to organizations, associations, and at least some for-profit corporations." *Id* at ¶ 11;

- Under RFRA, "a government action that bans an aspect of an adherent's religious observance or practice, compels an act inconsistent with that observance or practice, or substantially pressures the adherent to modify such observance or practice, will qualify as a substantial burden on the exercise of religion." *Id.* at ¶ 13;

7

- Under Title VII, "religious organizations may choose to employ only persons whose beliefs and conduct are consistent with the organizations' religious precepts," and a "similar right" may be conferred on religious employers "under RFRA or the Religion Clauses of the Constitution." *Id.* at ¶ 19.

The Religious Liberty Guidance thereby emphasized that "all aspects of religious observance and practice . . . should be reasonably accommodated in all government activity." *Id.* at ¶ 17a.  To date, the EEOC has not adopted any policy guidance addressing the application of Executive Order 13798 or the Religious Liberty Memorandum to its activities.

## STANDARD OF REVIEW

Defendants move for dismissal of this action under Rule 12(b)(1).  A court dismisses a case under Rule 12(b)(1) for lack of subject matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted).  "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers," *Renne v. Geary*, 501 U.S. 312, 316 (1991), and so the burden of proof on a Rule 12(b)(1) motion to dismiss rests with the party asserting jurisdiction.  In ruling on a 12(b)(1) motion, a court may rely upon: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts in the record, or (3) the complaint supplemented by undisputed facts in addition to the court's resolution of disputed facts." *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).  The Court should "consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## ARGUMENT

"'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction.'" *Raines v. Byrd*, 521

8

U.S. 811, 818 (1997) (*quoting Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37 (1976)).  "Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies,'" *Hein v. Freedom from Religion Found.*, 551 U.S. 587, 597 (2007), however, "it does not attempt to define those terms." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  In order to effectuate the Constitution's mandate, the Supreme Court has developed the doctrines of standing and the similar "constitutional prerequisite to the exercise of jurisdiction," ripeness.  *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002); *see Kowalski v. Tesmer*, 543 U.S. 125, 128–29 (2004).  These doctrines "often overlap in practice," *Tex. v. U.S.*, 497 F.3d 491, 496 (5th Cir. 2007), because they "originate from the same Article III limitation."  *S.B.A. List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014).

Although the Amended Complaint alleges several purported injuries to the Pastor Council, its members, and Braidwood, none of these injuries is individualized and concrete, traceable to an action by either the AG or the EEOC, and ripe for judicial review.  Specifically, Plaintiffs have identified no harm caused to them by the EEOC Brochure; no action by the EEOC with regard to Braidwood or a member of the Pastor Council; no instance in which any plaintiff has been affected by the EEOC's interpretation in the context of an employment decision; and no circumstance in which Plaintiffs face an actual choice between "obeying civil authorities" and violating their religious beliefs regarding sexual orientation or gender identity. Further, neither the single sentence asserting a "threat of enforcement," Am. Compl. ¶ 83, nor statements by a third-party regarding the meaning of the Supreme Court's opinion in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), assert an actual injury attributable to EEOC or the DOJ sufficient to establish standing.  In short, judicial review is not available for an abstract and free-standing legal question, such as whether a religious exemption applies broadly to Title VII, and

the intangible and speculative injuries identified by Plaintiffs and the mere existence of the

nonbinding policy guidance in the EEOC brochure are insufficient to make this dispute concrete.

**I.    There is No Article III Standing to Support this Action.**

"Article III standing is a jurisdictional requirement," *NAACP v. City of Kyle*, 626 F.3d

233, 237 (5th Cir. 2010), and "[w]ithout jurisdiction the court cannot proceed *at all* in any

cause." *Id*. (quoting *Haywood v. Drown*, 556 U.S. 729, 755 (2009)) (emphasis in original).  The

requirement that Plaintiffs have standing encompasses three elements, all of which must be

satisfied for each Plaintiff and each claim in every lawsuit.  *Moore v. Bryant*, 853 F.3d 245, 248-

49 (5th Cir. 2017); *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("a plaintiff

must demonstrate standing for each claim ... [and] separately for each form of relief sought");

*Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("Standing is not dispensed in gross").  A "plaintiff

must have suffered an injury in fact," which requires the "invasion of a legally protected interest"

in a "concrete and particularized, and[] actual or imminent" manner." *Moore*, 853 F.3d at 248

(citations omitted).  Next, "there must be a causal connection between the injury and the conduct

complained of; the injury has to be fairly traceable to the challenged action of the defendant, and

not the result of the independent action of some third party not before the court." *Id*. at 191

(cleaned up).  Finally, "it must be likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision." *Id*. (internal quotation marks omitted).  In order "to meet the

Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a

plaintiff must allege facts from which it appears there is a substantial likelihood that he will

suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003).

