IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION

---

U.S. PASTOR COUNCIL, et al.,

    Plaintiffs,

v.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, et al.,

    Defendants.

Case No. 4:18-cv-00824-O

**REPLY IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO DISMISS**

## INTRODUCTION

Plaintiffs seek a broad pronouncement about the intersection of the guarantees of religious freedom in the First Amendment and the Religious Freedom Restoration Act ("RFRA") with Title VII's prohibitions on discrimination. Because the Constitution does not allow judicial review of such questions in the abstract, however, Plaintiffs have not established jurisdiction.

The inadequacy in Plaintiffs' Amended Complaint is one of injury: specifically, the lack of a concrete injury traceable to an action by the Defendants and ripe for judicial review. Plaintiffs primarily cast their claims as a pre-enforcement challenge to the effort by the Equal Employment Opportunity Commission ("EEOC") to require them to adhere to its interpretation of Title VII. To bring such claims, Plaintiffs must fall within narrow jurisdictional parameters: they must intend "to engage in a course of conduct . . . proscribed by a statute," *and* identify a "credible threat of prosecution." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) ("*S.B.A. List*"). This standard is not met, and Plaintiffs' other efforts to establish standing are also insufficient.[1] Dismissal is therefore warranted.

## ARGUMENT

**I.  Plaintiffs Have Not Established Injury From Threatened Enforcement Of Title VII.**

In their brief, Plaintiffs acknowledge that their primary theory of standing constitutes a "pre-enforcement challenge[]" under the Declaratory Judgment Act ("DJA"). *See* Br. in Opposition at 2, ECF No. 31 ("Opp. Br."). *S.B.A. List* sets forth the requirements for pre-enforcement challenges that ensure that such claims meet the first requirement of Article III standing: "an injury in fact"—*i.e.*, the "invasion of a legally protected interest" in a "concrete

---

[1] As noted in Defendants' opening brief, "the longstanding position of the Department of Justice is that Title VII does not [proscribe] discrimination based on sexual orientation or gender identity," and thus, the first prong of this test cannot be met as a matter of law. Br. in Support of Mot. to Dismiss at 5, ECF No. 29 ("MTD Br.").

1

and particularized, and[] actual or imminent" manner." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). When, a party seeks injunctive relief, as Plaintiffs do here, he "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003).

For Plaintiffs to obtain standing based on their fear that the EEOC will enforce its interpretation of Title VII against them, these precedents require that "the threatened enforcement [be] sufficiently imminent." *S.B.A. List*, 573 U.S. at 159. Here, imminence is not met because Plaintiffs have had no interactions with EEOC—or anyone else—suggesting such enforcement is impending. *See id.* (requiring that a plaintiff state *both* "an intention to engage in a course of [protected] conduct, but proscribed by a statute," and "a credible threat of prosecution"). The present circumstances contrast sharply with those in which the standard has been met—*e.g.*, a speaker "warned to stop" and threatened with arrest by police officers; a commercial speaker who had "actively engaged in" and planned to continue proscribed conduct that could accidentally bring him afoul of the challenged law; an instance where the defendants "had charged 150 persons with violating" the challenged law. *Id.* at 159-61 (citing cases). For this reason, no injury-in-fact exists, and Plaintiffs' brief fails to demonstrate otherwise.

Plaintiffs largely set aside the standard for pre-enforcement explicitly set forth in *S.B.A. List* in favor of several earlier cases that should not be relied on here. In two of these, the Supreme Court reached the merits, without discussing the standing of the plaintiffs. *See* Opp. Br. at 4, 7-9, 15 (citing *Stenberg v. Carhart*, 530 U.S. 914 (2000) and *Gonzales v. Carhart*, 550 U.S. 124 (2007)).[2] Because "drive-by jurisdictional rulings of this sort . . . have no precedential

---

[2] In *Stenberg v. Carhart* and *Gonzales v. Carhart*, neither the Supreme Court nor the Eighth Circuit addressed standing. *See* 530 U.S. 914; *Carhart v. Stenberg*, 192 F.3d 1142 (8th Cir. 1999). The district court in the first case, *Stenberg*, did address standing, finding Article III satisfied principally by a factor not present here: "third-party standing" rooted in the "significant

2

effect," *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 91 (1998), these cases do not establish that Plaintiffs have standing here. Plaintiffs' reliance on *Doe v. Bolton*, 410 U.S. 179, 188 (1973), is likewise unavailing, as the Fifth Circuit has suggested that its application should be limited to the abortion context, where "the Supreme Court has visibly relaxed its traditional standing principles." *Margaret S. v. Edwards*, 794 F. 2d 994, 997 (5th Cir. 1986). These cases therefore provide no basis to relax the requirement that Plaintiffs demonstrate an imminent and credible threat of prosecution, as required under *S.B.A. List*. *See* 573 U.S. at 159.

