IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

| | |
|---|---|
| U.S. PASTOR COUNCIL, et al., | |
| Plaintiffs, | Case No. 4:18-cv-00824-O |
| v. | |
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al., | |
| Defendants. | |

**BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO DISMISS**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................................................i

TABLE OF AUTHORITIES .........................................................................................ii

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 3

STANDARD OF REVIEW .......................................................................................... 5

ARGUMENT ............................................................................................................... 6

I.   There is No Article III Standing to Sue the Attorney General. ............................... 7

II.  Plaintiffs' Claims are Unripe. ............................................................................... 9

CONCLUSION ........................................................................................................... 14

## TABLE OF AUTHORITIES

**CASES**

*Abbott Laboratories v. Gardner,*
    387 U.S. 136 (1967)..............................................................................................9

*Baldwin v. Foxx,*
    EEOC Doc. 0120133080, 2015 WL 4397641 (July 15, 2015)................................12

*Barrera–Montenegro v. United States,*
    74 F.3d 657 (5th Cir. 1996) ...................................................................................6

*Bauer v. Texas,*
    341 F.3d 352 (5th Cir. 2003) ..................................................................................8

*Bostock v. Clayton County Bd. of Comm'rs,*
    140 S. Ct. 1731 (2020).................................................................................*passim*

*Burwell v. Hobby Lobby,*
    134 S. Ct. 2751 (2014)...........................................................................................14

*Calzone v. Hawley,*
    866 F.3d 866 (8th Cir. 2017) ..................................................................................9

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013)...............................................................................................15

*Coastal Habitat Alliance v. Patterson,*
    601 F. Supp. 2d 868 (W.D. Tex. 2008)....................................................................9

*Collin Cty., Texas v. Homeowners Ass'n for Values Essential to Neighborhoods* ("*HAVEN*"),
    915 F.2d 167 (5th Cir. 1990) ..........................................................................10, 11

*Crane v. Johnson,*
    783 F.3d 244 (5th Cir. 2015)...................................................................................9

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006)............................................................................................7, 9

*EEOC v. R.G. & G.R. Harris Funeral Homes,*
    884 F.3d 560 (6th Cir. 2018) ................................................................................11

*Franciscan Alliance v. Burwell,*
    227 F. Supp. 3d 660 (N.D. Tex. 2016) ..................................................................12

*Gallagher v. Crown Kosher Super Market of Mass., Inc.,*
    366 U.S. 617 (1961)..................................................................................... 14

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
    546 U.S. 418 (2006)................................................................................. 2514

*Haywood v. Drown,*
    556 U.S. 729 (2009)..................................................................................... 7

*Hein v. Freedom from Religion Found.,*
    551 U.S. 587 (2007)..................................................................................... 6

*Home Builders Ass'n of Miss. v. City of Madison,*
    143 F.3d 1006 (5th Cir. 1998) ..................................................................... 5

*Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC,*
    565 U.S. 171 (2012)........................................................................... 1, 2, 14

*James v. City of Dallas,*
    254 F.3d 551 (5th Cir. 2001) ....................................................................... 9

*Kowalski v. Tesmer,*
    543 U.S. 125 (2004)..................................................................................... 6

*Lewis v. Casey,*
    518 U.S. 343 (1996)..................................................................................... 7

*Lopez v. City of Houston,*
    617 F.3d 336 (5th Cir. 2010) ....................................................................... 9

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)..................................................................................... 6

*Macy v. Holder,*
    EEOC DOC 0120120821, 2012 WL 1435995 (Apr. 20, 2012)................................ 12

*Middle South Energy, Inc. v. City of New Orleans,*
    800 F.2d 488 (5th Cir. 1986) ..................................................................... 10

*Moore v. Bryant,*
    853 F.2d 245 (5th Cir. 2017) ....................................................................... 7

*NAACP v. City of Kyle,*
    626 F.3d 233 (5th Cir. 2010) ....................................................................... 7

*Orix Credit All., Inc. v. Wolfe,*
  212 F.3d 891 (5th Cir. 2000) ................................................................................. 10

*Our Lady of Guadelupe School v. Morrissey-Berru,*
  140 S. Ct. 2049 (2020) ............................................................................. 2, 11, 14

*Princeton Univ. v. Schmid,*
455 U.S. 100 (1982) ............................................................................................... 11

*Raines v. Byrd,*
  521 U.S. 811 (1997) ................................................................................................ 6

