UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **U.S. Pastor Council**, et al., <br><br> Plaintiffs, <br><br> v. <br><br> **Equal Employment Opportunity Commission**, et al., <br><br> Defendants. | Case No. 4:18-cv-00824-O |

### BRIEF IN OPPOSITION TO DEFENDANTS' RENEWED MOTION TO DISMISS

CHARLES W. FILLMORE
H. DUSTIN FILLMORE
The Fillmore Law Firm, L.L.P.
1200 Summit Avenue, Suite 860
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
chad@fillmorefirm.com
dusty@fillmorefirm.com

JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiffs and
the Proposed Classes*

## TABLE OF CONTENTS

Table of contents ............................................................................................................. i

Table of authorities ........................................................................................................ ii

    I.  The defendants' ripeness objections are without merit ............................................. 1

        A. The issues are fit for judicial decision because the issues presented are pure questions of law ...................................................................................................... 1

        B. The plaintiffs will face significant hardship from the *In Terrorem* effects of *Bostock* and the EEOC's guidance document ....................................................... 7

    II.  The plaintiffs have alleged Article III standing to seek relief against the Attorney General ................................................................................................... 10

Conclusion .................................................................................................................. 11

Certificate of service ................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Abbott Laboratories v. Gardner,*
    387 U.S. 136 (1967) .................................................................................................1, 2

*Baldwin v. Foxx,*
    EEOC Doc. No. 0120133080, 2015 WL 4397641 (EEOC July 16, 2015) ..................3

*Bostock v. Clayton County,*
    140 S. Ct. 1731 (2020) .............................................................................................1, 4, 8

*Chevron U.S.A., Inc. v. Traillour Oil Co.,*
    987 F.2d 1138 (5th Cir. 1993) ........................................................................................5

*Doe v. Bolton,*
    410 U.S. 179 (1973) .......................................................................................................5

*EEOC v. R.G. & G.R. Harris Funeral Homes Inc.,*
    884 F.3d 560 (6th Cir. 2018) ..................................................................................1, 4, 8

*Franciscan Alliance, Inc. v. Burwell,*
    227 F. Supp. 3d 660 (N.D. Tex. 2016) ...................................................................passim

*Macy v. Holder,*
    EEOC Doc. No. 0120120821, 2012 WL 1435995 (EEOC Apr. 20, 2012) ..................3

*New Orleans Public Service, Inc. v. Council of City of New Orleans,*
    833 F.2d 583 (5th Cir. 1987) .........................................................................................2

*Opulent Life Church v. City of Holly Springs,*
    697 F.3d 279 (5th Cir. 2012) .........................................................................................2

*Steffel v. Thompson,*
    415 U.S. 452 (1974) .......................................................................................................5

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ...............................................................................................1, 2, 8, 9

*Wheaton College v. Sebelius,*
    703 F.3d 551 (D.C. Cir. 2012) ....................................................................................5, 8

**Statutes**

Tex. Family Code § 6.204(b) ...................................................................................................3

**Constitutional Provisions**

Tex. Const. art. I § 32 ..............................................................................................................3

**Other Authorities**

Justice Manual §§ 2-1.000 – 2-3.110 ....................................................................................10

The EEOC has declared that Title VII compels employers to recognize same-sex marriage and allow their employees into restrooms that correspond to the gender identity that they assert. It has also declared that Title VII forbids employers to enforce sex-specific dress codes or discriminate in any way against homosexual, bisexual, and transgender workers. The EEOC is fully enforcing this interpretation of Title VII—and it is suing Christian employers that follow the teachings of their faith rather than the EEOC's edicts. *See EEOC v. R.G. & G.R. Harris Funeral Homes Inc.*, 884 F.3d 560 (6th Cir. 2018), *aff'd in Bostock v. Clayton County*, 140 S. Ct. 1731 (2020) (cert. granted April 22, 2019). The plaintiffs have every right to seek declaratory relief to ensure that their religious convictions are protected by federal law. They are not required to await an EEOC enforcement action before asserting their rights, and they are not required to endure the *in terrorem* effects of *Bostock* and the EEOC's "regulatory guidance," which are threatening and intimidating religious employers throughout the United States.

## I.   THE DEFENDANTS' RIPENESS OBJECTIONS ARE WITHOUT MERIT

In determining whether a claim is ripe, a Court must consider: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967). Each of these factors is easily satisfied.

