IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

---

| | |
|---|---|
| U.S. PASTOR COUNCIL, et al., | |
| Plaintiffs, | Case No. 4:18-cv-00824-O |
| v. | |
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al., | |
| Defendants. | |

**REPLY IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO DISMISS**

Plaintiffs seek a pronouncement from the Court regarding the intersection of the guarantees of religious freedom in the First Amendment and the Religious Freedom Restoration Act ("RFRA") with the Title VII prohibitions on discrimination based on sexual orientation and gender identity described by the Supreme Court in *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731 (2020). As explained in Defendants' Renewed Motion to Dismiss, ECF No. 49 ("MTD Br."), the Constitution does not permit judicial review of these questions in the abstract, divorced from specific facts and circumstances that would enable the Court to address Plaintiffs' claims in a specific and concrete context.

**A.      Plaintiffs Have Not Established That Their Legal Claims Are Ripe For Decision.**

The Article III doctrine of ripeness "separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). In this case, as in many others, the ripeness inquiry "overlap[s] in practice" with the standing inquiry, *Texas v. United States*, 497 F.3d 491, 496 (5th Cir. 2007), because it "originate[s] from the same Article III limitation" as standing. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014).[1] Ripeness concerns are particularly acute in suits seeking declaratory relief, because "[d]eclaratory judgments are typically sought before a completed 'injury-in-fact' has occurred, ut still must be limited to the resolution of an 'actual controversy.'" *Foster*, 205 F.3d 857 (internal quotations omitted).

The ripeness component of Article III "prevent[s] the courts, through avoidance of

---

[1] Plaintiffs' reliance on *Susan B. Anthony List* is misplaced, because the portion of the Court's opinion that Plaintiffs cite addressed "prudential ripeness," not whether the plaintiffs there presented an Article III "case or controversy." *See* Opp. Br. at 1-2 (citing 573 U.S. at 167). By the time the Supreme Court reached the question of prudential ripeness, it had already concluded that the plaintiffs' claims satisfied Article III, noting in the process that "the Article III standing and ripeness issues in this case boil down to the same question." *Susan B. Anthony List*, 573 U.S. at 157 n.5.

1

premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967); *see Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010) ("A court should dismiss a case for lack of ripeness when the case is abstract or hypothetical") (internal quotations omitted). Like other Article III doctrines, ripeness helps "to prevent the judicial process from being used to usurp the powers of the political branches," *Susan B. Anthony List*, 573 U.S. at 157, because when judicial decisions occur without the facts needed to provide "sufficient concreteness," courts may "abus[e] their role within the government and engag[e] in speculative decision-making." *National Advertising Co. v. Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005). Plaintiffs' claims present precisely that risk.

Plaintiffs assert that because they have a policy of "refus[ing] to employ" gay, lesbian, and transgender individuals and "refus[ing] to recognize same-sex marriage," their claims are already ripe. Br. in Opp. to Defs. Renewed Mot. to Dismiss ("Opp. Br.") at 4. However, "neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement" of Article III. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). Instead, Plaintiffs must bring their claims in a factual context that permits the Court to examine whether the application of policies to a particular circumstance is protected by the First Amendment or RFRA under the relevant legal standards.

This threshold is not yet met. Plaintiffs claim that they "are engaged in conduct that directly violates" Title VII through their overall policies that reject "homosexuals, bisexuals, crossdressers [and] transgender or gender-nonconforming individuals." Opp. Br. at 4. However, Plaintiffs have not alleged that *any* such individual is seeking employment from Braidwood Management, from Bear Creek Bible Church, or from any of the member institutions comprising the Pastor Council. *See generally* SAC. Nor do Plaintiffs allege that they already employ

2

individuals who are seeking "to use restrooms designated for the opposite biological sex" or to violate Braidwood's "sex-specific grooming code." Opp. Br. at 4; *compare id. with* Second Amended Complaint, ECF No. 45 ("SAC") at ¶¶ 31, 37, 46, 48. The possibility that Plaintiffs will "violate the law on some uncertain day in the future—if and when" a current employee requests an exception from Plaintiffs' dress code or restroom policy as a member of one of these classes, or such an individual seeks employment, is not enough to establish ripeness, *Thomas*, 220 F.3d 1140, and for the same reason, Plaintiffs do not face "substantial hardship" if judicial review is delayed because they "need not alter [their] conduct," Opp. Br. at 9, right now in the absence of a current employee or job applicant in one of the *Bostock*-recognized categories.

