IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **U.S. PASTOR COUNCIL, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:18-cv-00824-O** |
| | § | |
| **EQUAL EMPLOYMENT** | § | |
| **COMMISSION, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**ORDER**

Before the Court are Defendants' Renewed Motion to Dismiss for Lack of Jurisdiction

(ECF No. 48), filed September 23, 2020; Plaintiffs' Brief in Opposition to Defendants' Renewed

Motion to Dismiss (ECF No. 50), filed October 2, 2020; and Defendants' Reply in Support of the

Motion to Dismiss (ECF No. 51), filed October 7, 2020. After reviewing the briefing, record, and

applicable law, and for the forthcoming reasons, the Court finds that Defendants' Motion to

Dismiss should be and is hereby **GRANTED in part** and **DENIED in part**.

**I.      BACKGROUND[1]**

This case arises from Christian churches and Christian-owned businesses seeking to protect

their ability to require their employees to live by the teachings of the Bible on matters of sexuality

and gender. Several Christian churches and Christian-owned businesses brought this declaratory

judgment action seeking religious exemption to the anti-discrimination provisions of Title VII of

the Civil Rights Act of 1964 for the refusal to hire or fire members of the LGBTQ+ community

---

[1] Unless otherwise noted, the facts are taken from Plaintiffs' Amended Complaint. ECF No. 45. In its recitation of the facts, the Court views all well-pleaded allegations in the live pleading as true and draws all reasonable inferences in Plaintiff's favor. *See Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

due to sincere religious beliefs. In 2020, the Supreme Court held, for the first time, that Title VII

forbids employers from discriminating based on gender identity and sexual orientation as forms of

discrimination based on biological sex. *See Bostock v. Clayton County*, 140 S. Ct. 1731 (2020).

The *Bostock* opinion expressly left for another day the implications for religious liberties arising

from Title VII, as interpreted. Today, the Court faces one of those future questions. Plaintiffs seek

a declaration that they are permitted to run their businesses and churches in accordance with their

sincere religious beliefs.

### A. Pastor Council

The U.S. Pastor Council is a nonprofit corporation that comprises over 1,000 member

churches ("the Member Churches"). The Member Churches believe that the Bible is the Word of

God and, thus, require their employees must live according to Biblical teaching on matters of

sexuality and gender. In accordance with those teachings[2], the member churches do not recognize

same sex marriage. Any church employee who enters into a same-sex marriage will not receive

benefits for his same-sex partners and would likely face immediate dismissal. The Member

Churches also require their employees to use the restroom designated for their biological sex only.

Therefore, the Member Churches do not consider for all ministerial and non-ministerial

employment the following individuals: practicing homosexuals, bisexuals, crossdressers, or

transgender or gender non-conforming individuals.

---

[2] The Member Churches state: "The Bible repeatedly and explicitly condemns homosexual behavior. *See, e.g.*, Romans 1:26–28; 1 Timothy 1:8–11; 1 Corinthians 6:9–11; Leviticus 18:22; Leviticus 20:13; Genesis 19:1–29. The Bible also condemns cross-dressing and gender non-conforming behavior. *See* Deuteronomy 22:5 (KJV) ("A woman shall not wear anything that pertains to a man, nor shall a man put on a woman's garment, for all who do so are an abomination to the LORD your God."). The Bible teaches that sex and gender are categories created by God, rather than a social or cultural construct or an individual choice. *See* Genesis 1:27 (KJV) ("So God created man in his own image, in the image of God created he him; male and female created he them.")." *See* Am. Compl. 8, ECF No. 45.

### B.  Bear Creek Bible Church

Bear Creek Bible Church is a nondenominational church located in Keller, Texas. Like the Member Churches, Bear Creek Bible Church believes the Bible is the Word of God. Bear Creek Bible Church requires its employees to live according to Biblical teaching on matters of sexuality and gender. Because of this, the church will not consider practicing homosexuals, bisexuals, crossdressers, or transgender or gender non-conforming individuals for church employment—including employment for non-ministerial positions. Bear Creek Bible Church does not recognize same-sex marriage and will not offer benefits to same-sex partners of its employees. Indeed, any church employee who enters into a same-sex marriage would face immediate dismissal from employment. Bear Creek Bible Church also requires its employees to use the restroom designated for their biological sex. Church employees are not permitted to use restrooms designated for the opposite biological sex. Bear Creek Bible Church has at least 15 employees, so it is subject to the requirements of Title VII. Some of these employees are non-ministerial employees such as secretaries and custodians.

