UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **U.S. Pastor Council**, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>**Equal Employment Opportunity Commission**, et al.,<br><br>    Defendants. | Case No. 4:18-cv-00824-O |

# BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

CHARLES W. FILLMORE
H. DUSTIN FILLMORE
The Fillmore Law Firm, L.L.P.
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
chad@fillmorefirm.com
dusty@fillmorefirm.com

JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiffs and
the Proposed Classes*

## TABLE OF CONTENTS

Table of contents ................................................................................................................. i

Table of authorities ............................................................................................................ ii

The Court should certify the proposed classes under Rule 23(b)(2) .................................. 2

    I.   The Court should certify the religious objector class .............................................. 2

        A.  The proposed class is so numerous that joinder of all members is impractical ........ 2

        B.  There are questions of law or fact common to the members of the class ............ 4

        C.  Together, Bear Creek Bible Church and Braidwood Management's claims are typical of the claims of the class .................................................................. 5

        D.  Bear Creek Bible Church and Braidwood Management will fairly and adequately protect the interests of the class ........................................................ 6

        E.  The religious objector class satisfies Rule 23(b)(2) ............................................ 7

    II.  The Court should certify the religious or non-religious objector class under Rule 23(b)(2) ............................................................................................................ 8

        A.  The class is so numerous that joinder of all members is impractical ..................... 8

        B.  There are questions of law or fact common to the members of the class .............. 9

        C.  Together, Bear Creek Bible Church and Braidwood Management's claims are typical of the claims of the class .................................................................. 10

        D.  Bear Creek Bible Church and Braidwood Management will fairly and adequately protect the interests of the class ...................................................... 11

        E.  The religious or non-religious objector class satisfies Rule 23(b)(2) .................. 12

    III. Class discovery is not needed ............................................................................... 13

Conclusion ........................................................................................................................ 14

Certificate of conference .................................................................................................. 15

Certificate of service ........................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................6, 11

*Bostock v. Clayton County*,
  140 S. Ct. 1731 (2020) ................................................................................................7, 13

*In re Deepwater Horizon*,
  739 F.3d 790, 812 (5th Cir. 2014) ..............................................................................4, 10

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410, 426 (3d Cir. 2016) ................................................................................2, 8

*James v. City of Dallas,*
  254 F.3d 551, 571 (5th Cir. 2001) ...............................................................................5, 10

*M.D. v. Perry*,
  675 F.3d 832 (5th Cir. 2012) ...........................................................................4, 7, 10, 12

*Wal-Mart Stores, Inc.* v. *Dukes,*
  564 U.S. 338 (2011) .................................................................................................passim

**Statutes**

42 U.S.C. § 1988(b) ..............................................................................................................13

**Rules**

Fed. R. Civ. P. 23(b)(2) ..........................................................................................7, 8, 12, 13

Local Rule 23.2(b)(1) ........................................................................................................4, 9

Local Rule 23.2(b)(3) ............................................................................................................1

Local Rule 23.2(c) ............................................................................................................6, 12

Local Rule 23.2(d) ...............................................................................................................13

Local Rule 23.2(e) ...............................................................................................................13

Local Rule 23.2(f) ...............................................................................................................13

Local Rule 23.2(g) ...............................................................................................................13

**Other Authorities**

*Baldwin v. Foxx*, EEOC Doc. No. 0120133080, 2015 WL 4397641 (EEOC
  July 16, 2015) ..............................................................................................................7, 13

Catholic Church, Catechism of the Catholic Church (2d ed.) ............................................2

Congregation for the Clergy, *The Gift of the Priestly Vocation* (Dec. 8, 2016) ....................2

*Macy v. Holder*, EEOC Doc. No. 0120120821, 2012 WL 1435995 (EEOC
  Apr. 20, 2012) ..............................................................................................................7, 13

P.J. Kenedy & Sons, The Official Catholic Directory Anno Domini 2016 ........................... 3

Southern Baptist Convention, *Position Statements* ............................................................. 2

Southern Baptist Convention, *Resolution on Homosexuality* (1976) ................................... 2

The United Methodist Church, *Book of Discipline* (2016) .............................................. 2, 3

The plaintiffs respectfully move to certify two classes under Rule 23(b)(2). The first class is represented by plaintiffs Bear Creek Bible Church and Braidwood Management Inc., and it consists of:

> Every employer in the United States that opposes homosexual or transgender behavior for sincere religious reasons.

