UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **U.S. Pastor Council**, et al., | |
| Plaintiffs, | |
| v. | Case No. 4:18-cv-00824-O |
| **Equal Employment Opportunity Commission**, et al., | |
| Defendants. | |

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION

Charles W. Fillmore
H. Dustin Fillmore
The Fillmore Law Firm, L.L.P.
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
chad@fillmorefirm.com
dusty@fillmorefirm.com

Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiffs and
the Proposed Classes*

# TABLE OF CONTENTS

Table of contents ..............................................................................................i

Table of authorities .........................................................................................ii

Background .....................................................................................................1

   I.  The EEOC's interpretation of Title VII .......................................................1

   II.  The Supreme Court's interpretation of Title VII ....................................3

Undisputed facts .............................................................................................4

Argument ........................................................................................................6

   I.  The Religious Freedom Restoration Act compels exemptions to *Bostock*'s interpretation of Title VII ...........................................................6

     A. Title VII, as interpreted in *Bostock*, substantially burdens employers who oppose homosexual or transgender behavior for sincere religious reasons ..........7

     B. The government cannot show a compelling governmental interest to justify the burden on plaintiffs' religious exercise .........................................8

   II.  The Free Exercise clause compels exemptions to *Bostock*'s interpretation of Title VII ...........................................................................11

   III. The First Amendment right of expressive association compels exemptions to *Bostock*'s interpretation of Title VII.......................................12

   IV. Title VII, as interpreted in *Bostock*, does not prohibit employers from discriminating against bisexual employees.............................................14

   V.  Title VII, as interpreted in *Bostock*, does not prohibit employers from establishing sex-neutral rules of conduct that exclude practicing homosexuals and transgender individuals from employment.......................................15

Conclusion ....................................................................................................17

Certificate of service .....................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Bostock v. Clayton County,*
140 S. Ct. 1731 (2020) ..................................................................................passim

*Boy Scouts v. Dale,*
530 U.S. 640 (2000) .................................................................................12, 13

*Burwell v. Hobby Lobby Stores, Inc.,*
573 U.S. 682 (2014) .................................................................................7, 8, 9

*City of Boerne v. Flores,*
521 U.S. 507 (1997) ..........................................................................................9

*DeOtte v. Azar,*
332 F.R.D. 173 (N.D. Tex. 2019) ...................................................................7

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
140 S. Ct. 2367 (2020)................................................................................7, 10

*Our Lady of Guadalupe School v. Morrissey-Berru,*
140 S. Ct. 2049 (2020) ......................................................................................2

*Roberts v. United States Jaycees,*
468 U.S. 609 (1984) .........................................................................................12

*Tandon v. Newsom,*
141 S. Ct. 1294 (2021) .....................................................................................11

*Walters v. Metropolitan Educational Enterprises, Inc.,*
519 U.S. 202 (1997) ...........................................................................................1

*Wardle v. Ute Indian Tribe,*
623 F.2d 670 (10th Cir. 1980) ......................................................................10

**Statutes**

42 U.S.C. § 2000e(b) ..............................................................................1, 9, 11

42 U.S.C. § 2000e-1(a) .......................................................................................2

42 U.S.C. § 2000e-2(a)(1) ...................................................................................1

42 U.S.C. § 2000e-2(a)(2) ...................................................................................1

42 U.S.C. § 2000e-2(e)(2) ...................................................................................2

Tex. Penal Code § 25.02 ...................................................................................16

**Other Authorities**

*Baldwin v. Foxx,* EEOC Doc. No. 0120133080, 2015 WL 4397641 (EEOC
July 16, 2015)......................................................................................................1

John McCormack, *Susan Collins Won't Cosponsor Equality Act Again*,
National Review (February 25, 2021).........................................................................10

*Lusardi v. Dep't of the Army*, EEOC Appeal No. 0120133395, 2015 WL
1607756 (April 1, 2015) ...............................................................................................2

