IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

U.S. PASTOR COUNCIL, et al.,

    Plaintiffs,

v.

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION, et al.,

    Defendants.

Case No. 4:18-cv-00824-O

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 1

ARGUMENT .................................................................................................................... 4

I.     Plaintiffs have not satisfied the four requirements of Rule 23(a). ..................................... 5

        A.     Neither of Plaintiffs' proposed classes satisfy the commonality requirement. ............................................................................................. 5

        B.     Plaintiffs fail to demonstrate that their claims are typical of either proposed class. .................................................................................. 10

        C.     The named Plaintiffs would be inadequate representatives of absent class members. ............................................................................... 11

        D.     Plaintiffs have not met their burden to prove numerosity .................................... 15

II.     Plaintiffs do not meet the requirements of Rule 23(b)(2). ................................. 16

III.     Plaintiffs have not identified an ascertainable class. ...................................... 19

IV.     Plaintiffs' proposed classes do not satisfy Article III. ...................................... 21

CONCLUSION .............................................................................................................. 23

## TABLE OF AUTHORITIES

**CASES**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ............................................................................................. 12

*AT&T Co. v. EEOC,*
270 F.3d 972 (D.C. Cir. 2011) ............................................................................. 23

*Berger v. Compaq Comput. Corp.,*
257 F.3d 475 (5th Cir. 2001) .......................................................................... 12, 15

*Bolin v. Sears, Roebuck & Co.,*
231 F.3d 970 (5th Cir. 2000) ............................................................................... 16

*Bostock v. Clayton County,*
140 S. Ct. 1731 (2020) ...................................................................................... 1, 2

*Burwell v. Hobby Lobby Stores, Inc.,*
573 U.S. 682 (2014) .................................................................... 8, 13, 14, 18

*Califano v. Yamasaki,*
442 U.S. 682 (1979) ............................................................................................. 4

*Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n,*
624 F.3d 185 (5th Cir. 2010) ............................................................................... 16

*Chavez v. Plan Benefit Servs., Inc.,*
957 F.3d 542 (5th Cir. 2020) ...................................................................... 5, 12, 24

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013) ............................................................................................... 5

*Conrad v. Gen. Motors Acceptance Corp.,*
283 F.R.D. 326 (N.D. Tex. 2012) ........................................................................ 19

*Cooper v. Fed. Rsrv. Bank of Richmond,*
467 U.S. 867 (1984) ............................................................................................ 10

*DeBremaecker v. Short,*
433 F.2d 733 (5th Cir. 1970) ............................................................................... 19

*Denney v. Deutsche Bank AG,*
443 F.3d 253 (2d Cir. 2006) ................................................................................ 21

*DeOtte v. Azar,*
332 F.R.D. 188 (N.D. Tex. 2019) ................................................................... 7, 20

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez*,
   431 U.S. 395 (1977)......................................................................................................... 4

*Flecha v. Medicredit, Inc.*,
   946 F.3d 762 (5th Cir. 2020) ................................................................ 11, 16, 21, 23

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)....................................................................................................... 11

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
   546 U.S. 418 (2006) .................................................................................................... 8, 18

*Hayes v. Wal-Mart Stores, Inc.*,
   725 F.3d 349 (3d Cir. 2013)...................................................................................... 16

*Hirsch v. USHealth Advisors, LLC*,
   337 F.R.D. 118 (N.D. Tex. 2020) .......................................................................... 10

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
   565 U.S. 171 (2012) ............................................................................................ 14, 16

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) ................................................................................ 7, 23

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
   317 F.R.D. 675 (N.D. Ga. 2016) ............................................................................ 19

*In re Rodriguez*,
   695 F.3d 360 (5th Cir. 2012) .................................................................................... 7

*John v. Nat'l Sec. Fire & Cas. Co.*,
   501 F.3d 443 (5th Cir. 2007) ................................................................................... 19

*Kincade v. Gen. Tire & Rubber Co.*,
   635 F.2d 501 (5th Cir. 1981) ................................................................................... 12

*Lindh v. Dir., Fed. Bureau of Prisons*,
   No. 2:14-cv-151-JMS-WGH, 2015 WL 179793 (S.D. Ind. Jan. 14, 2015) ............................ 21

*M.D. ex rel. Stukenberg v. Perry*,
   675 F.3d 832 (5th Cir. 2012) ...................................................................... *passim*

*Maldonado v. Ochsner Clinic Found.*,
   493 F.3d 521 (5th Cir. 2007) ................................................................... 16, 18, 19

*Marcus v. BMW of N. Am. LLC*,
   687 F.3d 583 (3d Cir. 2012)...................................................................................... 16

*Mims v. Stewart Title Guar. Co.*,
   590 F.3d 298 (5th Cir. 2009) ............................................................................. 7

*Our Lady of Guadalupe School v. Morrissey-Berru*,
   140 S. Ct. 2049 (2020) ............................................................................... 13, 14

*Reeb v. Ohio Dep't of Rehab. & Correction*,
   435 F.3d 639 (6th Cir. 2006) ........................................................................... 11

*Robinson v. Tex. Auto. Dealers Ass'n*,
   387 F.3d 416 (5th Cir. 2004) ............................................................................. 4

*Vita Nuova, Inc. v. Azar*,
   Civ. A. No. 4:19-cv-00532-O, 2020 WL 8271942 (N.D. Tex. Dec. 2, 2020) ...................... 6, 20

*Vizena v. Union Pac. R.R. Co.*,
   360 F.3d 496 (5th Cir. 2004) ............................................................................. 5

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .............................................................................. *passim*

*Ward v. Hellerstedt*,
   753 F. App'x 236 (5th Cir. 2018) ....................................................................... 5

*Ward v. Santa Fe Indep. Sch. Dist.*,
   393 F.3d 599 (5th Cir. 2004) ........................................................................... 14

