**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

BEAR CREEK BIBLE CHURCH et al.,

      Plaintiffs,

v.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION et al.,

      Defendants.

Civil Action No. 4:18-CV-824-O

**<u>DEFENDANTS' CONSOLIDATED BRIEF IN SUPPORT OF THEIR CROSS-MOTION
FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION</u>**

## <u>TABLE OF CONTENTS</u>

Summary ........................................................................................................................... 1

Background ....................................................................................................................... 2

Legal Standard ................................................................................................................. 4

Argument .......................................................................................................................... 5

   I.   The Court Should Dismiss Plaintiffs' Claims for Threshold Reasons. ............................ 5

      A.   Plaintiffs Have Failed to Set Forth Evidence of Article III Standing.......................... 5

      B.   Plaintiffs Have Failed to Set Forth Evidence That This Case is Ripe....................... 11

      C.   The United States Has Not Waived Sovereign Immunity as to Claims 2 through 5 and There Is No Cause of Action for Claims 4 and 5................................................................. 13

   II.   Plaintiffs Are Not Entitled to Judgment on the Merits.................................................. 15

      A.   The Court Should Not Issue a Broad Advisory Opinion on the Intersection of RFRA and Title VII................................................................................................................. 15

      B.   The Court Should Not Issue a Broad Advisory Opinion on the Intersection of the Free Exercise Clause and Title VII. ....................................................................................... 19

      C.   The Court Should Not Issue a Broad Advisory Opinion on the Intersection of the Free Association Clause and Title VII. .................................................................................. 20

      D.   Title VII Prohibits Sex Discrimination against Bisexual Employees......................... 23

      E.   Title VII's Disparate Treatment Standard Does Not Apply to Sex Neutral Employment Policies, but Plaintiffs' Examples Are Not Sex Neutral. ............................... 24

Conclusion ...................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Adkins v. Kaspar*,
   393 F.3d 559 (5th Cir. 2004) ................................................... 18

*Alabama-Coushatta Tribe of Tex. v. United States*,
   757 F.3d 484 (5th Cir. 2014) .......................................... 13, 14

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ............................................................ 15

*Ashelman v. Wawrzaszek*,
   111 F.3d 674 (9th Cir. 1997) ................................................. 12

*AT&T Co. v. EEOC*,
   270 F.3d 973 (D.C. Cir. 2001) ................................................. 9

*Beale v. Blount*,
   461 F.2d 1133 (5th Cir. 1972) ......................................... 13, 14

*Bender v. Williamsport Area Sch. Dist.*,
   475 U.S. 534 (1986) ............................................................. 5

*Bostock v. Clayton County*,
   140 S. Ct. 1731 (2020) .................................................. *passim*

*Boy Scouts of America v. Dale*,
   530 U.S. 640 (2000) ................................................. 20, 21, 23

*Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S. 682 (2014) ....................................................... 18, 19

*California v. Texas*,
   No. 19-840, 2021 WL 2459255 (S. Ct. June 17, 2021) .............. 5, 6, 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................. 4

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ........................................................... 10

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ............................................................. 5

*Dallas Cty. v. MERSCORP, Inc.*,
   2 F. Supp. 3d 938 (N.D. Tex. 2014) ....................................... 15

*Diaz v. Collins,*
  114 F.3d 69 (5th Cir. 1997) ........................................................................ 16

*Doe v. Tangipahoa Parish Sch. Bd.,*
  494 F.3d 494 (5th Cir. 2007) ....................................................................... 5

*eBay Inc. v. MercExchange, LLC,*
  547 U.S. 388 (2006) ..................................................................................... 2

*EEOC v. Arabian Am. Oil Co.,*
  499 U.S. 244 (1991) ................................................................................... 17

*EEOC v. Miss. Coll.,*
  626 F.2d 477 (5th Cir. 1980) ..................................................................... 19

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.,*
  884 F.3d 560 (6th Cir. 2018) ..................................................................... 18

*Fulton v. City of Philadelphia,*
  No. 19-123, 2021 WL 2459253 (S. Ct. June 17, 2021) ............................ 19

*FW/PBS, Inc. v. City of Dallas,*
  493 U.S. 215 (1990) ................................................................................... 11

*Georator Corp. v. EEOC,*
  592 F.2d 765 (4th Cir. 1979) ..................................................................... 15

*Gibson v. Missouri Pac. R.R. Co.,*
  579 F.2d 890 (5th Cir. 1978) ..................................................................... 15

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
  546 U.S. 418 (2006) .................................................................. 12, 13, 16, 18

*Harris Cty. v. MERSCORP Inc.,*
  791 F.3d 545 (5th Cir. 2015) ..................................................................... 15

*Hersh v. United States,*
  553 F.3d 743 (5th Cir. 2008) ..................................................................... 20

*Hishon v. King & Spaulding,*
  467 U.S. 69 (1984) ............................................................................... 20, 21

*Holt v. Hobbs,*
  574 U.S. 352 (2015) ................................................................................... 16

*Hotze v. Burwell,*
  784 F.3d 984 (5th Cir. 2015) ..................................................................... 11

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*,
    515 U.S. 557 (1995) ........................................................................... 23

*Int'l Tape Mfrs. Ass'n v. Gerstein*,
    494 F.2d 25 (5th Cir. 1974) ................................................................... 8

*Johnson v. United States*,
    502 F. App'x 412 (5th Cir. 2012) ......................................................... 14

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994) .................................................................. 4

*Lopez v. City of Houston*,
    617 F.3d 336 (5th Cir. 2010) .......................................................... 11, 12

*Louisiana v. United States*,
    948 F.3d 317 (5th Cir. 2020) ............................................................... 14

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .................................................................... *passim*

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ............................................................................ 14

*MA LEG Partners 1 v. City of Dallas*,
    442 F. Supp. 3d 958 (N.D. Tex. 2020) ................................................. 14

*McAllen Grace Brethren Church v. Salazar*,
    764 F.3d 465 (5th Cir. 2014) ............................................................... 12

*Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*,
    647 F.3d 202 (5th Cir. 2011) ................................................................. 8

*Nat'l Park Hosp. Ass'n v. DOI*,
    538 U.S. 803 (2003) ............................................................................ 11

*Newman-Green, Inc. v. Alfonzo-Larrain*,
    490 U.S. 826 (1989) .............................................................................. 7

*Newsome v. EEOC*,
    37 F. App'x 87, 2002 WL 971379 (5th Cir. 2002) ................................ 15

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
    140 S. Ct. 2049 (2020) .................................................................... 9, 22

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989) ............................................................................ 24

*Raines v. Byrd,*
    521 U.S. 811 (1997)................................................................................................ 5

*Roberts v. U.S. Jaycees,*
    468 U.S. 609 (1984)................................................................................... 21, 22, 23

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc. (FAIR),*
    547 U.S. 47 (2006).................................................................................................. 20

*Sample v. Morrison,*
    406 F.3d 310 (5th Cir. 2005) ................................................................................. 11

