IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| BEAR CREEK BIBLE CHURCH et al., <br><br> Plaintiffs, <br><br> v. <br><br> EQUAL EMPLOYMENT OPPORTUNITY COMMISSION et al., <br><br> Defendants. | Civil Action No. 4:18-CV-824-O |

**DEFENDANTS' REPLY**
**IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I. The Court Should Dismiss Plaintiffs' Claims for Threshold Reasons. .............................. 1

    A. Plaintiffs Still Have Failed to Set Forth Evidence of Article III Standing. .................. 1

    B. The Case Should Be Dismissed Because It is Unripe. ................................................. 5

    C. Plaintiffs Still Have Not Identified a Waiver of Sovereign Immunity for Claims 2 through 5 or a Cause of Action for Claims 4 and 5. ................................................. 6

II. Defendants Are Entitled to Judgment As a Matter of Law. ............................................. 7

    A. Plaintiffs Have Failed to Set Forth Evidence for their RFRA Claim. .......................... 7

    B. The Court Must Either Deny Plaintiffs' Free Exercise Claim or Not Reach It. ........... 8

    C. Defendants Are Entitled to Judgment on Plaintiffs' Free Association Claim. ............. 8

    D. Title VII Bars Discrimination Against Bisexual Employees and Applicants. ........... 10

    E. There Is No Concrete Dispute Regarding "Proposed" Policies. ................................ 10

III. Conclusion....................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Ala.-Coushatta Tribe of Tex. v. United States*,
   757 F.3d 484 (5th Cir. 2014) ................................................................................................ 6

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289, 298 (1979) ....................................................................................................... 2

*Bostock v. Clayton County*,
   140 S. Ct. 1731 (2020) ..................................................................................................... 1, 10

*Boy Scouts of Am. v. Dale*,
   530 U.S. 640 (2000) .............................................................................................................. 9

*California v. Texas*,
   141 S. Ct. 2104 (2021) .................................................................................................. 1, 2, 5

*City of Austin v. Paxton*,
   943 F.3d 993 (5th Cir. 2019) ................................................................................................ 7

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .............................................................................................................. 3

*Ctr. for Individual Freedom v. Carmouche*,
   449 F.3d 655 (5th Cir. 2006) ................................................................................................ 3

*Harris Cty. v. MERSCORP Inc.*,
   791 F.3d 545 (5th Cir. 2015) ................................................................................................ 7

*EEOC v. R.G. & G.R. Harris Funeral Homes*,
   884 F.3d 560 (6th Cir. 2018) ............................................................................................ 3, 4

*Ex parte Young*,
   209 U.S. 123 (1908) .............................................................................................................. 7

*Geyen v. Marsh*,
   775 F.2d 1303 (5th Cir. 1985) .............................................................................................. 7

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
   546 U.S. 418 (2006) .............................................................................................................. 6

*Hersh v. United States ex rel. Mukasey*,
   553 F.3d 743 (5th Cir. 2008) ................................................................................................ 8

*Hishon v. King & Spaulding*,
   467 U.S. 69 (1984) ................................................................................................................ 9

*Int'l Tape Mfrs. Ass'n v. Gerstein*,
  494 F.2d 25 (5th Cir. 1974) .................................................................................... 4

*Laird v. Tatum*,
  408 U.S. 1 (1972) ............................................................................................... 2, 4

*Los Angeles v. Lyons*,
  461 U.S. 95 (1983) .................................................................................................. 5

*Louisiana v. United States*,
  948 F.3d 317 (5th Cir. 2020) ............................................................................. 6, 7

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ........................................................................................... 6, 7

*McAllen Grace Brethren Church v. Salazar*,
  764 F.3d 465 (5th Cir. 2014) .................................................................................. 6

*Nat'l Fed'n of the Blind of Tex. v. Abbott*,
  647 F.3d 202 (5th Cir. 2011) ......................................................................... 1, 2, 5

*Quill v. Vacco*,
  80 F.3d 716 (2d Cir. 1996) ...................................................................................... 4

*Raj v. La. State Univ.*,
  714 F.3d 322 (5th Cir. 2013) .................................................................................. 7

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984) .............................................................................................. 10

