UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **Bear Creek Bible Church**, et al., <br><br> Plaintiffs, <br><br> v. <br><br> **Equal Employment Opportunity Commission**, et al., <br><br> Defendants. | Case No. 4:18-cv-00824-O |

**SUPPLEMENTAL BRIEF ON TITLE VII'S STATUTORY EXEMPTION**

GENE P. HAMILTON
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721 (phone)
gene.hamilton@aflegal.org

H. DUSTIN FILLMORE III
Texas Bar No. 06996010
CHARLES W. FILLMORE
Texas Bar No. 00785861
The Fillmore Law Firm, LLP
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiffs and
the Proposed Classes*

## TABLE OF CONTENTS

Table of contents ............................................................................................................i

Table of authorities .......................................................................................................ii

    I. Each of the plaintiffs qualifies as a "religious corporation, association, educational institution, or society" within the meaning of section 702(a) ................1

    II. Section 702(a) protects an employer's right to employ only individuals whose beliefs and conduct are consistent with the employer's religious beliefs ....................5

    III. The plaintiffs respectfully ask the court to rule on each of their remaining claims, even if concludes that section 702(a) provides relief to the plaintiffs ............8

Conclusion .....................................................................................................................9

Certificate of service ....................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Bostock v. Clayton County*,
  140 S. Ct. 1731 (2020) ..................................................................................................5

*Boydston v. Mercy Hospital Ardmore, Inc.*,
  No. CIV-18-444-G, 2020 WL 1448112 (W.D. Okla. Mar. 25, 2020) ..........................3

*Braun v. St. Pius X Parish*,
  827 F. Supp. 2d 1312 (N.D. Okla. 2011) .....................................................................2

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014) .....................................................................................................4

*Crotteau v. St. Coletta of Wisconsin*,
  200 F. Supp. 3d 804 (W.D. Wis. 2016) ........................................................................2

*Curay-Cramer v. Ursuline Academy of Wilmington Delaware, Inc.*,
  450 F.3d 130 (3d Cir. 2006) .........................................................................................8

*EEOC v. Pacific Press Publishing Ass'n*,
  676 F.2d 1272 (9th Cir. 1982) ......................................................................................7

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*,
  884 F.3d 560 (6th Cir. 2018) ........................................................................................5

*EEOC v. Townley Engineering & Manufacturing Co.*,
  859 F.2d 610 (9th Cir. 1988) ...............................................................................1, 3, 5

*Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station
  Employees*, 466 U.S. 435 (1984) .................................................................................4

*Feldstein v. Christian Sci. Monitor*,
  555 F. Supp. 974 (D. Mass. 1983) ...............................................................................7

*Ginsburg v. Concordia University*,
  No. 4:10-cv-3064, 2011 WL 41891 (D. Neb. Jan. 5, 2011) .........................................2

*Hall v. Baptist Memorial Health Care Corp.*,
  215 F.3d 618 (6th Cir. 2000) ........................................................................................5

*Herx v. Diocese of Fort Wayne–South Bend Inc.*,
  48 F. Supp. 3d 1168 (N.D. Ind. 2014) ..........................................................................7

*Jennings v. Rodriguez*,
  138 S. Ct. 830 (2018) ...................................................................................................4

*Kennedy v. St. Joseph's Ministries, Inc.*,
  657 F.3d 189 (4th Cir. 2011) ........................................................................................5

*Killinger v. Samford University*,
  113 F.3d 196 (11th Cir. 1997) ......................................................................................5

*LeBoon v. Lancaster Jewish Community Center Ass'n*,
    503 F.3d 217 (3d Cir. 2007) ...................................................................................2

*Little v. Wuerl*,
    929 F.2d 944 (3d Cir. 1991) ...................................................................................6

*Maguire v. Marquette Univ.*,
    627 F. Supp. 1499 (E.D. Wis. 1986) ......................................................................8

*Scaffidi v. New Orleans Mission, Inc.*,
    No. CV 18-4113, 2020 WL 1531266 (E.D. La. Mar. 31, 2020) ..........................1, 2

*Spencer v. World Vision, Inc.*,
    570 F. Supp. 2d 1279 (W.D. Wash. 2008) ..............................................................2

