UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **Bear Creek Bible Church**, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>**Equal Employment Opportunity Commission**, et al.,<br><br>Defendants. | Case No. 4:18-cv-00824-O |

# REPLY TO DEFENDANT'S SUPPLEMENTAL BRIEF ON TITLE VII'S STATUTORY EXEMPTION

Gene P. Hamilton
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721 (phone)
gene.hamilton@aflegal.org

H. Dustin Fillmore III
Texas Bar No. 06996010
Charles W. Fillmore
Texas Bar No. 00785861
The Fillmore Law Firm, LLP
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiffs and the Proposed Classes*

## TABLE OF CONTENTS

Table of contents ..... i
Table of authorities ..... ii
I. What constitutes a "religious corporation" ..... 1
II. The scope of the religious exemption is broad ..... 2
III. The EEOC is wrong to suggest that the issues are hypothetical ..... 4
Conclusion ..... 6
Certificate of service ..... 7

## TABLE OF AUTHORITIES

**Cases**

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) ....................2

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
575 U.S. 768 (2015) ....................3

*LeBoon v. Lancaster Jewish Community Center Ass'n*,
503 F.3d 217 (3d Cir. 2007) ....................1

*Little v. Wuerl*,
929 F.2d 944 (3d Cir. 1991) ....................3, 4

*Texas v. EEOC*,
No. 5:13-CV-255-C, 2017 WL 11503439 (N.D. Tex. June 2, 2017) ....................5

*Texas v. United States*,
201 F. Supp. 3d 810 (N.D. Tex. 2016) ....................5

**Statutes**

42 U.S.C. § 2000e(j) ....................3

42 U.S.C. § 2000e-1(a) ....................2, 3, 4

Title VII exempts religious employers who hire workers of a particular religion. The plaintiffs, the defendants, and amicus are in basic agreement on the state of the law. There are a few details on which the plaintiffs have taken a position that was not addressed by the defendants. And the amicus offer constitutional-avoidance arguments in favor of reading Title VII's religious exemption as covering at least Bear Creek Bible Church. The only real point of disagreement is about ripeness, a subject that the EEOC brought into this briefing.

## I. What Constitutes A "Religious Corporation"

The plaintiffs, the defendants, and the amicus agree on the state of the law regarding the definition of a "religious corporation." There is no binding circuit-level precedent on this issue, and other courts have typically deployed by a multi-factor test. The most frequently invoked test comes from *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 226 (3d Cir. 2007).

Bear Creek Bible Church is an easy case, and it qualifies as a "religious" corporation under any reasonable understanding of that term. Even the EEOC acknowledges that churches "typically qualify as religious organizations." EEOC Br., ECF No. 115, at 3. Although the defendants are unwilling to concede that Bear Creek Bible Church qualifies as "religious" without a factual record, they nonetheless recognize that Bear Creek Bible Church is all but certain to be considered a religious employer. *See id.*

At the same, all of the briefs agree that the matter is more complicated for Braidwood, as different factors under the standard multi-factor analysis point in different directions. On the one hand, it is a for-profit business, which cuts against religious-employer status under the *LeBoon* analysis. On the other hand, Braidwood opens its workdays with prayer, which counts in favor of that status.

The EEOC didn't address our criticism of the multi-factor *LeBoon* test, and it is important to reiterate that the text of Title VII's religious exemption does not enumerate a list of factors for courts to use in determining what constitutes a religious employer. It is also important to emphasize that *LeBoon* is wrong to use an employer's for-profit status as a point against religious-employer status, especially now that the Supreme Court has held that for-profit corporations are entirely capable of engaging in religious exercise. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706–07 (2014). The sounder approach is simply to ask whether an employer is "religious" or "non-religious," and any amount of religious character should be enough to put an employer into the "religious" cubbyhole—especially when constitutional-avoidance concerns are added to the mix. *See* Pls.' Br., ECF No. 111 at 4–5.

## II. The Scope Of The Religious Exemption Is Broad

All three briefs agree that a "religious" organization has the prerogative to make employment decision on the basis of "religion," which includes the ability to make employment decisions on the basis of a conflict between the employee's religious beliefs *or conduct* and the religious convictions of the employer. *See* Pl. Br., ECF No. 111 at 9; EEOC Br., ECF No. 115 at 4; Amicus Br., ECF No. 114 at 3–11. But the EEOC declines to take a position on how this broad standard applies to the plaintiffs. The plaintiffs and the amicus agree that the exemption easily protects Bear Creek Bible Church.

The plaintiffs are the only party to address whether the exemption can protect Braidwood, and our supplemental brief noted that the answer to this question is not entirely clear. The text of the statutory exemption suggests that it applies only when an employer has a policy of hiring only individuals of a particular "religion." *See* 42 U.S.C. § 2000e-1(a) ("This subchapter shall not apply to . . . a religious corporation,

association, educational institution, or society with respect to the employment of individuals of a particular religion"). On this textual basis, it appears that Braidwood would not fit, as it does not require its employees to make any profession of faith.

To be sure, Title VII defines "religion" broadly to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j); *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774–75 (2015) ("Congress defined 'religion,' for Title VII's purposes, as 'includ[ing] all aspects of religious observance and practice, as well as belief.' 42 U.S.C. § 2000e(j). Thus, religious practice is one of the protected characteristics that cannot be accorded disparate treatment and must be accommodated."); *Little v. Wuerl*, 929 F.2d 944, 950 (3d Cir. 1991) ("[T]aken as a whole, the definition seems intended to broaden the prohibition against discrimination—so that religious practice as well as religious belief and affiliation would be protected.").

