# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| **Bear Creek Bible Church**, et al., | |
| Plaintiffs, | |
| v. | Case No. 4:18-cv-00824-O |
| **Equal Employment Opportunity Commission**, et al., | |
| Defendants. | |

## PLAINTIFFS' APPLICATION FOR COSTS AND ATTORNEYS' FEES UNDER 42 U.S.C. § 1988(b)

# TABLE OF CONTENTS

Table of contents...........................................................................................................i

Table of authorities.....................................................................................................ii

Argument......................................................................................................................1

    I.  Hourly rates ......................................................................................................1

        A.  Jonathan F. Mitchell.............................................................................2

        B.  Local counsel .........................................................................................5

        C.  Student research assistants ...................................................................5

        D.  *Johnson* factors.....................................................................................6

    II.  Time spent .......................................................................................................6

        A.  Jonathan F. Mitchell.............................................................................6

        B.  Time spent preparing the fee application........................................14

    III. Costs and expenses .....................................................................................15

    IV. The overall amount requested.....................................................................15

Conclusion..................................................................................................................17

Certificate of service ................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*Abell v. Potomac Insurance Co. of Illinois*, 946 F.2d 1160 (5th Cir. 1991) .................. 9, 11

*Abrams v. Baylor College of Medicine*, 805 F.2d 528 (5th Cir. 1986)............................ 8, 13

*Barrow v. Greenville Independent School District*,
 2005 WL 6789456 (N.D. Tex. Dec. 20, 2005) ......................................................... 13

*Bostock v. Clayton County*, 140 S. Ct. 1731 (2020) ...................................................... 8

*Blum v. Stenson*, 465 U.S. 886 (1984).............................................................................. 1

*Coleman v. Houston Independent School District*,
 No. 98-20692, 1999 WL 1131554 (5th Cir. 1999).................................................. 8, 9

*Cruz v. Hauck*, 762 F.2d 1230 (5th Cir. 1985) ............................................................ 14

*Faizy v. Mesghali*,
 2017 WL 6313942 (N.D. Tex., Dallas Division, Dec. 8, 2017) ............................... 15

*Fessler v. Porcelana Corona De Mexico*, 23 F.4th 408 (5th Cir. 2022)................................. 9

*Franciscan Alliance, Inc. v. Becerra*,
 --- F. Supp. 3d ----, 2023 WL 4462049, *6–8 (N.D. Tex.) ................................... passim

*Halupka v. Federal Express Corp.*,
 2006 WL 8441053 (E.D. Tex. June 22, 2006) ............................................................ 8

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................................... 8, 10, 13

*Hudson v. Board of Regents of Texas Sothern University*,
 2009 WL 6496547 (S.D. Tex. Mar. 10, 2009) ......................................................... 12

*In re Babcock & Wilcox Co.*, 526 F.3d 824 (5th Cir. 2008)............................................... 7

*Jason D.W. ex rel. Douglas W. v. Houston Independent School District*,
 158 F.3d 205 (5th Cir. 1998)..................................................................................... 6

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ........................... 6

*Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir. 1995) ......................... 11

*Luessenhop v. Clinton County*, 558 F. Supp. 2d 247 (N.D.N.Y. 2008)............................. 13

*Miller v. Davis*, 267 F. Supp. 3d 961 (E.D. Ky. 2017)................................................... 12

*Saizan v. Delta Concrete Products Co.*, 448 F.3d 795 (5th Cir. 2006) ............................. 6, 7

*Tollett v. City of Kemah*, 285 F.3d 357 (5th Cir. 2002)...................................................... 1

*United Healthcare Services, Inc. v. Next Health, LLC*,
 2020 WL 13490846 (N.D. Tex. Sept. 16, 2020)......................................................... 7

*Watkins v. Fordice*, 7 F.3d 453 (5th Cir. 1993)................................................................. 7

**Statutes**

42 U.S.C. § 1988(b) ........................................................................................ 1

**Other Authorities**

Robert T. Garnett, *High-dollar lawyers aim to prove Texas in 'substantial compliance' to serve foster kids*, Dallas Morning News (June 14, 2023)........................... 4

Robert T. Garnett, *Texas hires well-connected private lawyers, may stiffen defense in foster-care lawsuit*, Dallas Morning News (May 11, 2023) ........................... 3

On November 29, 2023, this Court entered final judgment in favor of plaintiff Braidwood Management Inc. on its claims under the Religious Freedom Restoration Act. *See* Final Judgment, ECF No. 142, at 1–2. Braidwood's success on its RFRA claim allows it to recover a reasonable attorney's fee under 42 U.S.C. § 1988(b).