**A.   There is No Injury to Support Standing for Claims Against the Attorney General.**

The complaint in this case is bereft of any allegation that implicates the Attorney General in the legal issues that Plaintiffs seek to put before this Court.  Plaintiffs have identified no DOJ policy that they seek to challenge and no action of the Attorney General with which they disagree.  Moreover, there is no apparent controversy between Plaintiffs and DOJ regarding the interpretation or application of Title VII to sexual orientation, gender identity, or religious employers.  Plaintiffs cast a skeptical eye on whether "Title VII outlaws employment discrimination on account of sexual orientation or gender identity," Am. Compl. at 1, and DOJ shares their view.  *See* DOJ Mem.  DOJ has stated—here and elsewhere—that Title VII does not reach discrimination based on sexual orientation and does not prohibit discrimination based on gender identity*,* as has been settled for decades.  *See, e.g.*, Br. for the Federal Respondent in Opposition to Petition for a Writ of Certiorari, *Harris Funeral Homes v. EEOC* (No. 18-107) (Oct. 24, 2018).  Nor is there a disagreement regarding the rights to religious freedom of religious institutions and closely-held, religiously-operated businesses.  To the contrary, DOJ has promulgated the Religious Liberty Guidance, which documents the extensive protections for religious freedom—including for "churches . . ., religious organizations, schools, private associations, and even businesses"—under Title VII, RFRA, and the Constitution.  *See* Religious Liberty Guidance at 2.

There can also be no conceivable injury to Plaintiffs from the Attorney General caused by the "threat of enforcement."  Compl. ¶ 83.  That is because the Attorney General enforces Title VII only against state and local government employers, not against private employers such as Braidwood or the members of the Pastor Council, including under the provision of law cited in the Amended Complaint.  *See* Am. Compl. at ¶ 7; 42 U.S.C. § 2000e-5(f)(1) (providing for

referral "to the Attorney General" only "[i]n the case of a . . . government, governmental agency, or political subdivision").  There is consequently no possibility that the Attorney General will enforce Title VII against Plaintiffs.[3]  Further, current DOJ policy would bar the Department from seeking to "enforce" EEOC's guidance even if it had authority to do so, because DOJ "may not use its enforcement authority to effectively convert agency guidance documents into binding rules."  *See* Mem. Limiting Use of Agency Guidance Documents in Affirmative Civil Enforcement Cases, Associate AG (Jan. 25, 2018), available at: https://www.justice.gov/file/1028756/download.  Thus, there is no threat of enforcement by DOJ that could inflict an injury on the Plaintiffs.

Because Plaintiffs must establish "standing to bring each of its claims against each defendant," and have not identified any injury to support standing for claims against the Attorney General, the claims against him should be dismissed.  *Coastal Habitat All. v. Patterson*, 601 F. Supp. 2d 868, 877 (W.D. Tex. 2008) (citing *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001); *see DaimlerChrysler*, 547 U.S. at 352; *Calzone v. Hawley*, 866 F.3d 866 (8th Cir. 2017).

**B. Injury and Traceability Are Lacking for the Claims Against the EEOC.**

1.  <u>Plaintiffs Have Not Established a Past or Present Injury from the EEOC Brochure.</u>

In contrast to DOJ, the EEOC does have authority to enforce Title VII against private employers such as Plaintiffs, but the Amended Complaint does not establish an injury traceable to the actions of the EEOC.  The sole EEOC "policy" identified in the Amended Complaint is the EEOC Brochure, *see supra* n.3, and Plaintiffs have not established that they have already suffered any harm from that document.  *See* Am. Compl. ¶¶ 11-13.

---

[3] Plaintiffs' speculation regarding DOJ's possible involvement in future appellate litigation, *see* Am. Compl. ¶ 7, particularly in this circumstance where no existing lower court litigation (or threat thereof) has been identified, also fails to satisfy Article III's injury requirements.  *See Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015).