Plaintiffs also object to Defendants' use of the document setting forth the EEOC's interpretation as the lens by which to interpret Plaintiffs' claims. *See* MTD Br. at 5; EEOC Brochure, *available at* https://bit.ly/2MnDzG5 (last visited on May 29, 2019). Instead, Plaintiffs assert that they are challenging broader and less-defined "enforcement policies" of EEOC, "regardless of whether . . . memorialized." Opp. Br. at 3. Defendants can hardly be faulted for choosing the Brochure as their focus: it is the Amended Complaint that sets forth the grounds of Plaintiffs' disagreement with EEOC by citing to the EEOC Brochure, *see* ECF No. 19 at ¶¶ 12-13, supplemented only by vague references to scattered enforcement cases. And it is Plaintiffs who have framed their challenge in substantial part as an Administrative Procedure Act claim, thereby elevating the importance of the Brochure in this matter. *See id.* at ¶¶ 70-74, 88(e). In any case, the inchoate "threats conveyed" by litigation against non-parties, Opp. Br. at 2, hardly supplies a more concrete, less abstract basis for injury than online publication of the Brochure.

Nor does Plaintiffs' newfound focus in their briefing on the single instance of enforcement at issue in *EEOC v. R.G. & G.R. Harris Funeral Homes*, 884 F.3d 560 (6th Cir. 2018) (*cert. granted* Apr. 22, 2019), advance their claims. According to Plaintiffs, the existence

---

obstacles" the plaintiff's patients faced to bringing their own suits. *Carhart v. Stenberg*, 972 F. Supp. 507, 521 (D. Neb. 1997).

of this single enforcement action "threaten[s] . . . religious employers throughout the United States . . . with lawsuits for operating their workplaces in accordance with their Christian faith." *Id.*; *see also id.* at 11 ("The EEOC . . . through its lawsuit against Harris Funeral Homes . . . is threatening enforcement action against religious employers."). Plaintiffs have identified no case, however, recognizing the existence of a single, unrelated lawsuit as sufficiently "threatening" to give rise to standing, *see* Opp. Br. at 2-9, and the most comparable of the examples identified in *S.B.A. List* involved not one, but scores of unrelated enforcement actions to make out a credible threat. *See* 573 U.S. at 161 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 15 (2010)).[3]

The scope of the threat that Plaintiffs read into *Harris* is also unreasonably broad. In contrast to the religiously-operated business at issue in *Harris*, Plaintiffs have not identified any religious institution akin to the members of the Pastor Council against which EEOC has ever sought enforcement of its interpretation of Title VII. Accordingly, even if a single lawsuit could communicate a "threat" to all comparable employers across America, that threat would not extend to the Pastor Council or its members.[4] Further, the facts in *Harris* involve an identified employee who, before any dispute arose, communicated with the business owner an intent to undergo a surgical gender transition, and brought an EEOC complaint only after having been discharged by the employer. *Harris*, 884 F.3d at 568-69. These facts belie Plaintiffs' contention

---

[3] Plaintiffs highlight *Doe* as a case where a threat was recognized in a lesser number of enforcement actions against third parties, but acknowledge that the Supreme Court there distinguished between a Connecticut statute under which a "single" prosecution had occurred (as is the case here) and the statute analyzed in *Doe*, where multiple prosecutions, totaling an unknown number, had occurred. *See* Opp. Br. at 6 (quoting *Doe*, 410 U.S. at 188-89).

[4] Plaintiffs contend that "only one plaintiff" with standing is needed, *see, e.g.*, Opp. Br. at 8, but this is not the case where the relief sought varies, because "a plaintiff must demonstrate standing . . . separately for each form of relief sought." *DaimlerChrysler v. Cuno*, 547 U.S. 332 (2006).