*Ramming v. United States,*
  281 F.3d 158 (5th Cir. 2001) ................................................................................. 6

*Regions Ins., Inc. v. Ace Prop. & Cas. Ins. Co.,*
  80 F. Supp. 3d 730 (M.D. La. 2015) ................................................................... 10

*Renne v. Geary,*
  501 U.S. 312 (1991) ................................................................................................ 5

*Shields v. Norton,*
  289 F.3d 832 (5th Cir. 2002) ................................................................................. 6

*Simon v. Eastern Ky. Welfare Rights Organization,*
  426 U.S. 26 (1976) .................................................................................................. 6

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ................................................................................................ 6

*Texas v. United States,*
  497 F.3d 491 (5th Cir. 2007) ................................................................................. 6

*Texas v. United States,*
  523 U.S. 296 (1998) ................................................................................................ 9

*United Transp. Union v. Foster,*
  205 F.3d 851 (5th Cir. 2000) ................................................................................. 9

*Warth v. Seldin,*
  422 U.S. 490 (1975) .............................................................................................. 14

**STATUTES**

42 U.S.C. § 2000bb-1 ................................................................................... *passim*

42 U.S.C. § 2000e-2 ............................................................................................... 3

42 U.S.C. § 2000e-5 ........................................................................................ 8, 10


**REGULATIONS**

*Federal Law Protections for Religious Liberty*, Attorney General's Memorandum,
    82 Fed. Reg. 49668-01, 2017 WL 4805663 (Oct. 6, 2017) ............................... 4, 5, 8

**UNITED STATES CONSTITUTION**

U.S. Const. art. III, § 1 ............................................................................... *passim*


**OTHER AUTHORITIES**

*Promoting Free Speech and Religious Liberty*, Exec. Order 13,798,
    82 Fed. Reg 21,675 (May 4, 2017) ................................................................. 4, 5, 11

## INTRODUCTION

Like the two previous complaints in this case, Plaintiffs' Second Amended Class Action Complaint, ECF No. 19 ("SAC") fails to establish that Plaintiffs have standing to pursue their claims or that those claims are ripe.  In the SAC, the U.S. Pastor Council ("Pastor Council") and Braidwood Management, Inc. ("Braidwood") continue to assert claims against the Equal Employment Opportunity Commission ("EEOC") and the Attorney General, the head of the Department of Justice ("DOJ").  These Plaintiffs are now joined by an individual religious institution, Bear Creek Bible Church ("Bear Creek"). In the SAC, Plaintiffs challenge application of the Title VII protections for sexual orientation and gender identity described in *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731 (2020), to themselves and a putative class of similarly situated entities. Plaintiffs seek a declaratory judgment that Plaintiffs and putative class members are exempt from the application of those aspects of Title VII so that they may operate according to their sincere religious beliefs.  Plaintiffs also seek a declaratory judgment regarding how those aspects of Title VII apply to certain employment practices.

These claims do not meet the constitutional prerequisites for judicial review. There can be no doubt of the paramount "interest of religious groups in choosing who will . . . carry out their mission," *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171, 196  (2012), or that the Constitution, statutes, and other sources of law command every Branch to protect religious liberty as a fundamental right.  The Supreme Court noted in *Bostock* itself that it was "deeply concerned with preserving the promise of the free exercise of religion enshrined in our Constitution; that guarantee lies at the heart of our pluralistic society."  140 S. Ct. at 1754.  To that end, it noted that Title VII includes "an express statutory exception for religious organizations," that "the First Amendment can bar the application of employment

1

discrimination laws" under the ministerial exception, and that the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1, "might supersede Title VII's commands in appropriate cases." *Id.* At the President's direction, DOJ has provided guidance to every agency regarding these religious liberty protections. Nevertheless, the particular circumstances under which "RFRA and the First Amendment limit the application of Title VII to religious employers who object to homosexual and transgender behavior," SAC ¶ 17, must be litigated in the context of an actual case or controversy. As between these parties, no such controversy yet exists.