### A.   The Issues Are Fit For Judicial Decision Because The Issues Presented Are Pure Questions of Law

A claim is "fit for judicial decision" if it presents a pure question of law. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (finding the "fitness" factor to be "easily satisfied" because "petitioners' challenge to the Ohio false statement statute presents an issue that is 'purely legal, and will not be clarified by further factual development.'" (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 581 (1985)); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)

(finding issues to be "appropriate for judicial resolution at this time" because "the issue tendered is a purely legal one"); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 287 (5th Cir. 2012) ("Opulent Life's facial challenges . . . are fit for judicial decision because they raise pure questions of law."); *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987) (*NOPSI*) ("A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required."); *Franciscan Alliance, Inc. v. Burwell*, 227 F. Supp. 3d 660, 681 (N.D. Tex. 2016) ("Because the present case involves primarily questions of law, the Court finds that it would not be significantly aided by further factual development.").

Each of the plaintiffs' claims presents pure questions of law. The plaintiffs are seeking a declaration that RFRA and the First Amendment compel exemptions to Title VII for employers who object to homosexual and transgender behavior for sincere religious reasons. *See* Second Amended Complaint (ECF No. 45) at 60, 65, and 68. The plaintiffs are seeking a further declaration that Title VII, as a matter of statutory interpretation, allows *all* employers to discriminate against bisexual employees, and allows *all* employers to discriminate against homosexual and transgender employees by establishing sex-neutral rules of conduct that will exclude most (if not all) homosexual and transgender individuals from employment. *See id.* at ¶¶ 71 and 74. There is no need for further factual development to resolve *any* of these questions; the Court needs only to consider the text of Title VII, the text of RFRA, the First Amendment case law, and the Supreme Court's ruling in *Bostock*.

The government never denies that the plaintiffs' claims present purely legal questions, even though this is the touchstone of the "fitness" prong. *See Susan B. Anthony List*, 573 U.S. at 167; *Abbott Labs*, 387 U.S. at 149; *Opulent Life Church*, 697 F.3d at 287; *NOPSI*, 833 F.2d at 587; *Franciscan Alliance*, 227 F. Supp. 3d at 681. The

facts are undisputed, and the government does not claim to contest *any* of the allegations in the complaint (such as the sincerity of the plaintiffs' religious beliefs). Nor does the government attempt to explain how further factual development could aid the judicial resolution of these purely legal issues.

Instead, the government denies that the plaintiffs' claims are "fit" for judicial decision because it denies the existence of an "actual and immediate controversy" between the parties. *See* ECF No. 49 at 10. It is hard to understand how the government can make this claim in light of the EEOC's repeated and emphatic pronouncements that Title VII prohibits the conduct that the plaintiffs are engaging in—and in light of the EEOC's continued unwillingness to recognize *any* exemptions for religious employers under RFRA or the First Amendment, even in the wake of the Supreme Court's *Bostock* ruling.

Since 2015, the Equal Employment Opportunity Commission has claimed that Title VII outlaws employment discrimination on account of sexual orientation or gender identity. *See Baldwin v. Foxx*, EEOC Doc. No. 0120133080, 2015 WL 4397641 (EEOC July 16, 2015); *Macy v. Holder*, EEOC Doc. No. 0120120821, 2012 WL 1435995 (EEOC Apr. 20, 2012). The EEOC has also issued a guidance document declaring that Title VII: (1) prohibits employers from discriminating against homosexual, bisexual, and transgender workers; (2) requires employers to recognize same-sex marriage, even in states where same-sex marriage remains illegal under state law;[1] (3) prohibits employers from enforcing sex-specific grooming codes; and (4) requires employers to allow employees into whatever restroom corresponds with the gender identity that they happen to assert. *See* Second Amended Complaint Exs. 1–2 (ECF

---

1. *See, e.g.*, Tex. Const. art. I § 32 ("Marriage in this state shall consist only of the union of one man and one woman."); Tex. Family Code § 6.204(b) ("A marriage between persons of the same sex or a civil union is contrary to the public policy of this state and is void in this state.").