Plaintiffs also assert that their claims "present[] pure questions of law" and so are automatically ripe. Opp. Br. at 1-2. Not so. Plaintiffs' claims, by their nature, involve the application of law to facts. To see this, one need look no further than the text of RFRA, which protects Plaintiffs from a "substantial[] burden [on the] exercise of religion." 42 U.S.C. § 2000bb-1(a). Resolving this question, and delineating the parameters of RFRA's protections in the Title VII context, requires a determination of whether a substantial burden exists, an issue that can be resolved only by application of specific facts in a particular instance. *See Thiry v. Carlson*, 78 F.3d 1491, 1495 (10th Cir. 1996) (examination of whether government has "substantially burdened" plaintiff under RFRA is "largely factual in nature" and "present[s] mixed questions of fact and law"); *Merced v. Kasson*, 577 F.3d 578, 590 (5th Cir. 2009) (whether government action "substantially burdens an adherent's free exercise" is not amenable to "a general rule—the inquiry is fact-specific"). *But see E. Texas Baptist Univ. v. Burwell*, 793 F.3d 449, 456-59 & n.33 (5th Cir. 2015) ("Whether a law substantially burdens religious exercise under RFRA is a question of law for courts to decide, not a question of fact"), *vacated and remanded*, *Zubik v. Burwell*, 136 S.

3

Ct. 1557 (2016).[2]  The history of RFRA, which replaced the Supreme Court's purely legal treatment of religious-freedom claims in *Employment Division v. Smith*, 494 U.S. 872 (1990), with the more fact-centric test set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972), reinforces this conclusion.  *See A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 258 (5th Cir. 2010).

Plaintiffs' allegation "that the mere existence of a statute" proscribing conduct presents them with an irreconcilable conflict between "violat[ing] the . . . laws . . . and beliefs [that] counsel against violating secular law" is also insufficient to establish ripeness.  *Thomas*, 220 F.3d 1139; *compare id. with* Opp. Br. at 6-7 *and* SAC ¶¶ 82, 89.  Plaintiffs repeatedly rely on the purported "*in terrorem*" threat that the EEOC will enforce Title VII against them, Opp. Br. at 1, 6, 7, but that only underscores the speculative and non-concrete nature of the alleged controversy.  *See Foster*, 205 F.3d 857.  Under the Declaratory Judgment Act, the claims Plaintiffs expect the EEOC or the Attorney General to assert against them must have "sufficient immediacy and reality" to establish an Article III case or controversy.  *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986).  But an "*in terrorem*" threat like the one Plaintiffs rely on occurs when the entity making the threat has, as of yet, "no intention of actually suing." "IN TERROREM," Black's Law Dict. (11th ed. 2019) (translating Latin as "in order to frighten"); *see Electr. Comm. Techs v. ShoppersChoice.com*, 963 F.3d 1371, 1377 (Fed Cir. 2020) (describing "'*in terrorem*' tactics [of] threatening litigation . . . with no intention of ever testing" the legal merits).  Only if that threat materializes could Plaintiffs' claims become ripe.

---

[2] In relying heavily on the specific facts about how "contraceptive coverage could be provided," instructing the parties to try "to arrive at an approach" that balances "religious exercise" and the government's interests, and declining to decide "whether . . . religious exercise has been substantially burdened," *Zubik* casts doubt on *East Texas Baptist University*'s treatment of the substantial-burden analysis under RFRA as a "question of law."  *See* 136 S. Ct. at 1559-60.