### C.  Braidwood Management, Inc.

Braidwood employs approximately 70 individuals, and its employees work at one of the following three business entities, each of which is owned or controlled by Dr. Stephen Hotze: the Hotze Health & Wellness Center, Hotze Vitamins, and Physicians Preference Pharmacy International LLC. Because Dr. Hotze operates his corporations as Christian businesses, he does not allow Braidwood to hire or employ individuals who are engaged in sexually immoral behavior or gender non-conforming conduct of any sort, including homosexuality, cross-dressing, and transgenderism. Dr. Hotze does not allow Braidwood to recognize same-sex marriage or extend

benefits to an employee's same-sex partner, because that would lend approval to homosexual behavior and make him complicit in sin, in violation of his sincere religious beliefs.

Dr. Hotze also will not allow Braidwood to recognize same-sex marriage because the law of Texas continues to define marriage as the union of one man and one woman, and Dr. Hotze believes the law of Texas continues to prohibit private employers such as Braidwood from recognizing homosexual marriage.[3] Dr. Hotze does not permit employees of Braidwood to use a restroom designated for members of the opposite biological sex—regardless of the gender identity that the employee asserts.

Braidwood also enforces a sex-specific dress-and-grooming code that requires men and women to wear professional attire according to their biologically assigned sex. Men are forbidden to wear earrings, but women may. Men who have customer contact must wear a tie (or bow tie); women are not permitted to wear ties. Women are allowed to wear skirts, blouses, shoes with heels, and fingernail polish, while men are forbidden to wear any of these accoutrements. Cross-dressing of any sort is strictly prohibited. Dr. Hotze enforces this sex-specific dress-and-grooming code not only to maintain the professionalism of his businesses but also because of his belief in the Bible, which requires men to dress as men and requires women to dress as women. *See* Am. Compl. 8, ECF No. 45 (citing Deuteronomy 22:5 (KJV) ("A woman shall not wear anything that pertains to a man, nor shall a man put on a woman's garment, for all who do so are an abomination to the LORD your God.").

Braidwood is self-insured and provides health insurance to its employees. Because Braidwood has more than 50 employees, it is compelled to offer ACA-compliant health insurance

---

[3] *See* Tex. Const. art. I § 32 ("Marriage in this state shall consist only of the union of one man and one woman."); Tex. Fam. Code § 6.204(b) ("A marriage between persons of the same sex or a civil union is contrary to the public policy of this state and is void in this state."). Texas has not repealed or amended these laws in response to *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015).

or face financial penalties. *See* 26 U.S.C. § 4980H(c)(2). Braidwood's self-insured health plan is

administered by a company called Entrust. On December 20, 2018, Entrust issued a new Employee

Benefit Plan Document (also known as the Summary Plan Description) for Braidwood's self-

insured health plan, which describes changes to the plan that took effect on December 1, 2018. *See*

Am. Compl. Ex. 5, ECF No. 45. In this document, Entrust redefined the term "spouse" to include

individuals in same-sex marriages. Entrust made this change on its own initiative, without Dr.

Hotze's knowledge or approval. Because of this change, Braidwood's health plan now recognizes

same-sex marriage effective December 1, 2018, even though this is contrary to Dr. Hotze's

religious beliefs. On January 27, 2019, Dr. Hotze discovered that this change had been made to

Braidwood's health plan. On February 14, 2019, Dr. Hotze wrote a letter to Entrust that stated

> I am unwilling to allow Braidwood's plan to recognize same-sex marriage. Braidwood is a Christian business and I operate all of my businesses according to Christian beliefs and teaching. I cannot allow Braidwood's plan to define marriage in a manner that contradicts my religious beliefs or Christian teaching on marriage and sexuality. I therefore respectfully ask you to amend the definition of "spouse" to include only marriages between one man and one woman. If you believe that the law prohibits Entrust from amending Braidwood's plan in this manner, please write back to me and let me know. I do not want Entrust to violate the law, and if you believe that the law prevents you from accommodating this request then I will seek declaratory relief in court against the relevant government officials.

*See* Am. Compl. Ex. 6, ECF No. 45.