The common characteristics of these class members are that they are all employers, and they all object to homosexual or transgender behavior for sincere religious reasons. *See* Local Rule 23.2(b)(3). The distinguishing characteristics are that some class members are non-profit while others are for-profit; some class members are closely held while others are publicly traded; some class members are large employers while others are small; and the employers are geographically dispersed throughout the United States. *See id*. We will refer to this proposed class as the "religious-objector class."

The second class is represented by plaintiffs Bear Creek Bible Church and Braidwood Management Inc., and it consists of:

> Every employer in the United States that opposes homosexual or transgender behavior for religious or non-religious reasons.

The common characteristics of these class members are that they are all employers, and they all object to homosexual or transgender behavior, either for religious or non-religious reasons. *See* Local Rule 23.2(b)(3). The distinguishing characteristics are that some class members are non-profit while others are for-profit; some class members are closely held while others are publicly traded; some class members are large employers while others are small; and the employers are geographically dispersed throughout the United States. We will refer to this proposed class as the "religious or non-religious objector class."

# THE COURT SHOULD CERTIFY THE PROPOSED CLASSES UNDER RULE 23(b)(2)

A party that moves for class certification must satisfy each requirement of Rule 23(a) and at least one subdivision in Rule 23(b). The proposed classes meet each of these requirements.

## I. THE COURT SHOULD CERTIFY THE RELIGIOUS OBJECTOR CLASS

The religious objector class meets each of the four requirements of Rule 23(a) as well as Rule 23(b)(2).

### A. The Proposed Class is So Numerous That Joinder of All Members Is Impractical

The number of religious employers who object to homosexual or transgender behavior easily exceeds the numerosity threshold. *See In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016) ("[N]umerosity is generally satisfied if there are more than 40 class members."). As for churches: We can begin (and end) with the three largest Christian denominations in the United States—the Catholic Church, the Southern Baptist Convention, and the United Methodist Church. All three denominations have adopted official positions denouncing homosexual behavior as incompatible with the Bible and Christian teaching,[1] and all three prohibit practicing homosexuals from serving in church-leadership positions.[2]

---

1. *See* Catholic Church, *Catechism of the Catholic Church* §§ 2357–59 (2d ed.) ("Basing itself on Sacred Scripture, which presents homosexual acts as acts of grave depravity, tradition has always declared that 'homosexual acts are intrinsically disordered.' . . . Under no circumstances can they be approved."); Southern Baptist Convention, *Position Statements* ("Homosexuality is not a 'valid alternative lifestyle.' The Bible condemns it as sin."), available at http://www.sbc.net/aboutus/positionstatements.asp (last visited on May 24, 2021); The United Methodist Church, *Book of Discipline* ¶ 304.3 (2016) ("The practice of homosexuality is incompatible with Christian teaching.").
2. *See* Congregation for the Clergy, *The Gift of the Priestly Vocation* (Dec. 8, 2016) ("[T]he Church, while profoundly respecting the persons in question, cannot admit to the seminary or to holy orders those who practise homosexuality, present deep-seated homosexual tendencies or support the so-called 'gay culture.'"); Southern Baptist Convention, *Resolution on Homosexuality* (1976)

There are approximately 17,000 Catholic parishes in the United States,[3] over 47,000 churches affiliated with the Southern Baptist Convention,[4] and over 30,000 United Methodist churches.[5] Many of these churches employ more than 15 persons, thus coming within the coverage of Title VII and the regulatory jurisdiction of the EEOC.

Meanwhile, a 2013 poll found that "three-quarters of white evangelical Protestants (74%) and a majority of all U.S. adults with a religious affiliation (55%)" believed that "homosexuality conflicts with their religious beliefs." Pew Research Center, *Religion* (June 13, 2013), https://www.pewresearch.org/social-trends/2013/06/13/chapter-6-religion/. There are 70.4 million registered Catholics in the United States. *See* P.J. Kenedy & Sons, *The Official Catholic Directory Anno Domini* 2016. If 55% of them had religious objections to homosexuality, that results in 38.7 million religious objectors among Catholics by themselves. These data alone are enough to establish that the number of objecting employers exceeds 40. And the class includes not only the present-day objecting employers, but also *future* employers who will hold religious objections to homosexual or transgender behavior. It is inconceivable that this class would fail to meet the numerosity threshold of Rule 23(a)(1).