*Macy v. Holder*, EEOC Doc. No. 0120120821, 2012 WL 1435995 (EEOC
Apr. 20, 2012) ...............................................................................................................1

Plaintiffs Bear Creek Bible Church and Braidwood Management Inc. respectfully move for summary judgment and a classwide permanent injunction, as there are no genuine issues of material fact and the plaintiffs are entitled to judgment as a matter of law.[1]

## BACKGROUND

### I.   The EEOC's Interpretation Of Title VII

Title VII of the Civil Rights Act of 1964 forbids employers to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Title VII also forbids an employer to "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(2). These anti-discrimination requirements apply to employers with 15 or more employees. *See* 42 U.S.C. § 2000e(b); *Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202, 212 (1997).

Since 2015, the Equal Employment Opportunity Commission has claimed that Title VII's prohibition on "sex" discrimination also outlaws employment discrimination on account of sexual orientation or gender identity. *See Baldwin v. Foxx*, EEOC Doc. No. 0120133080, 2015 WL 4397641 (EEOC July 16, 2015) (sexual orientation); *Macy v. Holder*, EEOC Doc. No. 0120120821, 2012 WL 1435995 (EEOC Apr. 20, 2012) (gender identity); *see also* Exhibits 1–2 (EEOC guidance documents).

The EEOC's "guidance documents" demand that employers recognize same-sex marriage on the same terms as opposite-sex marriage. *See* Preventing Employment

---

1.   Plaintiff U.S. Pastor Council has withdrawn from this litigation, and we will file an amended complaint that removes it from the caption and from any allegations in the pleadings.

Discrimination Against Lesbian, Gay, Bisexual or Transgender Workers, available at https://bit.ly/2MnDzG5 (last visited on May 24, 2021) ("Examples of sex discrimination involving sexual orientation include . . . denying spousal health insurance benefits to a female employee because her legal spouse is a woman, while providing spousal health insurance to a male employee whose legal spouse is a woman.") (attached as Exhibits 1 and 2). The EEOC also demands that employers allow employees into restrooms that correspond to the "gender identity" that they assert—regardless of the individual's biological sex, regardless of whether the individual has had a sex-change operation, and regardless of any objections or privacy concerns that might be raised by other employees. *See Lusardi v. Dep't of the Army*, EEOC Appeal No. 0120133395, 2015 WL 1607756 (April 1, 2015); Preventing Employment Discrimination Against Lesbian, Gay, Bisexual or Transgender Workers, available at https://bit.ly/2MnDzG5 (last visited on May 24, 2021) ("Title VII is violated where an employer denies an employee equal access to a common restroom corresponding to the employee's gender identity").

Neither the text of Title VII nor the EEOC's regulatory guidance makes any exemptions or accommodations for employers that oppose homosexual or transgender behavior on religious grounds. The only religious accommodations in Title VII appear at 42 U.S.C. § 2000e-1(a) and 42 U.S.C. § 2000e-2(e)(2), which allow religious organizations and religious schools to limit employment to members of a particular religion. The Supreme Court has also recognized a "ministerial exception" in the First Amendment, which categorically exempts a religious group's selection of its ministers from the reach of anti-discrimination law. *See, e.g.*, *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049 (2020). This "ministerial exemption" protects the Catholic church from being forced to hire women as priests—notwithstanding the text of Title VII—and it protects other churches from being forced to hire

practicing homosexuals as clergy. But this "ministerial exception" is no help to Christian nonprofits or businesses that oppose homosexuality and transgender behavior on religious grounds. And the "ministerial exemption" does nothing to shield churches or religious schools that require their non-ministerial employees (such as secretaries and janitors) to refrain from homosexual or transgender behavior.

## II.   The Supreme Court's Interpretation Of Title VII

On June 15, 2020, the Supreme Court announced its judgment in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). *Bostock* holds that Title VII's prohibition on "sex" discrimination prohibits employers from firing or refusing to hire individuals "for being homosexual or transgender." *Id.* at 1737.