*Zubik v. Burwell*,
   136 S. Ct. 1557 (2016) ................................................................................... 11

**STATUTES**

42 U.S.C. § 2000e-5 .......................................................................................... 23

**RULES**

Fed. R. Civ. P. 23 .................................................................................... 4, 16, 17

**OTHER AUTHORITIES**

1 William B. Rubenstein, *Newberg on Class Actions* § 3:1 (5th ed. 2011) ................................. 19

EEOC, *Compliance Manual*, Ch. 12, "Additional Interaction of Title VII with the First
   Amendment and the Religious Freedom Restoration Act (RFRA),"
   https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#h_
   79932914014941610748749945 ...................................................................... 3, 17

Gallup, *In Depth: Topics A-Z*, LGBT Rights,
   https://news.gallup.com/poll/1651/gay-lesbian-rights.aspx ......................................... 22

Title VII of the Civil Rights Act of 1964 Charges,
    https://www.eeoc.gov/statistics/title-vii-civil-rights-act-1964-charges-charges-filed-eeoc-
    includes-concurrent-charges ................................................................................................. 23

## INTRODUCTION

Plaintiffs seek a pronouncement from the Court regarding the intersection of the guarantees of the First Amendment and the Religious Freedom Restoration Act ("RFRA") with Title VII's prohibitions on discrimination based on sexual orientation and gender identity, as delineated  in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). Plaintiffs claim that, in light of their asserted religious beliefs, either RFRA, the First Amendment, or both allow them to adopt several specific employment policies that Title VII might otherwise prohibit. A claim under either RFRA or the First Amendment, however, requires a careful analysis of the specific facts in an individual case as balanced against the government's asserted interests. Whatever the merits of Plaintiffs' suit, it is not one appropriate for class certification: not all religious employers (or non-religious employers) who are proposed class members have the same specific beliefs and the same specific employment policies. Even should this Court ultimately conclude that Plaintiffs' specific policies are permissible, notwithstanding that Title VII might otherwise prohibit them, that conclusion would not resolve any absent putative class members' claims, as those absent claims necessarily would turn on those employers' specific policies, specific beliefs, and the government's specific interests as weighed against the asserted rights.

## BACKGROUND

Plaintiffs are a church and a closely held business who assert that various employment policies they have are compelled by their sincerely held religious beliefs, and that an attempt to restrict those policies would violate RFRA or the First Amendment. Plaintiff Bear Creek Bible Church has three policies that it contends either do not violate Title VII, or else are nonetheless lawful because either RFRA or the First Amendment entitles them to an exemption from Title VII's requirements. First, Bear Creek Bible Church "will not consider practicing homosexuals,

1

bisexuals, crossdressers, or transgender or gender non-conforming individuals for church employment." Br. in Supp. of Mot. for Summ. J. & Permanent Inj., at 5, ECF No. 73 ("Pls.' Mem ISO Summ. J."). Second, it "will not offer benefits to same-sex partners of its employees." *Id.* Third, it prohibits its employees from using "restrooms designated for the opposite biological sex." *Id.* Bear Creek Bible Church seeks a judicial declaration that these policies either do not violate Title VII or else that to enforce Title VII to prohibit these policies would violate either RFRA or the First Amendment.

Plaintiff Braidwood Management Inc. also has three policies that it contends either do not violate Title VII, or else are nonetheless lawful because either RFRA or the First Amendment entitles them to an exemption from Title VII's requirements. First, Braidwood Management will not employ individuals "who are known to engage in sexually immoral behavior or gender non-conforming conduct of any sort." *Id.* at 5-6. Second, it prohibits its employees from using "restrooms designated for members of the opposite biological sex." *Id.* at 6. Third, it imposes a "sex-specific dress-and-grooming code" that applies according to its employees "biologically assigned sex." *Id.* Braidwood Management seeks a judicial declaration that these policies either do not violate Title VII or else that to enforce Title VII to prohibit these policies would violate either RFRA or the First Amendment.

The Supreme Court has held that Title VII prohibits discrimination based on sexual orientation or transgender status. *Bostock*, 140 S. Ct. at 1754 ("An employer who fires an individual merely for being gay or transgender defies the law."). The EEOC has publicly stated its position that, consistent with the Supreme Court's clear holding in *Bostock*, Title VII prohibits discrimination based on sexual orientation or transgender status. *See* Third Am. Compl. ¶¶ 11-13, ECF No. 81 ("TAC"); *see also* EEOC Enforcement Guidance, TAC Exs. 1-3. EEOC has also

issued enforcement guidance cautioning that officials must "take great care in situations involving both (a) the statutory rights of employees to be free from discrimination at work, and (b) the rights of employers under the First Amendment and RFRA." EEOC, *Compliance Manual*, Ch. 12, "Additional Interaction of Title VII with the First Amendment and the Religious Freedom Restoration Act (RFRA)," https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#h_79932914014941610748749945 ("EEOC, *Compliance Manual*") (last visited June 6, 2021).

EEOC has never taken, or threatened to take, any enforcement action against either Plaintiff, and indeed, neither Plaintiff has ever taken any adverse action against any employee or job applicant based on the relevant policies that would even raise a question of enforcement action. *See* Stipulation of Facts and Joint Status Report ¶¶ 1-9, ECF No. 69. Consequently, neither has either Plaintiff ever sought from EEOC an exemption from Title VII's requirements in any enforcement action. But Plaintiffs nonetheless seek an advisory opinion from this Court whether, in the event that one or both Plaintiffs ever does enforce its policies in a manner that violates Title VII, and EEOC then seeks to enforce Title VII's requirements, they would be exempt from that law because of their religious beliefs.