*Susan B. Anthony List* (*SBA List*) *v. Driehaus,*
    573 U.S. 149 (2014)...................................................................................... 7, 10, 12

*TransUnion LLC v. Ramirez,*
    No. 20-297, 2021 WL 2599472 (S. Ct. June 25, 2021) ........................................... 5

*Tucker v. Collier,*
    906 F.3d 295 (5th Cir. 2018) ................................................................................. 16

*United States v. Mitchell,*
    463 U.S. 206 (1983)................................................................................................ 13

*Weir v. Nix,*
    114 F.3d 817 (8th Cir. 1997) ................................................................................. 12

*Younger v. Harris,*
    401 U.S. 37 (1971).................................................................................................. 10

*Zarda v. Altitude Express, Inc.,*
    883 F.3d 100 (2d Cir. 2018)................................................................................... 24

**Constitutional Law**

U.S. Const. art. III, § 2 ................................................................................................... 5

**Statutes**

5 U.S.C. § 702 ............................................................................................................... 14

5 U.S.C. § 704 ............................................................................................................... 14

28 U.S.C. § 1331 ........................................................................................................... 13

28 U.S.C. § 1343 ........................................................................................................... 13

42 U.S.C. § 2000bb-1 ......................................................................................... 12, 15, 18

42 U.S.C. § 2000e-1(a) ........................................................................................... 10

42 U.S.C. § 2000e-2 ........................................................................................... 24, 25

42 U.S.C. § 2000e-5 ........................................................................................ 3, 6, 9, 15

**Rules**

Fed. R. Civ. P. 56 ................................................................................................. 4, 6, 12

**Other Authorities**

EEOC Litigation Statistics, FY 1997 through FY 2020,
   https://www.eeoc.gov/statistics/eeoc-litigation-statistics-fy-1997-through-fy-2020...................9

Protections Against Employment Discrimination Based on Sexual Orientation or Gender
Identity, No. NVTA-2021-1 (June 15, 2021),
   https://www.eeoc.gov/laws/guidance/protections-against-employment-discrimination-based-
   sexual-orientation-or-gender...........................................................................................3

Questions and Answers: Religious Discrimination in the Workplace, No. EEOC-NVTA-2008-2
(July 22, 2008),
   https://www.eeoc.gov/laws/guidance/questions-and-answers-religious-discrimination-
   workplace .............................................................................................................................3

Religious Discrimination, Compliance Manual on Religious Discrimination, No. EEOC-
CVG-2021-3 (Jan. 15, 2021),
   https://www.eeoc.gov/laws/guidance/section-12-religious-
   discrimination#h_4393287411421610748699300...........................................................3

Title VII of the Civil Rights Act of 1964 Charges,
   https://www.eeoc.gov/statistics/title-vii-civil-rights-act-1964-charges-charges-filed-eeoc-
   includes-concurrent-charges.........................................................................................9

What You Should Know: The EEOC and Protections for LGBTQ+ Workers, No. EEOC-
NVTA-0000-29 (June 30, 2020),
   https://www.eeoc.gov/laws/guidance/what-you-should-know-eeoc-and-protections-lgbtq-
   workers.................................................................................................................4

**SUMMARY**

Plaintiffs Bear Creek Bible Church and Braidwood Management are, respectively, a church and wellness business that have never interacted with Defendant Equal Employment Opportunity Commission (EEOC). However, Plaintiffs' disagreement with the Supreme Court's decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), which held that Title VII prohibits discrimination on the basis of sexual orientation and gender identity, has prompted this action against the EEOC. Plaintiffs seek a broad declaration from this court preemptively exempting them from Title VII's prohibitions on discrimination even though the summary judgment evidence shows that (1) Plaintiffs are not aware of any LGBTQ[1] employees, (2) Plaintiffs are not aware of ever refusing to employ any particular LGBTQ person, (3) the EEOC has never investigated a charge of discrimination or brought a civil enforcement action against Plaintiffs for discriminating against LGBTQ people, and (4) the EEOC has informed the public that it considers on a case-by-case basis an employer's First Amendment and Religious Freedom Restoration Act (RFRA) rights, as well as the religious exemption provision of Title VII, in its investigations and before bringing an enforcement action.

The Court should reject Plaintiffs' thinly disguised request for an impermissible advisory opinion. At the summary judgment phase, Plaintiffs have a burden to set forth evidence that there is an actual case or controversy. Plaintiffs have fallen far short, as they have not shown that they suffered any injury, let alone one caused by the EEOC. Furthermore, they have failed to show entitlement to the specific declaratory judgment that they seek.[2] Indeed, this Court cannot conduct

---

[1] Plaintiffs appear to refer to LGBTQ people as those "who are engaged in sexually immoral behavior." *See, e.g.*, 4th Am. Compl. ¶ 53, ECF No. 86. Accordingly, Defendants use the term "LGBTQ" throughout this brief.

[2] Plaintiffs state in their brief that they seek "a classwide permanent injunction." Pls.' Am. Br. ISO

the case-specific analysis of Plaintiffs' claims that RFRA and the First Amendment demand because Plaintiffs offer nothing more than speculation about how they *might* violate Title VII in the future and how the EEOC *might* bring an enforcement action against them at some point. Likewise, Plaintiffs' request for an interpretation of Title VII as it applies to bisexual people or certain hypothetical employment scenarios seeks an impermissible advisory opinion and in any event rests on an incorrect view of the statute.

For these reasons, the Court should deny Plaintiffs' Motion for Summary Judgment, ECF No. 72, and grant Defendants' Motion for Summary Judgment.

## BACKGROUND[3]

This case has been brought by two small organizations: Bear Creek, a nondenominational church, and Braidwood, a wellness company that employs approximately seventy people. *See* Salvesen Decl. ¶ 4, ECF No. 90-4; Hotze Decl. ¶ 5, ECF No. 90-5. Neither wishes to employ LGBTQ people, and Braidwood has an employment policy to that effect. *See* Salvesen Decl. ¶ 11; Hotze Decl. ¶¶ 13–15.[4] Despite these views, neither Bear Creek nor Braidwood is aware of any applicants or employees who identify as LGBTQ. Stipulation ¶¶ 1, 5, ECF No. 69. And neither has taken an adverse employment action against someone because of their sexual orientation or

---

Mot. Summ. J. 1, ECF No. 90 [hereinafter Pls.' Br.]. However, the Fourth Amended Complaint seeks only "declaratory relief," 4th Am. Compl. ¶ 87, so Defendants refer to that request in this brief. At any rate, Plaintiffs have not explained why they are entitled to a permanent injunction: they must "demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). They have not demonstrated any of this.

[3] In addition to the following, Defendants' recently filed Opposition to Plaintiffs' Motion for Class Certification, ECF No. 82, sets forth the procedural background as well as the material facts relevant to this motion, which are incorporated herein by reference.