*Rumsfeld v. Forum for Acad. and Institutional Rights, Inc.*,
  547 U.S. 47 (2006) .................................................................................................. 9

*Speech First, Inc. v. Fenves*,
  979 F.3d 319 (5th Cir. 2020) ......................................................................... 1, 2, 3

*Sturgeon v. Strachan Shipping Co.*,
  698 F.2d 798 (5th Cir. 1983) ............................................................................. 6, 7

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ............................................................................................ 1, 2

*Telescope Media Grp. v. Lucero*,
  936 F.3d 740 (8th Cir. 2019) .................................................................................. 4

*Virginia v. American Booksellers Association*,
  484 U.S. 383 (1988) ................................................................................................ 4

Contrary to Plaintiffs' protestations, "[h]ere, there is no action—actual or threatened—whatsoever." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021). Not only has the EEOC never taken or threatened any enforcement action against Plaintiffs for violating Title VII as interpreted by *Bostock v. Clayton County*, 141 S. Ct. 1731 (2020), but with this record, the likelihood of such an enforcement action is too far attenuated to confer standing. Indeed, Plaintiffs are not aware of employing any LGBTQ people. Therefore, it is speculation on speculation that an employee would file an administrative charge with the EEOC based on *Bostock* and that such a charge would be one of the very few that would lead to an EEOC lawsuit. There is no case or controversy, and Plaintiffs' thinly disguised request for an advisory opinion should be rejected. This Court should dismiss this case for lack of jurisdiction or, failing that, on the merits.

## I. The Court Should Dismiss Plaintiffs' Claims for Threshold Reasons.

### A. Plaintiffs Still Have Failed to Set Forth Evidence of Article III Standing.

Without any evidence of an Article III injury-in-fact, Plaintiffs instead argue that Defendants have set too high a bar to establish standing in a pre-enforcement challenge. Citing a variety of pre-enforcement standing cases involving free speech, Plaintiffs argue that they need not show an imminent enforcement action directed at them or violate the law to establish an injury. *See* Pls.' Opp'n 3–10, ECF No. 101. But Plaintiffs have not established that "the likelihood of future enforcement is 'substantial.'" *California*, 141 S. Ct. at 2114 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014)).

The Supreme Court and Fifth Circuit have repeatedly held that pre-enforcement plaintiffs lack standing if they are not in a position to violate the allegedly offending law. *See, e.g.*, *Laird v. Tatum*, 408 U.S. 1, 13–15 (1972); *Nat'l Fed'n of the Blind of Tex. v. Abbott*, 647 F.3d 202, 209 (5th Cir. 2011). Plaintiffs' assertion that they need not set forth evidence of an enforcement action directed at them to establish a substantial likelihood of future enforcement is therefore misplaced.

1

They are rather more akin to the *National Federation of the Blind* plaintiffs, which had "not offered any evidence to show that they intend to hire professional resellers to engage in activity covered by" a statute regulating the practices of for-profit entities engaged in charitable solicitation. 647 F.3d at 209. Plaintiffs too have not offered any evidence to show that they are in a position to "engage in activity" that would result in an enforcement action. They are aware of no LGBTQ employees or applicants; no employee has ever identified as transgender or asked "to use a restroom reserved for the opposite biological sex"; and no employee or applicant has ever asked Plaintiffs to "recognize same-sex marriage or offer benefits to same-sex partners of its employees." Stipulation ¶¶ 1, 3, 4, 5, 7, 8, ECF No. 69. Furthermore, because Plaintiffs have not taken action against any LGBTQ person, no one has filed a sexual orientation or gender identity discrimination charge, and the EEOC has not evaluated the applicability of Title VII's religious organization exemptions, RFRA, the First Amendment, or any other defense that might insulate Plaintiffs from Title VII liability. And finally, even if the EEOC were to determine that Plaintiffs violated Title VII and had no defense, the EEOC files suit in response to only a small fraction of charges. *See* Defs.' Br. 8–9, ECF No. 96.