*Spencer v. World Vision, Inc.*,
    633 F.3d 723 (9th Cir. 2011) ..................................................................................3

**Statutes**

42 U.S.C. § 2000e(j) ..........................................................................................................5

42 U.S.C. § 2000e-1(a) ...................................................................................................1, 5

**Other Authorities**

Carl H. Esbeck, *Federal Contractors, Title VII, and LGBT Employment
    Discrimination: Can Religious Organizations Continue to Staff on a
    Religious Basis?*, 4 Oxford J.L. & Religion 368 (2015) .........................................8

Stephanie N. Phillips, *A Text-Based Interpretation of Title VII's Religious-
    Employer Exemption*, 20 Tex. Rev. L. & Pol. 295 (2016) ..............................6, 7, 8

Section 702(a) of Title VII establishes the following exemption for "religious" employers:

> This subchapter shall not apply to an employer with respect to the employment of aliens outside any State, or to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. § 2000e-1(a). The Court has instructed the parties to brief whether and to what extent the text of this statutory exemption could shield Bear Creek Bible Church or Braidwood Management Inc. from the requirements of Title VII. *See* Order, ECF No. 110.

We will first address the meaning of "religious corporation, association, educational institution, or society." We will then discuss what it means to employ "individuals of a particular religion." It is indisputable that the plaintiffs' employees "perform work connected with the carrying on" of the plaintiffs' "activities."

I. **Each Of The Plaintiffs Qualifies As a "Religious Corporation, Association, Educational Institution, Or Society" Within The Meaning Of Section 702(a)**

The exemption in section 702(a) applies only to a "religious corporation, association, educational institution, or society." Title VII does not define this phrase, and neither the Supreme Court nor the Fifth Circuit has provided an authoritative construction. *See Scaffidi v. New Orleans Mission, Inc.*, No. CV 18-4113, 2020 WL 1531266, at *4 (E.D. La. Mar. 31, 2020) (noting "the absence of guidance from the Fifth Circuit" on this question). But other courts have applied an all-things-considered, multi-factor balancing test when determining whether an employer should fall within this statutory caveat. *See, e.g.*, *EEOC v. Townley Engineering & Manufacturing Co.*, 859 F.2d 610, 618 (9th Cir. 1988) ("[W]e shall not attempt to outline section 702's precise scope. The effort to do so would fail. Rather, each case must turn on its

own facts. All significant religious and secular characteristics must be weighed to determine whether the corporation's purpose and character are primarily religious. Only when that is the case will the corporation be able to avail itself of the exemption."). The Third Circuit, for example, has instructed courts to consider and weigh each of the following nine factors:

> (1) whether the entity operates for a profit, (2) whether it produces a secular product, (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with, or financially supported by a formally religious entity such as a church or synagogue, (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees, (6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other forms of worship in its activities, (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution, and (9) whether its membership is made up by coreligionists.

*LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 226 (3d Cir. 2007). This test has proven influential and has been adopted by courts outside the Third Circuit, including at least one district court within the Fifth Circuit. *See, e.g.*, *Scaffidi v. New Orleans Mission, Inc.*, No. CV 18-4113, 2020 WL 1531266, at *4 (E.D. La. Mar. 31, 2020) ("In the absence of guidance from the Fifth Circuit, the factors in *Leboon v. Lancaster Jewish Community Center*, provide some guidance for determining whether an institution is a religious organization within the meaning of Title VII."); *see also Spencer v. World Vision, Inc.*, 570 F. Supp. 2d 1279, 1285–89 (W.D. Wash. 2008), aff'd, 619 F.3d 1109 (9th Cir. 2010), and aff'd, 633 F.3d 723 (9th Cir. 2011); *Crotteau v. St. Coletta of Wisconsin*, 200 F. Supp. 3d 804, 810 (W.D. Wis. 2016); *Braun v. St. Pius X Parish*, 827 F. Supp. 2d 1312, 1317 (N.D. Okla. 2011), aff'd, 509 F. App'x 750 (10th Cir. 2013); *Ginsburg v. Concordia University*, No. 4:10-cv-3064, 2011 WL 41891, at *4 (D. Neb. Jan. 5, 2011); *Boydston v. Mercy*

*Hospital Ardmore, Inc.*, No. CIV-18-444-G, 2020 WL 1448112, at *4 (W.D. Okla. Mar. 25, 2020).