But Braidwood does not require its employees to hold *religious* objections to homosexual or transgender behavior. Its unwillingness to hire homosexual or transgender employees reflects the religious beliefs and convictions of Dr. Hotze, but it is not the product of a policy that requires the employees themselves to subscribe to Dr. Hotze's religious beliefs. If, for example, Braidwood had a policy of hiring only individuals who hold religious objections to homosexual or transgender behavior, or if Braidwood had a policy of hiring only individuals who refrain from homosexual or transgender behavior on account their *own* religious beliefs, then Braidwood would comfortably fit within the statutory exemption for "religious" employers. But it is less clear that an employer is hiring individuals "of a particular religion" if it merely imposes a rule of conduct for its employees to follow—without requiring the employee to hold a particular religious belief or motivation for engaging in the required conduct or for refraining from the prohibited conduct.

At the same time, there is precedent to support the view that Braidwood falls within the protections of 42 U.S.C. § 2000e-1(a). In *Little v. Wuerl*, 929 F.2d 944,

950 (3d Cir. 1991), for example, the Third Circuit held that Title VII's statutory exemption allows religious employers to enforce rules of conduct motivated by the employer's religious beliefs, regardless of whether they require their employees to adhere to any particular religious views:

> The permission to employ persons "of a particular religion" includes permission to employ only persons whose beliefs and conduct are consistent with the employer's religious precepts. Thus, it does not violate Title VII's prohibition of religious discrimination for a parochial school to discharge a Catholic or a non-Catholic teacher who has publicly engaged in conduct regarded by the school as inconsistent with its religious principles.

*Little v. Wuerl*, 929 F.2d 944, 951 (3d Cir. 1991). So a Roman Catholic church school that does not require its employees to be Catholic can nonetheless fire a teacher who violates a tenet of Roman Catholic conduct. *See Little*, 929 F.2d at 950 (allowing school to terminate a Protestant teacher because she did not seek an annulment of her first marriage before remarrying).

In sum, Bear Creek Bible Church is definitely protected by Title VII's religious exemption. Matters are more complicated with Braidwood given the statutory language, but there is judicial precedent to support the view that Braidwood's employment policies are protected by 42 U.S.C. § 2000e-1(a).

## III. The EEOC Is Wrong To Suggest That The Issues Are Hypothetical

The EEOC claims that it can't make judgments about the application of Title VII to the plaintiffs until an actual complaint is filed with the EEOC and the EEOC investigates. But that is no reason to claim that a court is impotent to make these determinations. The EEOC may prefer to evaluate compliance with Title VII in response to its own investigation rather than in front of a court. It might prefer that its inves-

tigators have the first chance to address Title VII's application to these particular organizations. But that is no reason to prevent this Court from deciding these issues, which are simply matters of statutory interpretation and application.

The EEOC claims that it is unable to opine on the application of Title VII's religious exemption because the issues presented are hypothetical and speculative. But the religious character of an employer—whether Bear Creek Bible Church or Braidwood are religious organizations—can be ascertained without an EEOC complaint, and the EEOC does not explain how the existence of a complaint would affect its evaluation of an employer's religious character.

Nor does the EEOC explain why a complaint is needed to evaluate a *policy* requiring employees to comply with religious standards of conduct. Of course in an individual complaint, there might be arguments that supposed policy is a pretext for the challenged employment action. But this Court is not being asked to immunize all employment decisions by the plaintiffs that purport to be made pursuant to their religious beliefs. Not is the Court being asked to forbid any and all investigations by the EEOC into actual complaints involving conduct that allegedly violates the law. The plaintiffs are merely seeking a declaratory judgment that will clarify the legality of specific employment policies—policies that facially contravene a specific EEOC guidance document. *See Texas v. EEOC*, No. 5:13-CV-255-C, 2017 WL 11503439, at *4 (N.D. Tex. June 2, 2017) ("To find otherwise would protect the Guidance from any meaningful judicial review and allow the EEOC to have its cake and eat it too. Either the Guidance is to be ignored completely by state employers and EEOC staff in relation to state employers because it is only the EEOC's belief of what the law should be, or it must be subject to review under § 704 of the Administrative Procedures Act regardless of where enforcement authority lies."); *Texas v. United States*, 201 F. Supp. 3d 810, 825 (N.D. Tex. 2016), order clarified, No. 7:16-CV-00054-O, 2016 WL 7852331 (N.D. Tex. Oct. 18, 2016) (noting that a federal agency's "Guidelines and

actions indicate that Plaintiffs jeopardize [themselves] . . . by choosing not to comply with Defendants' Guidelines.").

This conflict is concrete and particularized; it is not speculative. The EEOC is mistaken to conflate the lack of a specific complaint with a lack of standing or ripeness.

## CONCLUSION

The defendants' cross-motion for summary judgment should be denied, and the plaintiffs' motion for summary judgment should be granted.

Respectfully submitted.

/s/ Jonathan F. Mitchell

Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Gene P. Hamilton
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721 (phone)
gene.hamilton@aflegal.org

H. Dustin Fillmore III
Texas Bar No. 06996010
Charles W. Fillmore
Texas Bar No. 00785861
The Fillmore Law Firm, LLP
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

Dated: October 8, 2021

*Counsel for Plaintiffs and the Proposed Classes*

## CERTIFICATE OF SERVICE

I certify that on October 8, 2021, I served this document through CM/ECF upon:

Benjamin T. Takemoto
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
(202) 532-4252 (phone)
(202) 616-8460 (fax)
benjamin.takemoto@usdoj.gov

*Counsel for the Defendants*

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiffs and the Proposed Classes*