The declarations and exhibits that we have attached show that attorney Jonathan F. Mitchell spent 386.9 hours working on this matter, attorney H. Dustin Fillmore spent 2.7 hours, attorney Chad W. Fillmore spent 3.1 hours, and Mr. Mitchell's student research assistants spent 15.2 hours. Mr. Mitchell, however, is exercising billing judgment and writing off 20.0 of his hours, and an additional 43.5 of his hours are marked as travel time for which Mr. Mitchell is seeking recovery at only 50% of his reasonable hourly rate. Mr. Mitchell also spent an additional 30.3 hours preparing and submitting the fee application. Finally, the plaintiffs incurred $4,799.24 in court costs and travel expenses.

Our application will first address the reasonable hourly rates for each attorney, and then explain how the documented time and tasks are properly included in this fee request.

**ARGUMENT**

## I.   Hourly Rates

An attorney seeking fees must request an hourly rate consistent with the "prevailing market rate"—the rate charged by "lawyers of reasonably comparable skill, experience and reputation" who practice in the community where the Court is located. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) ("[T]he relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." (citation and internal quotation marks omitted)).

To establish a prevailing market rate, an applicant may submit a declaration from an attorney who practices in the relevant community. *See Tollett*, 285 F.3d at 368

("Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there."). We have attached to this application a declaration from John C. Sullivan, who practices law in the Dallas–Fort Worth metroplex and attests that the requested hourly rates are reasonable and consistent with the Dallas–Fort Worth legal market. *See* Sullivan Decl. (attached as Exhibit 4). Mr. Sullivan agreed to provide this affidavit without compensation, so he has no financial stake in this matter or in the ultimate amount of fees that are recovered. *See id.* at ¶ 6.

### A.    Jonathan F. Mitchell

Mr. Mitchell is Principal at Mitchell Law PLLC. He graduated from the University of Chicago Law School in 2001 with high honors, where he was an articles editor of The University of Chicago Law Review and a member of Order of the Coif. After graduating from law school, Mr. Mitchell clerked for Judge J. Michael Luttig of the U.S. Court of Appeals for the Fourth Circuit and for Justice Antonin Scalia of the Supreme Court of the United States.

Mr. Mitchell then served as an Attorney-Adviser in the Office of Legal Counsel of the U.S. Department of Justice from 2003 through 2005. After leaving the Department of Justice, Mr. Mitchell was a visiting assistant professor at the University of Chicago Law School from 2006 through 2008, and an assistant professor of law at George Mason University from 2008 through 2010.

In 2010, Mr. Mitchell was appointed Solicitor General of Texas, a position he held until January 2015. After leaving the Texas Solicitor General's office, Mr. Mitchell served as the Searle Visiting Professor of Law at the University of Texas School of Law before joining the Hoover Institution as a Visiting Fellow from 2015 to 2016. Mr. Mitchell also served as a Visiting Professor of Law at Stanford Law School before opening his own law firm in 2018.

Mr. Mitchell has published numerous works of scholarship in top-10 law journals, including *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 936 (2018), *Textualism and the Fourteenth Amendment*, 69 Stan. L. Rev. 1237, 1298 (2017), and *Stare Decisis and Constitutional Text*, 110 Mich. L. Rev. 1 (2011). He has written articles on textualism, national-security law, criminal law and procedure, judicial review and judicial federalism, and the legality of stare decisis in constitutional adjudication. Mr. Mitchell's résumé, which lists all of his scholarly publications, is attached as Exhibit A to his declaration, and his academic writing is available on his SSRN page.[1]

Mr. Mitchell has argued five times before the Supreme Court of the United States, and was recently retained to argue his sixth Supreme Court case in *Garland v. Cargill*, No. 22-976. *See* Mitchell Decl. ¶ 6 (attached as Exhibit 1). He has argued more than 30 cases in the federal courts of appeals. *See id.* at ¶ 8. He has also argued before the Supreme Court of Texas and in numerous trial courts. Mr. Mitchell has authored the principal merits brief in eight Supreme Court cases, and has written and submitted more than 30 amicus curiae briefs in the Supreme Court. *See id.* at ¶¶ 6–8.

A lawyer of Mr. Mitchell's skill, experience, and reputation would command an hourly rate of more than $1,500 in the Dallas–Fort Worth metroplex. The most appropriate point of comparison to Mr. Mitchell in the Dallas–Fort Worth legal market is Allyson Ho,[2] who (like Mr. Mitchell) is a former Supreme Court clerk with more than 20 years' experience and has handled multiple Supreme Court arguments.[3] Ms.