Contrary to Plaintiffs' assertion that the "EEOC's announced interpretation of Title VII directly regulates" Plaintiffs' employment practices, Congress in Title VII has not endowed EEOC with the authority to issue substantive rules, only to promulgate procedural regulations. *See Arab Am. Oil Co.*, 499 U.S. 244, 257 (1991).  As a result, EEOC's Title VII guidance— whether in the Brochure or elsewhere—has no legal effect and is not binding.  This leaves Plaintiffs free to interpret Title VII in a different lawful way than EEOC, and EEOC's views do not require Plaintiffs to take any action or change their practices.  The EEOC Brochure also does not impose liability on employers, which could only occur following *de novo* review by a court of the meaning and application of Title VII.  *See Chandler v. Roudebush*, 425 U.S. 840, 845 (1976).  Thus, by its nature, the EEOC Brochure cannot give rise directly to any injury.

Significantly, the Plaintiffs do not allege that they have been subject to any enforcement action pursuant to the EEOC Brochure, or, for that matter, that they have taken any actions that could conceivably subject them to such an enforcement action.  The Pastor Council, for example, has not identified any employee of any member church who has "enter[ed] into a same-sex marriage" and has either sought "spousal benefits" for a "same-sex partner[]" or been "dismiss[ed] from employment" due to such a marriage.  *Id.* ¶ 25.  Similarly, Braidwood has not identified any employee who seeks to have the business "recognize same-sex marriage or spousal benefits," Compl. ¶ 34, who has sought "to use a restroom reserved for members of the opposite biological sex," *id.* ¶ 36, or received same-sex benefits from its health plan. *See id.* ¶ 37.

Rather, the only past or present harm alleged by Plaintiffs from the EEOC Brochure is that the interpretation of Title VII contained therein presents a dilemma between "violat[ing]" two of the "teachings of their religion," namely, "Biblical teaching on matters of sexuality," and "obey[ing] the civil authorities."  Am Compl. ¶ 79.  But as we have already explained, the

EEOC's guidance does not create legal requirements that must be obeyed.  Plaintiffs therefore remain free to adhere to their religious principles on matters of sexual orientation and gender identity *and* to obey the civil authorities, a point underscored by the fact that a different federal civil authority, the Department of Justice, agrees with Plaintiffs' views of Title VII.  *See infra* pp. 5-6 (citing, *e.g.*, Title VII Memorandum).

Braidwood likewise lacks an injury associated with the federal law requirement that employers "post notices describing the provisions of Title VII" in the workplace.  Am. Compl. ¶ 18.  The text of the sign in question restates nearly verbatim the *statutory* text of Title VII, not EEOC's interpretation, *compare id.* at ¶ 20 *with* 42 U.S.C. § 2000e-2(a), and it does not appear that Braidwood objects to the statutory text, if that text is interpreted according to its plain meaning.  At least, Braidwood does not allege that it needs any RFRA or First Amendment exemption from the ordinary interpretation of sex discrimination described above, and the Amended Complaint explicitly states that there is "no objection to . . . a sign that accurately describes Braidwood's obligations under federal law." *Id.* at ¶ 60.  Although Braidwood may prefer for the sign to include an explicit mention of the First Amendment or RFRA, that preference does not give rise to a cognizable injury.  At most, the denial of that preference amounts to a "psychological consequence . . . [from] observation of conduct," not an Article III injury in fact.  *See Valley Forge,* 454 U.S. 482.  And to the extent Braidwood seeks to plead an injury based upon the EEOC's possible consideration of future amendments to that sign, *see, e.g.*, Am. Compl. ¶ 20, any such injury is speculative and contingent on future events.

In short, because there is no allegation that the EEOC Brochure has led Plaintiffs to a circumstance where their religious beliefs and religious freedom rights are being directly affected, there is no past or present injury that suffices for standing in this action.

2. <u>Plaintiffs Have Identified No Credible Threat of Enforcement, Absent Which There is No Imminent Future Injury.</u>

The Complaint equally fails to make out a cognizable claim of injury related to "threat[s] of enforcement" or "penalties for following the teachings of their religion." Compl. ¶¶ 78, 83. The Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact and that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphases in original; internal citation omitted). These requirements assure "that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted).