4

that EEOC's actions in *Harris* act as a threat to businesses in the abstract, even those that have a policy of "operating . . . workplaces in accordance with the[] Christian faith." Opp. Br. at 1-2.[5]

That *Harris* arises in this specific context underscores the deficiency in the claims here. Plaintiffs have not yet identified any specific actions that they have taken that are likely to lead to an enforcement action. Although Plaintiffs contend that "they are violating the EEOC's announced interpretation of Title VII" as a matter of their own policy, they never allege that their policies have manifested themselves in actual factual situations. They can identify no employee who has entered into a same-sex marriage, no staff member who has requested health plan coverage or other benefits for a same-sex partner, and no person who has sought access to facilities Plaintiffs have reserved for the exclusive use of members of the opposite biological sex, let alone any employee who has been dismissed or denied an employment benefit. In rejecting standing in a similar challenge, the D.C. Circuit noted that, as here, "[a]pparently no employee has demanded such benefits," possibly because "employees of these [] religious organizations are . . . likely to be aware of'" their religious views, and perhaps even share them, making them "unlikely . . . to request" that EEOC's Title VII interpretations be applied to them. *Nat'l Conf. of Catholic Bishops v. Smith* ("*Catholic Bishops*"), 653 F.2d 535, 540 (D.C. Cir. 1981).[6]

---

[5] Indeed, the sequence of events described in *Harris* highlight that disputes are likely to become concrete between an employer and employee sufficiently in advance of an EEOC complaint to enable Plaintiffs to bring their claims in the concrete factual context required by Article III. *See Harris*, 884 F.3d at 568-69.

[6] Plaintiffs dismiss the "absence of a problem of sufficient immediacy" in *Catholic Bishops*, 653 F.2d 541, as resting on "numerous reasons," not just the absence of a threat of enforcement. Opp. Br. at 8-9. Contrary to Plaintiffs' position, however, at least two of the other factors identified in *Catholic Bishops* are present here. As in that case, there are "inconsistencies" within the Executive Branch regarding the questions of "statutory interpretation" at issue. *Id.* And "Plaintiffs themselves have only described . . . their employees in general terms," leaving unclear what benefits "an employee actually demands" that would violate Plaintiffs' religious views until such time as an actual dispute occurs.

It is therefore hyperbole for Plaintiffs to suggest that complying with the limits of Article III requires them to endure the "*in terrorem* effects of the EEOC's 'regulatory guidance'" by "awaiting an EEOC enforcement action before asserting their rights." Opp. Br. at 1. To the contrary, as Defendants previously acknowledged, when Plaintiffs have "taken steps" to violate the EEOC's interpretation in a manner that places this dispute in a concrete factual context, MTD Br. at 16 (quoting *Cruz v. Abbott*, 849 F.3d 594, 602 (5th Cir. 2017)), or can otherwise establish that a "credible threat" of enforcement exists, *see S.B.A. List*, 573 U.S. at 159, they will be able to demonstrate sufficient injury for standing.[7]

## II. Plaintiffs' Allegations Of Other Future Injuries Also Fail To Establish Standing.

Plaintiffs' other purported future injuries are even more speculative. Quoting the Supreme Court's decision in *Stenberg*, 530 U.S. at 945, Plaintiffs contend that they have standing to sue the Department of Justice ("DOJ") because "future Attorneys General [could] 'choose to pursue' religious employers who violate the EEOC's interpretation of Title VII" even though DOJ does not share the EEOC's views on Title VII and has its own policies regarding religious liberty. Opp. Br. at 15; *see* MTD Br. at 4-7. Plaintiffs' reliance on *Stenberg* is misplaced. *Stenberg* involved conduct literally "proscribed by a statute" in its text, *S.B.A. List*, 573 U.S. 159, so the statute indisputably applied absent the narrowing interpretation rejected in

---

[7] Plaintiffs contend that they need not "wait for an actual dispute to arise" because "[l]itigation can take years" and they may be unable to litigate to completion "before the EEOC would initiate enforcement measures." Opp. Br. at 4-5. But that describes the archetypal declaratory-judgment case, which "commences at the instance of a party facing potential liability to another who may have an accrued claim at that time but has not yet commenced coercive litigation to pursue relief." *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 405 (S.D.N.Y. 2002). As the Supreme Court explained early in the history of the DJA, for a declaratory action to be proper, "[t]he disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Pub. Svc. Comm'n of Utah v. Wycoff*, 344 U.S. 237, 244 (1952).