The "Case" or "Controversy" requirement in Article III of the Constitution limits "the judicial Power" exercised by federal courts to circumstances in which a court must resolve a concrete and specific legal dispute arising between adverse parties. The doctrines of standing and ripeness, as set forth by the Supreme Court and the Fifth Circuit, dictate that Plaintiffs may not sue the Attorney General or the EEOC until a concrete disagreement arises. As to the Attorney General, although the Declaratory Judgment Act permits a plaintiff to obtain an early resolution of a claim that a defendant intends to file against the plaintiff, the Attorney General does not have the power to bring claims against the Plaintiffs under Title VII. As to the EEOC, since the Supreme Court recognized the ministerial exception to Title VII in *Hosanna-Tabor*— an exception further defined in *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049 (2020)—that agency has rarely brought claims seeking to enforce Title VII as to non-ministerial employees of churches, and has not brought any since the confirmation of the current leadership of the EEOC. Thus, no Plaintiff has a need to secure relief as to the Attorney General, and neither Bear Creek nor the Pastor Council has a need to secure relief as to the EEOC, declaratory or otherwise. Nor does the SAC allege facts that suggest an imminent threat that the EEOC will sue Braidwood.

## BACKGROUND

Title VII of the Civil Rights Act of 1964 forbids employers from "discriminat[ing]" against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).  Title VII also forbids an employer from "limit[ing], segregat[ing], or classify[ing] . . . employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(2).[1]  In *Bostock*, the Supreme Court stated for the first time that, under the first of these provisions, "[a]n employer who fires an individual merely for being gay or transgender defies the law."  *Bostock*, 140 S. Ct.  1754.

In *Bostock*, the Supreme Court left many "questions for future cases," but expressed "deep[] concern with preserving the promise of the free exercise of religion enshrined in our Constitution," noting that this "guarantee lies at the heart of our pluralistic society."  140 S. Ct. 1754.  To that end, the Court pointed out that "Congress included an express statutory exception for religious organizations" in Title VII itself, and that the First Amendment, too, "can bar the application of employment discrimination laws" under the ministerial exception.  *Id*.  It also explained that, "[b]ecause RFRA operates as a kind of super statute, displacing the normal operation of other federal laws, it might supersede Title VII's commands in appropriate cases." *Id*.  But because the employer in *Bostock* had not pressed its RFRA-based defense in the

---

[1] In the SAC, Plaintiffs discuss 42 U.S.C. § 2000e-2(a)(2) as one of the "statutory prohibitions on 'sex' discrimination" animating Plaintiffs' claims.  *See* SAC ¶¶ 11-12.  However, Plaintiffs' specific claims seek "[e]xemptions to *Bostock*'s [i]nterpretation [o]f Title VII," and *Bostock* dealt specifically with 42 U.S.C. § 2000e-2(a)(1), not 42 U.S.C. § 2000e-2(a)(2).  *Compare* SAC at pp. 13-17 (setting forth "Claim 1," "Claim 2," "Claim 3," etc.) *with Bostock*, 140 S. Ct. 1738-39.

Supreme Court, the Court left the application of these "doctrines protecting religious liberty" for "careful consideration" in other cases. *Id.*

The protection of religious liberty, of course, is not reserved to the Judicial Branch alone. The President has affirmed "the fundamental right to religious liberty as Americans' first freedom" through Executive Order ("EO") 13798. *Promoting Free Speech and Religious Liberty*, Exec. Order 13798 at § 1, 82 FR 21675 (May 4, 2017). Emphasizing that "[f]ederal law protects the freedom of Americans and their organizations to exercise religion and participate fully in civic life without undue interference by the Federal Government," EO 13798 requires the entire "executive branch to vigorously enforce Federal law's robust protections for religious freedom," and directs the Attorney General to "issue guidance interpreting religious liberty protections in Federal law." *Id.* at §§ 1, 4.

On October 6, 2017, pursuant to EO 13798, the Attorney General issued guidance interpreting religious liberty protections in the form of a "memorandum and appendix to guide all administrative agencies and executive departments in the execution of federal law." *Federal Law Protections for Religious Liberty*, AG's Memorandum, 82 FR 49668-01, 2017 WL 4805663 (Oct. 6, 2017) ("Religious Liberty Memorandum"). Citing relevant constitutional and statutory authority and judicial precedent, the Religious Liberty Memorandum explained several fundamental principles of the protection of religious freedom. As relevant to the claims here, the Religious Liberty Memorandum specifically stated the following:

- "The Free Exercise Clause protects not just persons, but persons collectively exercising their religion through churches or other religious denominations, religious organizations, schools, private associations, and even businesses." *Id.* at ¶ 3;

- "[O]rganizations do not give up their religious-liberty protections by . . . seeking to earn or earning a living; by employing others to do the same." *Id.* at ¶ 4;