Nos. 45-1 and 45-2). The guidance document refuses to recognize any exceptions for religious employers under RFRA or the First Amendment, and the EEOC has already sued a Christian employer for refusing to allow a biologically female employee to dress like a man, insisting that any RFRA claim must give way to a supposed "compelling governmental interest" in enforcing the agency's non-discrimination edicts. *See Harris Funeral Homes*, 884 F.3d at 581 ("[T]he EEOC has established that it has a compelling interest in ensuring the Funeral Home complies with Title VII."). The EEOC has not withdrawn or amended its guidance document in response to Executive Order 13798 or the Attorney General's Religious Liberty Memorandum of October 6, 2017—and it continued to pursue its lawsuit against Harris Funeral Homes even after the President and the Attorney General had issued these documents. And the Supreme Court's recent decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), endorsed some (but not all) of the guidance document's interpretations of the statute, making clear that Title VII (at the very least) protects homosexual and transgender employees to the extent that they engage in conduct that would be tolerated in an employee of the opposite biological sex. *See id.* at 1737.

 The plaintiffs are engaged in conduct that directly violates the interpretations of Title VII announced in *Bostock* and the EEOC guidance document. Each of the plaintiffs refuses to employ homosexuals, bisexuals, crossdressers, or transgender or gender-nonconforming individuals. *See* Second Amended Complaint (ECF No. 45) at ¶¶ 29, 35, 43. Each of the plaintiffs refuses to recognize same-sex marriage and will immediately discharge any employee who enters into a same-sex union. *See id.* at ¶¶ 30, 36, 44–45. Each of the plaintiffs refuses to allow its employees to use restrooms designated for the opposite biological sex. *See id.* at ¶¶ 31, 37, 46. And Braidwood enforces a sex-specific grooming code that directly contravenes the rules set forth in the EEOC guidance document. *See id.* at ¶ 48; *see also* Second Amended Complaint Exs. 1–2 (ECF Nos. 45-1 and 45-2) ("[I]t is illegal for an employer to

deny employment opportunities or permit harassment because . . . [a] man dresses in an effeminate manner.").

How the government possibly deny the existence of an "actual or immediate controversy" when the plaintiffs' conduct directly violates the interpretation of Title VII set forth in *Bostock* and the EEOC's guidance document? The government notes that the EEOC has not specifically threatened the plaintiffs with litigation,[2] but a plaintiff need not show a specific threat of enforcement directed at him personally before seeking declaratory relief. *See, e.g.*, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."); *Doe v. Bolton*, 410 U.S. 179, 188 (1973) (allowing abortion providers to challenge a state abortion statute "despite the fact that the record does not disclose that any one of them has been prosecuted, or threatened with prosecution, for violation of the State's abortion statutes."). Indeed, the entire point of a pre-enforcement challenge—as well as the Declaratory Judgment Act—is to allow courts to rule on the legality of a plaintiff's conduct *before* an enforcement action is brought. *See Steffel*, 415 U.S. at 459; *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1154 (5th Cir. 1993) ("'The purpose of the Declaratory Judgment Act is to settle 'actual controversies' *before* they ripen into violations of law or breach of some contractual duty.'" (citation omitted)).

It would be a different matter if the EEOC had renounced its decision to sue Harris Funeral Homes and promised to never again enforce its guidance document against any religious employer. *See, e.g.*, *Wheaton College v. Sebelius*, 703 F.3d 551, 552–53 (D.C. Cir. 2012) (when the federal government promises to the Court that it will never enforce a regulation in its current form against a litigant, and promises to

---

2. *See* ECF No. 49 at 10.

announce a different rule, "we take that as a binding commitment," and "[w]e take the government at its word and will hold it to it," which makes a challenge to the agency rule "not fit for review at this time."). But this case is a far cry from the situation in *Wheaton College*. The government has made *no* commitment to this Court—either in briefing or in its documents—that it will protect religious employers from EEOC enforcement actions. Instead, the government can say only that there "may never be" a lawsuit brought by the EEOC against the plaintiffs or similarly situated religious employers. *See* ECF No. 49 at 10. That falls far short of a binding commitment, and it leaves in place the *in terrorem* effects of the *Bostock* ruling and the EEOC's guidance document, which refuse to confer protections on religious employers and leave them at risk of lawsuits and EEOC enforcement actions for following the teachings of their faith. *See Franciscan Alliance*, 227 F. Supp. 3d at 678 (allowing religious objector to challenge agency rule that failed to provide "*assurance* that they will be exempt from the Rule's provisions that contradict their religious beliefs" (emphasis added)).