**B.      Plaintiffs' General Policies Cannot Support Their Request For An Interpretation Of Title VII Regarding Discrimination Against Bisexual Employees.**

Plaintiffs' Second Amended Complaint proffers a pair of claims unrelated to Plaintiffs' request for a religious exemption from Title VII. Specifically, Plaintiffs assert that "Title VII's prohibition on 'sex' discrimination, as interpreted in *Bostock*, allows any employer—religious or secular—to fire or refuse to hire bisexual employees, so long as the employer regards bisexual behavior or orientation as equally unacceptable in a man or a woman." SAC at p. 2 (preceding ¶ 1); *see id.* at ¶¶ 69-75. Plaintiffs' theory is apparently based on the assumption that an employment rule that discriminates against bisexual status or behavior would "apply equally to both sexes and would lead to the same result," regardless of the "sex" of the prospective or current employee. *Id.*; *see Bostock*, 140 S. Ct. 1740 ("an employer who intentionally treats a person worse because of sex—such as by firing the person for actions or attributes it would tolerate in an individual of another sex—discriminates against that person in violation of Title VII"). Entirely lacking from the operative complaint, however, is any allegation that any of the plaintiffs has adopted a rule that discriminates on the basis of bisexual status or behavior, as distinguished from the rules regarding same-sex marriage and restroom use that Plaintiffs do describe. *Compare* SAC at p. 2 (preceding ¶ 1) *with id.* at ¶¶ 30-31.

In response, Plaintiffs assert only that their allegations are "enough to *imply* that they will exclude [bisexual persons] from employment by adopting sex-neutral rules of conduct if needed to comply with *Bostock*," Opp. Br. at 7, thereby conceding that, at present, they lack any such rules. The specific employment rules discussed in the SAC further underscore this point: neither a prohibition on same-sex marriage nor rules governing grooming and restroom usage, *see* SAC at ¶¶ 30-31, 36-37, 44-48, have any obvious application to bisexual individuals. Indeed, Plaintiffs cite no case where a court has analyzed a rule that discriminates against bisexual individuals or

5

bisexual conduct in particular as distinguished from a rule that discriminates based on sexual orientation or gender identity more broadly.  Given the absence of a specific dispute relating to bisexual orientation or behavior and the absence of any policies specifically related to such status or behavior, it would be premature to provide Plaintiffs with "an early resolution of the parties' rights and liabilities" in connection with hypothetical sex-neutral rules that they have not even formulated.  *Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 156, 172 (5th Cir. 1990).

**C.      There Is No Standing For Plaintiffs' Claims Against The Attorney General.**

Defendants' opening brief explained that, in naming the Attorney General as a defendant in this lawsuit, Plaintiffs have ignored the fact that the Department of Justice does not bring enforcement actions with respect to private employers such as Plaintiffs.  MTD Br. at 7-9; *see* 42 U.S.C. § 2000e-5(f)(1).  Plaintiffs' response that "the Department of Justice's involvement at the appellate stage is as certain as the EEOC's involvement at the initial enforcement stage," Opp. Br. at 10, misses the point.  EEOC's statutory litigating authority includes the ability to litigate in appellate courts.  *See* 42 U.S.C. § 2000e-4(b)(2) (EEOC attorneys may "represent the Commission in any case in court, provided that the Attorney General shall conduct all litigation to which the Commission is a party in the Supreme Court").  For it to be "certain" that the Department of Justice will become involved in litigation against Plaintiffs requires not only a decision by EEOC to initiate Title VII enforcement, but additional subsequent, independent decisions: (1) to litigate in an Article III court; (2) to appeal an adverse decision; and (3) to seek certiorari over an appellate decision.  A theory of standing that rests on such an "attenuated" or "speculative chain of possibilities[] does not satisfy the [Article III] requirement that threatened injury must be certainly impending."  *Clapper v. Amnesty Int'l*, 568 U.S. 398, 410, 414 (2013).

## CONCLUSION

Pursuant to Defendants' Renewed Motion to Dismiss and the foregoing Reply, Plaintiffs' claims should be dismissed.

Dated: October 7, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ERIN NEALY COX
United States Attorney

  /s/ *Eric J. Soskin*
CARLOTTA P. WELLS
Assistant Branch Director
ERIC J. SOSKIN (PA Bar #200663)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Rm. 12002
1100 L Street, NW
Washington, D.C. 20530
Telephone: (202) 353-0533
Fax: (202) 616-8470
Email: Eric.Soskin@usdoj.gov

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, TX 75242-1699
Telephone: (214) 659-8626
Fax: (214) 659-8807
Email: brian.stoltz@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

On October 7, 2020, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.

  /s/ Eric J. Soskin
Eric J. Soskin