> On February 22, 2019, Entrust wrote back to Dr. Hotze:

> [W]e firmly believe that our current definition of "spouse" in the [Summary Plan Description] is in line with the clear law of the United States. However, we completely understand that you feel differently due to religious convictions and personal beliefs, which we obviously respect. As the Plan Sponsor of the Braidwood Employee Benefit Plan Trust, you control the terms of your plan. If you feel that you need to take legal action on this issue, that is completely up to you as the Trustee. We respect your decision to do so, but we cannot influence your decision one way or another on pursuing same.

*See* Am. Compl. Ex. 7, ECF No. 45.

### D. Title VII and EEOC Guidance

Title VII of the Civil Rights Act of 1964 forbids employers to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Title VII also forbids an employer to "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(2). The EEOC has interpreted these statutory prohibitions on "sex" discrimination to include discrimination on account of sexual orientation or gender identity. *See Baldwin v. Foxx*, EEOC Doc. No. 0120133080, 2015 WL 4397641 (EEOC July 16, 2015) (sexual orientation); *Macy v. Holder*, EEOC Doc. No. 0120120821, 2012 WL 1435995 (EEOC Apr. 20, 2012) (gender identity).

The EEOC issued a guidance document that demands that employers recognize same-sex marriage on the same terms as opposite-sex marriage. *See* Preventing Employment Discrimination Against Lesbian, Gay, Bisexual or Transgender Workers[4], ("Examples of sex discrimination involving sexual orientation include . . . denying spousal health insurance benefits to a female employee because her legal spouse is a woman, while providing spousal health insurance to a male employee whose legal spouse is a woman.")

The EEOC also demands that employers allow employees into restrooms that correspond to the gender identity that they assert—regardless of the individual's biological sex, regardless of whether the individual has had a sex-change operation, and regardless of any objections or privacy

---

[4]  The Guidance is available at https://www.eeoc.gov/laws/guidance/preventing-employment-discrimination-against-lesbian-gay-bisexual-or-transgender (last visited on January 13, 2021). The EEOC states that they are "currently working" on this is webpage in light of *Bostock*'s interpretation that the word "sex" in Title VII includes discrimination on the basis of sexual orientation and gender identity.

concerns that might be raised by other employees. *See Lusardi v. Dep't of the Army*, EEOC Appeal No. 0120133395, 2015 WL 1607756 (April 1, 2015); *supra* fn. 4, Preventing Employment Discrimination Against Lesbian, Gay, Bisexual or Transgender Workers ("Title VII is violated where an employer denies an employee equal access to a common restroom corresponding to the employee's gender identity").

The text of Title VII makes no exemptions or accommodations for employers that hold sincere religious objections to homosexuality or transgender behavior. The only religious accommodations in Title VII appear at 42 U.S.C. § 2000e-1(a) and 42 U.S.C. § 2000e-2(e)(2), which allow religious organizations and religious schools to limit employment to members of a particular religion. Nothing in Title VII exempts any religious employer from the statute's prohibition on sex discrimination.

The Supreme Court has recognized a "ministerial exception" in the First Amendment, which categorically exempts a religious group's selection on its ministers from the reach of anti-discrimination law. *See, e.g., Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049 (2020). However, the ministerial exception does not protect churches (such as Bear Creek Bible Church) and religious schools from Title VII's dictates for *non-ministerial* employees and Christian-owned businesses (such as Braidwood Management, Inc.). The EEOC has enforced its policy against Christian-owned businesses (such as Braidwood Management, Inc.) who do not conform to its employment practices. *See, e.g., EEOC v. R.G. & G.R. Harris Funeral Homes Inc.*, 884 F.3d 560 (6th Cir. 2018) (EEOC lawsuit against a Christian funeral home for prohibiting a biological female employee from dressing in accordance with their gender identity—male) *aff'd*

*in Bostock*, 140 S. Ct. 1731. In June 2020, the Supreme Court held in *Bostock v. Clayton County*[5]

that the term "sex" in Title VII includes gender identity and sexual orientation because

discrimination on those grounds necessarily depends on discrimination based on an employee's

biological sex. *See Bostock*, 140 S. Ct. at 1731. The Supreme Court did not address any religious

liberty objections on the merits.

The EEOC—before and after *Bostock*—has taken the consistent position that Title VII

protects against discrimination based on gender identity and sexual orientation. *See* What You

Should Know: The EEOC and Protections for LGBT Workers, U.S. Equal Emp't Opportunity

Comm'n,        https://www.eeoc.gov/laws/guidance/what-you-should-know-eeoc-and-protections-

lgbt-workers (last visited Jan. 21, 2021) (EEOC guidance document on protections for LGBT

workers).