---

("RESOLVED, That this Convention, while acknowledging the autonomy of the local church to ordain ministers, urge churches and agencies not to afford the practice of homosexuality any degree of approval through ordination, employment, or other designations of normal life-style."); The United Methodist Church, *Book of Discipline* ¶ 304.3 (2016) ("[S]elf-avowed practicing homosexuals are not to be certified as candidates, ordained as ministers, or appointed to serve in The United Methodist Church.").

3. *See* https://cara.georgetown.edu/frequently-requested-church-statistics (last visited on May 24, 2021)
4. *See* Fast Facts About the Southern Baptist Convention (October 25, 2018), available at http://www.sbc.net/BecomingSouthernBaptist/pdf/FastFacts2018.pdf (last visited on May 24, 2021)
5. *See* United Methodists at a Glance, available at http://www.umc.org/who-we-are/united-methodists-at-a-glance (last visited on May 24, 2021).

The local rules of this Court require us to provide the "approximate number of class members." Local Rule 23.2(b)(1). It is difficult, however, to calculate the number of present and future employers who hold religious objections to homosexual or transgender behavior. Based on these data, one can confidently estimate that the Religious Objector Class members number in the thousands, but it is difficult to come up with a more precise calculation.

### B. There Are Questions of Law or Fact Common to the Members of the Class

Bear Creek Bible Church and Braidwood Management seek to litigate several questions of law common to all class members. Questions of law common to the religious objector class include: (a) Whether RFRA compels exemptions to *Bostock*'s interpretation of Title VII; and (b) Whether the Free Exercise Clause compels exemptions to *Bostock*'s interpretation of Title VII. These questions affect all class members because these religious employers have to choose between violating their religious beliefs about the nature and ethics of sex, on the one hand, and violating their equally sincere religious belief in respecting the authority of civil government on the other.

For this set of questions affecting each of the class members, each class member employer will "suffer the same injury" if required to employ individuals in violation of its religious beliefs about sexual ethics and identity. When each class member experiences the same kind of injury, that is all that is needed to satisfy Rule 23(a)(2)'s commonality requirement. *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 348 (2011) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)); *see also Wal-Mart*, 564 U.S. at 360 ("[E]ven a single [common] question will do." (citation and internal quotation marks omitted)); *In re Deepwater Horizon*, 739 F.3d 790, 812 (5th Cir. 2014) (same). And a ruling on these employer-related issues "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350; *see also M.D. v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012).

### C. Together, Bear Creek Bible Church and Braidwood Management's Claims Are Typical of the Claims of the Class

Bear Creek Bible Church and Braidwood Management together claim that their religious beliefs about sex and sexual ethics entitle them to an exemption from Title VII as interpreted by *Bostock*. This is the precise claim that Bear Creek Bible Church and Braidwood Management seek to litigate on behalf of the absent class members. *See* Second Amended Complaint (ECF No. 45) at ¶¶ 56–65.

The interests of Bear Creek Bible Church and Braidwood Management are aligned with those of the classes. Each class member benefits from a ruling that provides a religiously based exemption (based on either RFRA or the First Amendment's Free Exercise Clause) from the requirements of Title VII as interpreted by *Bostock*. As to the second class, each class member benefits from a ruling that provides for either an exemption based on First Amendment Free Association (rather than religion), or that clarifies the obligations on employers in implementing sex-neutral employment requirements.

Bear Creek Bible Church and Braidwood Management advance the same theories and seek the same remedies as those of the represented class. This meets the requirements of typicality. *See James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) ("[T]he test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." (citations and quotation marks omitted)); *id.* ("[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." (citations and quotation marks omitted)); *see also Wal-Mart*, 564 U.S. at 350 n.5 ("[T]he commonality and typicality requirements of Rule 23(a) tend to merge." (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–158 n.13 (1982))).

### D. Bear Creek Bible Church and Braidwood Management Will Fairly and Adequately Protect the Interests of the Class

Bear Creek Bible Church and Braidwood Management will fairly and adequately represent the interests of its fellow class members, and there are no conflicts of interest between Bear Creek Bible Church and Braidwood Management and the other members of this class. The class members consist of employers with religious objections to homosexual conduct or bisexual conduct. Every member of the class benefits from a holding that they are entitled to a religious exemption based on either RFRA or the First Amendment's Free Exercise Clause. There is no conceivable conflict of interest that could arise from Bear Creek Bible Church and Braidwood Management's efforts to enforce these rights of objecting employers on a class-wide basis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."). The First Amendment and the Religious Freedom Restoration Act protect *all* religious employers from being compelled to institute employment practices that violate their religious beliefs, and class-wide relief will serve only to enhance the freedom and autonomy of each of the class members.