*Bostock* explained that an employer who fires an employee for conduct or personal attributes that it would tolerate in a person of the opposite biological sex has made the employee's sex the "but-for cause" of his discharge, and that (in the Court's view) automatically violates the statutory command of Title VII. The Court explained:

> If the employer fires the male employee for no reason other than the fact he is attracted to men, the employer discriminates against him for traits or actions it tolerates in his female colleague. Put differently, the employer intentionally singles out an employee to fire based in part on the employee's sex, and the affected employee's sex is a but-for cause of his discharge. Or take an employer who fires a transgender person who was identified as a male at birth but who now identifies as a female. If the employer retains an otherwise identical employee who was identified as female at birth, the employer intentionally penalizes a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth. Again, the individual employee's sex plays an unmistakable and impermissible role in the discharge decision.

*Id.* at 1741–42. *Bostock* also makes clear that an employer does *not* violate Title VII if it fires an employee for conduct or personal attributes that it would not tolerate in an employee of the opposite biological sex:

> Take an employer who fires a female employee for tardiness or incompetence or simply supporting the wrong sports team. Assuming the employer would not have tolerated the same trait in a man, Title VII stands silent.

*Id*. at 1742. This means that an employer will violate Title VII *whenever* an employee's biological sex is a "but-for cause" of an adverse employment action.[2]

These statements in *Bostock* prohibit employers from enforcing sex-specific dress or grooming codes. *See Bostock*, 140 S. Ct. at 1741 ("[I]f changing the employee's sex would have yielded a different choice by the employer—a statutory violation has occurred."). They also render employers incapable of preventing their employees from entering and using restrooms reserved for the opposite sex, regardless of the employee's purpose or desire for accessing the opposite-sex restroom. *See id*.; *id*. at 1745–46 ("[N]othing in Title VII turns on the employer's labels or any further intentions (or motivations) for its conduct beyond sex discrimination."). At the end of its opinion, the Court says it that it "do[es] not purport to address bathrooms, locker rooms, or anything else of the kind." *Id*. at 1753. But no court can uphold the legality of sex-specific dress codes and restrooms under Title VII without contradicting and defying numerous statements that appear in the *Bostock* majority opinion.

## UNDISPUTED FACTS

Bear Creek Bible Church is a nondenominational church located in Keller, Texas. Bear Creek Bible Church employs at least 15 individuals, so it is subject to the requirements of Title VII. Declaration of John Salvesen at ¶ 4 (attached as Exhibit 4). Some of Bear Creek's employees hold non-ministerial positions. *See id*. at ¶ 9.

---

2.  *See Bostock*, 140 S. Ct. at 1739 ("Title VII's 'because of' test incorporates the simple and traditional standard of but-for causation. That form of causation is established *whenever* a particular outcome would not have happened 'but for' the purported cause. In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause. . . . So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law." (citations and some internal quotation marks omitted)).

Bear Creek Bible Church believes that the Bible is the Word of God, and it includes the following statement in its bylaws and statement of faith:

> That God's plan for human sexuality is to be expressed only within the context of marriage, that God created man and woman as unique biological persons made to complete each other. God instituted monogamous marriage between male and female as the foundation of the family and the basic structure of human society. For this reason, we believe that marriage is exclusively the union of one genetic male and one genetic female (Gen 2:24; Matt 19:5–6, Mark 10:6–9; Romans 1:26–27; I Cor 6–9).

*See* Declaration of John Salvesen at ¶ 12. Bear Creek Bible Church requires its employees to live according to Biblical teaching on matters of sexuality and gender, and it will not consider practicing homosexuals, bisexuals, crossdressers, or transgender or gender non-conforming individuals for church employment—including employment for non-ministerial positions. *See id*. at ¶ 11. Bear Creek Bible Church does not recognize same-sex marriage and will not offer benefits to same-sex partners of its employees. Indeed, any church employee who enters into a same-sex marriage would face dismissal from employment. *See id*. at ¶ 11–12. Bear Creek Bible Church also maintains restrooms that are separated by biological sex, and church employees are not permitted to use restrooms designated for the opposite biological sex. *See id*. at ¶ 14.