Plaintiffs also seek to certify two classes under Federal Rule of Civil Procedure 23(b)(2), with both Plaintiffs serving as representatives for both classes. The first putative class would consist of "[e]very employer in the United States that opposes homosexual or transgender behavior for sincere religious reasons." Br. in Supp. of Mot. for Class Cert., at 1, ECF No. 71-1 ("Pls.' Mem.") The second would consist of "[e]very employer in the United States that opposes homosexual or transgender behavior for religious or non-religious reasons." *Id.*

3

## ARGUMENT

Class actions are an exception to the ordinary course of American legal practice. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011); *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). A putative class representative may litigate the class's claims only if he is "part of the class and 'possess[es] the same interest and suffer[s] the same injury' as the class members." *Wal-Mart*, 564 U.S. at 348-49 (quoting *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). To obtain certification of a non-opt-out class under Rule 23(b)(2), as Plaintiffs seek, they must show that an ascertainable class exists and also meet the requirements of both Rule 23(a) and 23(b)(2): (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, and (5) that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(a), (b)(2).

The plaintiff bears the burden to prove that these requirements have been met, and its offer of proof is subject to "rigorous analysis" in light of the "claims, defenses, relevant facts, and applicable substantive law." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012) (citations omitted); *see also Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 420 (5th Cir. 2004) ("To make a determination on class certification, a district court must conduct an intense factual investigation."). And because certification of a class may greatly affect the subsequent litigation, class certification decisions may be the subject of immediate interlocutory appeal. *See* Fed. R. Civ. P. 23(f). Indeed, class certification decisions are routinely reversed on appeal, including, for example, when the district court fails to conduct an analysis that "consider[s] and discuss[es] the facts of this case, as well as the elements of Plaintiffs' claims, prior to rejecting Defendant's argument that dissimilarities among individual claimants obviate commonality."

4

*Ward v. Hellerstedt*, 753 F. App'x 236, 246 (5th Cir. 2018); *see also M.D. ex rel. Stukenberg*, 675 F.3d at 843; *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 503 (5th Cir. 2004).

**I.     Plaintiffs have not satisfied the four requirements of Rule 23(a).**

> A.  Neither of Plaintiffs' proposed classes satisfy the commonality requirement.

Plaintiffs evidently misapprehend the "common question" inquiry under Rule 23. As the Supreme Court has warned, the language of Rule 23 "is easy to misread" since many wholly unrelated claims may raise "literally" common questions. *Wal-Mart*, 564 U.S. at 349 (citation omitted). Thus, every medical malpractice case may raise the same "common question" about the appropriate standard of care; every Fourth Amendment claim may raise the same "common question" about the appropriate standard for when a seizure is "reasonable"; every claim under CERCLA may raise the same "common question" about the scope of the statutory defenses. The mere presence of common questions of this nature does not make class certification appropriate. *See M.D. ex rel. Stukenberg*, 675 F.3d at 840 (holding that "Rule 23(a)(2)'s commonality requirement demands more than the presentation of questions that are common to the class"). Class members also must all have "suffered the same injury" and each individual claim must "depend upon a common contention" such as "the assertion of discriminatory bias on the part of the same supervisor." *Wal-Mart*, 564 U.S. at 350 (citation omitted).

The "common questions" that Plaintiffs assert, for both classes, do not warrant departure from "the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 547 (5th Cir. 2020) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). Those questions are:

1. Whether the Religious Freedom Restoration Act compels exemptions to *Bostock*'s interpretation of Title VII;
2. Whether the Free Exercise Clause compels exemptions to *Bostock*'s interpretation of Title VII;

3. Whether the First Amendment right of expressive association compels exemptions to *Bostock*'s interpretation of Title VII;

4. Whether Title VII, as interpreted in *Bostock*, prohibits or allows employers to discriminate against bisexual employees

5. Whether Title VII, as interpreted in *Bostock*, allows employers to establish sex-neutral rules of conduct that have the effect of excluding practicing homosexuals or transgender individuals from employment.[1]

Each of these generic legal questions is divorced from any particular factual allegations, and as such "the formulation of these common questions of law is too general to allow for effective appellate review." *M.D. ex rel. Stukenberg*, 675 F.3d at 842. These questions are nothing like the specific questions this Court found adequate in *Vita Nuova, Inc. v. Azar*, Civ. A. No. 4:19-cv-00532-O, 2020 WL 8271942, at *5 (N.D. Tex. Dec. 2, 2020). In that case, the plaintiffs contended that each class member would have an identical claim: that a statute disqualifying healthcare providers from receiving Title X funding if they discriminated against employees who performed or assisted in elective abortions violated RFRA as applied to healthcare providers with sincere religious objections to abortion. *Id.* And the asserted common questions asked whether enforcing that specific provision to exclude those who acted on that sincere belief to discriminate against from funding would "substantially burden" the class members' religious freedom, whether the government had a compelling interest in nonetheless enforcing it, and whether enforcing it was the least restrictive means of advancing that interest. *Id.* Here, by contrast, the asserted common questions are merely abstract questions about the interaction of various laws and the scope of a recent Supreme Court decision presented in a vacuum.

To be sure, in any given case one or more of these questions may arise. But it is patently clear that the questions will not be common to all members of either proposed class. Some employers that "oppose[] homosexual or transgender behavior," whether "for sincere religious

---

[1] Questions 3, 4, and 5 for the first proposed class are identical to questions 1, 2, and 3 for the second proposed class. *See* Pls.' Proposed Order, at 1-2, ECF No. 71-2.

reasons" or "for religious or non-religious reasons," may have different views about bisexual employees, and thus that question will never arise in their claims. Pls.' Proposed Order, at 1-2. Others may have "rules of conduct" that "have the effect of excluding practicing homosexuals or transgender individuals from employment" but are *not* "sex-neutral." *Id.* Questions of law or fact are not even *literally* common, much less common within the meaning of Rule 23, if they do not arise in the claims of each and every potential class member.