[4] Bear Creek has not produced evidence of a policy that targets employees based on their sexual orientation or gender identity.

gender identity. *Id.* ¶¶ 2, 6.

Plaintiffs nevertheless believe that certain EEOC documents "threaten[ them] with penalties and lawsuits." Salvesen Decl. ¶ 17; Hotze Decl. ¶ 18. As an initial matter, the EEOC cannot issue penalties. Rather, it administers and enforces Title VII by (1) investigating applicants' or employees' administrative charges of employment discrimination filed with the EEOC; (2) issuing determination letters indicating whether the EEOC has found reasonable cause to believe an employer has violated the statute; (3) attempting voluntary conciliation with the employer where the EEOC has reasonable cause to believe the employer has violated Title VII; and (4) determining whether to file enforcement actions in district court in the event that such conciliation efforts fail. *See* 42 U.S.C. § 2000e-5; *id.* § 2000e-5(f)(1) (stating that the EEOC "may" file an enforcement action if the employer declines to resolve the matter informally). No one has filed an administrative charge with the EEOC against Plaintiffs for employment discrimination on the basis of sexual orientation or gender identity, so this process has never been triggered against Plaintiffs.

The allegedly "threatening" documents are a handful of many documents that the EEOC issues to inform the public about employment discrimination. These documents "do not have the force and effect of law and are not meant to bind the public in any way." ECF No. 73-2. And they do not constitute the sum and substance of how the EEOC evaluates adverse employment actions involving claims of religious motivation.[5] The EEOC has issued documents explaining how it evaluates religious defenses to LGBTQ employment discrimination charges in particular.[6] In these

---

[5] *See* Religious Discrimination, Compliance Manual on Religious Discrimination, No. EEOC-CVG-2021-3 (Jan. 15, 2021), https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#h_43932874114216107486993300; Questions and Answers: Religious Discrimination in the Workplace, No. EEOC-NVTA-2008-2 (July 22, 2008), https://www.eeoc.gov/laws/guidance/questions-and-answers-religious-discrimination-workplace.
[6] Protections Against Employment Discrimination Based on Sexual Orientation or Gender

documents, the EEOC recognizes "the importance of a nuanced balancing of potential burdens on religious expression, the governmental interests at issue, and how narrowly tailored the challenged government requirements are," Religious Discrimination, *supra*, and accordingly provide that "the EEOC consider[s] and appl[ies], on a case by case basis, any religious defenses to discrimination claims, under Title VII and other applicable laws," Protections TA, *supra*.

Before the Court is Plaintiffs' Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment. Although the EEOC has never brought an enforcement action in court against Plaintiffs and no such action is pending or currently contemplated, Plaintiffs nevertheless seek judgment on five claims: a declaratory judgment relating to Title VII and its intersection with RFRA, the Free Exercise Clause, and the Free Association Clause. 4th Am. Compl. ¶¶ 49–68, ECF No. 86 [hereinafter 4AC], as well as the application of the Supreme Court's decision in *Bostock* to various hypothetical scenarios.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To obtain summary judgment, the movant need only point to the absence of evidence of an essential element of the plaintiff's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If it does, the respondent must designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

---

Identity, No. NVTA-2021-1 (June 15, 2021), https://www.eeoc.gov/laws/guidance/protections-against-employment-discrimination-based-sexual-orientation-or-gender [hereinafter Protections TA]; What You Should Know: The EEOC and Protections for LGBTQ+ Workers, No. EEOC-NVTA-0000-29 (June 30, 2020), https://www.eeoc.gov/laws/guidance/what-you-should-know-eeoc-and-protections-lgbtq-workers.

## ARGUMENT

**I.    The Court Should Dismiss Plaintiffs' Claims for Threshold Reasons.**

    **A.    Plaintiffs Have Failed to Set Forth Evidence of Article III Standing.[7]**

"Federal courts do not possess a roving commission to publicly opine on every legal question." *TransUnion LLC v. Ramirez*, No. 20-297, 2021 WL 2599472, at *6 (S. Ct. June 25, 2021). Rather, "[t]he Constitution gives federal courts the power to adjudicate only genuine 'Cases' and 'Controversies.'" *California v. Texas*, No. 19-840, 2021 WL 2459255, at *4 (S. Ct. June 17, 2021) (quoting U.S. Const. art. III, § 2). Scrutiny of this power is "especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was" unlawful, *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997), and "when a constitutional question is presented," *Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 496 (5th Cir. 2007) (en banc). "In such cases [the Fifth Circuit has] strictly adhered to the standing requirements" of Article III "to ensure that [the court's] deliberations will have the benefit of adversary presentation and a full development of the relevant facts." *Id.* (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541–42 (1986)).

"A plaintiff has standing only if he can 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *California*, 2021 WL 2459255 at *4 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U. S. 332, 342 (2006)). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the

---

[7] Although the Court has previously held that Plaintiffs lacked standing against the Attorney General, the Court has not yet addressed Plaintiffs' standing against the EEOC. Courts must assure themselves of jurisdiction at each stage of litigation, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), and Defendants now object to Plaintiffs' standing based on evidence that was not available when they filed their motion to dismiss Plaintiffs' Second Amended Complaint.

plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Defs. of Wildlife*, 504 U.S. at 561. In contrast to the motion to dismiss stage, at which the Court may rely on allegations in the complaint, at the summary judgment stage, "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.* (quoting Fed. R. Civ. P. 56).

Accordingly, Plaintiffs must now point to specific evidence that supports their standing. They have not. Plaintiffs' descriptions of their injuries underscore the abstract rather than concrete nature of their claims. Both allege that because of *Bostock,* they cannot comply with Title VII without violating their religious beliefs and, thus, they are exposed to potential "penalties and lawsuits." *See* 4AC ¶¶ 71, 74.

Crucially, Plaintiffs have failed to "'set forth' by affidavit or other evidence 'specific facts'" to support these allegations. *See Defs. of Wildlife*, 504 U.S. at 561. They have not demonstrated any facts that could possibly give rise to either an assessment of "penalties" or the filing of "lawsuits" at this time. In fact, as noted above, the EEOC itself has no authority to levy fines or penalties against employers due to discrimination. *See* 42 U.S.C. § 2000e-5. Thus a fear of nonexistent "penalties" cannot serve as a basis for a concrete threat of injury. *California*, 2021 WL 2459255 at *4 (noting that the plaintiffs lacked standing to challenge the individual mandate of the Affordable Care Act (ACA) because "[w]ith the penalty zeroed out, the IRS can no longer seek a penalty from those who fail to comply."). Nor have Plaintiffs demonstrated that any EEOC enforcement action ever has been or will be threatened against them in response to a charge of discrimination based on sexual orientation or gender identity. To the contrary, the parties' stipulations definitively prove that Plaintiffs are under no imminent threat of enforcement. Bear

Creek and Braidwood both concede that they have "not taken any adverse employment action against employees or applicants for employment in a manner that would violate Title VII as interpreted in *Bostock*," Stipulation ¶¶ 2, 6, ECF No. 69. Therefore, there is no past action on the part of Plaintiffs that could give rise to EEOC enforcement efforts under the *Bostock* decision.