Plaintiffs cannot rely on their subjective fear of an enforcement action to establish standing either. A relaxed rule on this score would open the door to virtually any plaintiff to challenge government action, regardless of whether there is a "specific present objective harm or a threat of specific future harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013). Accordingly, Plaintiffs must set forth evidence that "the prospect of future enforcement is far from 'imaginary or speculative.'" *Susan B. Anthony List*, 573 U.S. at 165 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Plaintiffs first argue that the EEOC's guidance documents interpreting Title VII and *Bostock* demonstrate on their face a substantial likelihood of future

2

enforcement. Pls.' Opp'n 6. But once again, Plaintiffs' focus on these documents is myopic. These documents do not carry the force of law; they merely restate what the Supreme Court has already held in *Bostock* or otherwise set out the EEOC's understanding of the law. Nor do they reflect the sum and substance of the EEOC's views on religious employers' rights under Title VII. Contrary to Plaintiffs' unsupported assertion that the EEOC "refuses to recognize a religious exemption to these supposed requirements of Title VII that will shield the plaintiffs from future enforcement action," Pls.' Opp'n 6, the EEOC has repeatedly recognized that religious employers may raise religious defenses to Title VII and that the EEOC and courts consider those defenses on a case-by-case basis. *See* Defs.' Br. 9–10.

Pointing to the enforcement action in *EEOC v. R.G. & G.R. Harris Funeral Homes*, 884 F.3d 560 (6th Cir. 2018), does not help Plaintiffs either. That employer *fired* an employee because of her gender identity. And, RFRA did not protect that employer's action. *See id.* at 585–97.[1] Plaintiffs, by contrast, have taken no employment action against an LGBTQ person because they are not even aware of having employed one. The only evidence that Plaintiffs muster consists of two employees who declare that they are fearful of an EEOC lawsuit. *See* Pls.' Opp'n 6–8; Salvesen Decl. ¶ 17, ECF No. 90-4; Hotze Decl. ¶ 18, ECF No. 90-5. And these declarations merely point to the guidance documents and *Harris Funeral Homes* as the basis for their fear. But once again, documents that have no legal effect and an unrelated litigation in which an employer's religious exercise was not substantially burdened cannot breathe Article III life into a subjective fear of enforcement. *See Tatum*, 408 U.S. at 13–14 ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future

---

[1] Notably, after the Sixth Circuit held that the employer's religious practice was not substantially burdened, the employer did not pursue a RFRA defense in the Supreme Court.

3

harm"); *Int'l Tape Mfrs. Ass'n v. Gerstein*, 494 F.2d 25, 29 (5th Cir. 1974) (plaintiff lacked standing because it "has shown only an imaginary threat to its members' well-being").[2]

Relatedly, there is no dispute that, in general, a plaintiff need not violate the law to establish standing in a pre-enforcement suit. *See* Pls.' Opp'n 8–10. But Plaintiffs' cited cases are inapposite as they involved plaintiffs who were subject to a clear threat of prosecution.[3] Here, by contrast, Plaintiffs are not in a position to violate Title VII as interpreted by *Bostock*. And even if they were, it is highly speculative that the EEOC would sue them. *See* Defs.' Br. 8–9.

Plaintiffs also cite *Speech First* for the proposition that there need not be an imminent enforcement action to establish their standing. However, *evidence* existed in that case that the university's policies were chilling students' political speech. *See Speech First, Inc.*, 979 F.3d at 330 (highlighting evidence that student organization members' "First Amendment rights have been chilled, their speech deterred, by the prospect of adverse application of the policies"); *id.* at 336–37 (holding that plaintiffs showed injury from "self-censorship" and thus a harm sufficient to confer standing). In stark contrast to *Speech First, Inc.*, there is no evidence of a chilling effect on

---

[2] Contrary to Plaintiffs' assertions, Pls.' Opp'n 7–8, the Supreme Court's decision in *Virginia v. American Booksellers Association*, 484 U.S. 383 (1988), and the Second Circuit's decision in *Quill v. Vacco*, 80 F.3d 716 (2d Cir. 1996), do not broaden the meaning of "case or controversy" to include every situation where a plaintiff claims a subjective fear of litigation. *Quill* involved a doctor's *criminal* liability for assisted suicide. Not only is the Second Circuit's holding restricted to the criminal context, a variety of facts demonstrated that the plaintiff was under a direct threat of prosecution. *See id.* at 723. Likewise, *American Booksellers Association* involved booksellers who were at risk of prosecution under a state law that restricted what books they could display. 484 U.S. at 392–93.