Bear Creek Bible Church indisputably qualifies as a "religious corporation" under any possible construction of that language, and we do not expect the government to dispute this point. *See, e.g.*, *Spencer v. World Vision, Inc.*, 633 F.3d 723, 755 (9th Cir. 2011) (Berzon, J., dissenting) ("The term 'religious corporation' thus had a clear and universal meaning at the time Congress enacted § 2000e–1(a) of Title VII: It referred to the legally cognizable form of a religious society, which in turn was commonly understood to mean a church or similar entity organized for the purpose of worship."). If churches cannot qualify for the religious-employer statutory exemption in section 702(a), then no one can.

Whether Braidwood qualifies as a "religious corporation" under section 702(a) presents a closer question. Braidwood satisfies some of the nine factors described in *LeBoon*, but not all of them. Braidwood regularly includes prayer or other forms of worship in its activities, and its employees are all Christians. *See* Declaration of Steven F. Hotze, M.D. ¶¶ 14–15 (attached as Exhibit 1). But Braidwood is a for-profit corporation that produces a secular product, and its articles of incorporation do not state a religious purpose. *See id.* at ¶¶ 8–10 (attached as Exhibit 1). Braidwood is not owned, affiliated with, or financially supported by a formally religious entity such as a church or synagogue, and there is also no formal religious entity that participates in the management of Braidwood or has representatives on the board of trustees. *See id.* at ¶¶ 11–12. So most of the *LeBoon* factors cut against Braidwood. In addition, our research has not uncovered any case in which a court has allowed a for-profit employer to claim "religious corporation" status under section 702(a).[1]

---

1. *See, e.g.*, *EEOC v. Townley Engineering & Manufacturing Co.*, 859 F.2d 610, 619 (9th Cir. 1988) (finding manufacturer of mining equipment to be a primarily secular company and therefore not a religious organization exempt from Title VII

But Braidwood nonetheless has a compelling textual argument under section 702(a). If one sets aside the *LeBoon* factors (which are not binding precedent) and focuses solely on the statutory language, Braidwood is undoubtedly a "corporation"—and it is undoubtedly "religious." *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706–07 (2014) (rejecting the notion that for-profit corporations are incapable of being "religious" or exercising religion). A non-religious corporation does not open its weekly staff meetings with prayer in Christ's name. *See* Hotze Decl. at ¶ 14. And a non-religious corporation does not have its employees begin each morning with prayer in their respective business and departments. *See id.* The text of section 702 envisions two categories of corporations: "religious" and "non-religious," and it implausible to claim that Braidwood belongs on the "non-religious" side of this line given the ways in which the Christian faith affects the operation of its business.

Constitutional-avoidance concerns also support a broad interpretation of the phrase "religious corporation," especially in the aftermath of *Bostock*. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018) ("The canon of constitutional avoidance "comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction."); *Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Employees*, 466 U.S. 435, 444 (1984) ("When the constitutionality of a statute is challenged, this Court first ascertains whether the statute can be reasonably construed to avoid the constitutional difficulty."). A reading of section 702(a) that excludes for-profit religious employers will present serious constitutional questions now that Title VII (as construed in *Bostock*)

---

of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), despite religious beliefs of owners, company's financial support for religious missions, company's inclusion of religious tracts in company's outgoing mail and printing of Bible verses on its commercial documents, and weekly devotional services at workplace, where company was organized for profit, produced a secular product, was not affiliated with or supported by a church, and did not mention religious purpose in articles of incorporation).

prohibits those employers from discriminating against homosexual or transgender employees or job applicants. *See Bostock v. Clayton County*, 140 S. Ct. 1731, 1780–83 (2020) (Alito, J., dissenting); *see also EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 584 (6th Cir. 2018). Section 702 does not require a corporation to be "pervasively religious" or "primarily religious"[2] to qualify for the statutory exemption; it says only that a corporation needs to be "religious." So *any* amount of "religious" character should be enough to qualify given the absence of a statutory threshold and the serious constitutional concerns that will arise from extending *Bostock* to religious employers.