---

1. *See* https://papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=791842
2. *See* https://www.gibsondunn.com/lawyer/ho-allyson-n (last visited on December 13, 2023).
3. *See* Robert T. Garnett, *Texas hires well-connected private lawyers, may stiffen defense in foster-care lawsuit*, Dallas Morning News (May 11, 2023) (attached as Exhibit F to Mitchell declaration) ("Allyson Ho argued multiple cases at the U.S. Supreme Court").

Ho graduated from the University of Chicago Law School in 2000 (Mr. Mitchell graduated from Chicago in 2001), and both graduated with high honors and served on the Law Review. Each of them clerked at the Supreme Court during OT 2002 (Ms. Ho for Justice O'Connor,[4] and Mr. Mitchell for Justice Scalia[5]), and each of them has similar experience as appellate advocates. Ms. Ho is a partner in Gibson Dunn's Dallas office, and her current hourly rate is $1,750.00.[6] Yet Mr. Mitchell is proposing a lodestar hourly rate of $1,200, which is significantly below Ms. Ho's hourly rate, and significantly below the rate that a lawyer of Mr. Mitchell's skill, experience, and reputation would command in the Dallas–Fort Worth market. *See* Sullivan Decl. ¶ 8 ("A lawyer of Mr. Mitchell's skill, experience, and reputation would easily command a rate of $1,800 to $2,000/hour in private practice in the Dallas–Fort Worth legal market.").

A $1,200 hourly rate for Mr. Mitchell is also in line with rates that this Court recently approved in federal RFRA litigation. Earlier this year, this Court approved a $1,200 hourly rate for Mark Rienzi, a class of 2000 Harvard Law School graduate who successfully litigated a federal RFRA claim against an HHS rule requiring health-care providers to perform and insure gender-transition procedures and abortions. *See Franciscan Alliance, Inc. v. Becerra*, --- F. Supp. 3d ----, 2023 WL 4462049, *6–8 (N.D. Tex.) (attached as Exhibit 5) ("[T]he rates proposed by Plaintiffs' counsel are reasonable."); *see also* Pls.' Mem. in Support of Mot. for Costs and Fees in *Franciscan*

---

4.    *See* https://bit.ly/3tatOBA (last visited on December 13, 2023).
5.    *See* https://bit.ly/3tc2Oli (last visited on December 13, 2023).
6.    *See* Robert T. Garnett, *High-dollar lawyers aim to prove Texas in 'substantial compliance' to serve foster kids*, Dallas Morning News (June 14, 2023) (attached as Exhibit E to Mitchell declaration) (reporting that the Texas Attorney General retained Ms. Ho at a rate of "$1,313 an hour"); Mitchell Decl. ¶ 10 ("Allyson Ho, a partner at Gibson Dunn's Dallas office, has informed me that her hourly rate is $1,750.00, and that she provided a $1,313 hourly rate to the Attorney General of Texas at a 25% discount.").

*Alliance, Inc. v. Becerra*, No. 7:16-cv-00108-O (N.D. Tex.), ECF No. 224, at 14 (attached as Exhibit 6) (proposing a $1,200 hourly rate for Mr. Rienzi). Although the $1,200 hourly rate awarded to Mr. Rienzi was based on the D.C. market rather than the Dallas market, Mr. Rienzi's proposed Dallas–Fort Worth rate was only $150/hour lower, *see id.* at 15 (proposing a $1,050/hour rate for Mr. Rienzi), and Mr. Mitchell would command a higher hourly rate than Mr. Rienzi in the Dallas–Fort Worth legal market. *See* Sullivan Decl. ¶ 9 ("Mr. Mitchell would command a higher hourly rate than Mr. Rienzi in the Dallas–Fort Worth legal market on account of his Supreme Court clerkship, his numerous Supreme Court arguments, his experience as a state solicitor general, and his credentials as a scholar and academic.").

### B.    Local Counsel

Attorneys H. Dustin Fillmore III and Charles W. Fillmore served as local counsel in the district-court proceedings, and they logged 2.7 and 3.1 hours respectively. The plaintiffs are seeking recovery for their time at $500/hour. It was necessary to retain the Fillmores as local counsel, even though Mr. Mitchell is licensed to practice in the northern district of Texas, because the local rules of the northern district require litigants to retain an attorney with a physical office located within 50 miles of the Fort Worth courthouse. *See* N.D. Tex. Local Civil Rule 83.10(a). Each of the Fillmores has submitted a declaration explaining the reasonableness of a $500 hourly rate and attesting to the time that they spent working on this case. *See* Exhibits 2 and 3. Mr. Sullivan also states that $500/hour is a reasonable hourly rate for attorneys of their skill, experience, and reputation in the Dallas–Fort Worth market. *See* Sullivan Decl. ¶ 10.