Plaintiffs have not alleged a sufficiently "actual and well-founded fear that the law will be enforced against them" to constitute Article III injury. *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988). Such a "pre-enforcement challenge" satisfies Article III only where a party intends "to engage in a course of conduct . . . proscribed by a statute," *and* where there is a "credible threat of prosecution." *S.B.A. List*, 573 U.S. 159. "[T]he mere existence of a statute or regulation that a plaintiff reasonably believes should apply to and be enforced against him does not ordinarily create a justiciable case or controversy." *Nat'l Conf. of Catholic Bishops v. Smith* ("*Bishops Conference*"), 653 F.2d 535, 539 (D.C. Cir. 1981). Plaintiffs have not alleged any direct threat of enforcement by the EEOC against the Pastor Council's members or Braidwood. *See generally* Am. Compl. ¶¶ 75-87. Plaintiffs have also failed to provide any specifics about "when, where, or how" they "intend[] to exercise" their rights to religious freedom that would "illuminate[] the specifics of [the] claimed injury," by depicting an occasion when future enforcement would be likely. *Dermer v. Miami-Dade County*, 599 F.3d 1217, 1220-21 (11th Cir. 2010) (allegation of "chilling effect" to free speech from threat of future enforcement "is

insufficient to demonstrate an injury in fact").  Absent such specifics, Plaintiffs cannot set forth a

"credible threat" of enforcement by the EEOC, *Cruz v. Abbott*, 849 F.3d 594, 602 (5th Cir. 2017)

(no credible threat of prosecution where plaintiffs have not "taken steps" towards violating

statute), and "the injury alleged in this case remains wholly inchoate." *Elend v. Basham*, 471

F.3d 1199, 1208-09 (11th Cir. 2006) (no standing for previously-arrested protesters to challenge

policy based on uncertain plans to engage in future protest).

 The existence of a single suit brought by the EEOC against a closely held, religiously

operated funeral home in Michigan and pursued during a time when the United States agreed

with the EEOC's construction of Title VII does not change this analysis.  *See* Compl. at ¶¶ 25, 37

(citing *Harris Funeral Homes*, 884 F.3d 560).  To begin, Plaintiffs have not identified any

instance in which the EEOC has sued a religious institution comparable to the members of the

Pastor Council.  Further, in contrast to the defendant in *Harris Funeral Homes*, no employee of

Braidwood has been identified as a complainant to the EEOC regarding Braidwood's policy

forbidding employees from entering "a restroom reserved for members of the opposite biological

sex" alleging that he has been discharged as a result of his gender identity, or bringing any other

complaint under Title VII.  *Compare Harris Funeral Homes*, 884 F.3d 566 *with* Am. Compl. ¶¶

84-87.  And even if Harris Funeral Homes would be a member of the class that Braidwood seeks

to represent, it is black-letter law that Braidwood, as the putative class representative, must have

standing to sue in its own right.  *See* William B. Rubenstein, Newberg on Class Actions § 2:1

(5th ed.) ("In class action cases, the standing inquiry focuses on the class representatives. The

class representatives must have individual standing in order to sue"); *Bertulli v. Independent

Ass'n of Continental Pilots*, 242 F.3d 290, 294 n.9 (5th Cir. 2001).  Because Plaintiffs have not

identified instances of enforcement that are "sufficiently similar to [the] conduct in this case such

that Plaintiffs have asserted a well-pleaded fear of" enforcement, they fail to meet that threshold requirement.  *Hoyt v. City of El Paso, Tex.*, 878 F. Supp. 2d 721, 738 (W.D. Tex. 2012) (no standing for challenge to recall petition laws by plaintiffs alleging threats of prosecution).

The decision of the D.C. Circuit in *Bishops Conference* is instructive.  There, two religious organizations sought declaratory and injunctive relief with respect to "EEOC Guidelines . . . which interpret[ed] the Pregnancy Discrimination Act" and sought to represent a class of employers with, *inter alia*, religious objections to the practice of abortion.  653 F.2d 537-38 & n.1.  Although Plaintiffs described the effects of those guidelines on their members' activities in some detail, the D.C. Circuit held jurisdiction to be lacking.  As it explained:

> In this case we face a question that is not presented in concrete adversarial terms.
> The government has not initiated and, according to the record before us, does not
> plan to institute any kind of proceedings against the plaintiffs. . . [who]
> themselves have only described their programs and their employees in general
> terms, *e.g.*, they employ '310 lay persons, a substantial number of whom are non-
> Catholic law women.' . . . We lack sufficient facts to analyze how the PDA
> actually impacts on the plaintiffs although they allege that it does . . . .
> [E]mployees of these two religious organizations are as likely to be aware of
> plaintiffs' opposition to abortions as they are unlikely, as a consequence of their
> awareness, to request such benefits . . . .
>
> The absence of a problem of sufficient immediacy underscores the lack of an
> actual 'case or controversy,' even more than the absence of an adequate factual
> record.  The mere existence of a statute does not create a 'case or controversy,'
> particularly when, as here, the position of the government itself is far from
> definite [and there are] inconsistencies between the EEOC guidelines and the
> government's interpretation of the PDA in its memoranda.