that case. Here, by contrast, DOJ's interpretation *adheres* to the statutory text, which only applies if EEOC's interpretation is accepted. Further, as Plaintiffs appear to recognize, future injury attributable to DOJ would hardly be "certain," because it would only occur *if* DOJ attorneys "decide . . . to . . . pursue" appellate litigation. Opp. Br. at 16. Injury attributable to DOJ therefore "depend[s] on a chain of speculative contingencies"—a change in DOJ's interpretation of Title VII; a conclusion by DOJ that no religious exception applies to such interpretation; initiation of an enforcement action by the EEOC against Plaintiffs; and an appeal in that action—a chain sufficient to disrupt any "credible threat" of injury. *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1292 (5th Cir. 1992).[8]

### III.   Plaintiffs' Allegations Do Not Establish A Current Injury.

As an alternative to pre-enforcement review, Plaintiffs suggest that they are suffering three current injuries that suffice for standing purposes. None meets the standard for a concrete injury traceable to the action of Defendants.

First, Plaintiffs allege that the EEOC's brochure "forces them to choose between competing religious duties," namely, "obey[ing] the civil authorities" or "violat[ing] the Bible's teachings" by "endorsing or approving" behavior contrary to their faith. Opp. Br. at 12; ECF No. 19 at ¶ 79. Specifically, Plaintiffs rely on *Texas v. United States*, 352 F. Supp. 3d 658 (N.D. Tex. 2018), in which this Court held that "a straightforward constitutional injury" existed because "Congress legislated . . . and . . . Plaintiffs are the direct object of that legislation." *Id.* at 674-75. But here, Congress has *not* legislated; rather, EEOC has merely announced a new interpretation regarding Title VII that does not create legal requirements because Congress has

---

[8] Plaintiffs' claim seeking to "enjoin the EEOC from amending the sign" posted in workplaces, Am. Compl., ECF No. 19, at ¶ 88(k), also depends improperly on uncertain future contingencies. Plaintiffs' brief does not address those arguments, so, this claim for relief should be dismissed as abandoned. *See Brooks v. Firestone Polymers,* 70 F. Supp. 3d 816, 862 (E.D. Tex. 2014).

also *not* provided EEOC with substantive rulemaking authority.  *See* MTD Br. at 13 (citing *Arab Am. Oil Co.*, 499 U.S. 244, 257 (1991)).

Second, Plaintiffs assert that they are suffering a present injury from their purported objection to "the *physical presence* of the EEOC's signs in its places of employment."  Opp. Br. at 14-15 (emphasis in original).  This contention, however, is contradicted by the Amended Complaint, which makes explicit that Plaintiffs have no objection to posting an identical sign, with the same exact text, provided EEOC changes its interpretation of Title VII.  *See* ECF No. 19 at ¶ 60 (Plaintiffs have "no objection to . . . post[ing] a sign that accurately describes" federal law); *id.* at Ex. 2 (largely quoting 42 U.S.C. § 2000e-2).  This illustrates that Plaintiffs' sign-related injury is not caused by the sign itself, but merely by their knowledge of EEOC's non-binding interpretation of the sign, which is an insufficient basis for an Article III injury.

Finally, Plaintiffs' speculative effort to establish an injury traceable to Defendants from changes to their health plan is also inadequate.  "Traceability" tests whether an injury is caused by "the challenged action of the defendant," as opposed to resulting from "the independent action of some third party not before the court."  *Lujan*, 504 U.S. at 561.  Plaintiffs suggest that "the EEOC's brochure" is the "only *possible* source" of law on which Entrust, their third-party-benefits administrator could have drawn its conclusion that the "law of the United States" requires recognition of same-sex marriage.  Opp. Br. at 13.  Yet the Amended Complaint itself includes the correspondence in which Plaintiffs sought an explanation for the change, and that explanation is unconnected to Defendants.  Rather, Entrust stated that "Eligibility Terms were clarified to ensure that the term of 'Spouse' incorporated the Supreme Court's intent in *Obergefell v. Hodges*."  ECF No. 19-3; *see* ECF No. 19-5 (Entrust "altered its definition of 'Spouse'" because the "Supreme Court . . . decision in *Obergefell* . . .").  It is true that *Obergefell*