4

- The Religious Freedom Restoration Act of 1993 ("RFRA") "prohibits the federal government from substantially burdening [the] exercise of religion, unless the federal government demonstrates that application of such burden to the religious adherent is the least restrictive means of achieving a compelling governmental interest." *Id.* at ¶ 10;

- "RFRA applies to all actions by federal administrative agencies, including rulemaking, adjudication or other enforcement actions, and grant or contract distribution and administration," and "extends not just to individuals, but also to organizations, associations, and at least some for-profit corporations." *Id* at ¶ 11;

- Under RFRA, "a government action that bans an aspect of an adherent's religious observance or practice, compels an act inconsistent with that observance or practice, or substantially pressures the adherent to modify such observance or practice, will qualify as a substantial burden on the exercise of religion." *Id.* at ¶ 13;

- Under Title VII, "religious organizations may choose to employ only persons whose beliefs and conduct are consistent with the organizations' religious precepts," and a "similar right" may be conferred on religious employers "under RFRA or the Religion Clauses of the Constitution." *Id.* at ¶ 19.

The Religious Liberty Memorandum thereby emphasized that "all aspects of religious observance and practice . . . should be reasonably accommodated in all government activity." *Id.* at ¶ 17a.  To date, the EEOC has not adopted any policy guidance addressing the application of E.O. 13798 or the Religious Liberty Memorandum to its activities, but it also has not stated an intent to disregard the fundamental rights of Americans to practice their faiths.

## STANDARD OF REVIEW

Defendants move for dismissal of this action under Rule 12(b)(1).  A court dismisses a case under Rule 12(b)(1) for lack of subject matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted).  "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers," *Renne v. Geary*, 501 U.S. 312, 316 (1991), and so the burden of proof on a Rule 12(b)(1) motion to dismiss rests with

the party asserting jurisdiction.  In ruling on a 12(b)(1) motion, a court may rely upon: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts in the record, or (3) the complaint supplemented by undisputed facts in addition to the court's resolution of disputed facts." *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).  The Court should "consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## ARGUMENT

"'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction.'" *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37 (1976)).  "Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies,'" *Hein v. Freedom from Religion Found.*, 551 U.S. 587, 597 (2007); however, "it does not attempt to define those terms." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  In order to effectuate the Constitution's mandate, the Supreme Court has developed the doctrines of standing and the similar "constitutional prerequisite to the exercise of jurisdiction"—ripeness. *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002); *see also Kowalski v. Tesmer*, 543 U.S. 125, 128–29 (2004).  These doctrines "often overlap in practice," *Texas v. U.S.*, 497 F.3d 491, 496 (5th Cir. 2007), because they "originate from the same Article III limitation," *S.B.A. List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014).

Although the SAC alleges several injuries to Plaintiffs, none of these purported injuries provides standing to sue the Attorney General.  Nor does the SAC demonstrate that Plaintiffs' claims against the EEOC are ripe: Plaintiffs have identified no action by the EEOC with regard to any Plaintiff; no instance in which any Plaintiff has been affected by application of Title VII

to employment decisions made in the context of sexual orientation or gender identity; and no circumstance in which any Plaintiff has faced an actual choice between "obeying civil authorities" and violating their religious beliefs regarding sexual orientation or gender identity. In short, judicial review is not available for an abstract and free-standing legal question, such as whether a religious exemption applies broadly to Title VII for Plaintiffs and similarly situated entities, and the facts so far identified by Plaintiffs are insufficient to identify a concrete dispute.

## I.   There is No Article III Standing to Sue the Attorney General.

"Article III standing is a jurisdictional requirement," *NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010), and "[w]ithout jurisdiction the court cannot proceed *at all* in any cause." *Id*. (quoting *Haywood v. Drown*, 556 U.S. 729, 755 (2009)) (emphasis in original).  The requirement that Plaintiffs have standing encompasses three elements, all of which must be satisfied for each Plaintiff and each claim in every lawsuit.  *Moore v. Bryant*, 853 F.3d 245, 248-49 (5th Cir. 2017); *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("a plaintiff must demonstrate standing for each claim ... [and] separately for each form of relief sought"); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("Standing is not dispensed in gross").  A "plaintiff must have suffered an injury in fact," which requires the "invasion of a legally protected interest" in a "concrete and particularized, and[] actual or imminent" manner." *Moore*, 853 F.3d at 248 (citations omitted).  Next, "there must be a causal connection between the injury and the conduct complained of; the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id*. at 191 (cleaned up).  Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *Id*. (internal quotation marks omitted).  In order "to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a

plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003).