The government also suggests that the plaintiffs will not suffer injury until the courts definitively reject their proposed interpretation of Title VII or the notion of religious exemption to *Bostock*. See ECF No. 49 at 11 ("[O]nly if Plaintiffs were to *lose* on some part of the merits of this litigation (*i.e.*, if the Court were to *limit* any religious exemption from Title VII) would Plaintiffs face a conflict between obeying the law and obeying their religious tenets."). But the government entirely ignores the *in terrorem* effects that exist from the *uncertainty* surrounding the availability of religious exemptions. Each of the plaintiffs must put itself at *risk* of lawsuits and EEOC enforcement actions for following the teachings of its faith, and they are seeking declaratory relief now to eliminate this risk that religious employers throughout the United States have been facing since the EEOC first announced that Title VII prohibits employers from discriminating on the basis of sexual orientation and gender

identity. The government does not deny that the existence of this risk—indeed, the discussion in its brief appears to acknowledge it[3]—and that risk of enforcement is all that is needed to defeat a ripeness objection. *See Franciscan Alliance*, 227 F. Supp. 3d at 681 (finding claims to be ripe when the plaintiffs "will be forced to either violate their religious beliefs or maintain their current policies which seem to be in direct conflict with the Rule and *risk* the severe consequences of enforcement." (emphasis added)).

Finally, the government suggests that the plaintiffs' fourth and fifth claims are unfit for judicial decision because the plaintiffs have not yet implemented policies that exclude bisexuals from employment or that exclude homosexuals and transgender employees pursuant to sex-neutral rules of conduct. See ECF No. 49 at 13. But that is simply untrue. The complaint specifically alleges that the plaintiffs will not hire "bisexuals" or consider them for employment. *See* Second Amended Complaint (ECF No. 45) at ¶¶ 29, 35. It also alleges that the plaintiffs are unwilling to employ individuals who engage in homosexual or transgender conduct, which is enough to imply that they will exclude those individuals from employment by adopting sex-neutral rules of conduct if needed to comply with *Bostock*. There is nothing "advisory" about the ruling that the plaintiffs are seeking. They want to exclude homosexuals, bisexuals, and transgender individuals from employment to the maximum extent permitted by law, and they are seeking a declaration of the extent of their rights to do so.

### B. The Plaintiffs Will Face Significant Hardship From The *In Terrorem* Effects Of *Bostock* And The EEOC's Guidance Document

The "substantial hardship" prong will be satisfied if denying judicial review will cause a plaintiff to *risk* enforcement action for engaging in activity that he believes to

---

3. *See* ECF No. 49 at 11 (acknowledging the possibility that the court might ultimately reject the plaintiffs' demands for a religious exemption under RFRA or the First Amendment).

be lawful. *See Susan B. Anthony List*, 573 U.S. at 167–68 ("Denying prompt judicial review would impose a substantial hardship on petitioners, forcing them to choose between refraining from core political speech on the one hand, or engaging in that speech and risking costly Commission proceedings and criminal prosecution on the other."); *Franciscan Alliance*, 227 F. Supp. 3d at 681 ("Substantial hardship is typically satisfied when a party is forced to choose between refraining from allegedly lawful activity or engaging in the allegedly lawful activity and risking significant sanctions."). The plaintiffs are currently at risk of lawsuits and EEOC enforcement actions, and the EEOC has already sued a Christian employer for violating its guidance document in spite of the protections conferred by RFRA and the First Amendment. *See Harris Funeral Homes*, 884 F.3d 560. The government does not deny that the plaintiffs remain at risk of EEOC enforcement action. See ECF No. 49 at 12–13. And the EEOC has not renounced its decision to sue Harris Funeral Homes, nor has it issued any regulatory guidance that categorically exempts religious employers from *Bostock*'s interpretation of Title VII. *See Wheaton College*, 703 F.3d at 552–53. That is all that the plaintiffs need to establish "substantial hardship." *See Susan B. Anthony List*, 573 U.S. at 167–68; *Franciscan Alliance*, 227 F. Supp. 3d at 681.

*Bostock* explicitly refused to resolve whether RFRA exempts religious employers from its interpretation of Title VII—saying only that RFRA "might" supersede Title VII's commands "in appropriate cases." *Bostock*, 140 S. Ct. at 1754 (2020). This provides no assurance at all to religious employers, who can only guess about whether the federal courts will allow them to continue hiring employees in accordance with their religious faith. Indeed, one federal appeals court has already ruled against the idea that RFRA could exempt religious employers from the edicts contained in the EEOC's guidance document. *See Harris Funeral Homes*, 884 F.3d at 583–97. And the EEOC guidance document has continuously refused to recognize *any* exemptions

for religious employers—even in response to Executive Order 13798 and the Attorney General's Religious Liberty Memorandum. The continued existence of this guidance document, when combined with the EEOC's past actions against Christian employers such as Harris Funeral Homes, makes abundantly clear that the plaintiffs and the putative class members face a risk of enforcement action for following the teachings of their faith, and that alone is enough to satisfy the "substantial hardship" prong.