### E.  Procedural History

Plaintiffs sued the EEOC on October 6, 2018, seeking declarations that (1) the First

Amendment and RFRA give Plaintiffs the right to operate their churches and businesses in

accordance with their sincere religious beliefs that homosexual behavior is immoral and (2) any

federal statute, executive order, or agency rule, policy, or regulatory guidance that infringes or

burdens this right is unenforceable. Compl., ECF No. 1. Defendants moved to dismiss for lack of

jurisdiction on May 1, 2019. ECF No. 28. The Court stayed the proceedings pending resolution of

*Bostock*. ECF No. 38. Once the Supreme Court issued its opinion on June 15, 2020, the Court

lifted the stay.

---

[5] Consolidated cases include *Altitude Express Inc. v. Zarda*, No. 17-1623, 2019 WL 1756678 (U.S. argued
Oct. 8, 2019); *Bostock v. Clayton County*, No. 17-1618, 2019 WL 1756677 (U.S. argued Oct. 8, 2019); and
*R.G. & G.R. Harris Funeral Homes v. EEOC*, No. 18-107, 2019 WL 1756679 (U.S. argued Oct. 8, 2019).

Accordingly, Plaintiffs amended their complaint to reassert their claims for declaratory judgment and seek religious exemption from *Bostock*'s interpretation of Title VII and the accompanying EEOC Guidance. The Amended Complaint asserts five claims for declaratory judgment: (1) The Religious Freedom Restoration Act Compels Exemptions To *Bostock*'s Interpretation Of Title VII; (2) The Free-Exercise Clause Compels Exemptions To *Bostock*'s Interpretation Of Title VII; (3) The First Amendment Right Of Expressive Association Compels Exemptions To *Bostock*'s Interpretation Of Title VII; (4) Title VII, As Interpreted In *Bostock*, Does Not Prohibit Discrimination Against Bisexual Employees; and (5) Title VII, As Interpreted In *Bostock*, Does Not Prohibit Employers From Establishing Sex-Neutral Rules Of Conduct That Exclude Practicing Homosexuals And Transgenders. Defendants moved to dismiss the Plaintiffs' Amended Complaint. Mot. Dismiss, ECF No. 49. The renewed motion to dismiss for lack of jurisdiction is now ripe for review.

## II.     LEGAL STANDARDS

### 1.   Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A court dismisses a case under Rule 12(b)(1) for lack of subject matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers," *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quotation marks omitted), and so the burden of proof on a Rule 12(b)(1) motion rests with the party asserting jurisdiction. In ruling on a 12(b)(1) motion, a court may rely upon: "(1) the complaint alone; (2)

the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint

supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-*

*Montenegro v. United States*, 74 F.3d 657, 659, (5th Cir. 1996) (quotation marks omitted). A court

should "consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the

merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### 2. Standing

The Constitution of the United States limits the jurisdiction of federal courts to "Cases"

and "Controversies." U.S. Const., art. III, § 2. A principal idea underlying Article III's case-or-

controversy requirement is the doctrine of standing. "Every party that comes before a federal court

must establish that it has standing to pursue its claims." *Cibolo Waste, Inc. v. City of San Antonio*,

718 F.3d 469, 473 (5th Cir. 2013). "The doctrine of standing asks 'whether the litigant is entitled

to have the court decide the merits of the dispute or of particular issues.'" *Id.* (quoting *Elk Grove*

*Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)).

The Supreme Court has established that the "irreducible constitutional minimum of

standing contains three elements. . . First, the plaintiff must have suffered an injury in fact—an

invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual

or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

(1992) (cleaned up). "Second, there must be a causal connection between the injury and the

conduct complained of—the injury has to be 'fairly . . . traceable to the challenged action of the

defendant . . . .'" *Id.* at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–

42 (1976) (cleaned up)). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the

injury will be 'redressed by a favorable decision.'" *Id.* (quoting *Simon*, 426 U.S. at 38, 43, 96). In

order "to meet the Article III standing requirement when a plaintiff is seeking injunctive or

declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003.).