Bear Creek Bible Church and Braidwood Management are appropriate class representatives for the first class because their religious objections to sex outside of marriage or to sexual expression outside of biological male and female categories are sincere and deeply held. Bear Creek Bible Church operates as a Christian ministry, while Braidwood operates overtly as a Christian business. Bear Creek Bible Church and Braidwood Management's attorneys are self-financing this litigation, but the legal issues are straightforward and the case will not be expensive to litigate. *See* Local Rule 23.2(c).

### E. The Religious Objector Class Satisfies Rule 23(b)(2)

The final criterion for class certification under Rule 23(b)(2) is that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Supreme Court has held that this requirement is satisfied "when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360; *see also id*. at 361–62 ("[T]he relief sought must perforce affect the entire class at once . . . ."). That is precisely what Bear Creek Bible Church and Braidwood Management are requesting: Declaratory relief that protects the ability of each class member to follow its beliefs about sex and sexuality, in the form of a religious exemption.

No one is seeking individualized relief for any class member or for any subset of the class. *Compare with M.D.*, 675 F.3d at 845 (disapproving class certification under Rule 23(b)(2) when individualized relief was sought). Bear Creek Bible Church and Braidwood Management are requesting a simple, class-wide declaratory judgment that protects employers' sincere religious beliefs about employment practices.

In addition, the defendant agency is "act[ing] . . . on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). The EEOC enforces Title VII against all private-sector employers with more than 15 employees. Since 2015, it has claimed that Title VII outlaws employment discrimination on account of sexual orientation or gender identity. *See Baldwin v. Foxx*, EEOC Doc. No. 0120133080, 2015 WL 4397641 (EEOC July 16, 2015); *Macy v. Holder*, EEOC Doc. No. 0120120821, 2012 WL 1435995 (EEOC Apr. 20, 2012). The Supreme Court adopted a similar interpretation of Title VII's prohibition on sex discrimination in *Bostock v. Clayton County*, 140 S. Ct. 1731, 1737 (2020). But in none of these cases has the EEOC provided (nor has the Supreme Court considered) a religious exemption from Title VII's sexual orientation coverage. Title VII violates the Free Exercise Clause and RFRA as applied to

all class members, which makes "final injunctive relief or corresponding declaratory relief . . . appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Wal–Mart*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.").

## II. THE COURT SHOULD CERTIFY THE RELIGIOUS OR NON-RELIGIOUS OBJECTOR CLASS UNDER RULE 23(b)(2)

The religious or non-religious objector class likewise meets each of the four requirements of Rule 23(a) as well as Rule 23(b)(2).

### A. The Class Is So Numerous That Joinder of All Members Is Impractical

The number of religious employers who object to homosexual or transgender behavior easily exceeds the numerosity threshold. *See In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016) ("[N]umerosity is generally satisfied if there are more than 40 class members."). The churches discussed in Part I.A, *supra*, are employers who would benefit from non-religious accommodations or clarifications as well as religious clarifications. That already puts the class membership well into the thousands. Beyond that, almost one quarter of American adults believe that homosexuality should be discouraged, according to a 2017 poll. See Pew Research Center, *Homosexuality, Gender and Religion* (Oct. 5, 2017), https://pewrsr.ch/34cF0gS (last visited on May 24, 2021). The polling does not tell how many of these objectors are employers, or how many of them have non-religious objections to homosexuality. As of 2017, there were over 5 million firms in the United States employing more than 20 people. *2017 SUSB Annual Data Tables*, https://bit.ly/3fibSeF (last visited on May 24, 2021). If just under a quarter of the owners of those firms objected to homosexuality, that number would exceed one million. This number is probably overcounting: perhaps the number of people opposing

homosexuality has gone down since 2017, perhaps firm owners are less likely to oppose homosexuality than the public at large, and there are many people who think homosexuality should be "discouraged" (in the words of the Pew poll) but would not use their business's employment policies to advance that goal. But even after one discounts for these factors, hundreds of objecting employers seem quite likely.