1.   Braidwood Management Inc. employs approximately 70 individuals, and it is owned by a trust controlled by Dr. Steven F. Hotze. *See* Declaration of Steven F. Hotze at ¶ 4–6 (attached as Exhibit 5). Dr. Hotze is also the President, Secretary, Treasurer, and sole member of the Board of Braidwood Management Inc. *See id*. at ¶ 4. Dr. Hotze is a Christian, and he operates his businesses according to his Christian beliefs found in the Bible. *See id*. at ¶ 8. Because Dr. Hotze operates his corporations as Christian businesses, he does not allow Braidwood to hire or employ individuals who are known to engage in sexually immoral behavior or gender non-conforming

conduct of any sort, including homosexuality, cross-dressing, and transgenderism. *See id*. at ¶ 15. He also will not permit employees of Braidwood to use a restroom designated for members of the opposite biological sex—regardless of the gender identity that the employee asserts. *See id*. at ¶ 14.

Braidwood also enforces a sex-specific dress-and-grooming code that requires men and women to wear professional attire according to their biologically assigned sex. *See* Declaration of Steven F. Hotze at ¶ 13 & Ex. C. Men are forbidden to wear earrings, but women may. *See id*. at Ex. C, page 3. Men who have customer contact must wear a tie (or bow tie); women are not required or even permitted to wear ties. *See id*. Women are allowed to wear skirts, blouses, shoes with heels, and fingernail polish, while men are forbidden to wear any of these accoutrements. *See id*. at Ex. C, pages 1–4. Cross-dressing of any sort is strictly prohibited. *See id*. Dr. Hotze enforces this sex-specific dress-and-grooming code not only to maintain the professionalism of his businesses, but also because of his belief in the Bible, which requires men to dress as men and requires women to dress as women. *See* Declaration of Steven F. Hotze at ¶ 12–13; *see also* Deuteronomy 22:5 (KJV) ("A woman shall not wear anything that pertains to a man, nor shall a man put on a woman's garment, for all who do so are an abomination to the LORD your God.").

## ARGUMENT

The plaintiffs are entitled to judgment as a matter of law on the undisputed facts of this case. They have asserted five distinct claims for relief—and they are entitled to judgment on all of them.

## I.   The Religious Freedom Restoration Act Compels Exemptions To *Bostock*'s Interpretation Of Title VII

The Religious Freedom Restoration Act "was designed to provide very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706

(2014). The Religious Freedom Restoration Act (RFRA) prohibits the federal government from substantially burdening the exercise of religion. 42 U.S.C. § 2000bb-1. The only exception is when the federal government demonstrates that the application of the burden to the affected individual represents the "least restrictive means" of advancing "a compelling governmental interest." 42 U.S.C. § 2000bb-1(b); *De-Otte v. Azar*, 332 F.R.D. 173, 188 (N.D. Tex. 2019). The interpretations of Title VII adopted by the EEOC and by the Supreme Court in *Bostock* substantially burden the plaintiffs' religious freedom—as well as the freedom of all employers who oppose homosexual or transgender behavior for sincere religious reasons, and there is no compelling governmental interest in refusing to exempt religious employers from these novel anti-discrimination edicts.