And of course, many employers may "oppose homosexual or transgender behavior" but may choose not to incorporate those beliefs into their business's policies. Plaintiffs' concession that some employers who fall within the defined class would not actually adopt employment policies that would implicate the asserted common questions, Pls.' Mem. at 9, is fatal to their motion. *Cf. DeOtte v. Azar*, 332 F.R.D. 188, 197 (N.D. Tex. 2019) (contrasting a valid class where "any individual" in the class is "compelled to violate their beliefs" with an invalid class where it was "not clear every class member could attest they had been or would be forced to violate their sincerely held religious beliefs"). And, to be clear, Defendants' argument is not the one rejected by the Fifth Circuit in *Deepwater Horizon*—that a class is not defective if some members will ultimately be shown to have had no injury. *See In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014); *see also In re Rodriguez*, 695 F.3d 360, 370 (5th Cir. 2012) (class not defective simply because of "the possibility that some [class members] may fail to prevail on their individual claims" (citation omitted)). The problem with the proposed classes here is not that some class members may not have meritorious claims; it is that most potential members, *see infra* section IV, are entirely indifferent to Title VII's requirements as relates to sexual orientation and thus have *no claim at all*. Such members therefore lack any "contention," common or otherwise, to be resolved. *Cf. Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 308 (5th Cir. 2009) (class permissible when it

is "sufficiently narrow as to exclude the likelihood that many plaintiffs were improperly included").

Regardless, the asserted common questions do not satisfy Rule 23 even if they did arise in every case because any claim by any class member will turn on the distinct facts of that case, not on Plaintiffs' proposed common questions. "Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution 'will *resolve* an issue that *is central to the validity* of each one of the [class member's] claims in one stroke.'" *M.D. ex rel. Stukenberg*, 675 F.3d at 840 (quoting *Wal–Mart,* 564 U.S. at 350) (emphasis and alteration by Fifth Circuit). Plaintiffs cannot meet this burden with respect to their first proposed class—an "employer in the United States that opposes homosexual or transgender behavior for sincere religious reasons." Pls.' Mem. at 1. Suppose that employer, consistent with his sincere religious beliefs, hires homosexuals or transgender individuals but allows them only to work the night shift. Another employer, consistent with his sincere religious beliefs, hires homosexuals only for non-customer-facing jobs. And another employer, consistent with his sincere religious beliefs, hires transgender individuals but forbids them from using protective equipment consistent with their gender identity in their work. Without assessing the facts and circumstances of *these employers' specific policies,* it is not possible to answer the abstract legal questions of whether RFRA or the First Amendment "compel[] exemptions to *Bostock*'s interpretation of Title VII." Claims under RFRA, for example, require a court to "'scrutiniz[e] the asserted harm of granting *specific* exemptions to *particular* religious claimants'—in other words, to look to *the marginal interest* in enforcing the [government regulation] in *these* cases." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726-27 (2014) (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006)) (emphasis added).

8

Thus, even assuming that the named Plaintiffs could prevail on their individual claims in this litigation, other class members' claims also would require individualized analysis to (1) determine which (if any) of an absent class member's specific policies or practices would violate Title VII absent an exemption, (2) determine whether requiring compliance with Title VII would burden each employer class member's rights under RFRA or the First Amendment (3) identify the government's asserted interest in regulating each class member's policy or practice, and (4) balance that asserted interest against the class member employer's rights in light of the appropriate standard under the First Amendment or RFRA. Put otherwise, the fact that other members of the proposed classes may advance similar or related legal arguments "gives no cause to believe that all their claims can productively be litigated at once." *Wal-Mart*, 564 U.S. at 350. Thus, in *M.D. ex rel. Stukenberg*, for example, the Fifth Circuit noted that "if the merits of each class member's substantive due process claims depend on an individualized inquiry regarding the harm or risk of harm experienced by each class member from the State's practices, then 'dissimilarities within the proposed class' would appear to prevent the class claims from asserting a common question of law that 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" 675 F.3d at 843 (quoting *Wal-Mart*, 564 U.S. at 350). So too here, the merits of any class member's claims—under RFRA or the First Amendment—would require an "individualized inquiry" regarding the burden, the government's interest, and the balancing of the two. Indeed, the "common questions" that Plaintiffs assert here wholly "ignore the crucial questions" that would actually resolve, or even approach resolving, the class members' claims; the class members' actual claims turn on "un-asked questions [that] are the real issues"—whether a specific policy violates Title VII, whether complying with Title VII would burden the claimants' beliefs, what interest the government asserts, and how that interest balances against the burden under the appropriate

9

standard of review—and "nothing holds the answers to these questions together." *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 129 (N.D. Tex. 2020); *see also Wal-Mart*, 564 U.S. at 352 (similar). Thus, because "resolution of each of the class member's" claims would require "individual analysis," a class proceeding does not have "the 'capacity . . . to generate common answers apt to drive the resolution of the litigation.'" *M.D. ex rel. Stukenberg*, 675 F.3d at 843 (quoting *Wal-Mart*, 564 U.S. at 350). This conclusion follows from the fact that Plaintiffs have not shown that all potential members of the proposed classes suffer "the same injury" as a result of the EEOC's policy. Rather, each class member could only be injured by demonstrating the specific burden to its specific beliefs by being prohibited from adopting a specific employment practice.

Plaintiffs grossly misstate the law when they assert that "all that is needed" is for "each class member [to] experience[] the same kind of injury." Pls.' Mem. at 4 (citing *Wal-Mart*, 564 U.S. at 348). Indeed, the law—as *Wal-Mart* itself demonstrates—is precisely the opposite. In *Wal-Mart*, each of the class members allegedly suffered the "same kind" of injury: discriminatory adverse employment actions taken in violation of Title VII. And yet the Court determined that injury was inadequate to establish commonality because each instance of adverse employment action was discrete. *See Wal-Mart*, 564 U.S. at 352 ("[T]he crux of the inquiry [in a Title VII case] is 'the reason for a particular employment decision.'" (quoting *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 876 (1984)). Just so here: even if every class member suffers the same "kind" of injury, each particular claim is based on a different inquiry.