Moreover, Plaintiffs' admissions regarding their current employees and applicants illustrate that they are under no imminent threat of an enforcement action for discrimination based on sexual orientation or gender identity. Plaintiffs have no contemporaneous awareness of a single LGBTQ employee or applicant. *Id.* ¶¶ 1, 5. Although Plaintiffs allege the Supreme Court's construction of Title VII in *Bostock* restricts their ability to exercise their religious beliefs because it will require them to allow transgender employees to use restrooms corresponding to their gender identity, no employee has ever identified as transgender or asked either Plaintiff "to use a restroom reserved for the opposite biological sex." *Id.* ¶¶ 3, 7. Similarly, although Plaintiffs allege that they will have to provide employee benefits, including health plans, to the partners of LGBTQ employees, no employee or applicant has identified as LGBTQ or asked either Plaintiff to "recognize same-sex marriage or offer benefits to same-sex partners of its employees." *Id.* ¶¶ 4, 8 (quoting 2d Am. Compl. ¶¶ 44, 87, ECF No. 45). "The existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed*," *Defs. of Wildlife*, 504 U.S. 569 n.4 (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)), and it is clear that no facts exist at the time of the Fourth Amended Complaint that give rise to an injury-in-fact that is "actual or imminent" or "certainly impending." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (*SBA List*).

The Fifth Circuit has routinely held that a plaintiff's failure to produce *evidence* of a sincere intention to engage in protected conduct is fatal to establishing standing at summary judgment.

*See, e.g.*, *Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 209 (5th Cir. 2011) (challenge to Texas statute regulating charitable solicitation appropriately dismissed on summary judgment because plaintiffs "have not offered any evidence to show that they intend to hire professional resellers to engage in activity covered by" the statute, noting other decisions that "standing is not created by a declaration in court pleadings." (citations omitted)); *Int'l Tape Mfrs. Ass'n v. Gerstein*, 494 F.2d 25, 28-29 (5th Cir. 1974) (holding that "we have before us nothing more than a request for an advisory ruling on the constitutionality of Florida's tape piracy law" because the plaintiff failed to set forth evidence of its intention to violate a tape piracy statute and "fail[ed] to describe the nature and location of the members' activities in sufficient detail" to demonstrate a threat of prosecution). This Court should follow the Fifth Circuit's instructions in these cases not to recognize standing based on unsubstantiated allegations relating to potential future conduct. Like the plaintiffs in *National Federation of the Blind of Texas, Inc.*, Plaintiffs have not set forth evidence of awareness that they employ or are considering the application of an LGBTQ person. And like the plaintiffs in *International Tape Manufacturers Association*, Plaintiffs have not set forth evidence that they have taken or will take actions that could result in an enforcement action against them. Accordingly, Plaintiffs' "assertions before this court that they are 'seriously interested'" in violating Title VII, as interpreted by *Bostock*, and thus think they will be sued by the EEOC "fail to satisfy 'the irreducible constitutional minimum of standing.'" *Nat'l Fed. of the Blind of Tex., Inc.*, 647 F.3d at 209 (quoting *Defs. of Wildlife*, 504 U.S. at 560).

Compounding the lack of an imminent enforcement action is Plaintiffs' unsupported chain of speculation that (1) an employee or applicant would file a charge of discrimination with the EEOC, (2) the EEOC would investigate that charge, (3) the EEOC would issue a determination letter indicating that it found reasonable cause to believe Plaintiffs violated Title VII, (4) the EEOC

would attempt voluntary conciliation with Plaintiffs, and (5) the EEOC would file an enforcement action in district court. *See* 42 U.S.C. § 2000e-5. In the last few years, the EEOC found reasonable cause in approximately 3 percent of the Title VII charges filed.[8] Moreover, not every charge for which EEOC finds reasonable cause results in an enforcement action. *See* 42 U.S.C. § 2000e-5(f)(1) (if the employer declines to resolve the matter informally, EEOC "may" file an enforcement action); *AT&T Co. v. EEOC*, 270 F.3d 973, 976 (D.C. Cir. 2001) (explaining that even though EEOC had sued other similarly situated employers, "it does not follow that the agency will use its limited resources to sue them all; law enforcement agencies rarely have the ability, or for that matter the need, to bring a case against each violator"). In the last nine years, the EEOC filed only between 46 and 111 Title VII enforcement actions per year.[9]

Further adding to this chain of speculation, it is questionable whether Plaintiffs' hypothetical adverse employment action against an LGBTQ employee or applicant would result in a Title VII violation. Title VII itself provides certain exceptions for religious organizations, *see generally* Questions and Answers: Religious Discrimination in the Workplace, *supra*, and these exceptions may apply to the situations that Plaintiffs envision. For example, the ministerial exception may bar certain claims of discrimination by certain Bear Creek employees. *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060–69 (2020) (concluding that the ministerial exception barred Catholic school teachers' claims of discrimination based on age and disability). Title VII also permits a religious organization to give employment preference to individuals who share their religion. 42 U.S.C. § 2000e-1(a). Although this exception does not

---

[8] Title VII of the Civil Rights Act of 1964 Charges. https://www.eeoc.gov/statistics/title-vii-civil-rights-act-1964-charges-charges-filed-eeoc-includes-concurrent-charges.

[9] EEOC Litigation Statistics, FY 1997 through FY 2020. https://www.eeoc.gov/statistics/eeoc-litigation-statistics-fy-1997-through-fy-2020.

permit sex discrimination, to the extent that Plaintiffs are religious organizations under this section, the practical implication of hiring only employees who share Plaintiffs' "religious convictions regarding homosexual and transgender behavior," 4AC ¶ 74, further diminishes the likelihood of imminent enforcement action. And, Plaintiffs are free to argue that RFRA insulates them from a discrimination charge.

Relatedly, Plaintiffs' failure to demonstrate that the EEOC has ever threatened to bring an enforcement action against them for discriminating based on sexual orientation or gender identity is fatal to their standing. *See California*, 2021 WL 2459255 at *4 (holding that the plaintiffs lacked standing because "[t]hey have not pointed to any way in which the defendants . . .will act to enforce" the challenged statute); *Younger v. Harris*, 401 U.S. 37, 42 (1971) (holding that the plaintiff who had been indicted under the challenged statute had standing, but interveners who "d[id] not claim that they ha[d] ever been threatened with prosecution" did not have standing). Plaintiffs have simply offered no evidence to demonstrate that an enforcement action is likely, let alone "certainly impending." *See SBA List*, 573 U.S. at 158; *Amnesty Int'l USA*, 568 U.S. at 411–12.