[3] Plaintiffs' reliance on *Telescope Media Grp. v. Lucero*, 936 F.3d 740 (8th Cir. 2019) is misdirected as that case involved a clear threat in light of the state's "active enforcement" against business owners like the plaintiffs, *id.* at 750, and in any event is not binding on this court. In circumstances similar to this case, the Fifth Circuit held that a business which alleged that it was "seriously interested" in engaging in activity that would subject it to the challenged law lacked standing because such allegations were speculative. *See Nat'l Fed. of the Blind of Texas*, 657 F.3d at 209.

Plaintiffs' First Amendment rights. To the contrary, Plaintiffs have set forth evidence showing *the absence* of a chilling effect. They have highlighted their policies and practices regarding the employment of LGBTQ individuals and have disavowed any intent to discontinue enforcing them. *See, e.g.*, Salvesen Decl. at ¶ 14; Hotze Decl. at ¶¶ 13–15.

Under Plaintiffs' broad reading of pre-enforcement cases, too little is required for "a plaintiff claiming standing [to] show that the likelihood of future enforcement is 'substantial,'" *California*, 141 S. Ct. at 2114. The Supreme Court recently admonished that failure to give meaning to this particular Article III restriction by granting an abstract declaratory judgment "would allow a federal court to issue what would amount to 'an advisory opinion without the possibility of any judicial relief.'" *Id.* at 2116 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 129 (1983) (Marshall, J. dissenting)). This Court should heed the Supreme Court's admonition and recognize that far from the parade of horribles that Plaintiffs suggest, *see* Pls.' Opp'n 9–10, dismissal of this case at this premature stage will not prejudice Plaintiffs' ability to defend itself in an EEOC lawsuit if one were ever brought.

**B.     The Case Should Be Dismissed Because It is Unripe.**

Plaintiffs' request for a categorical ruling offering blanket protection for employers to discriminate against LGBTQ people, 4th Am. Compl. ¶ 53, ECF No. 86, is patently unripe. Plaintiffs are correct that there are no disputes of fact, but that is only because there are no facts at all. Plaintiffs have not set forth evidence of a particular instance in which the EEOC has substantially burdened their free exercise or associative rights. And without particular facts to analyze, it is impossible for the Court to issue a declaratory judgment consistent with the Supreme Court's admonition that "RFRA, and the strict scrutiny test it adopted, contemplate an inquiry more focused than [a] categorical approach." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430 (2006).

5

Whether Title VII substantially burdens an individual's free exercise and whether the government has a compelling interest in doing so is *not* a purely legal question, as Plaintiffs assert, Pls.' Opp'n 11. Rather, the Fifth Circuit has held that such questions are a mix of law and fact. *See, e.g.*, *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014). Thus, to answer Plaintiffs' question, "How can these issues *not* be 'fit for judicial decision'?", Pls.' Opp'n 11, different fact patterns will result in different legal analyses: a lawsuit against an employer who has refused to provide healthcare to the spouse of a gay employee may implicate a different burden than a lawsuit against an employer for firing an employee based on their sexual orientation. And, as discussed below, the Court cannot address whether the government's action is the least restrictive means of achieving a compelling interest because there is no particular burden and no particular action. Without these key facts, the Court should dismiss this case as unripe.

### C. Plaintiffs Still Have Not Identified a Waiver of Sovereign Immunity for Claims 2 through 5 or a Cause of Action for Claims 4 and 5.

Plaintiffs have no meaningful response to the Fifth Circuit's clear and repeated holding that the APA's waiver of sovereign immunity is limited to cases where the plaintiff (1) has "identif[ied] some 'agency action' affecting him in a specific way, which is the basis of his entitlement for judicial review" and (2) "has 'suffered legal wrong because of the challenged agency action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute.'" *Ala.-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 489 (5th Cir. 2014) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990)); *Louisiana v. United States*, 948 F.3d 317, 321 (5th Cir. 2020). These interpretations are binding on this Court. *See Sturgeon v. Strachan Shipping Co.*, 698 F.2d 798, 800 (5th Cir. 1983). The Supreme Court has not held otherwise: *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), on which Plaintiffs rely, Pls.' Opp'n 13, did not erase the restrictions on the APA's waiver of sovereign immunity. *See Louisiana*, 948 F.3d at

321 (citing *Nat'l Wildlife Fed'n*, 497 U.S. at 882).