## II. SECTION 702(a) PROTECTS AN EMPLOYER'S RIGHT TO EMPLOY ONLY INDIVIDUALS WHOSE BELIEFS AND CONDUCT ARE CONSISTENT WITH THE EMPLOYER'S RELIGIOUS BELIEFS

The next question to consider is whether the plaintiffs' desire to exclude homosexuals and transgender individuals from employment pertains to the "employment of individuals of a particular religion." 42 U.S.C. § 2000e-1(a). Title VII defines "religion" broadly to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). That means that the "decision to employ individuals 'of a particular religion'" under section 702(a) "include[s] the decision to terminate an employee whose conduct or religious beliefs are inconsistent with those of its employer." *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 192 (4th Cir. 2011) (quoting *Hall v. Baptist Memorial Health Care Corp.*, 215 F.3d 618, 624 (6th Cir. 2000) (some internal quotation marks omitted)); *see also Killinger v. Samford University*, 113 F.3d 196, 200 (11th Cir. 1997) ("[Section 702(a)] allows religious institutions to employ only persons whose beliefs are consistent with the employer's. . . .");

---

2. *See EEOC v. Townley Engineering & Manufacturing Co.*, 859 F.2d 610, 618 (9th Cir. 1988) ("All significant religious and secular characteristics must be weighed to determine whether the corporation's purpose and character are *primarily* religious. Only when that is the case will the corporation be able to avail itself of the exemption." (emphasis added)).

Stephanie N. Phillips, *A Text-Based Interpretation of Title VII's Religious-Employer Exemption*, 20 Tex. Rev. L. & Pol. 295, 312 (2016). As the Third Circuit has cogently explained:

> The permission to employ persons "of a particular religion" includes permission to employ only persons whose beliefs and conduct are consistent with the employer's religious precepts. Thus, it does not violate Title VII's prohibition of religious discrimination for a parochial school to discharge a Catholic or a non-Catholic teacher who has publicly engaged in conduct regarded by the school as inconsistent with its religious principles.

*Little v. Wuerl*, 929 F.2d 944, 951 (3d Cir. 1991).

Bear Creek Bible Church comfortably falls within section 702(a)'s protection. It employs only individuals who agree with its statement of faith, which states in clear and unequivocal terms that homosexual and transgender conduct are incompatible with the church's beliefs:

> That God's plan for human sexuality is to be expressed only within the context of marriage, that God created man and woman as unique biological persons made to complete each other. God instituted monogamous marriage between male and female as the foundation of the family and the basic structure of human society. For this reason, we believe that marriage is exclusively the union of one genetic male and one genetic female (Gen 2:24; Matt 19:5–6, Mark 10:6–9; Romans 1:26–27; I Cor 6–9).

Declaration of John Salvesen ¶ 12, ECF No. 74. A person who is engaged in homosexual or transgender behavior does not share the "religious . . . beliefs" of Bear Creek Bible Church regarding these issues, and it is not following the "religious observance and practice" that Bear Creek Bible Church expects of its employees.

Braidwood's situation is more complicated, because Braidwood does not have a formal policy of employing individuals of "a particular religion." *See* Hotze Decl. at ¶ 15 (attached as Exhibit 1). Instead, Braidwood is "unwilling to employ individuals whose lifestyles flout Christian Biblical teachings," and therefore "has a policy against

hiring individuals who are known to engage in homosexual conduct or gender non-conforming behavior." Declaration of Steven F. Hotze ¶ 15, ECF No. 74-1. A policy of this sort does not appear to fit within section 702(a), unless it is tied to a rule that requires adherence to particular religious beliefs, observances, or practices as a condition of employment. An employer might, for example, have a policy of hiring only individuals who hold particular religious beliefs regarding homosexuality or transgenderism, or who refuse to engage in homosexual or transgender behavior on account of such religious beliefs. But Braidwood does not have a policy of that sort, and it has no formal policy that excludes non-Christians from employment. *See* Hotze Decl. at ¶ 15 (attached as Exhibit 1). And this is typical of religious for-profit employers, who tend to shun explicit religious tests for employment even when they are unwilling to employ people whose conduct and mannerisms openly flout the employer's religious beliefs. So we do not think it tenable to assert that Braidwood is employing "individuals of a particular religion" when it excludes homosexuals and transgender individuals from employment.