### C.    Student Research Assistants

Mr. Mitchell's law firm employs second- and third-year law students to help with citechecking and research. He pays them $100/hour, although he sometimes pays a

lower rate of $50/hour if the firm is handling a case pro bono or on contingency. *See* Mitchell Decl. ¶ 17. Mr. Mitchell's students research assistants spent 15.2 hours on this case, and he seeks recovery for their time at $100/hour. This is a reasonable hourly rate because it is comparable to the rates charged by Dallas–Fort Worth area law firms when they bill their summer-associate time. *See* Sullivan Decl. ¶ 11.

### D.    *Johnson* Factors

We have considered the 12 *Johnson* factors, *see Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), but do not believe that any of them warrants an upward or downward departure. The only relevant *Johnson* factor, in our view, is the ninth factor—"the experience, reputation, and ability of the attorneys"—but this factor is already accounted for in computing the lodestar and should not be double-counted. *See Jason D.W. ex rel. Douglas W. v. Houston Independent School District*, 158 F.3d 205, 209 (5th Cir. 1998). We also are not seeking any fee enhancements.

## II.   TIME SPENT

Each of the attorneys has submitted billing sheets showing the time spent working on this case. We will discuss the reasonableness of the expended time and how billing judgment was exercised. *See Saizan v. Delta Concrete Products Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (litigants seeking attorneys' fees bear "the burden of showing the reasonableness of the hours billed" and "that they exercised billing judgment.").

### A.    Jonathan F. Mitchell

Mr. Mitchell performed nearly all of the legal work, and he expended a total of 386.9 hours on this case from July 6, 2018, through December 4, 2023. *See* Mitchell Decl. ¶¶ 12–13 & Ex. B. Mr. Mitchell drafted and submitted every brief and court filing in the trial and appellate courts, handled all of the courtroom appearances, and conducted nearly all of the legal research. The only legal work not performed by Mr.

Mitchell consisted of occasional research and citechecking tasks that were outsourced to his student research assistants. The 386.9 hours logged by Mr. Mitchell through December 4, 2023, does not include work that falls under the category of "fees for fees," *i.e.*, time spent preparing the application for attorney fees.

The plaintiffs are not seeking recovery for all of Mr. Mitchell's 386.9 hours. *See Saizan*, 448 F.3d at 799 ("[P]laintiffs seeking attorney's fees . . . [must] exercise[] billing judgment. Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."). Some of this time was spent communicating with potential clients who never joined the case. Mr. Mitchell is writing off that time, which amounts to 19.4 hours. *See* Mitchell Decl. ¶ 13. Some of Mr. Mitchell's time was spent on non-legal tasks, such as reviewing and editing press releases for America First Legal Foundation. Mr. Mitchell is writing off those 0.6 hours as well. *See id*. Finally, Mr. Mitchell is requesting only 50% of his hourly rate for travel time, in keeping with the accepted practice in the Fifth Circuit and the northern district. *See In re Babcock & Wilcox Co.*, 526 F.3d 824, 828 (5th Cir. 2008) (per curiam); *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993); *United Healthcare Services, Inc. v. Next Health, LLC*, 2020 WL 13490846, at *3 (N.D. Tex. Sept. 16, 2020) ("[C]ourts often discount the hourly rate for travel time . . . . The Court finds it is appropriate to discount by 50% the 11.2 hours Ms. Murray billed for travel."). 43.5 hours are marked as travel time, so the plaintiffs are requesting compensation for those time entries at $600/hour rather than $1,200/hour. Mr. Mitchell is therefore seeking fees for 323.4 hours of working time, and 43.5 hours of travel time. The timesheet attached as Exhibit B to Mr. Mitchell's declaration shows the written-off time entries in pink, and the travel-time entries in yellow.