653 F.2d at 540-44 (internal citations omitted).  As in *Bishops Conference*, resolution of the legal questions here must await imminent enforcement action or other circumstances that present a true case or controversy within the meaning of Article III.

3.  Any Injury Is Not Traceable to the EEOC

    a.  The EEOC Brochure Does Not Create a Traceable Injury

Even if Plaintiffs had established an injury-in-fact, that injury would not be traceable to the EEOC Brochure, the only agency policy document identified in the Amended Complaint.  As discussed above, the Brochure is not binding and merely sets forth the EEOC's description of what "the EEOC and courts have said."  EEOC Brochure, ECF No. 19-1, at 1.  This means that any legal consequences that flow from an employer's action taken based on sexual orientation or gender identity would flow from court decisions applying Title VII—that is, if the statute has the meaning ascribed to it by EEOC and not DOJ—not from the Brochure or any other EEOC guidance.  *See Luminant Generation Co., LLC v. EPA*, 757 F.3d 439, 442 (5th Cir. 2014) (Clean Air Act and state implementation plan, *not* challenged EPA notices, "set forth . . . rights and obligations"); *accord Klayman v. Pres. of the U.S.*, 689 Fed. Appx. 921, 924 (11th Cir. 2017) (no standing where Plaintiff "failed to allege any risk of future harm traceable to the [agency] Guidance itself, as opposed to the preexisting federal laws it describes.").  In the absence of the Brochure, the application of Title VII to sexual orientation or gender identity would remain exactly the same, and thus, the EEOC's interpretation therein does not force Plaintiffs to choose between sincerely-held religious beliefs and the law.  *See Luminant*, 757 F,3d at 442 (observing that the plaintiff had "no new legal obligation imposed on [them]," and had "lost no right . . . otherwise enjoyed").

In an effort to avoid this conclusion, the Amended Complaint alleges that EEOC guidance documents are "entitled to deference and receive deference from the judiciary." Compl. ¶ 83 (citing cases).  But the cases identified by Plaintiffs as providing such deference are inapposite: none arises in a circumstance where, as here, the Attorney General speaks for the

United States and presents a contradictory position about the scope of Title VII.[4]  *Cf. English v. Trump*, 279 F. Supp. 3d 307 (D.D.C. 2018) (no deference given to agency official's interpretation of agency's organic statute relative to contradictory DOJ position).  This context is critical, because the United States, through the Attorney General, enforces Title VII against state and local government employers, 42 U.S.C. 2000e-5(f)(1), one of the nation's largest employment sectors.  Under these circumstances, it is not correct that the EEOC Brochure is "entitled to deference," Am. Compl. ¶ 83, particularly where the agency position purports to be only interpretive in nature.  *See Christensen v. Harris County*, 529 U.S. 576, 586-87 (2000); *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 189 n.5 (5th Cir. 2003).

Plaintiffs also cite to no authority demonstrating that the independent decisions by Article III courts to give "deference" to an agency interpretation give rise to a traceable injury from that interpretation.  Adopting a novel principle of such injury would be particularly inappropriate here where the Attorney General has explained that the plain meaning of Title VII does not support the EEOC's interpretation.  *See Carcieri v. Salazar*, 555 U.S. 379, 387-391 (2009) (where "the statutory text is plain and unambiguous," courts "must apply the statute according to its terms," without deference to agency constructions); *Miss. Poultry v. Madigan*, 992 F.2d 1359,

---

[4] In *Griggs v. Duke Power Co.*, 401 U.S. 424, 433-34 (1971), the EEOC's guidelines represented the position of the United States and DOJ.  *See* Br. for the United States as Amicus Curiae, *Griggs v. Duke Power Co.*, 1970 WL 122637 (Sept. 4, 1970).  And nothing in *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008) or *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 427 (4th Cir. 1999) indicates that the EEOC's guidelines were contradicted by DOJ guidance.  The deference accorded by the Supreme Court to the EEOC interpretation in *Griggs* is rendered further irrelevant because that decision predated the Court's subsequent explanation in *Arabian Am. Oil Co.* and *Gen. Elec. v. Gilbert*, 429 U.S. 125, 141-42 (1976) that "Congress, in enacting Title VII, did not confer upon the EEOC authority to promulgate rules or regulations."  Those cases emphasized the importance of whether the agency's interpretation was "contemporaneous with [the statute's] enactment."  Measured by this standard, the deference accorded the guidelines in *Griggs*—"issued August 24, 1966," 401 U.S. at 433, n.9, just two years after the 1964 enactment of Title VII—has no bearing on the deference due today to a newly-reversed EEOC interpretation.