8

and the Entrust letter rely on the "Fourteenth Amendment, which governs only the behavior of state actors," Opp. Br. at 13, but the letter makes clear its foundation in the Supreme Court's perceived "intent." Notably, Entrust mentions *only Obergefell* and makes no reference to the EEOC and no reference to the EEOC's brochure. "Plaintiffs, as the parties invoking jurisdiction, bear the burden of demonstrating that the requirements for standing [including traceability] are satisfied," *Crane v. Napolitano*, 920 F. Supp. 2d 724, 732 (N.D. Tex. 2013), and they have not demonstrated that Entrust is relying on, or even aware of, EEOC's brochure.[9]

## IV.  Plaintiffs' Claims Are Unripe.

Ripeness "originate[s] from the same Article III limitation" as standing, *S.B.A. List*, 573 U.S. 157 n.5, and thereby also forms a "constitutional prerequisite" to this Court's jurisdiction. *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002). The ripeness doctrine "separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). In this case, as in many others, the ripeness inquiry "overlap[s] in practice" with the standing inquiry. *Tex. v. U.S.*, 497 F.3d 491, 496 (5th Cir. 2007). As set forth in Defendants' opening brief, ripeness is an appropriate lens through which to view Plaintiffs' abstract claims because their request for a religious exemption is, an "abstract disagreement[]," *Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967), that will be better adjudicated in the context of specific facts in which a religious exemption is sought. Defendants hereby renew those arguments.[10]

---

[9] Further, while alleging that an intention to persuade Entrust "that its changes" were not "legally compelled," Opp. Br. at 14, Plaintiffs provide no indication that they have already made an effort at persuasion, such as by presenting Entrust with DOJ's contrary interpretation of Title VII.

[10] Recognizing the overlap between ripeness and standing, Plaintiffs make only one distinct, ripeness-related argument: that they are not "required to await" EEOC guidance on religious employers because the EEOC Brochure "applies to *all* employers." Opp. Br. at 16. But

9

The Supreme Court's grant of certiorari in three cases concerning the meaning of Title VII reinforces the need for Plaintiffs' declaratory judgment claims to "relate to an actual claim arising under federal law that another asserts against [them]." *Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170-71 (5th Cir. 1990). On April 22, 2019, the Supreme Court announced that it would hear three cases: *Harris Funeral Homes v. EEOC*, No. 18-107, 2019 WL 1756679; *Altitude Express v. Zarda*, No. 17-1623, 2019 WL 1756678, and *Bostock v. Clayton County, Ga.*, No. 17-1618, 2019 WL 1756677. In *Harris Funeral Homes*, the Court will address "the following question: Whether Title VII prohibits discrimination against transgender people based on (1) their status as transgender or (2) sex stereotyping under *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)." In *Altitude Express* and *Bostock*, which have been consolidated for briefing and argument, the Court will address the question of whether Title VII's prohibition against discrimination because of "sex" includes a prohibition on discrimination based on sexual orientation. These certiorari grants create substantial doubt as to whether there is any "actual claim arising under federal law" that Defendants could assert against Plaintiffs, and thus, whether these claims are ripe for review.[11]

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims should be dismissed.

Dated: June 5, 2019                                  Respectfully submitted,

                                                     JOSEPH H. HUNT
                                                     Assistant Attorney General

---

Defendants highlighted the absence of such guidance because of the Executive Branch's renewed emphasis on religious liberty, as reflected in Exec. Order 13768. *See* MTD Br. at 6-7.

[11] Defendants intend to file (separately and contemporaneously with this Reply) a Motion for a Conditional Stay. That motion explains that, if the Court finds jurisdiction over Plaintiffs' claims, the Court should stay this action pending the Supreme Court's resolution of *Bostock*, *Altitude Express*, and *Harris*. The Court is respectfully referred to that filing for the full discussion contained therein.

ERIN NEALY COX
United States Attorney

  /s/ *Eric J. Soskin*
CARLOTTA P. WELLS
Assistant Branch Director
ERIC J. SOSKIN (PA Bar #200663)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Rm. 12002
1100 L Street, NW
Washington, D.C. 20530
Telephone: (202) 353-0533
Fax: (202) 616-8470
Email: Eric.Soskin@usdoj.gov
*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

On June 5, 2019, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.

   /s/ Eric J. Soskin
Eric J. Soskin