Plaintiffs' SAC lacks any sufficient allegation of an "actual or imminent" injury attributable to the Attorney General.  Plaintiffs have identified no DOJ policy that they seek to challenge, no statement or action by the Attorney General with which they disagree, and no non-speculative situation in which an action by the Attorney General might conceivably affect Plaintiffs.  Moreover, there is no apparent controversy between Plaintiffs and DOJ regarding the rights to religious freedom of religious institutions and closely-held, religiously-operated businesses.  To the contrary, DOJ has issued the Religious Liberty Memorandum, which documents the extensive protections for religious freedom—including for "churches . . ., religious organizations, schools, private associations, and even businesses"—under Title VII, RFRA, and the Constitution and affirms the Department's commitment to those protections.  *See* Religious Liberty Memorandum at 2.

There can also be no concrete injury to Plaintiffs from the Attorney General caused by the "threat[] of . . . penalties and lawsuits."  SAC ¶¶ 81, 88.  That is because the Attorney General enforces Title VII only against state and local government employers, not against private employers such as Braidwood, Bear Creek, or the members of the Pastor Council—including under the provision of law cited in the SAC.  *See* SAC ¶ 8; 42 U.S.C. § 2000e-5(f)(1) (providing for referral "to the Attorney General" only "[i]n the case of a . . . government, governmental agency, or political subdivision").  There is consequently no possibility that the Attorney General would initiate a Title VII enforcement action against any of the Plaintiffs.[2]

---

[2] Plaintiffs' speculation regarding the Attorney General's possible involvement in future appellate litigation, *see* SAC ¶ 8, particularly in this circumstance where no existing lower court litigation (or threat thereof) has been identified, also fails to satisfy Article III's requirements that

Because Plaintiffs must establish "standing to bring each of [their] claims against each defendant," and have not identified any injury to support standing for claims against the Attorney General, Plaintiffs' claims against the Attorney General must be dismissed. *Coastal Habitat All. v. Patterson*, 601 F. Supp. 2d 868, 877 (W.D. Tex. 2008) (citing *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001)); *see also DaimlerChrysler*, 547 U.S. at 352; *Calzone v. Hawley*, 866 F.3d 866 (8th Cir. 2017).

## II.   Plaintiffs' Claims are Unripe.

Plaintiffs' request for a decision opining on the existence of a religious exemption to Title VII and associated declaratory relief is not ripe. The ripeness doctrine "separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000); *see also Texas v. United States*, 523 U.S. 296, 300 (1998) (a plaintiff's claim "is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all"). The "basic rationale" underlying the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). Courts evaluate two issues in assessing whether ripeness is met: (1) the fitness of the matter for adjudication, and (2) the hardship to the plaintiff of withholding review. *See Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). Here, Plaintiffs' claims are not fit for review because there is no sufficiently concrete dispute, thereby rendering the Court unable to ground any judicial decision in specific facts. In addition, there would be no hardship to the Plaintiffs if the Court leaves unresolved the abstract dispute presented.

---

an injury be non-speculative and actual or imminent. *See Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015).

When a plaintiff invokes the Declaratory Judgment Act, as in this case, courts assess whether a case is ripe and presents sufficient adversity and concreteness by examining whether an "actual controversy" exists between the parties. *Orix Credit All., Inc., v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000); *see Regions Ins. Inc. v. Ace Prop. & Cas. Ins. Co.*, 80 F. Supp. 3d 730, 735 (M.D. La. 2015). An actual controversy requires "sufficient immediacy and reality" in a dispute "between parties having adverse legal interests," *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986), as measured by whether the request for a declaratory judgment "relate[s] to an actual claim arising under federal law that another asserts against [them]." *Collin Cty., Texas v. Homeowners Ass'n for Values Essential to Neighborhoods* ("*HAVEN*"), 915 F.2d 167, 170-71 (5th Cir. 1990). In other words, "it is the underlying cause of action of the *defendant* against the plaintiff that is actually litigated." *Id.* at 171 (emphasis added); *see also id.* at 172 ("The Act is designed to allow potential defendants in cases of actual and *immediate* controversy within the subject matter jurisdiction of the federal courts to petition the court for an early resolution of the parties['] rights and liabilities" (emphasis added)).[3]