Once again, the government contends that the plaintiffs cannot establish "substantial hardship" unless they allege that they personally have been threatened with enforcement action or forced to curtail their religious practices in response to *Bostock* and the EEOC's guidance documents. *See* ECF No. 49 at 12–13. That stance is incompatible with *Susan B. Anthony List*, which holds that the mere need to *choose* between altering one's behavior and *risking* an enforcement action is enough to show a "substantial hardship." *See Susan B. Anthony List*, 573 U.S. at 167–68 ("Denying prompt judicial review would impose a substantial hardship on petitioners, *forcing them to choose between* refraining from core political speech on the one hand, or engaging in that speech and *risking* costly Commission proceedings and criminal prosecution on the other." (emphasis added)). It is also incompatible with *Franciscan Alliance*, which likewise holds that a plaintiff need not alter his conduct in response to an alleged enforcement threat. *See Franciscan Alliance*, 227 F. Supp. 3d at 681 ("Substantial hardship is typically satisfied when a party is forced to choose between refraining from allegedly lawful activity or engaging in the allegedly lawful activity and risking significant sanctions."). The government tries to distinguish *Franciscan Alliance* in a footnote,[4] but we do not understand its argument or the distinction it is attempting to draw between the cases. Here, as in *Franciscan Alliance*, the plaintiffs are challenging an agency rule that fails to acknowledge any exemption for religious objectors.

---

4. *See* ECF No. 49 at 12 n.4.

The risk of enforcement action against religious objectors made the claims in *Franciscan Alliance* ripe, and the risk of enforcement action is equally present in this case.

## II. THE PLAINTIFFS HAVE ALLEGED ARTICLE III STANDING TO SEEK RELIEF AGAINST THE ATTORNEY GENERAL

Although the government correctly observes that the Attorney General does not bring enforcement actions against private employers—only the EEOC can do that—the Department of Justice must authorize any appeal by a federal agency, including the EEOC, and its attorneys will ultimately decide the extent to which the EEOC may pursue its interpretations of Title VII in the appellate courts. *See* Justice Manual §§ 2-1.000 – 2-3.110. The government tries to dismiss this appellate supervision as "speculative," ECF No. 49 at 8–9 n.2, but the Department of Justice's involvement at the appellate stage is as certain as the EEOC's involvement at the initial enforcement stage. And the government has not alleged that the Department of Justice has adopted a policy of prohibiting the EEOC from appealing adverse rulings in lawsuits involving religious employers, nor does it allege that the Department of Justice intends to prohibit the EEOC from defending the legality of its guidance document in the appellate courts. For these reasons, the plaintiffs respectfully submit that the Attorney General is a proper defendant in this declaratory-judgment action.

## CONCLUSION

The defendants' renewed motion to dismiss should be denied.

                                                                                         Respectfully submitted.

                                                                                          <u>/s/ Jonathan F. Mitchell</u>

| | |
|---|---|
| CHARLES W. FILLMORE | JONATHAN F. MITCHELL |
| H. DUSTIN FILLMORE | Texas Bar No. 24075463 |
| The Fillmore Law Firm, L.L.P. | Mitchell Law PLLC |
| 1200 Summit Avenue, Suite 860 | 111 Congress Avenue, Suite 400 |
| Fort Worth, Texas 76102 | Austin, Texas 78701 |
| (817) 332-2351 (phone) | (512) 686-3940 (phone) |
| (817) 870-1859 (fax) | (512) 686-3941 (fax) |
| chad@fillmorefirm.com | jonathan@mitchell.law |
| dusty@fillmorefirm.com | |
| | *Counsel for Plaintiffs and* |
| Dated: October 2, 2020 | *the Proposed Classes* |

# CERTIFICATE OF SERVICE

I certify that on October 2, 2020, I served this document through CM/ECF upon:

Eric J. Soskin
Senior Trial Counsel
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW Room 12002
Washington, DC 20530
(202) 353-0533
eric.soskin@usdoj.gov

*Counsel for the Defendants*

                                                /s/ Jonathan F. Mitchell
                                                Jonathan F. Mitchell
                                                *Counsel for Plaintiffs and*
                                                *the Proposed Classes*