### 3. Ripeness

The ripeness doctrine "separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000); *see also Texas v. United States*, 523 U.S. 296, 300 (1998) (a plaintiff's claim "is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all"). The "basic rationale" underlying the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). Courts evaluate two issues in assessing whether ripeness is met: (1) the fitness of the matter for adjudication, and (2) the hardship to the plaintiff of withholding review. *See Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010).

When a plaintiff invokes the Declaratory Judgment Act, as in this case, courts assess whether a case is ripe and presents sufficient adversity and concreteness by examining whether an "actual controversy" exists between the parties. *Orix Credit All., Inc., v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000). In other words, "it is the underlying cause of action of the *defendant* against the plaintiff that is actually litigated." *Id.* at 171 (emphasis added); *see also id.* at 172 ("The Act is designed to allow potential defendants in cases of actual and *immediate* controversy within the subject matter jurisdiction of the federal courts to petition the court for an early resolution of the parties['] rights and liabilities" (emphasis added)).

A plaintiff need not show a specific threat of enforcement directed at him personally before seeking declaratory relief. *See, e.g.*, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not

necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."); *Doe v. Bolton*, 410 U.S. 179, 188 (1973) (allowing abortion providers to challenge a state abortion statute "despite the fact that the record does not disclose that any one of them has been prosecuted, or threatened with prosecution, for violation of the State's abortion statutes."). Indeed, the entire point of a pre-enforcement challenge—as well as the Declaratory Judgment Act—is to allow courts to rule on the legality of a plaintiff's conduct *before* an enforcement action is brought. *See Steffel*, 415 U.S. at 459.

## III.    ANALYSIS

Plaintiffs seek declaratory judgment that religious employers are entitled to exemption from Title VII's demands, as interpreted in *Bostock*, to encompass employment discrimination against homosexual, bisexual, and transgender employees. Defendants move to dismiss Plaintiffs Second Amended Complaint for lack of jurisdiction. Motion 8, ECF No. 49.

Under *Bostock*, the employee's sex is the "but-for cause" of his discharge, automatically violative of Title VII, when an employer fires an employee for conduct or personal attributes that it would tolerate in an employee of the opposite biological sex. *Id*. at 1741 ("the individual employee's sex plays an unmistakable and impermissible role in the discharge decision"). But an employer does not violate Title VII when it fires an employee for conduct or personal attributes that it would *not* tolerate in an employee of the opposite biological sex. *Id*. at 1741–42 (explaining that Title VII is silent for an employer who fires a female employee for tardiness or incompetence or simply supporting the wrong sports team if those same traits would not be tolerated in a man). *Bostock* did not address sex-segregated bathrooms, locker rooms, and dress codes under its interpretation of Title VII; instead, "[t]he only question before [the Court was] whether an

employer who fires someone *simply for being homosexual or transgender* has discharged or otherwise discriminated against that person because of such individual's sex." *Id.* at 1753 (emphasis added). While declining to directly address the impact that its holding would have on religious liberty,[6] the Supreme Court expressed "deep[] concern[] with preserving the promise of the free exercise of religion enshrined in our Constitution [because] that guarantee lies at the heart of our pluralistic society[.]"

Defendants argue that "[a]s to the Attorney General, although the Declaratory Judgment Act permits a plaintiff to obtain an early resolution of a claim that a defendant intends to file against the plaintiff, the Attorney General does not have the power to bring claims against the Plaintiffs under Title VII." Mot. Dismiss 9, ECF No. 49. Then, "[a]s to the EEOC, since the Supreme Court recognized the ministerial exception to Title VII in Hosanna-Tabor—an exception further defined in *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049 (2020)—that agency has rarely brought claims seeking to enforce Title VII as to non-ministerial employees of churches, and has not brought any since the confirmation of the current leadership of the EEOC." *Id*. Defendants argue that and (1) the claims against the EEOC should be dismissed because they are not sufficiently ripe (2) the claims against the Attorney General warrant dismissal because no plaintiff has standing to sue the Attorney General. Mot. Dismiss 8, ECF No. 49. The Court will address each ground for dismissal in turn.

### A. Plaintiffs' Claims Are Ripe for Adjudication

Defendants argue that "there is no actual and immediate controversy between the parties that necessitates resolving the legal questions set forth in the [Second Amended Complaint] regarding the rights to religious freedom of religious institutions and closely-held, religiously-

---

[6] "[H]ow these doctrines protecting religious liberty interact with Title VII are questions for future cases." *Id.* at 1754.

operated businesses" because "Plaintiffs do not allege any instance in which the EEOC has threatened Title VII litigation concerning the religious beliefs or employment-related policies or actions of any Plaintiff." Motion 16, ECF No. 49. Plaintiffs contend that the claims are ripe because they present pure questions of law and Plaintiffs would suffer substantial hardship if the court declined to adjudicate. Resp. 4, ECF No. 50 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014)).