The local rules of this Court require us to provide the "approximate number of class members." Local Rule 23.2(b)(1). It is difficult, however, to calculate the number of present and future employers who hold objections to homosexual or transgender behavior. We can say with absolute confidence that the number exceeds forty. Since this category includes both religious and non-religious objectors, we can say that the number is well into the thousands.

### B. There Are Questions of Law or Fact Common to the Members of the Class

Bear Creek Bible Church and Braidwood Management seek to litigate several questions of law common to all class members. Questions of law common to the religious or non-religious objector class include: (a) Whether the First Amendment right of expressive association compels exemptions to *Bostock*'s interpretation of Title VII; (b) Whether Title VII, as interpreted in *Bostock*, allows employers to discriminate against bisexuals, so long as the employer regards bisexual behavior or orientation as equally unacceptable in a man or a woman; and (c) Whether Title VII, as interpreted in *Bostock*, allows employers to exclude homosexuals and transgender individuals from employment by establishing sex-neutral rules of conduct. These questions affect all class members, determining their obligations under Title VII as interpreted to *Bostock*.

For this set of questions affecting each of the class members, each class member will "suffer the same injury" if required to employ individuals in violation of their beliefs (whether or not religious) about sexual ethics and gender identity. When each class member experiences the same kind of injury, that is all that is needed to satisfy

Rule 23(a)(2)'s commonality requirement. *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 348 (2011) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)); *see also Wal-Mart*, 564 U.S. at 360 ("[E]ven a single [common] question will do." (citation and internal quotation marks omitted)); *In re Deepwater Horizon*, 739 F.3d 790, 812 (5th Cir. 2014) (same). And a ruling on these employer-related issues "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350; *see also M.D. v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012).

### C. Together, Bear Creek Bible Church and Braidwood Management's Claims Are Typical of the Claims of the Class

Bear Creek Bible Church and Braidwood Management together claim that their First Amendment right of expressive association justifies their exemption from Title VII as interpreted by *Bostock*. And Bear Creek Bible Church and Braidwood Management contend that *Bostock*'s interpretation of Title VII does not, by its terms, preclude their imposing sex-neutral employment requirements on their employees that will have the effect of excluding bisexual, homosexual, and transgender employees.

The interests of Bear Creek Bible Church and Braidwood Management are aligned with those of the class. Each class member benefits from a ruling that provides an exemption based on First Amendment free association and that clarifies employers' obligations in implementing sex-neutral employment requirements.

Bear Creek Bible Church and Braidwood Management advance the same theories and seek the same remedies as those of the represented class. This meets the requirements of typicality. *See James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) ("[T]he test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." (citations and quotation marks omitted)); *id.* ("[T]he critical

inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." (citations and quotation marks omitted)); *see also Wal-Mart*, 564 U.S. at 350 n.5 ("[T]he commonality and typicality requirements of Rule 23(a) tend to merge." (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–158 n.13 (1982))).

### D. Bear Creek Bible Church and Braidwood Management Will Fairly and Adequately Protect the Interests of the Class

Bear Creek Bible Church and Braidwood Management will fairly and adequately represent the interests of its fellow class members, and there are no conflicts of interest between Bear Creek Bible Church and Braidwood Management and the other members of this class. The class includes members who have both religious and nonreligious objections to homosexual conduct or bisexual conduct. Every member of the class would benefit from an exemption based on the First Amendment's freedom of association as well as from a decision affirming the legality of sex-neutral employment requirements. There is no conflict of interest that could arise from Bear Creek Bible Church and Braidwood Management's efforts to enforce these rights of objecting employers on a classwide basis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."). A freedom-of-association exemption for members of the second class serves only to enhance the freedom and autonomy of each of the class members.

Bear Creek Bible Church and Braidwood Management are appropriate class representatives for the class because their objections to sex outside of marriage or to sexual expression outside of the male–female binary are sincere and deeply held. For purposes of this class, which includes employers with both religious and non-religious reasons for their beliefs, religious beliefs are irrelevant. Sincerity is what matters. Bear

Creek Bible Church and Braidwood Management are both positioned to benefit from a successful claim based on non-religious grounds that will enhance the autonomy of both religious and secular employers.

Bear Creek Bible Church and Braidwood Management's attorneys are self-financing this litigation, but the legal issues are straightforward and the case will not be expensive to litigate. *See* Local Rule 23.2(c).