### A. Title VII, As Interpreted in *Bostock*, Substantially Burdens Employers Who Oppose Homosexual Or Transgender Behavior For Sincere Religious Reasons

The Supreme Court has explained that requiring individuals to "engage in conduct that seriously violates their religious beliefs" imposes a substantial burden on their exercise of religion. *Hobby Lobby*, 573 U.S. at 720. If an employer sincerely believes that the conduct demanded by the state would violate its religious convictions, then the courts are forbidden to question the reasonableness of that belief. *See Hobby Lobby*, 134 S. Ct. at 2778 ("[C]ourts have no business addressing whether the religious belief asserted in a RFRA case is reasonable." (parentheses omitted)). The *only* question to resolve is whether the regulation substantially burdens the objecting employer's ability to conduct his business in accordance with those beliefs. *See id*. at 2779 (when plaintiffs "sincerely believe" that compliance with the regulation "lies on the forbidden side of the line, . . . it is not for us to say that their religious beliefs are mistaken or insubstantial."); *see also Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2383 (2020) ("[U]nder RFRA, the Departments

must accept the sincerely held complicity-based objections of religious entities. That is, they could not 'tell the plaintiffs that their beliefs are flawed' because, in the Departments' view, 'the connection between what the objecting parties must do . . . and the end that they find to be morally wrong . . . is simply too attenuated.'" (quoting *Hobby Lobby*, 573 U.S. at 723–24)).

Title VII, as interpreted in *Bostock* and the EEOC's guidance documents, substantially burdens the plaintiffs' religious freedom by preventing them from operating their places of employment in accordance with Christian teaching. The plaintiffs have sincere and deeply held religious beliefs that marriage is limited to a man and a woman, that sex is to be reserved for marriage, and that men and women are to dress and behave in accordance with distinct and God-ordained, biological sexual identity. Title VII, as interpreted in *Bostock*, requires that the plaintiffs operate their businesses contrary to their religious beliefs by denying them the ability to prescribe standards of conduct and deportment for their employees. At the same time, the plaintiffs believe that they are called by God to obey the civil authorities. So they are caught in a bind, and until this Court grants the declaratory relief that the plaintiffs seek, the plaintiffs have no way to avoid violating their religious beliefs. The EEOC is also substantially burdening the plaintiffs' right to conduct their businesses in accordance with their beliefs about the divinely ordained nature of sex and sexuality because of the serious liability that it is threatening to impose on any religious employer who refuses to kowtow to its guidance documents. *See Hobby Lobby*, 573 U.S at 710; *EEOC v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018).

### B.   The Government Cannot Show a Compelling Governmental Interest to Justify the Burden on Plaintiffs' Religious Exercise

Having shown a "substantial burden" on the plaintiffs' religious liberty, the burden now shifts to the government to demonstrate that the Contraceptive Mandate advances a "compelling governmental interest" and is "the least restrictive means of

furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). This is "the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997), and the EEOC comes nowhere close to satisfying this standard.

The relevant "governmental interest" cannot be described with vague abstractions, such as "promoting equality" or "preventing injustice." *See Hobby Lobby*, 573 U.S. at 726 (rejecting the government's attempt to frame the "governmental interests" in generalized terms). Instead, a court must "'look beyond broadly formulated interests' and . . . 'scrutinize the asserted harm of granting specific exemptions to particular religious claimants'—in other words, to look to the marginal interest in enforcing the contraceptive mandate in these cases." *Id*. (quoting *Gonzales v. O Centro Espírita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006)). The relevant question is not whether Title VII's prohibition on "sex" discrimination, taken by itself, advances a compelling governmental interest. It is instead whether the EEOC's *refusal to exempt religious objectors* advances such an interest. And the EEOC cannot possibly show that the enforcement of Title VII is a policy of such overriding importance that no exceptions can be made.