Accordingly, neither proposed class satisfies the commonality requirement of Rule 23(a).

B.  Plaintiffs fail to demonstrate that their claims are typical of either proposed class.

For related reasons, Plaintiffs cannot satisfy the typicality requirement of Rule 23(a). Typicality and commonality "tend to merge," and both ultimately address "whether under the particular circumstances maintenance of a class action is economical and whether the named

10

plaintiff's claim[s] and the class claim[s] are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349 n.5 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-58, n.13 (1982)); *see also Flecha v. Medicredit, Inc.*, 946 F.3d 762, 768 (5th Cir. 2020).

As set out above, proceeding on a class basis here would not be economical because each potential class member who asserts that Title VII violates RFRA or the First Amendment as applied to them would have to litigate the application of the relevant laws to their specific policies. Plaintiffs' claims are not typical of the claims of the classes, as different employers have different policies that implicate different government interests. Indeed, different class member employers would face different burdens to their beliefs such that different accommodations could eliminate them. *Compare, e.g.*, *Zubik v. Burwell*, 136 S. Ct. 1557, 1560 (2016) (noting that some employers with religious objections to contraceptive mandate were relieved of a substantial burden by an accommodation that allowed those employers to "submit a form," while others remained burdened by that accommodation). Plaintiffs have not met their burden to demonstrate that their claims—claims which turn on their specific policies and on the burdens specific to their beliefs—are sufficiently typical of claims of other class members, many of whom will have different policies and experience different burdens.

C.  The named Plaintiffs would be inadequate representatives of absent class members.

Plaintiffs seek certification of two exceptionally broad classes—all employers in the United States who "oppose[] homosexual or transgender behavior" either for "sincere religious reasons" or else for "religious or non-religious reasons." Pls.' Proposed Order at 1-2. Rule 23(b)(2) classes, such as those Plaintiffs propose, are mandatory—any and every person within the class will be bound by this Court's judgment without the opportunity to opt-out, either before or after judgment. *See, e.g.*, *Reeb v. Ohio Dep't of Rehab. & Correction*, 435 F.3d 639, 645 (6th Cir. 2006) ("Rule

23(b)(2) authorize 'mandatory' class actions under which potential class members do not have an automatic right to notice or a right to opt out of the class."); *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 506 (5th Cir. 1981) ("[I]t is clear that the Federal Rules do not provide objectors a right to opt out of class actions brought under Rule 23(b)(2).").

The consequences of certifying a mandatory class in this case should not be understated. Should Plaintiffs lose on any aspect of their case, "every employer that opposes homosexual or transgender conduct" will be bound by that ruling and precluded from pursuing their own claims. Absent class members would be bound by an unfavorable ruling even if, for example, the application of Title VII burdens their specific religious beliefs more severely than it would for the named Plaintiffs; absent class members would be bound even if the government's interest in enforcing Title VII is comparatively weaker than for the named Plaintiffs. As the Fifth Circuit has observed, "the existence of a class fundamentally alters the rights of present and absent members, particularly for mandatory classes such as the one here." *Chavez*, 957 F.3d at 547. Accordingly, before a Rule 23(b)(2) class can be certified, the Court must rigorously examine whether the proposed class representatives will adequately represent the interests of the absent class members. *See, e.g.*, *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001). This inquiry "serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent." *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

Here, the named Plaintiffs would be inadequate representatives of each of the proposed classes[2] because the Plaintiffs' interests are different from those of many members of the proposed classes in important ways that affect the relevant legal analysis. The proposed class representatives

---

[2] The question of adequacy under Rule 23 also considers the adequacy of class counsel. Defendants do not doubt that Plaintiffs' counsel are learned and capable attorneys able to discharge the responsibilities of class counsel.

are a church and a closely-held corporation. Each asserts that their sincerely held religious beliefs conflict with otherwise applicable laws. And yet these plaintiffs seek to represent (1) entities that are neither churches nor closely held companies and (2) those without sincerely held religious beliefs. Because Plaintiffs' respective statuses as a religious organization or as a closely held company that asserts sincerely held religious beliefs affect the legal analysis for their claims, they cannot adequately represent those who do not share those legally relevant characteristics.

The first proposed class includes "[e]very employer in the United States that opposes homosexual or transgender behavior for sincere religious reasons." Pls.' Proposed Order at 1. But the law does not treat every employer with sincerely held religious beliefs in the same way. Churches, for example, are already entitled to special exemptions from employment laws, including Title VII, as they relate to employees performing important religious functions. *See Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049, 2066 (2020). And the Supreme Court has recognized that RFRA claims by closely held corporations present different issues than those by publicly traded companies. *Hobby Lobby*, 573 U.S. at 717-19. Plaintiff Bear Creek Bible Church would be an inadequate representative of those class members who do not share its status as a religious organization. Plaintiff Braidwood Management Inc. would be an inadequate representative of those class members who do not share its status as a closely held corporation.

As to the second proposed class, for "[e]very employer in the United States that opposes homosexual or transgender behavior for religious or non-religious reasons," Pls.' Proposed Order at 2, Plaintiffs also will not adequately represent the interests of employers who "oppose[] homosexual or transgender behavior" for non-religious reasons.[3] Both the Constitution and federal statutes afford special protection for religious freedom; those protections sometimes permit

---

[3] Plaintiffs will not adequately represent even those class members with religious reasons for the same reasons they will not adequately represent the first proposed class.

individuals or entities to avoid generally applicable laws on the basis of their religion. *E.g.*, *Our Lady of Guadalupe School*, 140 S. Ct. 2049; *Hobby Lobby*, 573 U.S. 682; *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171 (2012). Because the named Plaintiffs assert claims founded on their sincere religious beliefs, they can be expected to emphasize certain arguments in pursuing their claims at the expense of the claims of those with non-religious reasons to "oppose[] homosexual or transgender behavior."[4] Indeed, Plaintiffs' summary judgment briefing bears out the potential for a conflict of interest: after spending six pages on claimed rights under RFRA and the Free Exercise clause, Plaintiffs devote scarcely one page to the Free Association issue—and even there emphasize the "religious mission of their organization." Pls.' Mem. ISO Summ. J. at 13.