Finally, the Court should adhere to the Fifth Circuit's decision that Braidwood's similarly speculative allegations in a challenge to the ACA were insufficient to establish Article III standing. *See Hotze v. Burwell*, 784 F.3d 984 (5th Cir. 2015). Braidwood brought another pre-enforcement challenge in that case, alleging that the ACA's individual mandate was unlawful. The Fifth Circuit held that the "conclusory allegation that Dr. Hotze lacks minimum essential coverage" (which would trigger the allegedly unlawful mandate) was insufficient to establish standing because "the *facts* alleged in the complaint demonstrate that his policy complies with the individual mandate, and thus that he is not subject to the penalty for violating it." *Id.* at 994. In so holding,

the Fifth Circuit cited several Supreme Court decisions that emphasize the plaintiff's burden to clearly point to "'facts demonstrating' standing." *Id.* (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). Braidwood and Bear Creek are attempting to do here what proved insufficient in *Hotze*: to establish standing based on broad, conclusory assertions of injury despite record evidence refuting those assertions. The Court should follow the Fifth Circuit's instructions in that case and award summary judgment in Defendants' favor.

### B.    Plaintiffs Have Failed to Set Forth Evidence That This Case Is Ripe.[10]

Just as Plaintiffs have failed to set forth evidence of their Article III standing, Plaintiffs have also failed to set forth evidence that this case is ripe.

The ripeness doctrine serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (quoting *Nat'l Park Hosp. Ass'n v. DOI*, 538 U.S. 803, 807–08 (2003)). "To determine whether claims are ripe, [courts] evaluate (1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). "Ripeness is a component of subject matter jurisdiction," *id.*, and as such, Plaintiffs must once again "'set forth' by affidavit or other evidence 'specific facts'" that establish ripeness. *See Defs. of Wildlife*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56).

For the same reasons that Plaintiffs have not shown that they have suffered an injury in

---

[10] Although the Court held that this case was ripe at the Rule 12 stage, it has a continuing obligation to assure itself of jurisdiction. *See Defs. of Wildlife*, 504 U.S. at 561. Defendants raise this issue again, in light of the Stipulation, which provides new evidence that Plaintiffs' claims are not ripe, because Plaintiffs have not met their evidentiary burden at summary judgment.

fact, Plaintiffs have not set forth any evidence that supports "the potential hardship to the parties caused by declining court consideration." *Lopez*, 617 F.3d at 341. In fact, just the opposite: all of the available evidence shows that Plaintiffs are not under any threat of an enforcement action for violating Title VII as interpreted in *Bostock*. Plaintiffs acknowledge that they have never been contemporaneously aware of employing an LGBTQ person. They similarly acknowledge that they have never been contemporaneously aware of an LGBTQ applicant. There simply is no present opportunity for Plaintiffs to discriminate on the basis of sexual orientation or gender identity, and thus plaintiffs' alleged hardship is based on multiple layers of speculation.

Although the Court previously held that this case is fit for judicial decision because "whether RFRA or the First Amendment compels an exemption to Title VII are pure questions of law" and "[a] claim is 'fit for judicial decision' if it presents a pure question of law," ECF No. 56 at 16 (quoting *SBA List*, 573 U.S. at 167), in fact both RFRA and Free Exercise issues present mixed questions of law and fact. *See McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014); *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997); *Ashelman v. Wawrzaszek*, 111 F.3d 674, 676 (9th Cir. 1997). The Supreme Court has made clear that "RFRA, and the strict scrutiny test it adopted, contemplate an inquiry more focused than [a] categorical approach." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430 (2006). Rather, where it applies, "RFRA requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Id.* at 430–31 (quoting 42 U.S.C. § 2000bb-1(b)). Depending on the facts, the burden on an employer will vary and may not always be "substantial." Likewise, varying factual circumstances could affect the inquiry into whether application of Title VII is the least restrictive means of achieving the particular

government interest being asserted.

Under the "more focused" inquiry required by RFRA and the compelling interest test, *see O Centro*, 546 U.S. at 430, it is clear that Plaintiffs' request for an abstract declaratory judgment is not fit for judicial decision at this time. There may be some circumstances in which Plaintiffs or potential class members may take action against an LGBTQ employee or applicant without being liable under Title VII because of their religious beliefs. However, such legal protections are not categorical. And the facts available to the Court definitively show that Plaintiffs are far from being confronted with circumstances implicating RFRA or the First Amendment: there is no imminent EEOC enforcement action, and Plaintiffs could not violate Title VII as interpreted by *Bostock* because they are not aware of any LGBTQ employees or applicants.

### C.     The United States Has Not Waived Sovereign Immunity as to Claims 2 through 5 and There Is No Cause of Action for Claims 4 and 5.

The Court should dismiss this case at the outset for one additional reason: sovereign immunity bars Plaintiffs' claims regarding the First Amendment and Title VII, 4AC ¶¶ 54–68. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction," *United States v. Mitchell*, 463 U.S. 206, 212 (1983), and a court lacks jurisdiction over claims against the United States unless the United States' sovereign immunity has been explicitly waived, *see Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488 (5th Cir. 2014).

Plaintiffs cite as the basis for this Court's jurisdiction 28 U.S.C. § 1331 and § 1343. 4AC ¶ 1. Neither statute waives sovereign immunity. Section 1331, while establishing jurisdiction over federal questions, does not waive the sovereign immunity of the United States. *See Beale v. Blount*, 461 F.2d 1133, 1138 (5th Cir. 1972). Section 1343 similarly establishes jurisdiction over certain civil rights and elective franchise actions. Plaintiffs fail to explain how this statute is the basis for

jurisdiction in this case, but at any rate, it too does not waive the United States' sovereign immunity. *See id.* Finally, although Plaintiffs do not explicitly invoke the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, which authorizes declaratory relief as a remedy, that statute does not waive the federal government's sovereign immunity either. *See Johnson v. United States*, 502 F. App'x 412, 419 (5th Cir. 2012); *MA LEG Partners 1 v. City of Dallas*, 442 F. Supp. 3d 958, 970 (N.D. Tex. 2020).

Ordinarily, plaintiffs are able to challenge "final agency action for which there is no other adequate remedy in a court" through the Administrative Procedure Act (APA), 5 U.S.C. § 704, which provides a limited waiver of sovereign immunity. However, this waiver has two conditions that Plaintiffs have not satisfied: (1) "the plaintiff must identify some 'agency action' affecting him in a specific way, which is the basis of his entitlement for judicial review" and (2) "the plaintiff must show that he has 'suffered legal wrong because of the challenged agency action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute.'" *Ala.-Coushatta Tribe of Tex.*, 757 F.3d at 489 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990)); *Louisiana v. United States*, 948 F.3d 317, 321 (5th Cir. 2020). Plaintiffs seek a declaratory judgment, but they do not challenge any particular "agency action," 5 U.S.C. § 702. And they likewise have not pointed to any legal wrong that such agency action caused or to any adverse effect within the meaning of a relevant statute. For these reasons, Claims 2 through 5 should be dismissed for lack of jurisdiction.