Plaintiffs do not challenge any particular agency action. And of course, the *Harris Funeral Home* litigation was against another employer in significantly different circumstances. Plaintiffs have not "suffered legal wrong" because of that case.

Plaintiffs cannot invoke *Ex parte Young*, 209 U.S. 123 (1908), as an exception to sovereign immunity either. That exception applies only to *state* officials in certain circumstances. *See City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (explaining, "The *Young* exception is a legal fiction that allows private parties to bring 'suits for injunctive or declaratory relief against individual *state* officials acting in violation of federal law'" (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013)) (emphasis added)). It does not extend to *federal* officials. *See Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985).

Finally, Plaintiffs still have not identified a cause of action for Claims 4 and 5. The Declaratory Judgment Act does not provide an independent cause of action, so it cannot be the basis for these claims. *See Harris Cty. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015). And, because Plaintiffs do not respond to Defendants' arguments, *see* Defs.' Br. 14–15, Plaintiffs appear to concede that Title VII does not provide a cause of action for these claims either.

## II. Defendants Are Entitled to Judgment As a Matter of Law.

### A. Plaintiffs Have Failed to Set Forth Evidence for their RFRA Claim.

Plaintiffs have failed to meet their summary judgment burden to set forth evidence of a substantial burden on their religious exercise. Rather, they merely repeat their opening brief, citing certain EEOC documents and the *Harris Funeral Home* litigation as evidence of a substantial burden. *See* Pls.' Opp'n 16–18. Plaintiffs also argue that the EEOC's statements recognizing the importance of employers' First Amendment and RFRA rights in evaluating whether to bring an enforcement action, *see* Defs.' Br. 17–18, do not alleviate any burden because they are too "mealy-

7

mouthed." Pls.' Opp'n 17–18. But it is precisely because of the fact-specific nature of the First Amendment and RFRA that the EEOC cannot be more specific. Whether the government imposes a substantial burden on an individual's religious exercise depends on the circumstances of a particular case, which are absent here.

For this reason, the Defendants need not articulate a compelling governmental interest. But despite Plaintiffs' focus on whether the government has a compelling interest, that analysis alone is insufficient under RFRA. The Court still must analyze whether the government's action was the least restrictive means to achieve a compelling interest. And Plaintiffs still have not explained how the Court could perform this analysis without *facts* that underlie an EEOC action.

### B. The Court Must Either Deny Plaintiffs' Free Exercise Claim or Not Reach It.

Although "[c]onstitutional avoidance is a cardinal principal of constitutional law that has for so long been applied by the Supreme Court that is it is beyond debate," *Hersh v. United States ex rel. Mukasey*, 553 F.3d 743, 753–54 (5th Cir. 2008) (cleaned up), Plaintiffs nevertheless double down on their request for the Court to unnecessarily rule on their Free Exercise Claim, even if it concludes that they prevail on their RFRA claim. As Defendants have already explained, rank speculation that Congress may pass laws that affect this case is insufficient to overcome this cardinal principle. *See* Defs.' Br. 19–20. Plaintiffs now offer two other reasons to ignore the canon: judicial economy and the importance of the issue. However, they cite no case that supports either proposition. And were either true, the canon of constitutional avoidance would be rendered meaningless, for it could be overcome in nearly every case.

### C. Defendants Are Entitled to Judgment on Plaintiffs' Free Association Claim.

The Supreme Court held in *Hishon v. King & Spaulding* that an employer could not invoke the Free Association clause to escape the strictures of Title VII. 467 U.S. 69, 78 (1984). As Defendants explained, that remains the law today. Defs.' Br. 20. Yet Plaintiffs offer no response:

8

they do not cite, much less attempt to distinguish, this case. *See* Pls.' Opp'n 21–22.