Finally, we acknowledge that some courts have held that section 702(a) protects religious employers only from claims that allege discrimination on account of religion. *See Herx v. Diocese of Fort Wayne–South Bend Inc.*, 48 F. Supp. 3d 1168, 1175 (N.D. Ind. 2014) ("Title VII's exemptions are limited specifically to claims of discrimination premised upon religious preferences"); *Feldstein v. Christian Sci. Monitor*, 555 F. Supp. 974, 976 (D. Mass. 1983); *EEOC v. Pacific Press Publishing Ass'n*, 676 F.2d 1272, 1277 (9th Cir. 1982); *but see* Phillips, *supra* at 307–11 (criticizing *Pacific Press*). This stance is textually indefensible, and it conflates the basis of the plaintiff's claim with the basis for the defendant's exemption. The issue under section 702(a) is whether the defendant has decided to employ "individuals of a particular religion"; that has nothing to do with whether the plaintiff has chosen to characterize his claim as "religious" discrimination or "sex" discrimination. *See Curay-Cramer v. Ursuline*

*Academy of Wilmington Delaware, Inc.*, 450 F.3d 130 (3d Cir. 2006) (applying section 702(a) as a defense to sex-discrimination claims); *Maguire v. Marquette Univ.*, 627 F. Supp. 1499, 1502–04 (E.D. Wis. 1986) (same); Carl H. Esbeck, *Federal Contractors, Title VII, and LGBT Employment Discrimination: Can Religious Organizations Continue to Staff on a Religious Basis?*, 4 Oxford J.L. & Religion 368, 376 (2015) ("In particular, there is no limitation that turns on the mere chance that the employee-plaintiff complains of religious discrimination as opposed to claiming under some other protected class such as sex."); Phillips, *supra* at 307 ("The religious-employer exemption does not make any reference to the type of claim a plaintiff brings."). And if Congress wanted to limit section 702(a)'s exemption to religious-discrimination claims, it easily could have done so. It could, for example, have changed the phrase "This subchapter shall not apply" to "This subchapter's prohibition on religious discrimination shall not apply." Or it could have enacted an exemption that for religious employers "with respect to claims of religious discrimination." But the statute does not say of this. Instead, it bars *all* Title VII claims when an employer decides to employ people with particular religious beliefs and practices.

### III. The Plaintiffs Respectfully Ask The Court To Rule On Each Of Their Remaining Claims, Even If Concludes That Section 702(a) Provides Relief To The Plaintiffs

If the Court concludes that section 702(a) protects either or both of the plaintiffs, then we respectfully ask the Court to rule on the plaintiffs' remaining claims, even if the Court believes that section 702(a) makes it unnecessary to resolve those issues, and even if the Court disagrees with our position on those claims. The case is likely to be appealed regardless of how this Court rules, and it will further judicial economy if the appellate courts have the benefit of this Court's rulings on the issues, which will obviate any need for a remand.

The plaintiffs also note that a ruling from this Court on section 702(a) may complicate the class-certification issues. The classes that the plaintiffs have asked this Court to certify are not limited to employers that qualify as "religious" under section 702(a), and any classwide relief under section 702(a) will need to be limited to that particular subset of employers.

## CONCLUSION

The defendants' cross-motion for summary judgment should be denied, and the plaintiffs' motion for summary judgment should be granted.

Respectfully submitted.

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

GENE P. HAMILTON
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721 (phone)
gene.hamilton@aflegal.org

H. DUSTIN FILLMORE III
Texas Bar No. 06996010
CHARLES W. FILLMORE
Texas Bar No. 00785861
The Fillmore Law Firm, LLP
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

Dated: September 24, 2021

*Counsel for Plaintiffs and the Proposed Classes*

## CERTIFICATE OF SERVICE

      I certify that on September 24, 2021, I served this document through CM/ECF upon:

BENJAMIN T. TAKEMOTO
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
(202) 532-4252 (phone)
(202) 616-8460 (fax)
benjamin.takemoto@usdoj.gov

*Counsel for the Defendants*

                                             /s/ Jonathan F. Mitchell
                                             JONATHAN F. MITCHELL
                                             *Counsel for Plaintiffs and*
                                             *the Proposed Classes*