### 1.     Time Spent On Non-RFRA Claims

The plaintiffs considered whether to write off time spent pursuing the non-RFRA claims regarding the proper interpretation of Title VII and the meaning of *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020).[7] But we concluded that these fees were reasonably incurred and that the plaintiffs should recover fees for that time, even though they did not ultimately prevail on those arguments. A prevailing party "may recover all reasonably incurred fees, even where the party did not prevail on all claims, as to all defendants, or as to all issues." *Franciscan Alliance*, --- F. Supp. 3d ----, 2023 WL 4462049, at *5 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435–40 (1983), and *Coleman v. Houston Independent School District*, No. 98-20692, 1999 WL 1131554, at *5 (5th Cir. 1999)). As the Supreme Court has explained:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley*, 461 U.S. at 435; *see also Abrams v. Baylor College of Medicine*, 805 F.2d 528, 536 n.10 (5th Cir. 1986) ("The plaintiffs have substantially prevailed in this litigation and they are, therefore, entitled to all hours reasonably expended on the lawsuit— including those hours devoted to unsuccessful but related contentions.").[8] And a

---

7.    These were described as Claims 2–5 in the fourth amended complaint. *See* Fourth Amended Complaint, ECF No. 86, at ¶¶ 54–68. We will refer to Claims 2–3 as the "First Amendment claims" and Claims 4–5 as the "statutory-interpretation claims."

8.    *See also Halupka v. Federal Express Corp.*, 2006 WL 8441053, at *3 (E.D. Tex. June 22, 2006) ("FedEx argues that Ms. Laster can only recover for time reasonably spent on claims on which Plaintiffs prevailed. The correct Fifth Circuit position on this subject is that, when a lawsuit consists of *related claims*, a plaintiff who has won substantial relief should not have his attorney's fees reduced simply because the Court did not adopt each contention raised. Halupka Jr.'s claims involve a common core of facts and should be viewed as a series of related

Court should allow a prevailing party to recover fees for time spent litigating unsuccessful claims if: (1) The successful and unsuccessful claims "involve a 'common core of facts' or are based upon 'related legal theories'";[9] or (2) The "time spent on different claims is difficult to segregate." *Franciscan Alliance*, --- F. Supp. 3d ----, 2023 WL 4462049, at *5 (quoting *Coleman*, 1999 WL 1131554, at *5, and *Abell v. Potomac Insurance Co. of Illinois*, 946 F.2d 1160, 1169 (5th Cir. 1991)). Each of these factors supports recovery for time spent pursuing the unsuccessful First Amendment and statutory-interpretation claims, as well as the claims asserted on behalf of Bear Creek Bible Church.

The First Amendment claims, as well the claims involving the proper interpretation of Title VII, all share a "common core of facts" with the successful RFRA claim asserted on behalf of Braidwood. The factual basis for all of those claims arose out of the employment practices of Bear Creek Bible Church and Braidwood Management Inc., which were identical. Neither employer would hire or retain individuals who engage in homosexual, bisexual, or transgender behavior, and their refusal to employ these individuals was rooted in their sincere religious beliefs. *See* Salvensen Decl., ECF No. 90-4; Hotze Decl., ECF No. 90-5.

The RFRA, First Amendment, and statutory-interpretation claims were also based on "related legal theories," because each of those claims asserted that the EEOC lacked authority to enforce Title VII against Bear Creek or Braidwood over their refusal to employ bisexuals, or their attempts to enforce sex-neutral rules of conduct that would exclude most homosexual and transgender individuals from employment.

---

claims, not as a series of discrete claims. Halupka Jr. obtained substantial relief. Ms. Laster should receive a fully compensatory fee even though Halupka Jr. did not recover on all of his claims." (citations omitted)).

9.  *See also Fessler v. Porcelana Corona De Mexico*, 23 F.4th 408, 416 (5th Cir. 2022) ("[W]hen claims . . . share a 'common core of facts' or 'related legal theories,' a fee applicant may claim all hours reasonably necessary to litigate those issues." (citations and some internal quotation marks omitted)).

The only difference was that the RFRA and First Amendment claims were based on the beliefs of the employers, while the statutory-interpretation claims relied on the language of Title VII and *Bostock*. But the ultimate relief sought under these claims was nearly identical. Each claim sought to shield Bear Creek and Braidwood from EEOC enforcement actions over their employment practices regarding individuals who engage in homosexual or transgender behavior; the only difference is that the RFRA and First Amendment claims extended more broadly and would have shielded the plaintiffs from EEOC enforcement actions even when their conduct was prohibited by *Bostock*'s interpretation of Title VII.