19

1368 (5th Cir. 1993) ("no deference" in context of "unambiguous" statute).

> ### b. Because the Brochure Does Not Address the Scope of Religious Exemptions to Title VII, There is No Traceable Injury to Support Plaintiffs' APA Claim.

For similar reasons, Plaintiffs' effort to recast their claims in the form of an APA challenge to the EEOC Brochure also fails to identify a traceable injury. *Compare* Am. Compl. ¶¶ 70-71 *with* Compl., ECF No. 1. Although this Court has held that advisory EEOC guidance may cause injury and give rise to an APA challenge to "final agency action" where such guidance "direct[s] Plaintiffs to alter their policies," *Texas v. United States* ("*Tex.-EEOC*"), 200 F. Supp. 3d 810, 822 (N.D. Tex. 2016), this standard is not satisfied here. The EEOC Brochure addresses a narrow subject: the EEOC's description of its own statements and those of courts regarding the interpretation of Title VII, and nowhere addresses principles of religious liberty or its application to a religious institution or business. Notwithstanding the direction to agencies provided by the President in EO 13798, the EEOC has not made a statement "definitive in nature" regarding the question at issue here— whether "RFRA and the First Amendment limit [EEOC]'s ability to enforce Title VII" broadly against employers who object on religious grounds—and thus, there has been no injury to Plaintiffs associated with a final agency action on that question. *See Texas v. United States* ("*Tex.-HHS*"), 300 F. Supp. 3d 810, 838 (N.D. Tex. 2018) (applying *U.S. Army Corps of Eng'rs v. Hawkes*, 136 S. Ct. 1807 (2016)).[5] Indeed, as with the interpretation of Title VII itself, application of RFRA and the First Amendment to Title VII would remain exactly the same regardless of the contents of the EEOC Brochure. *See*

---

[5] This Court's opinions in *Tex.-EEOC* and *Tex.-HHS* illustrate the overlapping nature of the inquiry into standing with that of whether an agency has engaged in "final agency action." An agency's expression of its views is not final agency action if it is "advisory in nature" or fails to "give[] rise to direct and appreciable legal consequences," *Tex.-HHS*, 300 F. Supp. 3d at 838-39. Where this is the case, Plaintiffs will predictably struggle to articulate an injury-in-fact traceable to the agency's expression of its views, as illustrated by the Amended Complaint in this action.

20

*Luminant*, 757 F.3d 442.  Accordingly, as the EEOC has not imposed a "new legal obligation" regarding religious entities, there is no traceable injury as to this issue.  *See id.*

        c.   <u>The Actions of Braidwood's Third-Party Benefits Administrator Do Not Give Rise to an Injury Traceable to EEOC.</u>

The traceability requirement of standing requires that an alleged injury be "fairly trace[able] to the challenged action of the defendant," and not the result of independent action by a third-party not before the Court.  *See Bennett v. Spear*, 520 U.S. 154, 157 (1997).  In the Amended Complaint, Braidwood has added a recent change in its self-insured health plan as a purported injury, *see* Am. Compl. at ¶¶ 39-43, 84, but this change falls precisely in the realm of the type of action of an independent third party that cannot be traced to EEOC.  As Plaintiffs' own Exhibit 5 illustrates, Entrust, the "third party administrator," explained that its actions were not due to any directive from EEOC, but because "we firmly believe that [the] definition . . . is in line with the clear law of the United States."  Am. Compl. Ex. 5 (Feb. 22, 2019 letter from Entrust).  Entrust further explained its actions as the result of its own analysis of the Supreme Court's "decision in *Obergefell*."  *Id.*; *see* Am. Compl. at Ex. 3 (Dec. 20, 2018 letter from Entrust) (stating that terms "were clarified to ensure that the term of "Spouse" incorporated the Supreme Court's intent in Obergefell").  Plainly, any harm associated with the inclusion of same-sex spouses in Braidwood's benefit plan is not traceable to EEOC, but to Entrust.[6]

In sum, Plaintiffs have suffered no injury cognizable under Article III and traceable to the past, present, or future actions of Defendants.[7]  Accordingly, this case should be dismissed.

---

[6] Further, as Braidwood does not dispute, it is the Affordable Care Act, not EEOC, to which the underlying health-insurance coverage requirement is traceable.  *See* Am. Compl. at ¶ 37.