Here, there is no actual and immediate controversy between the parties that necessitates resolving the legal questions set forth in the SAC regarding the rights to religious freedom of religious institutions and closely-held, religiously-operated businesses. There may never be any controversy between Plaintiffs and the Attorney General, and Plaintiffs do not allege any instance in which the EEOC has threatened Title VII litigation concerning the religious beliefs or employment-related policies or actions of any Plaintiff. *See* SAC ¶¶ 19-38. The EEOC has not

---

[3] This teaching underscores that the lack of ripeness is particularly acute with respect to Plaintiffs' claims against the Attorney General because it is the EEOC, not the Attorney General, that would bring any Title VII claim against Plaintiffs. *See* 42 U.S.C. 2000e-5. Thus, as to the Attorney General, there is no "underlying cause of action of the defendant against the plaintiff[s] that [could be] actually litigated." *HAVEN*, 915 F.2d at 171; *see also id.* ("A party bringing a declaratory judgment must have been a proper party" to the underlying suit).

announced any guidance regarding the application of *Bostock* to religious organizations or

closely-held, religiously-operated businesses, and indeed, has had only a few months since the

Supreme Court's decisions in *Bostock* and *Morrissey-Berru* in which to do so.  Nor does the

EEOC's decision to pursue an enforcement action in *Harris Funeral Homes v. EEOC, see* SAC

¶ 17—which was initiated prior to EO 13798 and the EO's requirement that agencies "vigorously

enforce . . . Federal law's robust protections for religious freedom," 82 FR 21675—establish a

likelihood of suit against any of the Plaintiffs.  Plaintiffs have therefore failed to demonstrate that

there is an actual, immediate likelihood of a cause of action asserted against them under federal

law that can be litigated in advance as a declaratory judgment action.  *See HAVEN*, 915 F.2d

171.  Because courts "do not . . . give advisory opinions about issues as to which there are not

[yet] adverse parties," *Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982), Plaintiffs' claims

should be dismissed as unripe.

For similar reasons, ripeness is also lacking with regard to Plaintiffs' claims that

"*Bostock*'s interpretation of Title VII compels them to violate the teachings of their religion."

SAC ¶ 82.  Plaintiffs suggest that following *Bostock*, there is a conflict between "the Bible's

instruction[s] to obey the civil authorities" and the "Bible's teachings on homosexuality," *id.*,

that can be resolved by a judicial decision that RFRA or the First Amendment exempts them

from application of the Title VII protections for sexual orientation and gender identity described

in *Bostock*.  But this merely underscores that the supposed conflict among religious teachings

identified by Plaintiffs is a speculative injury that requires concrete circumstances to test: only if

Plaintiffs were to *lose* on some part of the merits of this litigation (*i.e.*, if the Court were to *limit*

any religious exemption from Title VII) would Plaintiffs face a conflict between obeying the law

and obeying their religious tenets.  There is no well-defined conflict at present.  The First

Amendment and RFRA are in effect, and the President has committed his Administration to vigorously enforce them.  Nothing in *Bostock* precludes the application of such protections to Title VII, as the Supreme Court expressly left questions about "how these doctrines protecting religious liberty interact with Title VII" for another day.  140 S. Ct. 1754.[4]  If anything, the Court's explicit discussion of these protections in response to religious liberty concerns raised with respect to its statutory holding supports Plaintiffs' arguments that these doctrines do provide protection for religious employers for whom application of *Bostock* would present a religious conflict.  And if—consistent with Plaintiffs' litigation thesis—Plaintiffs' employment activities are protected by religious liberty exemptions to Title VII, they face no conflict between obeying the law and obeying their religious tenets.