To determine whether a declaratory judgment action is ripe, courts evaluate (1) the hardship to the plaintiff of withholding review and (2) the fitness of the matter for adjudication. *See Lopez*, 617 F.3d 336, 341 (5th Cir. 2010).

### 1. Religious Freedom Restoration Act Claim and First Amendment Claims

Defendants argue that the RFRA claim and First Amendment claims are not ripe because there is no actual and immediate controversy, and there is no existing enforcement action against any of the Plaintiffs. Motion 16, ECF No. 49. Plaintiffs argue that RFRA entitles them to religious exemption from *Bostock*'s interpretation that Title VII prohibits employment discrimination based on gender identity, sexual orientation, or both. Defendants argue that the claim is not ripe, in part, because President Donald J. Trump signed an Executive Order 13798 ("EO 13798" or "Executive Order") that directed federal agencies to seek to preserve religious freedom in their enforcement decisions. *See* Promoting Free Speech and Religious Liberty, Exec. Order 13798 at § 1, 82 FR 21675 (May 4, 2017). Emphasizing that "[f]ederal law protects the freedom of Americans and their organizations to exercise religion and participate fully in civic life without undue interference by the Federal Government," EO 13798 requires the "executive branch to vigorously enforce Federal law's robust protections for religious freedom" and directs the Attorney General to "issue guidance interpreting religious liberty protections in Federal law." *Id*. §§ 1, 4. Because of the Executive

14

Order and the lack of federal enforcement actions against religious entities and religious persons in recent years, the EEOC argues that the parties in this case are not adverse.

The favorability of religious freedom under one administration does not negate the likelihood that Plaintiffs will be targeted under an incoming administration. *See Vita Nuova, Inc. v. Azar*, 458 F. Supp. 3d 546, 555 (N.D. Tex. 2020) ("having a valid law on the books—which would cause injury if individual prosecutors or future administrations choose to prosecute— renders nonenforcement ineffectual for the purpose of concluding that a party does not have Article III standing"). Plaintiffs have stated explicitly that they have no intention of complying with the EEOC's directives. Am. Compl. 8-13, ECF No. 45.

Defendants then argue that "only if Plaintiffs were to lose on some part of the merits of this litigation would Plaintiffs face a conflict between obeying the law and obeying their religious tenets." Mot. 17, ECF No. 49. Plaintiffs assert that there will be enforcement because Plaintiffs employment policies directly contravene existing law. Resp. 4, ECF No. 50.

Defendants' concession that Plaintiffs will suffer hardship *only* if they lose on some part of the merits of this case is precisely why the claims for declaratory judgment are proper here. *See Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1154 (5th Cir. 1993) ("The purpose of the Declaratory Judgment Act is to settle 'actual controversies' *before* they ripen into violations of law or breach of some contractual duty."). A hardship can be a legal harm such as "the harm of being "force[d] . . . to modify [one's] behavior in order to avoid future adverse consequences." *Oh. Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 734 (1998). Substantial hardship is satisfied when a party is forced to choose between refraining from allegedly lawful activity and engaging in the allegedly lawful activity with risk of significant sanctions. *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 681 (N.D. Tex. 2016); *see also Abbott Labs.,* 387 U.S. at 152, (finding hardship

where administrative regulations forced the plaintiffs either to comply with a challenged requirement and incur significant costs or refuse to comply and risk prosecution). *See The Religious Sisters of Mercy, et al. v. Azar*, No. 3:16-cv-00386 (D.N.D., Jan. 19, 2021) (holding that practical harm exists when Plaintiffs must either alter their policies to conform to federal rules in violation of their sincerely held religious beliefs or risk potential civil and criminal penalties). Therefore, the Court finds that there will be hardship to Plaintiffs if it withholds review.