### E. The Religious or Non-Religious Objector Class Satisfies Rule 23(b)(2)

The final criterion for class certification under Rule 23(b)(2) is that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Supreme Court has held that this requirement is satisfied "when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360; *see also id*. at 361–62 ("[T]he relief sought must perforce affect the entire class at once . . . ."). That is precisely what Bear Creek Bible Church and Braidwood Management are requesting: Declaratory relief that protects the ability of each class member to follow its beliefs about sex and sexuality, in the form of an exemption based on freedom of association as well as a clarification of the employer's right to institute sex-neutral employment requirements.

No one is seeking individualized relief for any class member or for any subset of the class. *Compare with M.D.*, 675 F.3d at 845 (disapproving class certification under Rule 23(b)(2) when individualized relief was sought). Bear Creek Bible Church and Braidwood Management are requesting a simple, classwide declaratory judgment that protects employers' sincere religious beliefs about employment practices.

In addition, the defendant agency is "act[ing] . . . on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). The EEOC enforces Title VII against all private-

sector employers with more than 15 employees. Since 2015, it has claimed that Title VII outlaws employment discrimination on account of sexual orientation or gender identity. *See Baldwin v. Foxx*, EEOC Doc. No. 0120133080, 2015 WL 4397641 (EEOC July 16, 2015); *Macy v. Holder*, EEOC Doc. No. 0120120821, 2012 WL 1435995 (EEOC Apr. 20, 2012). The Supreme Court adopted a similar interpretation of Title VII's prohibition on sex discrimination in *Bostock*, 140 S. Ct. at 1737. But in none of these cases has the EEOC provided (nor has the Supreme Court considered) an associational exemption from Title VII's sexual orientation coverage. Nor has it directly addressed the legitimacy of sex-neutral employment requirements leading to a refusal to hire bisexual individuals. Title VII violates the First Amendment's Freedom of Association as applied to all class members, which makes "final injunctive relief or corresponding declaratory relief . . . appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Wal–Mart*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.").

### III. Class Discovery Is Not Needed

The representative plaintiffs believe that class discovery is unnecessary given that the classes unquestionably satisfy the numerosity requirement of Rule 23(a)(1). *See* Local Rule 23.2(f). The plaintiffs' attorneys' fees will be paid on a contingency basis if the action is successful, as RFRA provides for fee-shifting. *See* 42 U.S.C. § 1988(b); Local Rule 23.2(g). The remaining information required by Local Rule 23.2 is inapplicable because certification is sought solely under Rule 23(b)(2) and the representatives are not seeking damages or monetary relief, so notice need not be given to absent class members. *See* Local Rule 23.2(e). In addition, this is not a diversity action, so there is no need to determine a jurisdictional amount. *See* Local Rule 23.2(d).

## CONCLUSION

The motion for class certification should be granted.

                                              Respectfully submitted.

                                              */s/* Jonathan F. Mitchell

| | |
|---|---|
| CHARLES W. FILLMORE | JONATHAN F. MITCHELL |
| H. DUSTIN FILLMORE | Texas Bar No. 24075463 |
| The Fillmore Law Firm, LLP | Mitchell Law PLLC |
| 201 Main Street, Suite 801 | 111 Congress Avenue, Suite 400 |
| Fort Worth, Texas 76102 | Austin, Texas 78701 |
| (817) 332-2351 (phone) | (512) 686-3940 (phone) |
| (817) 870-1859 (fax) | (512) 686-3941 (fax) |
| chad@fillmorefirm.com | jonathan@mitchell.law |
| dusty@fillmorefirm.com | |
| | *Counsel for Plaintiffs and* |
| Dated: May 24, 2021 | *the Proposed Classes* |

## CERTIFICATE OF CONFERENCE

    I certify that on May 24, 2021, I conferred with Ben Takemoto, counsel for the defendants, and he informed me that the defendants oppose this motion.

 /s/ Jonathan F. Mitchell  
JONATHAN F. MITCHELL  
*Counsel for Plaintiffs and*  
*the Proposed Classes*

## CERTIFICATE OF SERVICE

    I certify that on May 24, 2021, I served this document through CM/ECF upon:

Benjamin T. Takemoto
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
(202) 532-4252 (phone)
(202) 616-8460 (fax)
benjamin.takemoto@usdoj.gov

*Counsel for Defendants*

                                                       /s/ Jonathan F. Mitchell
                                                       Jonathan F. Mitchell
                                                       *Counsel for Plaintiffs and*
                                                       *the Proposed Classes*