Start with the fact that Title VII itself limits its coverage to businesses with 15 or more employees. 42 U. S. C. §2000e(b) ("'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year"). Congress was satisfied to use a rough-and-ready cutoff to regulate larger businesses without even attempting to impose this anti-discrimination rule on everyone. If Congress didn't think the interests advanced by Title VII were important enough to extend to small employers, then it hard to see how the supposed "interests" behind the EEOC's policy are of such "compelling" importance that no exemptions can be made for religious believers. Title VII also exempts Indian tribes from its coverage. 42 U.S.C. §2000e(b) (excluding Indian tribes from the definition of employer); *see also*

*Wardle v. Ute Indian Tribe*, 623 F.2d 670, 672 (10th Cir. 1980) ("Thus, Indian tribes and businesses operating on or near Indian reservations are excluded from the employment discrimination prohibitions of Title VII."). So the EEOC must find some way to explain how the government's "interest" in enforcing Title VII was not quite "compelling" enough to persuade Congress to extend the statute to small employers or Indian tribes, yet *is* compelling enough to prevail over another person's religious freedom.

The EEOC must also explain how its refusal to exempt religious employers advances a "compelling" government interest when Congress has repeatedly failed to enact explicit statutory anti-discrimination protections for homosexual and transgender employees—and when Congress has (at least as of this date of this brief) refused to enact legislation that would exempt Title VII from the requirements of RFRA. *See Bostock v. Clayton County*, 140 S. Ct. 1731, 1742 (2020) (Alito, J., dissenting) ("For several decades, Congress has considered numerous bills to prohibit employment discrimination based on sexual orientation. But as noted above, although Congress has come close, it has not yet shouldered a bill over the legislative finish line."). The House of Representative did pass the "Equality Act" last March, which would strip religious employers of any RFRA protections lawsuits brought to enforce *Bostock*. But the bill has not passed the Senate—and it has no prospect of passage unless the Senate eliminates the filibuster or the bill is amended to strengthen protections for religious objectors. *See* John McCormack, *Susan Collins Won't Cosponsor Equality Act Again*, National Review (February 25, 2021), available at https://bit.ly/3yzAQxN (last visited May 24, 2021). It's hard to understand how a supposed governmental "interest" in forcing religious employers to hire homosexual and transgender employees can be regarded as "compelling" when Congress repeatedly considers and fails to enact legislation that would accomplish this result. *See Little Sisters of the Poor*, 140 S. Ct. at 2392 (Alito, J., concurring) ("We can answer the compelling interest question simply

by asking whether *Congress* has treated the provision of free contraceptives to all women as a compelling interest.").

## II. The Free Exercise Clause Compels Exemptions To *Bostock*'s Interpretation Of Title VII

Although it is not necessary for this Court to rule on the plaintiffs' free-exercise claims if it concludes that RFRA protects religious employers from the commands of *Bostock*, we respectfully ask the Court to resolve the free-exercise claims because Congress might someday enact the Equality Act or amend RFRA in a manner that strips religious employers of these statutory protections. It is therefore imperative that the Court rule on whether the plaintiffs' current employment practices are constitutionally protected, even if it concludes that RFRA suffices to provide the requested relief.

The First Amendment's Free Exercise Clause prohibits the government from "prohibiting the free exercise" of religion. Laws that are not neutral toward religion, and laws that are not "generally applicable," are subject to strict scrutiny whenever they burden the exercise of a religious belief. The Supreme Court has recently clarified the analysis for Free Exercise. "[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat any comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021).

As already noted, Title VII contains two key exceptions. First, businesses with fewer than fifteen employees are not required to comply with Title VII. *See* 42 U.S.C. §2000e(b). Second, Indian tribes are not subject to Title VII. *Id.* But there is no exemption for religious believers whose religious exercise is burdened by Title VII. Yet the risks in all of these cases are the same—that an employer will discriminate against an employee (or prospective employee) on the basis of a protected characteristic or trait. When the risks are the same, the activities are appropriately comparable. *Tandon*, 141 S. Ct. at 1296 ("[W]hether two activities are comparable for purposes

of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue.").