It is therefore probable that, if the broad classes Plaintiffs seek were to be certified, Plaintiffs could obtain relief that would further their own particular interests while depriving other class members of their particular rights. For example, this Court could conclude that Plaintiffs are entitled to relief on their RFRA theory but not on the free association theory. As these named Plaintiffs' Article III injuries would then have been fully redressed, they would have no reason to appeal—and would likely lack standing to appeal, *see Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 603 (5th Cir. 2004)—the judgment as to their free association claim. But all other class member "employer[s] in the United States that oppose[] homosexual or transgender behavior" that would not benefit from the RFRA judgment would be bound by this Court's (hypothetical) judgment and be unable to invoke their free association rights as an exemption from Title VII. So too this Court, or a subsequent court in any appeal, might conclude that RFRA permits claims by

---

[4] To the extent that Plaintiffs intentionally omitted the word "sincere" in defining the second class, they will also be inadequate representatives of those with non-sincere reasons for opposing homosexual or transgender behavior.

14

closely held corporations but not by publicly held corporations—these Plaintiffs would have no

reason to appeal such a ruling but it would equally bind every publicly held employer that "opposes

homosexual or transgender conduct." As the Fifth Circuit has instructed, the ability of class actions

to bind absent parties means that "the court must be especially vigilant to ensure that the due

process rights of all class members are safeguarded through adequate representation *at all times.*"

*Berger*, 257 F.3d at 480 (emphasis added). These and other conflicts between Plaintiffs' interests

and the class members' interests prevent Plaintiffs from adequately representing the interests of

absent class members, including on any potential appeal. Plaintiffs do not satisfy the adequacy

requirement of Rule 23 with regard to either proposed class.

     D.  <u>Plaintiffs have not met their burden to prove numerosity.</u>

     In an apparent concession to the difficulty in ascertaining members of the class, Plaintiffs

recognize that "[i]t is difficult . . . to calculate the number" of class members, but that they likely

"number in the thousands." Pls.' Mem at 4 (first proposed class); *id.* at 9 (second proposed class).

But Plaintiffs—who bear the burden to "prove that there are *in fact* sufficiently numerous parties,"

*Wal-Mart*, 564 U.S. at 350 (emphasis in original)—have not presented actual evidence to that

effect. Rather, the "evidence" they adduce is only that some large number of individuals believe

that "homosexuality conflicts with their religious beliefs," Pls.' Mem. at 3 (citation omitted), or

"should be discouraged," *id.* at 8. Plaintiffs have not demonstrated the number of *employers who*

hold those beliefs or, far more importantly, the number of employers whose sincerely held beliefs

require them to operate their business in manner that would violate Title VII. And as to churches

specifically, Plaintiffs identify only churches that restrict homosexuals from serving in ministerial

positions—positions for which the Supreme Court has already recognized an exception to Title

VII's otherwise applicable requirements. *See, e.g., Hosanna-Tabor*, 565 U.S. at 188. Plaintiff has

identified no other church that seeks to operate in the manner that Plaintiffs do by excluding

15

homosexuals even from non-ministerial positions. It may be that such churches or employers exist. "But courts must certify class actions based on proof, not presumptions." *Flecha*, 946 F.3d at 768. Plaintiffs bear the burden to *prove* numerosity; their mere conjecture is inadequate to meet this burden. *See Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 357 (3d Cir. 2013) ("Mere speculation as to the number of class members—even if such speculation is 'a bet worth making'—cannot support a finding of numerosity." (quoting *Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 596 (3d Cir. 2012)).

## II.   Plaintiffs do not meet the requirements of Rule 23(b)(2).

Plaintiffs seek a mandatory class under Rule 23(b)(2). Certification under Rule 23(b)(2) is permitted only when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As the Fifth Circuit has explained, "this rule seeks to redress what are really group as opposed to individual injuries," thus "render[ing] the notice and opt-out provisions of (b)(3) unnecessary." *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n,* 624 F.3d 185, 198 (5th Cir. 2010) (quoting *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 n.22 (5th Cir. 2000)). Certification under this provision is permissible "only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart.*, 564 U.S. at 360. And the relief sought "must be specific." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007).

Plaintiffs cannot satisfy these requirements. First, Plaintiffs are simply wrong to assert that the EEOC has "acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). The EEOC obviously has not taken actual enforcement action against every member of the class. And any such action it either has or might take in the future would not be "on grounds

generally applicable to the class." EEOC investigations and enforcement actions are highly fact-specific endeavors, as is both necessary and appropriate given that whether a violation of Title VII has occurred is itself a highly fact-dependent inquiry. Indeed, that is one lesson of *Wal-Mart v. Dukes*: whether even a single employer has violated Title VII depends on the specific circumstances surrounding the employment action. That fact-intensive inquiry is heightened all the more when an employer asserts a religious objection. EEOC enforcement guidance expressly recognizes that such circumstances require "a nuanced balancing" based on the specific facts, and cautions investigators to "take great care in situations involving both (a) the statutory rights of employees to be free from discrimination at work, and (b) the rights of employers under the First Amendment and RFRA." EEOC, *Compliance Manual*. Because the grounds of any enforcement action against the members of the proposed class would vary dramatically from case-to-case, Plaintiffs cannot satisfy Rule 23(b)(2)'s first requirement.