Relatedly, Plaintiffs have not articulated a cause of action for Claims 4 and 5, which request a declaratory judgment restricting Title VII's application to bisexual employees and "sex-neutral rules of conduct," 4AC ¶¶ 62–68. "Like substantive federal law itself, private rights of action . . . must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "The

judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* Without such intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter." *Id.* at 286–87. Failure to identify a cause of action in the complaint is a basis for dismissal. *See Harris Cty. v. MERSCORP Inc.*, 791 F.3d 545, 552–53 (5th Cir. 2015) (affirming grant of summary judgment for defendants on claim for declaratory relief because plaintiffs failed to show they had a right of action to pursue their statutory claims), *aff'g Dallas Cty. v. MERSCORP, Inc.*, 2 F. Supp. 3d 938 (N.D. Tex. 2014). Title VII creates a cause of action allowing individuals aggrieved by an employer's actions to challenge employment discrimination. 42 U.S.C. §§ 2000e-5(f)(1), 2000e-16(c). Title VII contains no provision, however, authorizing a cause of action by an employer or any other entity against the EEOC. *See, e.g.*, *Gibson v. Missouri Pac. R.R. Co.*, 579 F.2d 890, 891 (5th Cir. 1978) (affirming dismissal of individual's claim against the EEOC because Title VII "confers no right of action against the [EEOC]"); *Newsome v. EEOC*, No. 01-30817, 2002 WL 971379, at *3 (5th Cir. 2002) (same); *Georator Corp. v. EEOC*, 592 F.2d 765, 767–69 (4th Cir. 1979) (holding that an employer has no cause of action against the EEOC). Accordingly, Claims 4 through 5 should be dismissed for this independent reason as well.

## II.   Defendants Are Entitled to Judgment on the Merits.

### A.   The Court Should Not Issue a Broad Advisory Opinion on the Intersection of RFRA and Title VII.

RFRA provides that the government may "substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). "The threshold inquiry under the RFRA is whether the challenged governmental action substantially burdens [plaintiff's] exercise

of religion." *Diaz v. Collins*, 114 F.3d 69, 71 (5th Cir. 1997). "The burden of proving the existence of a substantial interference with the right of free exercise rests on the religious adherent." *Id.* Only after plaintiff has met this burden is the government required to demonstrate that the compelling interest test is satisfied. *See id.* The compelling interest test is a "focused inquiry" that requires application "to 'the particular claimant whose sincere exercise of religion is being substantially burdened.'" *Tucker v. Collier*, 906 F.3d 295, 302–03 (5th Cir. 2018) (quoting *Holt v. Hobbs*, 574 U.S. 352, 363 (2015)). The Fifth Circuit regularly remands district court decisions that fail to undergo "this individualized inquiry." *See id.* at 302 (collecting cases).

### 1.     Plaintiffs Have Not Set Forth Facts Demonstrating That Their Religious Exercise Is Substantially Burdened by Any EEOC Action.

RFRA claimants must establish a substantial burden on their religious exercise. *See O Centro*, 546 U.S. at 428. Specifically, a claimant must prove both that its conduct is "sincerely based on a religious belief" and that the challenged government action "substantially burdened that exercise of religion." *Holt*, 574 U.S. at 360–61.

Plaintiffs, on behalf of themselves and potential class members, request a declaratory judgment that they may take certain actions against LGBTQ employees and applicants. *See* 4AC ¶ 53. However, Plaintiffs have failed to adduce any evidence that the EEOC has imposed any burden on their religious exercise, substantial or otherwise. The only connection that Plaintiffs draw to the EEOC consists of three documents, which state the EEOC's interpretation of *Bostock*. ECF Nos. 73-1, 73-2, 73-3. Plaintiffs have not set forth any evidence that these guidance documents have had, or will have, any effect on them. These documents are nonbinding, so they do not have the force of law in an enforcement action. *See* ECF No. 73-2 ("The contents of this document do not have the force and effect of law and are not meant to bind the public in any way."). Nor could they: "Congress, in enacting Title VII, did not confer upon the EEOC authority

to promulgate [substantive] rules or regulations." *E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, 257 (1991). Furthermore, the challenged documents merely restate what the Supreme Court held in *Bostock*. *Compare* ECF No. 73-1 ("Discrimination against an individual because that person is transgender, is by definition discrimination based on sex, and violates Title VII."), *with Bostock*, 140 S. Ct. at 1754 ("An employer who fires an individual merely for being gay or transgender defies the law."). If anything, Plaintiffs' subjective fear of enforcement stems from binding Supreme Court precedent interpreting the statute, not EEOC documents that have no legal effect. Plaintiffs therefore have not shown that these nonbinding guidance documents impose a "substantial burden" on Plaintiffs' exercise of religion.

In addition, Plaintiffs ignore other critical EEOC documents that provide important context for situations in which the EEOC might consider taking action against an employer who invokes the protections of the First Amendment or RFRA. The EEOC recognizes that "a private sector employer or a religious organization might argue that its rights under the First Amendment's Free Exercise or Free Speech Clauses, or under RFRA, would be violated if it is compelled by Title VII to grant a particular accommodation or otherwise refrain from enforcing an employment policy." *See* Compliance Manual, *supra*. The EEOC has recognized that resolving these issues requires "a nuanced balancing of potential burdens on religious expression, the governmental interests at issue, and how narrowly tailored the challenged government requirements are." *Id.* Accordingly, EEOC investigators should "take great care in situations involving both (a) the statutory rights of employees to be free from discrimination at work, and (b) the rights of employers under the First Amendment and RFRA." *Id.*; *see also* Protections TA, *supra*, ("Courts and the EEOC consider and apply, on a case by case basis, any religious defenses to discrimination claims, under Title VII and other applicable laws.").

17

EEOC's Compliance Manual on Religious Discrimination further clarifies that the EEOC takes the First Amendment and RFRA into account before deciding whether to bring an enforcement action. Of course, whether the EEOC, even after considering the First Amendment and RFRA, would pursue an enforcement action against either Plaintiff would depend on the specific facts of a particular case. But Plaintiffs' lengthy chain of speculation—whether they take an employment action that violates Title VII; whether an individual files a charge of discrimination; whether the First Amendment or RFRA protects that action; and whether the EEOC brings an enforcement action against Plaintiffs—does not satisfy Plaintiffs' evidentiary burden at summary judgment to show that the EEOC has, at this time, imposed a "substantial burden" on their exercise of religion. *See Adkins v. Kaspar*, 393 F.3d 559, 571 (5th Cir. 2004); *Cf. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 692 (2014) (focusing on agency decision to "enforce[]" mandate against plaintiffs). And even if EEOC were to file an enforcement action in the future and Plaintiffs raised a RFRA defense, it is unclear whether they would be able to establish a "substantial burden." *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 588–90 (6th Cir. 2018) (holding that employing a transgender employee did not substantially burden that employer's religious practice).