Instead, Plaintiffs contend that *Defendants* make no attempt to distinguish a *different* Supreme Court case, *Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000). *See* Pls.' Opp'n 22. But as Defendants explained, there is no evidence that Braidwood Management holds an expressive purpose—"in stark contrast" to the Boy Scouts. *See* Defs.' Mot. at 21. The Boy Scouts—a "nonprofit organization" whose purpose, the Supreme Court observed, is "[t]o instill values in young people" through "instruction" and "by example." *Boy Scouts*, 530 U.S. at 649–50. Braidwood Management's "purpose" is to turn a profit, not to express its owner's views.

But regardless, Plaintiffs have not shown how complying with Title VII would "significantly affect" any expressive conduct they engage in. A party cannot "erect a shield against antidiscrimination laws *simply by asserting* that mere acceptance of a member from a particular group would impair its message." *Id.* at 653; *see also Rumsfeld v. Forum for Acad. and Institutional Rights, Inc.*, 547 U.S. 47, 68 (2006). Yet that is all Plaintiffs have done, dressing up their bare assertion with adjectives like "undisputable." Pls.' Opp'n 22. Whether Title VII in fact "significantly affect[s]" Plaintiffs' expressive conduct is a fact-intensive inquiry that turns on the nature of the expressive conduct and the nature of the association. *See FAIR*, 547 U.S. at 68; *Boy Scouts,* 530 U.S. at 653. Here, those types of facts are missing: because Plaintiffs have brought this case outside the context of a concrete dispute, there is no evidence about what role a particular employee they seek to exclude plays in any expressive conduct of the organization, or how associating with that employee would in fact hinder that expression.

In any event, Plaintiffs offer literally no response to Defendants' argument that applying Title VII in this context would survive strict scrutiny. *See* Defs.' Br. 22–23; *Roberts v. U.S. Jaycees*, 468 U.S. 609, 624, 628–29 (1984).

9

### D. Title VII Bars Discrimination Against Bisexual Employees and Applicants.

Although Plaintiffs are unaware of employing LGBTQ persons, Plaintiffs ask for a broad ruling that discrimination against bisexual employees is allowed because an employer "who discriminates against *all* bisexual employees" does not treat men and women differently. Pls.' Opp'n 23. Aside from the threshold problems with that request for an advisory opinion, *Bostock* rejected this argument: an employer "musters no better defense by responding that it is equally happy to fire male and female employees who are homosexual or transgender." 140 S. Ct. at 1742; *see also id.* at 1744. When an employer fires a bisexual employee for engaging in a romantic relationship with someone of the same sex, the employer violates Title VII. *See* Defs.' Br. 23; Order, *Breiner v. Bd. of Educ.*, No. 19-5123 (6th Cir. Oct. 20, 2020), ECF No. 34-2.

### E. There Is No Concrete Dispute Regarding "Proposed" Policies.

Plaintiffs' defense of their "proposed policies," Pls.' Opp'n at 23, merely underscores that a ruling on Title VII's application cannot be made in the abstract. An employer's motivation for terminating an employee is a factual question that is answered by probing the specific circumstances of the adverse action. If a purportedly neutral policy is pretext for sex discrimination, such a policy offers no defense. "Title VII prohibits all forms of discrimination because of sex, however they may manifest themselves or whatever other labels might attach to them." *Bostock*, 140 S. Ct. at 1747. Plaintiffs would violate Title VII's disparate treatment standard if they do in fact discriminate because of sex, no matter the hypothetical policy, but would not violate that standard if they do not in fact discriminate because of sex. The Court should reject Plaintiffs' invitation for an advisory ruling on their hypothetical "proposed policies."

## III. Conclusion

For the foregoing reasons, the Court should grant Defendants' Cross-Motion for Summary Judgment and dismiss this case.

Dated: July 16, 2021                      Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

CARLOTTA WELLS
Assistant Branch Director
Civil Division, Federal Programs Branch

*Benjamin T. Takemoto*
BENJAMIN T. TAKEMOTO
(DC Bar # 1045253)
MICHAEL F. KNAPP
(CA Bar. # 314104)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

On July 16, 2021, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.

*Benjamin T. Takemoto*
BENJAMIN T. TAKEMOTO