The time spent on the unsuccessful First Amendment and statutory-interpretation claims is also "difficult to segregate" from the successful RFRA claims. *Franciscan Alliance*, --- F. Supp. 3d at ----, 2023 WL 4462049, at *5; *see also Abell v. Potomac Insurance Co. of Illinois*, 946 F.2d 1160, 1169 (5th Cir. 1991) ("Where time spent on unsuccessful issues is difficult to segregate, no reduction of fees is required."). All of these issues were briefed together, both in the district-court proceedings and on appeal, and the courts adjudicated them in tandem. *See Franciscan Alliance*, --- F. Supp. 3d ----, 2023 WL 4462049, at *5 (noting that the RFRA and APA issues were "briefed together" and "adjudicated . . . in tandem"). The "compelling interest" standard that governs the plaintiffs' First Amendment claims mirrors the compelling-interest test under the Religious Freedom Restoration Act. And the justiciability defenses that the EEOC raised were equally applicable to all of the plaintiffs' claims.

This resembles the situation described in *Hensley*, which acknowledged that "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Hensley*, 461 U.S. at 435. And it is no different from the situation in *Franciscan Alliance*, where this Court allowed plaintiffs who prevailed on a RFRA claim to recover fees for time spent on their unsuccessful APA claim. *See Franciscan*

*Alliance*, --- F. Supp. 3d at ----, 2023 WL 4462049, at *5. The plaintiffs should likewise recover fees for time spent on their First Amendment and statutory-interpretation claims.

### 2.    Time Spent On Bear Creek's Claims

The plaintiffs also considered whether to write off time spent pursuing relief on behalf of Bear Creek Bible Church, as this Court declined to award relief to Bear Creek and entered judgment only in favor of Braidwood. But Braidwood's claims were identical to those asserted on behalf of Bear Creek, and all of the arguments made on behalf of Braidwood were equally applicable to Bear Creek. This includes the arguments involving justiciability, class certification, and the merits. Bear Creek and Braidwood's claims involved both a "common core of facts" and "related legal theories." *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995); *see also id*. ("[W]hen claims against multiple parties share a 'common core of facts' or 'related legal theories,' a fee applicant may claim all hours reasonably necessary to litigate those issues.").

It is also exceedingly difficult (if not impossible) to segregate or identify time that was spent "exclusively" on Bear Creek's claims, because all of the justiciability, merits, and class-certification arguments were made on behalf of both plaintiffs—and nearly every argument advanced on behalf of Bear Creek was equally applicable to Braidwood.[10] The only possible exception arose when this Court asked the parties to brief the implications of Title VII's statutory exemptions for religious organizations that hire co-religionists in September of 2021. *See* Order, ECF No. 110 (instructing the parties to brief the relevance of 42 U.S.C. § 2000e-1(a) and 42 U.S.C. § 2000e-2(e)(2)). The time spent on this particular task is specifically described in the timesheets. *See* Mitchell Decl. Ex. B. But even if this Court finds a way to segregate these

---

10.    *See Abell*, 946 F.2d at 1169 ("Where time spent on unsuccessful issues is difficult to segregate, no reduction of fees is required.").

hours, it remains the case that Bear Creek's unsuccessful claims shared a "common core of facts" and "related legal theories" with the successful RFRA claims advanced by Braidwood. So the Court should not reduce the fee award on account of its ultimate disposition of Bear Creek's claims. *See Hudson v. Board of Regents of Texas Southern University,* 2009 WL 6496547, at *3 (S.D. Tex. Mar. 10, 2009) (invoking *Hensley* and refusing to reduce a fee award to exclude time spent on a plaintiff's unsuccessful claims, when the other two plaintiffs prevailed on related claims and "it would be too difficult for the court to parse the time spent on the successful claims versus the time spent on the failed claims."). Finally, plaintiffs' counsel still achieved substantial success for Bear Creek because it remains protected by the *stare decisis* effect of the Fifth Circuit's opinion, which shields *all* employers in the Fifth Circuit that hold sincere religious objections to homosexual or transgender behavior from *Bostock*'s interpretation of Title VII—whether churches, religious non-profits, or for-profit employers. The Fifth Circuit's holding on RFRA binds all federal district courts in the Texas and will protect Bear Creek from EEOC enforcement action, even though the district court's judgment declined to award relief to Bear Creek.