[7] The third requirement for Article III standing, redressability, "typically overlap[s] with" traceability "as two sides of a causation coin."  *Dynalantic Corp. v. Dep't of Def.*, 115 F.3d 1012, 1017 (D.C.Cir.1997).  So too here: even if EEOC changed its interpretation as Plaintiffs have requested, Plaintiffs have not established any likelihood the third-party administrator would act differently given that administrator's reliance on *Obergefell*.  As explained above, the

## II.     Plaintiffs' Claims are Unripe.

Even if Plaintiffs could demonstrate standing to maintain this suit—which they cannot—their request for a decision opining on the existence of a religious exemption to Title VII and associated declaratory and injunctive relief is not ripe.  The ripeness doctrine "separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review."  *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000).  "[I]ts basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements."  *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967).  Courts assessing whether ripeness is met evaluate two issues: (1) the fitness of the matter for adjudication, and (2) the hardship to the plaintiff of withholding review.  *See Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010).  Here, Plaintiffs' claims are not fit for review because there is no sufficiently concrete dispute and adverse party, thereby nullifying the Court's ability to ground any judicial decision in specific facts.  In addition, there would be no hardship to the Plaintiffs if the Court leaves unresolved the abstract dispute presented.

With regard to claims under the Declaratory Judgment Act, courts assess adversity and concreteness in the context of ripeness by deciding whether an "actual controversy" exists between the parties.  *Orix Credit All., Inc., v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000); *see Regions Ins. Inc. v. Ace Prop. & Cas. Ins. Co.*, 80 F. Supp. 3d 730, 735 (M.D. La. 2015).  Such actual controversy requires "sufficient immediacy and reality" in a dispute "between parties having adverse legal interests," *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986), as measured by whether the request for a declaratory judgment "relate[s] to an actual claim arising under federal law that another asserts against [them]."  *Collin Cty., Texas*

shortcomings in the pleadings here are more properly interpreted through the traceability lens.

*v. Homeowners Ass'n for Values Essential to Neighborhoods* ("*HAVEN*"), 915 F.2d 167, 170-71

(5th Cir. 1990).  In other words, "it is the underlying cause of action of the defendant against the

plaintiff that is actually litigated."  *Id.* at 171; *see id.* at 172 ("The Act is designed to allow

potential defendants in cases of actual and *immediate* controversy within the subject matter

jurisdiction of the federal courts to petition the court for an early resolution of the parties[']

rights and liabilities" (emphasis added)).[8]

    Here, there is no actual and immediate controversy between the parties that necessitates

resolving the legal questions set forth in the Amended Complaint regarding the rights to religious

freedom of religious institutions and closely-held, religiously-operated businesses.  There may be

no controversy between Plaintiffs and DOJ at all, and Plaintiffs do not allege any instance in

which the EEOC has threatened Title VII litigation concerning the religious beliefs or

employment-related policies or actions of any member of the Pastor Council or Braidwood.  *See*

Compl. ¶¶ 19-38.  The EEOC has not announced any guidance regarding the application of its

Title VII interpretations to religious organizations or closely-held, religiously-operated

businesses.  The EEOC Brochure does not describe its contents as "enforcement guidance" that

would apply to Plaintiffs, *compare generally* ECF No. 19-1 *with Texas v. EEOC*, 827 F.3d 372

(5th Cir. 2016), withdrawn on other grounds, 838 F.3d 511, and the EEOC's decision to pursue

an enforcement action in *Harris Funeral Homes*—which was initiated prior to the requirement in

EO 13798 for "vigorous[] enforce[ment] of Federal law's robust protections for religious

freedom," 82 FR 21675—does not establish the EEOC Brochure is such a document.  Plaintiffs

---

[8] This underscores that the lack of ripeness is particularly acute with respect to Plaintiffs' claims
against the Attorney General because it is the EEOC, not DOJ, that would bring any Title VII
claim against Plaintiffs.  *See* 42 U.S.C. 2000e-5.  Thus, as to the Department, there is no
"underlying cause of action of the defendant against the plaintiff[s] that [could be] actually
litigated."  *HAVEN*, 915 F.2d at 171 ("A party bringing a declaratory judgment must have been a
proper party" to the underlying suit").

have therefore failed to demonstrate that there is an actual, immediate likelihood of a cause of action asserted against them under federal law that can be litigated in advance as a declaratory judgment action.  *See HAVEN*, 915 F.2d 171.  Because courts "do not . . . give advisory opinions about issues as to which there are not [yet] adverse parties," *Princeton U. v. Schmid*, 455 U.S. 100, 102 (1982), Plaintiffs' claims should be dismissed as unripe.