Plaintiffs' claims are also unripe for the reason that they would not suffer significant hardship if the Court declines to review their claims.  As Plaintiffs acknowledge, the EEOC first took the position that Title VII applies to discrimination on the basis of gender identity and sexual orientation more than 5 years ago.  *See* SAC ¶ 12 (citing *Macy v. Holder*, EEOC Doc. No. 0120120821, 2012 WL 1435995 (EEOC Apr. 20, 2012); *Baldwin v. Foxx*, EEOC Doc. 0120133080, 2015 WL 4397641 (July 15, 2015)).  Plaintiffs do not allege that in the intervening years, they have been unable to hire, fire, or regulate their employees in accordance with their religious beliefs, or that they have undertaken any other change in employment practices in

---

[4] Defendants acknowledge that, in a similar religious freedom challenge to federal law, this Court has recognized that a conflict between "intentionally defying federal law" and "forgoing specific conduct they believe is constitutionally protected" presents an "impossible choice" sufficient to make a case ripe.  *See Franciscan Alliance v. Burwell*, 227 F. Supp. 3d 660, 682 (N.D. Tex. 2016).  In contrast to that case's challenge to specific regulations enacted pursuant to the Affordable Care Act, however, *see id.* at 481-82, Plaintiffs' challenge here is not similarly cabined and instead seeks a determination about the entire application of the statutory prohibition on "sex" discrimination.  *See, e.g.*, SAC ¶ 20.  This distinction underscores the abstract nature of the claims here.

response to the EEOC's policy.  Nor have Plaintiffs alleged that they have suffered any hardship in their day-to-day operations from not having a federal court opine on the application of specific religious liberty exceptions from the Title VII protections for sexual orientation or gender identity described in *Bostock*.  Thus, Plaintiffs would not be harmed if the Court declined to hear this hypothetical Title VII dispute; rather, they would remain in the same position they have been in for years.  The hardship prong thereby reinforces that dismissal for lack of ripeness is proper.

Finally, Plaintiffs' fourth and fifth claims are particularly unripe.  Plaintiffs' fourth claim requests that this Court declare that "*Bostock*'s interpretation of Title VII does not prohibit discrimination against bisexual employees," SAC ¶ 69, but Plaintiffs have not even alleged that they have employment policies or religious beliefs that are specific to bisexual orientation or bisexual behavior, let alone described this claim in anything other than abstract terms.  It is thus unclear how, if at all, any enforcement against them implicating this interpretive question under Title VII would arise.  Similarly, Plaintiffs have not alleged that *they* have implemented any of the hypothetical "rules of conduct that apply equally to both sexes" on which their fifth claim rests, SAC ¶ 73, and in the absence of which this Court can only render an impermissible advisory opinion.

***

In this action, Plaintiffs identify legal issues of great interest and importance regarding the need to "preserv[e] the promise of the free exercise of religion enshrined in our Constitution."  *Bostock*, 140 S. Ct. 1754.  "[T]hat guarantee lies at the heart of our pluralistic society," *id.*, and is further protected by RFRA, the First Amendment, and other legal authorities.  The Judicial Branch has routinely provided a forum for religious persons, institutions, and closely-held, religiously-operated businesses to obtain recognition for the constitutional and

statutory shields that protect religious institutions and closely-held, religiously-operated businesses alike from the mandates of bureaucracy and democracy.  *See, e.g.*, *Morrissey-Berru*, 140 S. Ct. 2049; *Burwell v. Hobby Lobby*, 134 S. Ct. 2751, 2775 (2014); *Hosanna-Tabor*, 565 U.S. 171; *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006); *Gallagher v. Crown Kosher Super Market of Mass., Inc.*, 366 U.S. 617 (1961).  However, as befits the "the proper—and properly limited—role of the courts in a democratic society," *Warth v. Seldin*, 422 U.S. 490, 498 (1975), such decisions may be rendered when it is possible to examine concrete facts and circumstances "with care and in detail," and not with excessive "breadth and sweep."  *Burwell*, 134 S. Ct. 2785 (Kennedy, J., concurring).  Plaintiffs have not presented claims in such fashion.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims should be dismissed.


Dated:  September 23, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ERIN NEALY COX
United States Attorney

  /s/ *Eric J. Soskin*
CARLOTTA P. WELLS
Assistant Branch Director
ERIC J. SOSKIN (PA Bar #200663)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Rm. 12002
1100 L Street, NW
Washington, D.C. 20530
Telephone: (202) 353-0533

14

Fax: (202) 616-8470
Email: Eric.Soskin@usdoj.gov

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, TX 75242-1699
Telephone: (214) 659-8626
Fax: (214) 659-8807
Email: brian.stoltz@usdoj.gov

*Attorneys for Defendants*

15

**CERTIFICATE OF SERVICE**

On September 23, 2020, I electronically submitted the foregoing document with the

clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case

filing system of the court.  I hereby certify that I have served all parties electronically or by

another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.


  /s/ Eric J. Soskin
Eric J. Soskin