Further, these claims will not be significantly aided by further factual development because whether RFRA or the First Amendment compels an exemption to Title VII are pure questions of law. A claim is "fit for judicial decision" if it presents a pure question of law. *See Susan B. Anthony List*, 573 U.S. at 167 (finding the "fitness" factor to be "easily satisfied" because "petitioners' challenge to the Ohio false statement statute presents an issue that is 'purely legal, and will not be clarified by further factual development.'" (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)); *Gardner*, 387 U.S. at 149 (finding issues to be "appropriate for judicial resolution at this time" because "the issue tendered is a purely legal one"); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 287 (5th Cir. 2012) ("Opulent Life's facial challenges . . . are fit for judicial decision because they raise pure questions of law."); *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987) ("A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required."); *Franciscan*, 227 F. Supp. 3d at 681 (N.D. Tex. 2016) ("Because the present case involves primarily questions of law, the Court finds that it would not be significantly aided by further factual development."); *see also The Religious Sisters of Mercy*, No. 3:16-cv-00386 (holding that Catholic plaintiffs' claims against Health & Human Services under RFRA

16

were sufficiently ripe because whether religious plaintiffs are entitled to exemption from *Bostock*'s requirements is a pure question of law).

According to *Bostock*, "RFRA operates as a kind of super statue, displacing the normal operation of other federal laws, [so] it might supersede Title VII's commands in appropriate cases." 140 S. Ct. at 1754. Finding that the issues presented in this case are pure questions of law, the Court concludes that Plaintiffs claims are fit for judicial resolution at this time. Accordingly, Defendants' Motion to Dismiss Plaintiffs' RFRA and First Amendment claims is **DENIED.**

### 2.  Post-*Bostock* Sex-Neutral Policy Claims

Plaintiffs assert two additional claims for declaratory judgment that Title VII does not govern discrimination against bisexual employees and does not prohibit employers from establishing sex-neutral code of conduct policies. Am. Compl. 16–17, ECF No. 45. For the same reasons discussed above, the Court finds that these claims are sufficiently ripe. However, it is unclear to the Court whether *Bostock* prohibits these policies, or whether these policies must be analyzed independently under Title VII. Therefore, the Court declines to address the proper legal standard to apply to Plaintiffs sex-neutral policy claims until it has the benefit of full briefing at the summary judgment phase. Defendants' Motion to Dismiss Plaintiffs' claims that *Bostock* does not prohibit the enforcement of sex-neutral policies is **DENIED.**

### B.  Plaintiffs Do Not Have Standing to Sue the Attorney General

Defendants move to dismiss Plaintiffs' claims against the Attorney General for lack of standing. Motion 8, ECF No. 49. Specifically, Defendants contend that (1) Plaintiffs challenge no Department of Justice ("DOJ") policy or statement by the Attorney General; and (2) Plaintiffs' claim of imminent injury by potential Title VII lawsuits and penalties is immaterial because the Attorney General does not enforce Title VII against private employers. *Id.* Plaintiffs concede that

the Attorney General does not enforce Title VII against private employers but argues that injury is imminent because the DOJ "must authorize any appeal by a federal agency, including the EEOC." Resp. 10, ECF No. 50. Plaintiffs contend that the injury is not speculative because the DOJ's "involvement at the appellate stage is as certain as the EEOC's involvement at the initial enforcement stage." *Id.*

A "speculative chain of possibilities" is insufficient to establish concrete injury. *Clapper v. Amnesty Intern, USA*, 568 U.S. 398, 414 (2013). Here, Plaintiffs' asserted standing to sue the Attorney General is predicated on both a future enforcement action and a future appeal of that action to the Fifth Circuit. Motion 8, ECF No. 49. Since the EEOC has statutory authority to litigate in appellate courts, *see* 42 U.S.C. § 2000e-4(b)(2), the DOJ's involvement in Title VII action against Plaintiffs would require the EEOC to pursue litigation against Plaintiffs in federal court or join this action on a potential future appeal. Therefore, Plaintiffs do not have standing to sue the Attorney General and Defendants' Motion to Dismiss to the claims against the Attorney General is **GRANTED**.

## IV.    CONCLUSION

For the reasons stated, Defendants Motion to Dismiss for Lack of Jurisdiction (ECF No. 48) is **GRANTED in part** and **DENIED in part.** The Court has jurisdiction over Plaintiffs' claims against the EEOC, which are sufficiently ripe. The Court **DISMISSES without prejudice** Plaintiffs' claims against the Attorney General, who is hereby **DISMISSED** as a defendant to this suit.

**SO ORDERED** on this **26th day of January, 2021.**

_____

Reed O'Connor

UNITED STATES DISTRICT JUDGE