In short, Title VII treats religion worse than it does small businesses and Indian tribes. Thus, "comparable secular activit[ies]" are treated "more favorably than religious exercise." *Id.* This "trigger[s] strict scrutiny." *Id.*

The government bears the burden of proving that "the challenged law satisfies strict scrutiny." *Id.* As already noted, any claim that the law satisfies strict scrutiny runs headlong into the fact that Congress saw fit to carve out exceptions for non-religious employees. One of those exceptions—the number of employees—was purely a matter of administrative convenience. The other was a matter of policy, which sought to preserve the self-governance of Indian tribes. *See, e.g.*, 110 Cong. Rec. 13702 (1964) (suggesting that the Indian tribe exception was to enable tribes to "conduct their own affairs"). As with RFRA, so with the Free Exercise Clause: it is hard to credit the governmental interest as "compelling" when Congress couldn't be bothered to regulate small businesses and thought that tribal self-governance trumped antidiscrimination policies.

## III.   The First Amendment Right Of Expressive Association Compels Exemptions To *Bostock*'s Interpretation Of Title VII

The First Amendment protects the "right to associate for the purpose of engaging in . . . activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984). "[I]mplicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Id.* at 622. And there is a corresponding right to exclude from a group those whose presence would compromise the expressive commitments of the group. *See Boy Scouts v. Dale*, 530 U.S. 640, 648 (2000).

Title VII operates to require employers to associate with employees. But many places of employment operate under the rubric of expressive association. That is especially true for churches and overtly Christian nonprofits or businesses. But it is equally true of a secular employer or business that operates according to a publicly stated set of values. And in these situations, requiring an organization to hire and employ individuals whose lifestyles and behaviors are contrary to the values of the organization violates the freedom of association. "The First Amendment's protection of expressive association is not reserved for advocacy groups. But to come within its ambit, a group must engage in some form of expression, whether it be public or private." *Boy Scouts*, 530 U.S. at 648. The government can no more force an association that opposes homosexuality or transgender behavior to hire individuals engaged in that conduct than it can force a gay-rights organization to hire an avowed opponent of homosexuality.

In this case, the plaintiffs run their places of employment as a way of expressing deep and sincere religious commitments, including a commitment to their understanding of Christian values and ethics in the operation of the business. Title VII (as interpreted in *Bostock*) requires the plaintiffs to employ individuals whose behavior compromises the expression of those values, and it prevents the plaintiffs from excluding employees who will subvert the religious mission of their organization. This again triggers strict scrutiny, which the government cannot meet for the reasons provided in Sections I and II, *supra*.

## IV. Title VII, As Interpreted In *Bostock*, Does Not Prohibit Employers From Discriminating Against Bisexual Employees

The EEOC continues to insist that Title VII prohibits discrimination on the basis of any and all "sexual orientations"[3]—even though that is decidedly not what *Bostock* held. *Bostock* held that employers violate Title VII's prohibition on "sex" discrimination if they fire (or refuse to hire) individuals for being "homosexual or transgender." *Bostock*, 140 S. Ct. at 1737; *see also id.* ("An employer who fires an individual for being homosexual or transgender fires that person for traits or actions it would not have questioned in members of a different sex. Sex plays a necessary and undisguisable role in the decision, exactly what Title VII forbids."). *Bostock* did not hold that an employer violates Title VII whenever it discriminates on account of "sexual orientation," and it did not hold that an employer engages in "sex" discrimination when it fires (or refuses to hire) bisexual employees.

Indeed, the *Bostock* opinion is incompatible with the view that discrimination against bisexual employees violates Title VII. Consider the following passage from *Bostock*:

> Take an employer who fires a female employee for tardiness or incompetence or simply supporting the wrong sports team. Assuming the employer would not have tolerated the same trait in a man, Title VII stands silent.

*Bostock*, 140 S. Ct. at 1742. An employer who discriminates against *all* bisexual employees—regardless of whether they are male or female—cannot possibly be engaged in "sex" discrimination under *Bostock*. That is because the "same trait" (sexual attraction toward members of both sexes) is treated exactly the same regardless of whether that "trait" appears in a woman or a man.