Nor can Plaintiffs satisfy the separate requirement that the proposed declaratory judgment be "appropriate," Fed. R. Civ. P. 23(b)(2), by providing "relief to each member of the class," *Wal-Mart*, 564 U.S. at 360. The relief that Plaintiffs seek—a declaration that each of the six policies at issue either does not violate Title VII or else that the policies are otherwise lawful because enforcing Title VII to prohibit those policies would violate RFRA or the First Amendment— could not provide relief to each member of the class. Each stage of the inquiry is highly fact-specific: first, whether Title VII would prohibit a specific policy; second, whether enforcing Title VII to prohibit the specific policy would burden Plaintiffs' rights; third, whether prohibiting the specific policy advances a compelling government interest; and fourth, how that compelling interest balances against the Plaintiffs' asserted rights under the appropriate standard of review. Under RFRA, for example, this means the Court must "'scrutiniz[e] the asserted harm of granting *specific*

17

exemptions to *particular* religious claimants'—in other words, to look to *the marginal interest* in enforcing the [government regulation] in *these* cases." *Hobby Lobby*, 573 U.S. at 726-27 (quoting *O Centro*, 546 U.S. at 431) (emphasis added). A declaration such as Plaintiffs seek would not "provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. Other employers will have different policies that implicate different government interests, the prohibition of which would burden their beliefs differently. It would require separate, individualized, and extensive litigation for each class member to demonstrate its entitlement to relief.

And to the extent that Plaintiffs seek a more generic declaration that Title VII gives way when its application would violate RFRA or the First Amendment—declarations along the lines of the "common questions" that Plaintiffs assert—then the proposed relief fails for specificity. A declaration that simply says that the First Amendment or RFRA "compels an exemption" to Title VII, in some unspecified circumstances is not appropriate relief under Rule 23(b)(2). It is not enough that the proposed relief might establish some standard or in some way benefit the absent class member in subsequent, separate litigation. In *Maldonado v. Oscher Clinic Foundation*, for example, the Plaintiffs sought an injunction requiring the defendant to provide "mutually affordable health care." 493 F.3d at 524. Such an injunction could theoretically have benefited a wide range of claimants who might obtain lower costs under that standard. But the Fifth Circuit held that such relief was insufficiently specific because the appropriate rate under that standard "is necessarily an individual inquiry that will depend on the specific circumstances of each class member." *Id.* The same result attaches here: even if some absent class member may benefit from a general advisory opinion that RFRA or the First Amendment may compel an exemption in some circumstances, whether those circumstances are met in a particular instance "is necessarily an individual inquiry." *Id.*

18

Plaintiffs therefore cannot meet the requirements of Rule 23(b)(2).

**III.  Plaintiffs have not identified an ascertainable class.**

The Fifth Circuit requires that, "to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam); *see also John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23."). "An identifiable class exists if its members can be ascertained by reference to objective criteria (ascertainability)." *Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 328 (N.D. Tex. 2012). This requirement of a definable and ascertainable class protects absent plaintiffs "by defining who is entitled to relief" and protects defendants "by enabling a final judgment that clearly identifies who is bound by it." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 679 (N.D. Ga. 2016) (quoting 1 William B. Rubenstein, *Newberg on Class Actions* § 3:1 (5th ed. 2011).

Neither proposed class is adequately defined or clearly ascertainable. Indeed, underscoring that the proposed class members lack commonality, the proposed classes define the class members' beliefs at the highest level of generality—employers that "oppose" a broad and undefined spectrum of third-party behavior—and fail to describe what follows from those general beliefs. Thus, some members of the class may object to "homosexual . . . behavior" but not to "transgender behavior." Some may object to same-sex marriage but not to same-sex civil unions. Some may object to hormone therapy but not cross-dressing. Some may object to hugging a member of the same sex as a greeting but not as a celebration of, for example, a big sale. Some may object to acts but not to thoughts. Some may object to all of the above. Because the terms "oppose" and "homosexual

19

or transgender behavior" are incapable of precise definition, and because individuals' objections can be so varied, members of the class cannot be adequately determined.

Relatedly, the class definition fails to identify how the proposed class members act on their beliefs. Plaintiffs' claims concern enforcement of Title VII—but as shown above and as Plaintiffs acknowledge, not all those who "oppose[] homosexual or transgender behavior" will in fact adopt *any* workplace policies or practices to act on that opposition. Even among those employers that might promulgate such policies, those policies may or may not implicate Title VII; they may or may not implicate the First Amendment; they may or may not implicate RFRA. The class definitions therefore fail to identify classes of employers with common *claims,* they simply identify employers with—at too high a level of generality to be useful—common beliefs. These proposed classes are therefore readily distinguishable from the class this Court certified in *DeOtte v. Azar*, 332 F.R.D. at 197, where the class definition identified both the specific substance of the class members' beliefs and how they would act on those beliefs, and in *Vita Nuova, Inc. v. Azar* where the plaintiffs contended that class members would "be easy to identify because their subjective beliefs will produce actions that are taken in plain sight for all to see," 2020 WL 8271942, at *2.

Should a class be certified and Plaintiffs ultimately prevail on any of their claims, Defendants would be required to give effect to that judgment with respect to every single class member. The ascertainment problem in this regard is not that one cannot determine a class members' *asserted* beliefs, it is that many class members will not assert their beliefs at all. *See Lindh v. Dir., Fed. Bureau of Prisons*, No. 2:14-cv-151-JMS-WGH, 2015 WL 179793, at *4 (S.D. Ind. Jan. 14, 2015) (proposed RFRA class of all male Muslim prisoners with sincerely held religious beliefs requiring them not to wear pants above the ankle was not sufficiently definite

"because class membership would be based on a putative class member's state of mind" and there was no evidence that class members "would be ascertainable by reference to objective criteria—*i.e.*, that male Muslim prisoners ever specifically disclose to the [defendant] their position as to whether their understanding of Islam requires them to wear their pants above their ankles").