### 2.    There Is No Burden or Government Action for the Court to Analyze.

Because Plaintiffs have failed to set forth evidence of a specific burden that the EEOC has imposed on them, RFRA does not require that the EEOC respond. *See* 42 U.S.C. § 2000bb-1. Indeed, without evidence that a particular application of an EEOC action has caused a substantial burden on the plaintiffs' religious exercise, there is nothing to which the EEOC *can* respond. *Cf. id.* at § 2000bb-1(b) (explaining requisite government showing as to the "application of the burden"); *O Centro*, 546 U.S. at 431 (government must show more than "broadly formulated interests"; it must show "harm of granting specific exemptions to particular religious claimants").

A court's analysis of whether a particular government action was the least restrictive means to achieve a particular compelling interest necessarily varies depending on the facts of the case. For example, if a Plaintiff actually had an LGBTQ employee and fired that employee based on their sexual orientation, and the EEOC decided to bring an enforcement action, the compelling interest analysis may be different than, for example, if a Plaintiff actually had an LGBTQ employee who sought to use the bathroom corresponding to their gender identity, and the EEOC decided to bring an enforcement action. Plaintiffs' failure to meet their burden to set forth evidence of a specific instance in which their religious exercise has been substantially burdened—for example, if the government "has no intention of granting an exception" regardless of an individual's religious exercise claim, *Fulton v. City of Philadelphia*, No. 19-123, 2021 WL 2459253, at *6 (S. Ct. June 17, 2021)—thus makes this analysis both unnecessary and impossible to perform. The Court's inquiry should thus end here.

In any event, it is beyond dispute that the government has a compelling interest in eradicating workplace discrimination through Title VII. In the context of the Free Exercise Clause, the Fifth Circuit has observed that "the government has a compelling interest in eradicating discrimination in all forms" and that "Congress manifested that interest in the enactment of Title VII and the other sections of the Civil Rights Act of 1964." *See EEOC v. Miss. Coll.*, 626 F.2d 477, 488 (5th Cir. 1980). And RFRA provides no protection for "discrimination in hiring, for example on the basis of race, . . . cloaked as religious practice." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 733 (2014).

### B. The Court Should Not Issue a Broad Advisory Opinion on the Intersection of the Free Exercise Clause and Title VII.

Plaintiffs concede that their request for a declaratory judgment that the Free Exercise Clause compels an exemption to Title VII is duplicative of their request for an exemption under

RFRA, *see* Pls.' Br. at 11–12, and should accordingly be dismissed for the same reasons. Plaintiffs nevertheless argue that the Court should decide this constitutional claim "because Congress might someday enact the Equality Act or amend RFRA in a manner that strips religious employers of these statutory protections." *Id.* at 11. That argument turns the rule of constitutional avoidance on its head, *Hersh v. United States*, 553 F.3d 743, 753–54 (5th Cir. 2008), inviting an advisory opinion from this court based on speculation about changes that Congress might make that could potentially weaken religious liberty protections under RFRA or other statutes. The Court should summarily reject plaintiff's invitation to issue an advisory opinion on a constitutional claim.

### C. The Court Should Not Issue a Broad Advisory Opinion on the Intersection of the Free Association Clause and Title VII.

#### 1. Plaintiffs Have Not Demonstrated That They Engage in Expressive Conduct That Is Burdened by Application of Title VII.

Plaintiffs have not identified a single case holding that Title VII would violate an employer's First Amendment right to free association. The Supreme Court long ago unambiguously rejected such a challenge. *Hishon v. King & Spaulding*, 467 U.S. 69, 78 (1984). The holding in that case—that the Free Association clause does not override the command of Title VII—remains the law. Defendants are entitled to judgment on this claim.

In any event, Title VII would not violate Plaintiffs' free association rights even if it were applied to prevent them from discriminating against employees that they wish to exclude. To state such a claim, an organization must show that (1) it is an "expressive association" that exists for the purpose of engaging in expressive activity; and (2) including the member it seeks to exclude would "significantly affect" its ability to advocate its viewpoint. *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.* (*FAIR*), 547 U.S. 47, 68 (citing *Boy Scouts of America v. Dale*, 530 U.S. 640, 644 (2000)). Plaintiffs have not made the required showings.

First, Braidwood Management does not exist to engage in expressive activity, but to

provide employees and management services to profit-generating business activities. *See* Hotze Decl. ¶¶ 4-6. Although its owner holds certain views and has incorporated those views into the management of his businesses, its profit-making purpose, *see, e.g.*, Dress Policy, ECF No. 84-4, is in stark contrast to the expressive purpose that the Supreme Court found implicated the freedom of association in *Boy Scouts*, 530 U.S. at 649.

Bear Creek, by contrast, is organized for the purpose of religious practice, an activity protected by the First Amendment. But Bear Creek has not identified any expressive interest outside those properly analyzed under the Free Exercise clause, *see supra* section II.B, and therefore also fails to satisfy the first requirement to make out a Free Association claim independent of their Free Exercise claim.

Second, neither Plaintiff has made the required showing that adhering to Title VII would "significantly affect" its ability to engage in any expressive activity. Indeed, Plaintiffs offer no evidence that would support their claim, but rather simply assert that Title VII "compromises the expression of [their] values," Pls.' Br. at 13. The Supreme Court has long cautioned that such conclusory arguments are inadequate to support a free association claim: an organization "cannot 'erect a shield' against laws requiring access 'simply by asserting' that mere association 'would impair its message.'" *FAIR*, 547 U.S. at 69 (quoting *Boy Scouts*, 530 U.S. at 653). In other words, it is not enough that an organization advances a view that disapproves of certain types of individuals or certain types of conduct; the organization must show that the person it seeks to exclude would actively undermine its desired message. *See Hishon*, 467 U.S. at 78; *Boy Scouts*, 530 U.S. at 649; *Roberts v. U.S. Jaycees*, 468 U.S. 609, 624 (1984).

Plaintiffs have failed to adduce any evidence that the mere inclusion of certain categories of individuals as employees in their organizations, in any position, would inhibit their expressive

activity. The available evidence suggests that Bear Creek, for example, had three employees who left of their own volition before the church learned their employment would violate its policies. *See* Salvesen Decl. ¶¶ 5-10. The first two individuals were pastors, and thus any employment action would likely be exempt from Title VII under the ministerial exception. *See Morrissey-Berru*, 140 S. Ct. at 2060. Title VII therefore would not impair the Church's expressive activity. The third individual held an unspecified "administrative staff" position. But there is no evidence concerning what role this individual played in advancing or impairing the church's expressive activity. Details like these matter for adjudicating Plaintiffs' constitutional claims; their absence— a necessary consequence of the lack of a concrete dispute between the parties—compels judgment on this claim in Defendants' favor.