### 3.    Time Spent On Class Certification

The plaintiffs also considered whether to write off time spent pursuing class certification, given that the district court granted the plaintiffs' class-certification motion but the Fifth Circuit vacated that ruling. We did not find authority from the Fifth Circuit specifically addressing whether a prevailing party can recover fees for litigating a class-certification motion that was ultimately unsuccessful, although we did uncover a federal district-court ruling from Kentucky that refused to exclude time spent litigating an unsuccessful class-certification motion. *See Miller v. Davis*, 267 F. Supp. 3d 961, 998 (E.D. Ky. 2017), *aff'd sub nom. Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019) (refusing to adjust lodestar to account for "Plaintiffs' unsuccessful Motion for

Class Certification."). Yet court decisions in this district and elsewhere consistently allow prevailing parties to recover fees for time spent litigating unsuccessful motions, so long as the motions were litigated in good faith and the advocacy was reasonable. *See Barrow v. Greenville Independent School District,* 2005 WL 6789456, at *9 (N.D. Tex. Dec. 20, 2005), *aff'd,* 2007 WL 3085028 (5th Cir. Oct. 23, 2007) ("Smith argues that Barrow should not recover for time Bundren spent on 15 motions that she lost . . . . The court will not deny time spent on these motions solely on the basis that Barrow did not prevail on them."); *Luessenhop v. Clinton County,* 558 F. Supp. 2d 247, 256 (N.D.N.Y. 2008), *aff'd,* 324 F. App'x 125 (2d Cir. 2009) ("[A] prevailing party is not limited to recovery on successful motions alone. Indeed unsuccessful motions too are compensable as long as they are not frivolous.").

This approach seems to us consistent with *Hensley* and the law of the Fifth Circuit, which allow prevailing parties to recover fees for time spent on failed claims or contentions so long as the plaintiff obtained "excellent results" and the hours were "reasonably expended." *Hensley,* 461 U.S. at 435; *see also Abrams,* 805 F.2d at 536 n.10 ("The plaintiffs have substantially prevailed in this litigation and they are, therefore, entitled to all hours reasonably expended on the lawsuit—including those hours devoted to unsuccessful but related contentions."). Prevailing parties will often lose contested motions in the course of litigation; that does not warrant a reduction in fees unless the time spent litigating the motion was not "reasonably expended," *i.e.*, the prevailing party's position on the motion was baseless.

The hours spent pursuing class certification were reasonably expended because it was sensible and prudent for the plaintiffs and their counsel to pursue classwide relief on behalf of similarly situated employers, and their arguments for class certification were plausible even though they were ultimately rejected by the Fifth Circuit. It is also likely that the plaintiffs' partial success in the district court on the class-certification issue helped establish an appellate-court precedent in the Fifth Circuit on the

RFRA issue, because the EEOC would have been less likely to appeal a district-court judgment limited to Braidwood alone. *See Braidwood Management Inc. v. Becerra*, No. 23-10326 (5th Cir.) (pending appeal in which the Biden Administration refused to appeal an injunction from this Court granting Braidwood relief from PrEP coverage mandate on federal RFRA grounds). The Court should include these class-certification hours in the lodestar.

### B.    Time Spent Preparing The Fee Application

Prevailing parties are entitled to recover attorneys' fees for time spent preparing their fee application. *See Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985) ("It is settled that a prevailing plaintiff is entitled to attorney's fees for the effort entailed in litigating a fee claim and securing compensation."). Mr. Mitchell has spent 30.3 hours preparing and submitting the fee application, and he will incur additional hours if he files a reply brief. *See* Mitchell Decl. at ¶¶ 17–18 & Ex. C. Mr. Mitchell has also outsourced research tasks related to the fee application to second- and third-year law students employed by his law firm, who spent 11.9 hours assisting Mr. Mitchell in preparing the fee application. *See* Mitchell Decl. ¶ 16.

The time and tasks directed toward preparing the fee application were necessary and reasonable. *See* Mitchell Decl. at ¶¶ 17–18. Mr. Mitchell outsourced as many research tasks as possible to his student RAs, which significantly reduced the total hours that he otherwise would have spent on the fee application. *See id*. at ¶ 17. And it was necessary and reasonable for Mr. Mitchell to draft and prepare the fee application because he had done nearly all of the legal work in this case. *See id*. at ¶ 18. The 30.3 attorney hours spent (thus far) litigating fees is *far* below the 135.1 hours that this Court approved for litigating the fee application in *Franciscan Alliance. See Franciscan Alliance*, --- F. Supp. 3d at ----, 2023 WL 4462049, *6 ("Defendants lastly contend that Plaintiffs' claimed 135.1 hours spent litigating fees, for which Plaintiffs

seek $105,436, should be reduced . . . . [T]he Court . . . declines to reduce the award for time spent litigating fees."). It even approaches the hours approved by this Court for preparing fee applications submitted for minor tasks such as litigating a meritless removal. *See Faizy v. Mesghali*, 2017 WL 6313942, at *2–*3 (N.D. Tex., Dallas Division, Dec. 8, 2017) (allowing the plaintiffs' lawyers to recover for the 27 hours that they spent preparing a fee application under 28 U.S.C. § 1447(c)).