Ripeness is also lacking with regard to Braidwood's claim of injury from EEOC's alleged plans "to amend the sign to include" sexual orientation or gender identity alongside Title VII's statutory language.  As no such plans have been announced by EEOC, this typifies the type of future injury that lacks "sufficient immediacy and reality" because it "may never occur."  *Foster*, 205 F.3d at 857.  Braidwood asserts that it is being "compelled" to engage in speech "that is misleading, incomplete, and ambiguous," Am. Compl. ¶ 60, but these claims are not ripe and cannot reasonably be adjudicated at this time, given that EEOC has not proposed any specific text against which Braidwood's compelled-speech claim could be evaluated.

Plaintiffs' claims are also unripe for the reasons that there would be no hardship to Plaintiffs if the Court declines to review their claims.  The EEOC first posted the Brochure on its website in February 2016.  Plaintiffs do not allege that in the intervening years, they have been unable to hire, fire, or regulate their employees as they choose, or that they have undertaken any other change in practice in response to the EEOC's brochure.  Nor have Plaintiffs alleged that they have suffered any hardship in their day-to-day operations from not having a federal court opine on the Brochure or the application of Title VII interpretations regarding sexual orientation or gender identity to religious objectors.  Thus, Plaintiffs would not be harmed if the Court declined to hear this hypothetical Title VII dispute; rather, they would remain in the same position they have been in for years—they can continue to act consistent with their religious

24

beliefs.  Indeed, if Plaintiffs are certain that their "view of Title VII is correct, [they] face[] no

hardship in waiting for [a] day," entirely hypothetical for the time being, when they can express

that view in defense of an enforcement action.  *Tex. v. EEOC*, 827 F.3d 393 (Higginbotham, J.,

dissenting); *see Roman Catholic Diocese of Dallas v. Sebelius*, 927 F. Supp. 2d 406, 426 (N.D.

Tex. 2013).  The hardship prong thereby reinforces that dismissal for lack of ripeness is proper.

***

Plaintiffs' Amended Complaint continues to set forth legal issues of great interest and

importance concerning the scope of Title VII and the need to protect the foundational principles

of religious freedom enshrined in the First Amendment, RFRA, and elsewhere.  The Judicial

Branch has routinely provided a forum for religious persons, institutions, and closely-held

religiously-operated businesses to obtain recognition for the constitutional and statutory shields

that protect religious institutions and closely-held, religiously-operated businesses alike from the

mandates of bureaucracy and democracy alike.  *See, e.g.*, *Burwell v. Hobby Lobby*, 134 S. Ct.

2751, 2775 (2014); *Hosanna-Tabor*, 565 U.S. 171; *Gonzales v. O Centro Espirita Beneficente

Uniao do Vegetal*, 546 U.S. 418 (2006); *Gallagher v. Crown Kosher Super Market of Mass.,

Inc*., 366 U.S. 617 (1961).  As befits the "the proper—and properly limited—role of the courts in

a democratic society," *Warth v. Seldin*, 422 U.S. 490, 498 (1975), these cases have decided

questions of religious freedom by examining the applicable facts "with care and in detail," and

not with excessive "breadth and sweep."  *Burwell*, 134 S. Ct. 2785 (Kennedy, J., concurring).  As

the D.C. Circuit explained in *Bishops Conference*, the important issues identified by Plaintiffs

here "may be raised in any future suit by the EEOC [in which] Plaintiffs will have ample

opportunity to present their constitutional defenses . . . should [such] even take place," or when

other actions by Plaintiffs or others establish a proper case or controversy.  653 F.2d at 543-44.

25

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims should be dismissed.


Dated:  May 1, 2019                          Respectfully submitted,

                                             JOSEPH H. HUNT
                                             Assistant Attorney General

                                             ERIN NEALY COX
                                             United States Attorney

                                               /s/ Eric J. Soskin
                                             CARLOTTA P. WELLS
                                             Assistant Branch Director
                                             ERIC J. SOSKIN (PA Bar #200663)
                                             Senior Trial Counsel
                                             U.S. Department of Justice
                                             Civil Division, Rm. 12002
                                             1100 L Street, NW
                                             Washington, D.C. 20530
                                             Telephone: (202) 353-0533
                                             Fax: (202) 616-8470
                                             Email: Eric.Soskin@usdoj.gov
                                             *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

On May 1, 2019, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.

 /s/ Eric J. Soskin
Eric J. Soskin