---

3. The EEOC's website, for example, states that *Bostock* prohibits "firing individuals because of their sexual orientation." *See* https://bit.ly/2ZnB0bI (last visited on May 24, 2021) (attached as Exhibit 3).

The EEOC ignores this feature of *Bostock* and pretends as though the Supreme Court outlawed *all* discrimination on account of sexual orientation. The Biden Administration is taking the same approach in its efforts to extend *Bostock* to every federal statute that prohibits discrimination on account of "sex." *See* Department of Health and Human Services, Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972 (May 10, 2021), available at https://bit.ly/3yBxeeF (last visited May 24, 2021) (announcing that HHS will interpret section 1557 of the Affordable Care Act, which prohibits health-care entities from discriminating on account of "sex" to prohibit *all* forms of discrimination on account of sexual orientation and gender identity, and claiming that *Bostock* compels this interpretation). But the fact remains that discrimination against bisexuals is not "sex" discrimination—so long as the employer deems bisexuality equally intolerable in men and women.

## V.   Title VII, As Interpreted In *Bostock*, Does Not Prohibit Employers From Establishing Sex-Neutral Rules Of Conduct That Exclude Practicing Homosexuals And Transgender Individuals From Employment

Finally, Title VII's prohibition on "sex" discrimination does not prevent employers from firing or refusing to hire individuals who engage in homosexual or transgender conduct, so long as the employer does so according to established rules of conduct that apply equally to both sexes and would lead to the same result if the employee's biological different were different. It is easy to imagine rules that comply with *Bostock* by applying equally to men and women, yet operate to exclude homosexual or transgender individuals from employment. Here are just a few of the many examples:

> No employee, male or female, may enter a gay bar or gay bathhouse.

> No employee, male or female, may engage in the sexual practices associated with homosexuality.

> No employee, male or female, may engage in "deviate sexual intercourse," as that term is defined in section 25.02 of the Texas Penal Code.[4]

> No employee, male or female, may use Grindr (or other dating apps used primarily by homosexuals).

> No employee, male or female, may seek or obtain hormone therapy unless it is prescribed for a medical condition other than gender dysphoria.

> No employee, male or female, may undergo surgery to modify their genitals, unless that surgery is needed for a medical condition other than gender dysphoria.

Rules of this sort obviously have a disparate impact on homosexual and transgender employees, but that is not a problem under Title VII, which prohibits only discrimination on account of "sex." *See Bostock v. Clayton County*, 140 S. Ct. 1731, 1746–47 (2020) ("We agree that homosexuality and transgender status are distinct concepts from sex."). Sex-neutral rules of conduct therefore remain permissible under *Bostock*, so long as the employer can truthfully assert that he would fire an employee of the opposite sex for the identical conduct. *See Bostock v. Clayton County*, 140 S. Ct. 1731, 1742 (2020) ("Take an employer who fires a female employee for tardiness or incompetence or simply supporting the wrong sports team. Assuming the employer would not have tolerated the same trait in a man, Title VII stands silent.").

---

4.   Section 25.02 defines "deviate sexual intercourse" as "any contact between the genitals of one person and the mouth or anus of another person with intent to arouse or gratify the sexual desire of any person." Tex. Penal Code § 25.02.

## CONCLUSION

The motion for summary judgment and permanent injunction should be granted.

Respectfully submitted.

_/s/ Jonathan F. Mitchell_

CHARLES W. FILLMORE
H. DUSTIN FILLMORE
The Fillmore Law Firm, LLP
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
chad@fillmorefirm.com
dusty@fillmorefirm.com

Dated: May 24, 2021

JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiffs and
the Proposed Classes*

## CERTIFICATE OF SERVICE

I certify that on May 24, 2021, I served this document through CM/ECF upon:

Benjamin T. Takemoto
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
(202) 532-4252 (phone)
(202) 616-8460 (fax)
benjamin.takemoto@usdoj.gov

*Counsel for Defendants*

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiffs and
the Proposed Classes*