The requirement that a class be ascertainable is, like the requirements of Rule 23, essential to preserving the rights of those bound by a final judgment.

## IV.   Plaintiffs' proposed classes do not satisfy Article III.

Even if the Court were to conclude that one or both of Plaintiffs' proposed classes satisfies Rule 23, it must then confront the failure of the proposed class to satisfy Article III. *See Flecha*, 946 F.3d at 768-69 (noting that courts should address Article III questions related to a class only after concluding the class satisfies Rule 23). *But see id.*at 770 (Oldham, J., concurring) (observing that this sequencing rule rests on since-abandoned principles of law and that a class action cannot proceed if "[c]ountless unnamed class members lack standing").

"[N]o class may be certified that contains members lacking Article III standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006). Plaintiffs claim standing, in their own right, based on EEOC guidance that Plaintiffs assert conflicts with their beliefs, in violation of either RFRA or the First Amendment. But, as Plaintiffs concede, not every "employer in the United States that opposes homosexual or transgender behavior"—that is, not every member of the class—will "use their business's employment practices to advance that goal." Pls.' Mem. at 9. Such class members therefore will suffer no injury, because they would not seek to adopt any policy or practice that Title VII would preclude; that is, Title VII would not require them to take

21

any action that burdens their beliefs. These class members will have suffered no injury, and thus would lack Article III standing.[5]

In fact, available data strongly suggests that such class members—uninjured and without any claim to adjudicate in these proceedings—would be the rule, not the exception. Polling from 2001 through 2019 consistently found that over 85% of respondents believed that homosexuals should have equal opportunities in employment—even as the percentage of respondents who thought homosexuality was "morally wrong" ranged from a high of 55% to a low of 30%. *See* Gallup, *In Depth: Topics A-Z,* LGBT Rights, https://news.gallup.com/poll/1651/gay-lesbian-rights.aspx (last visited June 6, 2021). In Gallup's most recent polling to ask the question, from 2019, only 5% of respondents believed homosexuals should *not* have equal employment opportunities, while a much larger share—35%—believed that homosexuality was morally wrong. This indicates that a large majority of the proposed classes would not have any injury whatsoever.

Even among that minority of class members who do adopt policies that would violate Title VII, many would lack standing. Many might—like these Plaintiffs—adopt policies that might violate Title VII if ever effectuated, but will—like these Plaintiffs—never have the occasion to enforce their policies. *See* Stipulated Facts and Joint Status Report ¶¶ 1-8. And even among that still smaller number of class members who do act on their policies, there may not be a basis for EEOC to initiate any enforcement action. For one, EEOC may never learn of the action; EEOC enforcement relies primarily on affected individuals first filing a charge with the EEOC. For another, EEOC may determine that the evidence is insufficient to support an enforcement action. *See* Title VII of the Civil Rights Act of 1964 Charges, https://www.eeoc.gov/statistics/title-vii-civil-rights-act-1964-charges-charges-filed-eeoc-includes-concurrent-charges (last visited June 7,

---

[5] Even more glaringly, Plaintiffs' proposed classes includes employers not even subject to Title VII, such as employers with fewer than 15 employees.

2021) (statistics indicating EEOC found reasonable cause to proceed in approximately 3% to 5% of Title VII charges filed since 2008). Or EEOC may, consistent with enforcement guidance directing careful consideration when an employer asserts a burden to religious beliefs, determine that enforcement action is not appropriate in the circumstances. *See* 42 U.S.C. § 2000e-5(f)(1) (if the employer declines to resolve the matter informally, EEOC "may" file an enforcement action); *AT&T Co. v. EEOC*, 270 F.3d 973, 976 (D.C. Cir. 2011) (explaining that even though EEOC had sued other similarly situated employers, "it does not follow that the agency will use its limited resources to sue them all; law enforcement agencies rarely have the ability, or for that matter the need, to bring a case against each violator").

These absent class members all lack standing. Article III therefore precludes adjudication of the class claims. [6]

## CONCLUSION

Rule 23 exists to resolve a large number of closely related claims both simultaneously and with finality. Certifying a class here will not do so, as the hypothetical claims of discrete employers with discrete employment practices and discrete beliefs would be related to these Plaintiffs' claims only in that they may rely on some of the same provisions of law. *Cf. Wal-Mart*, 564 U.S. at 350 (claims do not satisfy commonality requirement merely because each alleges a violation of the same law by the same defendant). Resolving the asserted common questions will do nothing to truncate litigation of other class members' claims; those claims will lack finality even after final judgment in this case. Plaintiffs seek to hijack the class action mechanism in this case not to

---

[6] The Fifth Circuit has not definitively resolved whether the standing of absent class members presents an Article III problem (as in the Second Circuit) or only a Rule 23 problem. *See Flecha*, 946 F.3d at 769; *In re Deepwater Horizon*, 739 F.3d at 799. Regardless, the fact that such a large percentage of the proposed classes have no claim at all demonstrates in stark terms that the class members do not suffer the "same injury" or have the same contentions. It also underscores the problems with ascertainability described in section III.

promote judicial economy or to resolve a class of claims, but to obtain an advisory opinion on an abstract question of law that will bind employers on a nationwide basis. Such "creative uses" of a class action "are perilous," and the Court should reject the attempt here. *Chavez*, 957 F.3d at 547.

The Court should deny Plaintiffs' Motion for Class Certification.

Dated: June 7, 2021                                  Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

 /s/ *Michael F. Knapp*
MICHAEL F. KNAPP
(CA Bar. # 314104)
BENJAMIN T. TAKEMOTO
(DC Bar # 1045253)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW Room 12008
Washington, D.C. 20530
(202) 514-2071 (telephone)
(202) 616-8470 (facsimile)
Email:      Michael.F.Knapp@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

On June 7, 2021, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.

*/s/ Michael F. Knapp*
Michael F. Knapp