> **2.     Any Such Burden Advances a Compelling Government Interest in Combatting Discrimination in Employment and Is Narrowly Tailored to Advance That Interest.**

The Supreme Court has repeatedly held that laws prohibiting discrimination in employment and places of public accommodation are constitutional even where they burden First Amendment rights. In *Roberts*, for example, the Court readily concluded that a law directed toward "eliminating discrimination and assuring its citizens equal access to publicly available goods and services" was "unrelated to the suppression of expression" and "plainly serves compelling state interests of the highest order." 468 U.S. at 624. And that law was narrowly tailored to achieve that interest because by prohibiting "acts of invidious discrimination in the distribution of publicly available goods, services, and other advantages," the law "'responds precisely to the substantive problem which legitimately concerns' the State and abridges no more speech or associational freedom than is necessary to accomplish that purpose." *Id.* at 628–29.

Just so here. The government has an undeniably compelling interest in eliminating discrimination because of an employee's sex, and in "assuring its citizens equal access" to

employment opportunities, and that interest is "unrelated to the suppression of expression." *Id.* at 624. This interest includes eliminating discrimination against the tens of millions of LGBTQ Americans who have been the target of historical and ongoing employment discrimination. Title VII "responds precisely" to the problem by prohibiting such discrimination. *Id.* at 629.

The Supreme Court's decision in *Boy Scouts* is not to the contrary. There, the Court emphasized both that the challenged law had escaped the bounds of traditional public accommodations, 530 U.S. at 657, and also that the state sought to apply it to what amounted to a "private club," *id.* at 659 n.4 (quoting *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 580–81 (1995)). The (abstract) question here, by contrast, concerns application of Title VII in its traditional sphere, to regulate employment in non-ministerial positions.

### D.     Title VII Prohibits Sex Discrimination against Bisexual Employees.

Plaintiffs seek an additional advisory opinion from this Court whether, in the abstract, Title VII "allows employers to discriminate against bisexuals, so long as the employer regards bisexual behavior or orientation as equally unacceptable in a man or a woman." 4AC ¶ 64. This claim does not rely on any exception to Title VII based on the Plaintiffs' religious beliefs or First Amendment rights. Nor does it spring from any specific fact pattern—Plaintiffs have identified no bisexual employee or applicant either now or in the past—or any specific EEOC action. Nor does it relate to Plaintiffs' asserted employment policies, which broadly prohibit "homosexual" conduct and identity but not "bisexual" conduct or identity. *See, e.g.*, Salvesen Decl. ¶ 11; Hotze Decl. ¶ 15. This Court cannot properly decide an abstract legal question in the absence of a concrete dispute involving that question.

In any event, Title VII *does* prohibit an employer from discriminating against bisexual employees. *See* Order, *Breiner v. Bd. of Educ.*, No. 19-5123 (6th Cir. Oct. 20, 2020), ECF No. 34-2. This result flows naturally from both the text of Title VII and the Supreme Court's analysis in

*Bostock*. Title VII prohibits an employer from discriminating against its employee "because of . . . sex." An employer who discriminates against a bisexual employee necessarily takes sex into account by treating them differently for associating with a person of the same sex. *See, e.g.*, *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 124–25 (2d Cir. 2018), *aff'd sub nom. Bostock*, 140 S. Ct. 1731. As *Bostock* confirms, Title VII prohibits discrimination against a man who dates men as well as women, and a woman who dates women as well as men. Relatedly, Title VII also prohibits discrimination based on gender stereotypes. *See Bostock*, 140 S. Ct. at 1742–43, 1749; *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) (plurality opinion). Discrimination because of an employee's bisexuality turns on an employer's beliefs about the person to whom the employee should be attracted because of the employee's sex. *See Price Waterhouse*, 490 U.S. at 251. Whenever an employer discriminates based on an individual's bisexuality, "[s]ex plays a necessary and undisguisable role in the decision, exactly what Title VII forbids." *Bostock*, 140 S. Ct. at 1737.

E.   **Title VII's Disparate Treatment Standard Does Not Apply to Sex Neutral Employment Policies, but Plaintiffs' Examples Are Not Sex Neutral.**

Plaintiffs also seek an advisory opinion on several hypothetical policies that they contend would not violate Title VII. *See* 4AC ¶¶ 66–67. These are not policies that either Plaintiff has actually adopted. *Compare id.* ¶ 66 (identifying examples of "sex-neutral" policies), *with* Salvesen Decl. ¶¶ 11–12 (describing Bear Creek Bible Church's policies); Hotze Decl. ¶¶ 12–15 (describing Braidwood Management's policies). Underscoring that this is a purely hypothetical exercise, Defendants *agree* with the abstract proposition of law that Plaintiffs posit: Title VII's prohibition on disparate treatment "because of . . . sex," 42 U.S.C. § 2000e-2(a)(1), does not extend to employment actions that are truly sex neutral—that is, Title VII's bar on disparate treatment

"because of . . . sex," *id.*, does not extend to policies that do *not* discriminate "because of . . . sex."[11]

The hypothetical policies that Plaintiffs identify, however, do not satisfy that standard. Plaintiffs appear to believe that as long as they include the words "no employee, male or female" in their policy, it is "[s]ex neutral" and thus permissible under Title VII. *See* 4AC ¶ 66; *see also id.* (suggesting employer complies with Title VII so long as "he would fire an employee of the opposite sex for the identical conduct"). But *Bostock* categorically and repeatedly rejected such a reading of Title VII: "An employer musters no better a defense by responding that it is equally happy to fire male *and* female employees who are homosexual or transgender." 140 S. Ct. at 1742; *see also id.* at 1744.

The policies Plaintiffs propose are just different means of accomplishing the same purpose: identifying gay or transgender individuals to target for discrimination. Policies that prohibit "enter[ing] a gay bar," "engag[ing] in the sexual practices associated with homosexuality," or "us[ing] . . . dating apps used primarily by homosexuals," 4AC ¶ 65, for example, would be no defense if used simply to identify targets for discrimination based on sexual orientation. A policy prohibiting employees from seeking medical treatment for gender dysphoria would similarly offer no defense as to discrimination based on gender identity. As the Supreme Court explained, "Title VII prohibits all forms of discrimination because of sex, however they may manifest themselves or whatever other labels might attach to them." *Bostock*, 140 S. Ct. at 1747.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in Defendants' favor.

Dated: June 28, 2021                                     Respectfully submitted,

                                                         BRIAN M. BOYNTON

---

[11] Congress also authorized Title VII claims premised on disparate impact, as distinct from disparate treatment. *See* 42 U.S.C. § 2000e-2(k).

Acting Assistant Attorney General
Civil Division

CARLOTTA WELLS
Assistant Branch Director
Civil Division, Federal Programs Branch

*Benjamin T. Takemoto*
BENJAMIN T. TAKEMOTO
(DC Bar # 1045253)
MICHAEL F. KNAPP
(CA Bar. # 314104)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

On June 28, 2021, I electronically submitted the foregoing document with the clerk of court

for the U.S. District Court, Northern District of Texas, using the electronic case filing system of

the court. I hereby certify that I have served all parties electronically or by another manner

authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.

*Benjamin T. Takemoto*
BENJAMIN T. TAKEMOTO

26