### III.   COSTS AND EXPENSES

The plaintiffs incurred the following court costs and travel expenses:

> $400.00 filing fee for the complaint
> $505.00 filing fee for the notice of appeal
> $81.00 for the court reporter's invoice
> $835.93 for printing paper copies of the Fifth Circuit briefs
> $1,021.67 in travel costs for the hearing of April 9, 2019
> $806.96 in travel costs for the hearing of August 27, 2021
> $1,148.68 in travel costs for the Fifth Circuit argument.

Mitchell Decl. ¶ 19. Receipts for these costs and expenses can be found in Exhibit D to Mr. Mitchell's declaration. The total amount of costs and expenses is $4,799.24.

### IV.   THE OVERALL AMOUNT REQUESTED

The plaintiffs are respectfully requesting the following costs, fees, and expenses for each of the following attorneys:

| Attorney | Hourly Rate | Hours | Total Fees | Expenses |
|---|---|---|---|---|
| Mitchell (atty work) | $1,200.00 | 323.4 | $388,080.00 | $4,799.24 |
| Mitchell (fees for fees) | $1,200.00 | 30.3 | $36,360.00 | $0.00 |
| Mitchell (travel time) | $600.00 | 43.5 | $26,100.00 | $0.00 |
| C. Fillmore | $500.00 | 3.1 | $1,550.00 | $0.00 |
| D. Fillmore | $500.00 | 2.7 | $1,350.00 | $0.00 |
| Student RAs | $100.00 | 15.2 | $1,520.00 | $0.00 |
| Totals | --- | **418.2** | **$454,960.00** | **$4,799.24** |
| **Total Costs, Fees and Expenses:** | | | **$459,759.24** | |

The total number of billable hours comes in at 418.2. That is *far* below the 3,197.25 hours that this Court approved in *Franciscan Alliance*, which (like this case) involved a successful RFRA claim brought against a federal administrative agency, which was litigated alongside other claims that did not succeed. True, *Franciscan Alliance* went on appeal to the Fifth Circuit twice, while this case made only one trip to the appellate court. And the *Franciscan Alliance* litigation lasted for six years, while this litigation had a life of slightly more than five years. So one would expect that the recoverable attorney hours in this case would come in somewhat below the 3,197.25 court-approved hours in *Franciscan Alliance*.[11] Yet the plaintiffs are submitting a fee request for less than *one-seventh* of that amount. And the total amount requested is approximately one-fifth of the $2,207,262.60 that this Court approved in *Franciscan Alliance*.[12]

Whatever the point of comparison, 418.2 is an extraordinarily low number of attorney hours for a case that was litigated for more than five years, involved justiciability and class-certification issues, required counsel to appear and prepare for two in-person hearings in the district court, as well as oral arguments in the Fifth Circuit, was litigated to summary judgment in the district court, and involved cross-appeals from both sides that were litigated to conclusion in the Fifth Circuit. The expended hours are low because nearly all the work was performed by a single attorney, which significantly reduced the inefficiencies and redundancies that arise when multiple lawyers work on a single case. The fee request is eminently reasonable, and we respectfully ask the Court to grant the request in full.

---

11.  *See Franciscan Alliance*, --- F. Supp. 3d at ----, 2023 WL 4462049, at *6 ("[T]he Court finds the remaining total of 3,197.25 hours reasonable.").

12.  *See Franciscan Alliance*, --- F. Supp. 3d at ----, 2023 WL 4462049, at *9 ("[T]he Court awards Plaintiffs **$2,203,053.32** in attorney's fees plus **$4,209.28** in expenses." (emphasis in original)).

## CONCLUSION

The court should award the plaintiffs costs, expenses, and attorneys' fees in the amount of $459,759.24.

Respectfully submitted.

Gene P. Hamilton
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721 (phone)
gene.hamilton@aflegal.org

H. Dustin Fillmore III
Texas Bar No. 06996010
Charles W. Fillmore
Texas Bar No. 00785861
The Fillmore Law Firm, LLP
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

Dated: December 13, 2023

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiffs*

## CERTIFICATE OF CONFERENCE

I certify that on December 13, 2023, I conferred with Benjamin Takemoto, counsel for the defendants, and he informed me that his clients oppose this motion. We conferred but were unable to reach agreement on a fee award.

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on December 13, 2023, I served this document through CM/ECF

upon:

Benjamin T. Takemoto
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
(202) 532-4252 (phone)
(202) 616-8460 (fax)
benjamin.takemoto@usdoj.gov

*Counsel for Defendants*

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiffs*